## Exhibit A

Mark Thomas
MT Acquisition Holdings LLC
Acquisition Holdings Subsidiary I LLC

## ESCROW AGREEMENT

THIS ESCROW AGREEMENT (as the same may be amended or modified from time to time pursuant hereto, (this "Escrow Agreement")) is made and entered into as of May 20, 2009 (the "Effective Date"), by and among Midway Amusement Games, LLC, a Delaware limited liability company, appointed as Sellers' Representative pursuant to Section 12.19 of the Purchase Agreement (as defined below) ("Sellers' Representative"), Warner Bros. Entertainment Inc., a Delaware corporation ("Purchaser") and JPMorgan Chase Bank, National Association (the "Escrow Agent").

WHEREAS, Purchaser and Midway Games, Inc., a Delaware corporation, Midway Amusement Games, LLC, a Delaware limited liability company, Midway Home Entertainment Inc., a Delaware corporation, Surreal Software Inc., a Washington corporation, Midway Games West Inc., a California corporation, Midway Studios – Los Angeles Inc., California corporation, Midway Studios – Austin Inc., a Texas corporation (collectively, "Sellers") and Purchaser have entered into an Asset Purchase Agreement dated as of May 20, 2009 (the "Purchase Agreement"), for the purchase of certain assets and liabilities of Sellers.

WHEREAS, Purchaser and Sellers agreed to deposit in escrow certain funds and wish such deposit to be subject to the terms and conditions set forth herein.

WHEREAS, the Escrow Agent is willing to act as Escrow Agent and hold the funds in escrow in accordance with the terms of this Escrow Agreement.

WHEREAS, all capitalized terms used herein and not otherwise defined herein have the respective meanings assigned to such terms in the Purchase Agreement.

NOW THEREFORE, in consideration of the foregoing and of the mutual covenants hereinafter set forth, the parties hereto agree as follows:

1.     **Appointment.** Purchaser and Sellers' Representative (on behalf of Sellers) hereby appoint the Escrow Agent as their escrow agent for the purposes set forth herein, and the Escrow Agent hereby accepts such appointment under the terms and conditions set forth herein.

2.     **Fund.** Pursuant to Section 3.4 of the Purchase Agreement, on the Effective Date or within two (2) Business Days thereof, Purchaser agrees to deposit, or have deposited, with the Escrow Agent the sum of $5,000,000 (the "Escrow Deposit") in immediately available funds. The Escrow Agent shall hold the Escrow Deposit and, subject to the terms and conditions hereof, shall invest and reinvest the Escrow Deposit and the proceeds thereof (the "Fund") as directed in Section 3.

3.     **Investment of Fund.** During the term of this Escrow Agreement, the Fund shall be invested in a JPMorgan U.S. Government Money Market Fund #3164, unless otherwise instructed in writing by Purchaser and Sellers' Representative and shall be acceptable to the Escrow Agent. The rate of return on a money market deposit account varies from time to time based upon market conditions. Written investment instructions, if any, shall specify the type and identity of the investments to be purchased and/or sold. The Escrow Agent is hereby authorized to execute purchases and sales of investments through the facilities of its own trading or capital markets operations or those of any affiliated entity. The Escrow Agent or any of its affiliates may receive compensation with respect to any investment directed hereunder including without limitation charging an agency fee in connection with each transaction. Purchaser and Sellers' Representative recognize and agree that the Escrow Agent will not provide supervision, recommendations or advice relating to either the investment of moneys held in the Fund or the purchase, sale, retention or other disposition of any investment described herein. The Escrow Agent shall not have any liability for any Loss (as hereinafter defined) sustained as a result of any investment in an investment made pursuant to the terms of this Escrow Agreement or as a result of any liquidation of any investment prior to its maturity or for the failure of Purchaser and Sellers' Representative to give the Escrow Agent instructions to invest or

reinvest amounts in the Fund. The Escrow Agent shall have the right to liquidate any investments held in order to provide funds necessary to make required payments under this Escrow Agreement.

4.    **Distribution and Termination.**

(a) *General.* The Escrow Agent shall hold the Fund in its possession until instructed to deliver the Fund to Purchaser or Sellers' Representative in accordance with Sections 4(b), 4(c) or 4(d) of this Escrow Agreement, in any case, subject to the other terms of this Section 4. The Escrow Agent shall be authorized to act on any document reasonably believed to be genuine and to be signed by the proper party or parties, and, subject to Section 5 of this Escrow Agreement, shall incur no liability in so acting.

(b) *Release of the Fund to Purchaser.* The Escrow Agent shall release the Fund to Purchaser, if:

(i) Purchaser and Sellers' Representative (on behalf of Sellers) deliver joint written instructions in substantially the form of <u>Exhibit A</u> to the Escrow Agent stating that the Purchase Agreement has been terminated pursuant to its terms (other than by Sellers pursuant to Section 4.4(f) thereof or by Purchaser pursuant to Section 4.4(c) thereof as a result of the Platform Condition not being satisfied or waived); or

(ii) Purchaser delivers unilateral written instructions in substantially the form of <u>Exhibit B</u> to the Escrow Agent and to Sellers' Representative stating that the Purchase Agreement has been terminated in accordance with its terms (other than by Sellers pursuant to Section 4.4(f) thereof or by Purchaser pursuant to Section 4.4(c) thereof as a result of the Platform Condition not being satisfied or waived) and Purchaser certifies in writing to the Escrow Agent that Purchaser has delivered a copy of such instructions to Sellers' Representative.

(c) *Release of Fund to Sellers' Representative.* The Escrow Agent shall release the Fund to Sellers' Representative, if:

(i) Purchaser and Sellers' Representative (on behalf of Sellers) deliver joint written instructions in substantially the form of <u>Exhibit C</u> to the Escrow Agent stating that the sale of the Purchased Assets from Sellers to Purchaser has been consummated;

(ii) Purchaser and Sellers' Representative (on behalf of Sellers) deliver joint written instructions in substantially the form of <u>Exhibit D</u> to the Escrow Agent stating that the Purchase Agreement has been terminated by Sellers pursuant to Section 4.4(f) thereof;

(iii) Sellers' Representative (on behalf of Sellers) delivers unilateral written instructions in substantially the form of <u>Exhibit E</u> to the Escrow Agent and to Purchaser stating that the Purchase Agreement has been terminated by Sellers pursuant to Section 4.4(f) thereof and Sellers' Representative certifies in writing to the Escrow Agent that Sellers' Representative has delivered a copy of such instructions to Purchaser; or

(iv) Sellers' Representative (on behalf of Sellers) delivers unilateral written instructions in substantially the form of <u>Exhibit F</u> to the Escrow Agent and to Purchaser stating that the sale of the Purchased Assets from Sellers to Purchaser has been consummated and Sellers' Representative certifies in writing to the Escrow Agent that Sellers' Representative (on behalf of Sellers) has delivered a copy of such instructions to Purchaser.

(d) *Partial Release of Fund to Purchaser and Sellers' Representative.* The Escrow Agent shall release $2,500,000 together with all investment proceeds earned on such portion of the Fund to Sellers' Representative and the balance of the Fund to Purchaser, if Purchaser and Sellers' Representative (on behalf of Sellers) deliver joint written instructions in substantially the form of <u>Exhibit G</u> to the Escrow Agent stating that the Purchase Agreement has been terminated by Purchaser pursuant to Section 4.4(c) thereof as a result of the Platform Condition not being satisfied or waived.

*(e) Additional Terms of Release Pursuant to Joint Instructions.* If Purchaser and Sellers' Representative (on behalf of Sellers) deliver joint written instructions to release the Fund in accordance with (i) Section 4(b)(i), 4(c)(ii) or 4(d), then the Escrow Agent shall release the Fund to Purchaser or Sellers' Representative, as the case may be, as promptly as practicable or (ii) Section 4(c)(i), then the Escrow Agent shall release the Fund to Sellers' Representative on the Closing Date, provided that such joint written instructions are delivered to the Escrow Agent at least two (2) Business Days prior to the Closing Date . Joint written instructions may be signed and delivered by Purchaser and Sellers' Representative in counterparts, which together shall constitute one document.

*(f) Additional Terms of Release Pursuant to Unilateral Instructions.* If Purchaser or Sellers' Representative deliver unilateral written instructions to release the Fund in accordance with Section 4(b)(ii), 4(c)(iii) or 4(c)(iv), then the Escrow Agent shall release the Fund to Purchaser or Sellers' Representative, as the case may be, on the date that is eleven (11) Business Days after the Escrow Agent's receipt of such instructions, provided that the party hereto that did not deliver such unilateral written instructions shall not have objected, by written notice to the Escrow Agent, prior to 5:00 p.m. EST on the tenth (10th) Business Day after the Escrow Agent's receipt of such instructions. If a party objects to the release of the Fund pursuant to the other party's unilateral written instructions during such ten (10) Business Day period, then the Escrow Agent may, in its sole discretion, tender the Fund into the registry or custody of the Bankruptcy Court to initiate such legal proceedings as appropriate, and thereupon shall be discharged from all further duties and liabilities under this Escrow Agreement or safekeep the Fund until the Escrow Agent has received joint instructions signed by the parties regarding the disbursement of the Fund. Neither Purchaser nor Sellers' Representative shall submit unilateral written instructions to the Escrow Agent to release the Fund unless it is entitled to do so under the terms of this Escrow Agreement and the Purchase Agreement based on the circumstances then in existence.

*(g) Payments.* All payments and transfers made by the Escrow Agent to Sellers' Representative shall be by wire transfer in immediately available funds to such bank account or accounts as Sellers' Representative shall specify in writing and all payments and transfers made by the Escrow Agent to Purchaser shall be by wire transfer in immediately available funds to such bank account or accounts as Purchaser shall specify in writing.

*(h) Termination.* Upon delivery of the Fund by the Escrow Agent, this Escrow Agreement shall terminate, subject to the provisions of Sections 7 and 8.

5.      **Escrow Agent.** (a) The Escrow Agent shall have only those duties as are specifically and expressly provided herein, which shall be deemed purely ministerial in nature, and no other duties shall be implied. The Escrow Agent shall neither be responsible for, nor chargeable with, knowledge of, nor have any requirements to comply with, the terms and conditions of any other agreement, instrument or document between Purchaser and Sellers, including without limitation the Purchase Agreement, nor shall the Escrow Agent be required to determine if any person or entity has complied with any such agreements, nor shall any additional obligations of this Escrow Agent be inferred from the terms of such agreements, even though reference thereto may be made in this Escrow Agreement. In the event of any conflict between the terms and provisions of this Escrow Agreement, those of the Purchase Agreement, any schedule or exhibit attached to the Escrow Agreement, or any other agreement, the terms and conditions of this Escrow Agreement shall control. The Escrow Agent may rely upon and shall not be liable for acting or refraining from acting upon any written notice, document, instruction or request furnished to it hereunder and believed by it to be genuine and to have been signed or presented by the proper party or parties herein without inquiry and without requiring substantiating evidence of any kind. The Escrow Agent shall be under no duty to inquire into or investigate the validity, accuracy or content of any such document, notice, instruction or request. The Escrow Agent shall have no duty to solicit any payments which may be due it or the Fund, including, without limitation, the Escrow Deposit nor shall the Escrow Agent have any duty or obligation to confirm or verify the accuracy or correctness of any amounts deposited with it hereunder.

(b) The Escrow Agent shall not be liable for any action taken, suffered or omitted to be taken by it except to the extent that a final adjudication of a court of competent jurisdiction determines that the Escrow Agent's gross negligence or willful misconduct was the primary cause of any Loss to Purchaser or Sellers' Representative. The Escrow Agent may execute any of its powers and perform any of its duties hereunder directly or through attorneys, and shall be liable only for its gross negligence or willful misconduct (as finally adjudicated in a court of competent jurisdiction) in the selection of any such attorney. The Escrow Agent may consult with counsel, accountants and

other skilled persons to be selected and retained by it at its expense. The Escrow Agent shall not be liable for any action taken, suffered or omitted to be taken by it in accordance with, or in reliance upon, the advice or opinion of any such counsel, accountants or other skilled persons. In the event that the Escrow Agent shall be uncertain or believe there is some ambiguity as to its duties or rights hereunder or shall receive instructions, claims or demands from any party hereto which, in its opinion, conflict with any of the provisions of this Escrow Agreement, it shall be entitled to refrain from taking any action and its sole obligation shall be to keep safely all property held in escrow until it shall be given a direction in writing by Purchaser and Sellers' Representative which eliminates such ambiguity or uncertainty to the satisfaction of Escrow Agent or by a final and non-appealable order or judgment of a court of competent jurisdiction. Purchaser and Sellers' Representative (on behalf of Sellers) agree to pursue any redress or recourse in connection with any dispute without making the Escrow Agent a party to the same. Anything in this Escrow Agreement to the contrary notwithstanding, in no event shall the Escrow Agent be liable for special, incidental, punitive, indirect or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if the Escrow Agent has been advised of the likelihood of such Loss or damage and regardless of the form of action.

6.     **Succession.** (a) The Escrow Agent may resign and be discharged from its duties or obligations hereunder by giving thirty (30) days advance notice in writing of such resignation to Purchaser and Sellers' Representative specifying a date when such resignation shall take effect. If Purchaser and Sellers' Representative fail to appoint a successor escrow agent prior to the expiration of thirty (30) days following receipt of the notice of resignation, the Escrow Agent may petition any court of competent jurisdiction for the appointment of a successor escrow agent or for other appropriate relief, and any such resulting appointment shall be binding upon all of the parties hereto. Escrow Agent's sole responsibility after such thirty (30) day notice period expires shall be to hold the Fund (without any obligation to reinvest the same) and to deliver the same to a designated substitute escrow agent, if any, or in accordance with the directions of a final order or judgment of a court of competent jurisdiction, at which time of delivery Escrow Agent's obligations hereunder shall cease and terminate, subject to the provisions of Sections 7 and 8 hereunder. The Escrow Agent shall have the right to withhold an amount equal to any amount due and owing to the Escrow Agent, plus any costs and expenses the Escrow Agent shall reasonably believe may be incurred by the Escrow Agent in connection with the termination of the Escrow Agreement.

(b)     Any entity into which the Escrow Agent may be merged or converted or with which it may be consolidated, or any entity to which all or substantially all the escrow business may be transferred, shall be the Escrow Agent under this Escrow Agreement without further act.

7.     **Compensation and Reimbursement.** Purchaser and Sellers' Representative (on behalf of Sellers), shall equally (a) pay, severally, but not jointly, the Escrow Agent for the services to be rendered hereunder, which unless otherwise agreed in writing shall be as described in Schedule 2 attached hereto, and (b) pay or reimburse, severally, but not jointly, the Escrow Agent upon request for all reasonable expenses, disbursements and advances, including, without limitation reasonable attorney's fees and expenses, incurred or made by it in connection with the performance of this Escrow Agreement.

8.     **Indemnity.** Purchaser and Sellers' Representative (on behalf of Sellers) shall jointly and severally indemnify, defend and save harmless the Escrow Agent and its affiliates and their respective successors, assigns, agents and employees (the "<u>Indemnitees</u>") from and against any and all losses, damages, claims, liabilities, penalties, judgments, settlements, litigation, investigations, costs or expenses (including, without limitation, the reasonable fees and expenses of outside counsel) (collectively "<u>Losses</u>") arising out of or in connection with (a) the Escrow Agent's execution and performance of this Escrow Agreement, tax reporting or withholding, the enforcement of any rights or remedies under or in connection with this Escrow Agreement, or as may arise by reason of any act, omission or error of the Indemnitee, except in the case of any Indemnitee to the extent that such Losses are finally adjudicated by a court of competent jurisdiction to have been primarily caused by the gross negligence or willful misconduct of such Indemnitee, or (b) its following any instructions or other directions, whether joint or singular, from Purchaser and Sellers' Representative, except to the extent that its following any such instruction or direction is expressly forbidden by the terms hereof. Purchaser and Sellers's Representative (on behalf of Sellers) hereto acknowledge that the foregoing indemnities shall survive the resignation, replacement or removal of the Escrow Agent or the termination of this Escrow Agreement. Purchaser and Sellers's Representative (on behalf of Sellers) hereby grant the Escrow Agent a lien on, right of set-off against and security interest in, the

Fund for the payment of claim for indemnification, fees, expenses and amounts due hereunder. In furtherance of the foregoing, the Escrow Agent is expressly authorized and directed, but shall not be obligated, to charge against and withdraw the Fund for its own account or for the account of an Indemnitee any amounts due to the Escrow Agent or to an Indemnitee under this Section 8.

9.     **Patriot Act Disclosure/Taxpayer Identification Numbers/Tax Reporting.**

(a) *Patriot Act Disclosure*. Section 326 of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 ("USA PATRIOT Act") requires the Escrow Agent to implement reasonable procedures to verify the identity of any person that opens a new account with it. Accordingly, Purchaser and Sellers' Representative acknowledge that Section 326 of the USA PATRIOT Act and the Escrow Agent's identity verification procedures require the Escrow Agent to obtain information which may be used to confirm the identity of Purchaser and Sellers' Representative, including without limitation name, address and organizational documents ("Identifying Information"). Purchaser and Sellers' Representative agree to provide the Escrow Agent with and consent to the Escrow Agent obtaining from third parties any such Identifying Information required as a condition of opening an account with or using any service provided by the Escrow Agent.

(b) *Taxpayer Identification Numbers ("TINs")*. Purchaser and Sellers' Representative have provided the Escrow Agent with their respective fully executed Internal Revenue Service ("IRS") Form W-8, or W-9 and/or other required documentation. Purchaser and Sellers' Representative each represent that its correct TIN assigned by the IRS, or any other taxing authority, is set forth in the delivered forms. All interest or other income earned under this Escrow Agreement shall be reported at time of disbursement based upon the instructions received from the Purchaser and Sellers Representative, and shall be reported, as and to the extent required by law, by the Escrow Agent to the IRS, or any other taxing authority, on IRS form 1099 as income earned by Sellers' Representative or Purchaser, as the case may be, in accordance with this sentence.

(c) Purchaser and Sellers' Representative further represent to the Escrow Agent that the transaction memorialized in the Purchase Agreement does not: (i) constitute an installment sale requiring any tax reporting or withholding of imputed interest or original issue discount to the IRS or other taxing authority; and (ii) that no portion of the principal amount of the Escrow Deposit represents any portion of the purchase price for shares of stock under the Purchase Agreement. Any other tax returns required to be filed will be prepared and filed by Sellers and/or Purchaser with the IRS and any other taxing authority as required by law, including but not limited to any applicable reporting or withholding pursuant to the Foreign Investment in Real Property Tax Act ("FIRPTA"). Sellers' Representative (on behalf of Sellers) and Purchaser acknowledge and agree that Escrow Agent shall have no responsibility for the preparation and/or filing of any tax return or any applicable FIRPTA reporting or withholding with respect to the Escrow Deposit or any income earned by the Escrow Deposit. Sellers' Representative (on behalf of Sellers) and Purchaser further acknowledge and agree that any taxes payable from the income earned on the investment of any sums held in the Escrow Deposit shall be paid by the party to whom such income is allocated pursuant to Section 9(b) above. In the absence of written direction from Sellers' Representative and Purchaser, all proceeds of the Fund shall be retained in the Fund and reinvested from time to time by the Escrow Agent as provided in this Escrow Agreement. Escrow Agent shall withhold any taxes it deems appropriate, including but not limited to required withholding in the absence of proper tax documentation, and shall remit such taxes to the appropriate authorities.

10.     **Notices.** All communications hereunder shall be in writing and shall be deemed to be duly given and received:

(a) upon delivery, if delivered personally, or upon confirmed transmittal, if by facsimile;
(b) on the next Business Day (as hereinafter defined) if sent by overnight courier; or
(c) four (4) Business Days after mailing if mailed by prepaid registered mail, return receipt requested, to the appropriate notice address set forth below or at such other address as any party hereto may have furnished to the other parties in writing by registered mail, return receipt requested.

if to Sellers' Representative:

Midway Amusement Games LLC
c/o Midway Games Inc.
2704 West Roscoe Street
Chicago, IL 60618
Facsimile: (773) 961-2099
Attn: General Counsel

with a copy to:

Blank Rome LLP
405 Lexington Avenue
New York, NY 10174
Attention: Jeffrey N. Siegel, Esq.
            Pamela E. Flaherty, Esq.
Fax: (212) 885-5001

if to Purchaser:

Warner Bros. Entertainment Inc.
4000 Warner Blvd.
Burbank, CA 91522
Facsimile: (818) 954-5445
Attn: General Counsel

with a copy to:

Andrews Kurth LLP
601 South Figueroa, Suite 3700
Los Angeles, CA 90017
Facsimile: (213) 896-31317
Attn: Jon Dalberg, Esq.

If to the Escrow Agent

JPMorgan Chase Bank, N.A.
Clearance and Agency Services
4 New York Plaza, 21st Floor
NY, NY 10004
Attention: Florence Hanley/Debbie DeMarco
Fax No.: (212)623-6168

Notwithstanding the above, in the case of communications delivered to the Escrow Agent pursuant to (a), (b) and (c) of this Section 10, such communications shall be deemed to have been given on the date received by an officer of the Escrow Agent or any employee of the Escrow Agent who reports directly to any such officer at the above-referenced office. In the event that the Escrow Agent, in its sole discretion, shall determine that an emergency exists, the Escrow Agent may use such other means of communication as the Escrow Agent deems appropriate. Any communications received after 5pm ET shall be deemed to have been received on the next Business Day. "Business Day" shall mean any day other than a Saturday, Sunday or any other day on which the Escrow Agent located at the notice address set forth above is authorized or required by law or executive order to remain closed.

11.      **Security Procedures.** (a)  In the event funds transfer instructions are given (other than in writing at the time of execution of this Escrow Agreement), whether in writing, by facsimile or otherwise, pursuant to Section 4, the Escrow Agent is authorized to seek confirmation of such instructions by telephone call-back to the person or persons designated on Schedule 1 attached hereto ("Schedule 1"), and the Escrow Agent may rely upon the

confirmation of anyone purporting to be the person or persons so designated. Each funds transfer instruction shall be executed by an authorized signatory, a list of such authorized signatories is set forth on Schedule 1. The persons and telephone numbers for call-backs may be changed only in a writing actually received and acknowledged by the Escrow Agent. If the Escrow Agent is unable to contact any of the authorized representatives identified in Schedule 1, the Escrow Agent is hereby authorized to seek confirmation of such instructions by telephone call-back to any one or more of Purchaser's or Sellers' Representative's executive officers, ("Executive Officers"), as the case may be, which shall include the titles of chief executive officer, chief financial officer or corporate secretary, as the Escrow Agent may select. Such Executive Officer shall deliver to the Escrow Agent a fully executed incumbency certificate, and the Escrow Agent may rely upon the confirmation of anyone purporting to be any such officer. The Escrow Agent and the beneficiary's bank in any funds transfer may rely solely upon any account numbers or similar identifying numbers provided by Sellers' Representative and Purchaser to identify (a) the beneficiary, (b) the beneficiary's bank, or (c) an intermediary bank. The Escrow Agent may apply any of the escrowed funds for any payment order it executes using any such identifying number, even when its use may result in a person other than the beneficiary being paid, or the transfer of funds to a bank other than the beneficiary's bank or an intermediary bank designated. Sellers' Representative (on behalf of Sellers) and Purchaser acknowledge that these security procedures are commercially reasonable.

12.     **Compliance with Court Orders.** In the event that any escrow property shall be attached, garnished or levied upon by any court order, or the delivery thereof shall be stayed or enjoined by an order of a court, or any order, judgment or decree shall be made or entered by any court order affecting the property deposited under this Escrow Agreement, the Escrow Agent is hereby expressly authorized, in its sole discretion, to obey and comply with all writs, orders or decrees so entered or issued, which it is advised by legal counsel of its own choosing is binding upon it, whether with or without jurisdiction, and in the event that the Escrow Agent obeys or complies with any such writ, order or decree it shall not be liable to any of the parties hereto or to any other person, entity, firm or corporation, by reason of such compliance notwithstanding such writ, order or decree be subsequently reversed, modified, annulled, set aside or vacated.

13.     **Miscellaneous.** The provisions of this Escrow Agreement may be waived, altered, amended or supplemented, in whole or in part, only by a writing signed by the parties. Neither this Escrow Agreement nor any right or interest hereunder may be assigned in whole or in part by any party, except as provided in Section 6, without the prior consent of each of the parties to this Escrow Agreement. This Escrow Agreement shall be governed by and construed under the laws of the State of New York. Each party irrevocably waives any objection on the grounds of venue, forum non-conveniens or any similar grounds and irrevocably consents to service of process by mail or in any other manner permitted by applicable law and consents to the jurisdiction of the courts located in the State of New York, in the Borough of Manhattan of The City of New York. The parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Escrow Agreement. No party to this Escrow Agreement is liable to any other party for losses due to, or if it is unable to perform its obligations under the terms of this Escrow Agreement because of, acts of God, fire, war, terrorism, floods, strikes, electrical outages, equipment or transmission failure, or other causes reasonably beyond its control.

14.     **Severability.** If any term or other provision of this Escrow Agreement is invalid, illegal or incapable of being enforced by any law or public policy, all other terms and provisions of this Escrow Agreement shall nevertheless remain in full force and effect for so long as the economic or legal substance of the transactions contemplated by this Escrow Agreement is not affected in any manner materially adverse to any party. Upon such determination that any term or other provision is invalid, illegal or incapable of being enforced, the parties hereto shall negotiate in good faith to modify this Escrow Agreement so as to effect the original intent of the parties as closely as possible in an acceptable manner in order that the transactions contemplated by this Escrow Agreement are consummated as originally contemplated to the greatest extent possible.

15.     **Entire Agreement.** This Escrow Agreement and as between only Sellers' Representative and Purchaser, the Purchase Agreement constitute the entire agreement of the parties hereto with respect to the subject matter hereof and supersede all prior agreements and undertakings, both written and oral, among the parties hereto with respect to the subject matter hereof.

16.     **No Third Party Beneficiaries.**  This Escrow Agreement is for the sole benefit of the parties hereto and their permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other person or entity any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Escrow Agreement.

17.     **Headings.**  The descriptive headings contained in this Escrow Agreement are included for convenience of reference only and shall not affect in any way the meaning or interpretation of this Escrow Agreement.

18.     **Counterparts.**  This Escrow Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  All signatures of the parties to this Escrow Agreement may be transmitted by facsimile, and such facsimile will, for all purposes, be deemed to be the original signature of such party whose signature it reproduces, and will be binding upon such party.

*[Remainder of page left blank intentionally]*

IN WITNESS WHEREOF, the parties hereto have executed this Escrow Agreement as of the date set forth above.

WARNER BROS. ENTERTAINMENT INC.

By: _____

Name: _____Gary Meisel_____

Title: _____Senior Vice President_____

MIDWAY AMUSEMENT GAMES, LLC, in its capacity as Sellers' Representative

By: _____

Name: _____

Title: _____

JPMORGAN CHASE BANK, NATIONAL ASSOCIATION

as Escrow Agent

By: _____

Name: _____

Title: _____

**IN WITNESS WHEREOF,** the parties hereto have executed this Escrow Agreement as of the date set forth above.

WARNER BROS. ENTERTAINMENT INC.

By:_____

Name:_____

Title: _____

MIDWAY AMUSEMENT GAMES, LLC, in its capacity as Sellers' Representative

By:_____

Name: _Matthew Booty_

Title: _Chief Executive Officer_

JPMORGAN CHASE BANK, NATIONAL ASSOCIATION

as Escrow Agent

By:_____

Name:_____

Title: _____

IN WITNESS WHEREOF, the parties hereto have executed this Escrow Agreement as of the date set forth above.

WARNER BROS. ENTERTAINMENT INC.

By:_____

Name:_____

Title:_____

MIDWAY AMUSEMENT GAMES, LLC, in its capacity as Sellers' Representative

By:_____

Name:_____

Title:_____ .

JPMORGAN CHASE BANK, NATIONAL ASSOCIATION

as Escrow Agent

By: _____

Name:_____
          Debra A. DeMarco
Title: _____
          Vice-President

# SCHEDULE 1

### Telephone Number(s) and authorized signature(s) for
### Person(s) Designated to give Funds Transfer Instructions

If to Purchaser:

| | Name | Telephone Number | Signature |
|---|---|---|---|
| 1. | Jeffrey Junge | 818-954-4563 | |
| 2. | Spencer Yu | 818-954-4293 | |
| 3. | _____ | _____ | |

If to Sellers' Representative:

| | Name | Telephone Number | Signature |
|---|---|---|---|
| 1. | _____ | _____ | _____ |
| 2. | _____ | _____ | _____ |
| 3. | _____ | _____ | _____ |

### Telephone Number(s) for Call-Backs and
### Person(s) Designated to Confirm Funds Transfer Instructions

If to Purchaser:

| | Name | Telephone Number |
|---|---|---|
| 1. | Jeffrey Junge | 818-954-4563 |
| 2. | Spencer Yu | 818-954-4293 |
| 3. | Jitendra Dave | 818-954-3185 |

If to Sellers Representative:

| | Name | Telephone Number |
|---|---|---|
| 1. | _____ | _____ |
| 2. | _____ | _____ |
| 3. | _____ | _____ |

Telephone call backs shall be made to both parties if joint instructions are required pursuant to this Escrow Agreement. All funds transfer instructions must include the signature of the person(s) authorizing said funds transfer and must not be the same person confirming said transfer.

## SCHEDULE 1

### Telephone Number(s) and authorized signature(s) for
### Person(s) Designated to give Funds Transfer Instructions

If to Purchaser:

| Name | Telephone Number | Signature |
|------|------------------|-----------|
| 1. _____ | _____ | _____ |
| 2. _____ | _____ | _____ |
| 3. _____ | _____ | _____ |

If to Sellers' Representative:

| Name | Telephone Number | Signature |
|------|------------------|-----------|
| 1. Matthew Booly | 773-961-2345 | |
| 2. Debbie Fulton | 773-961-2761 | |
| 3. Ryan O'Desky | 773-961-2032 | |

### Telephone Number(s) for Call-Backs and
### Person(s) Designated to Confirm Funds Transfer Instructions

If to Purchaser:

| Name | Telephone Number |
|------|------------------|
| 1. _____ | _____ |
| 2. _____ | _____ |
| 3. _____ | _____ |

If to Sellers Representative:

| Name | Telephone Number |
|------|------------------|
| 1. Matthew Booly | 773-961-2345 |
| 2. Debbie Fulton | 773-961-2761 |
| 3. Ryan O'Desky | 773-961-2032 |

Telephone call backs shall be made to both parties if joint instructions are required pursuant to this Escrow Agreement. All funds transfer instructions must include the signature of the person(s) authorizing said funds transfer and must not be the same person confirming said transfer.

## SCHEDULE 2

### Escrow Agent's Compensation:

Based upon our current understanding of your proposed transaction, our fee proposal is as follows:

**Account Acceptance Fee** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    Waived

Encompassing review, negotiation and execution of governing documentation, opening of the account, and completion of all due diligence documentation.  Payable upon closing.

**Annual Administration Fee** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $2,500.00

The Administration Fee covers our usual and customary ministerial duties, including record keeping, distributions, document compliance and such other duties and responsibilities expressly set forth in the governing documents for each transaction.  Payable upon closing and annually in advance thereafter, without pro-ration for partial years.

**Extraordinary Services and Out-of-Pocket Expenses**

Any additional services beyond our standard services as specified above, and all reasonable out-of-pocket expenses including attorney's or accountant's fees and expenses will be considered extraordinary services for which related costs, transaction charges, and additional fees will be billed at the Bank's then standard rate.   Disbursements, receipts, investments or tax reporting exceeding 25 items per year may be treated as extraordinary services thereby incurring additional charges.

**Disclosure & Assumptions**

Please note that any proposed fees quoted herein are indicative and not intended to be binding or to form an agreement between ourselves. This fee quote is subject to a review of the transaction documents and completion of an internal due diligence review. JPMorgan reserves the right to revise, modify, change and supplement the fees quoted herein.

Payment of the invoice is due upon receipt.

**EXHIBIT A**

[insert date]

JPMorgan Chase Bank, N.A.
Clearance and Agency Services
4 New York Plaza, 21st Floor
NY, NY 10004
Attention: Florence Hanley/Debbie DeMarco

Re: Escrow release

Dear Sir/Madam:

This joint notice is being delivered pursuant to Section 4(b)(i) of the Escrow Agreement made and entered into as of May 20, 2009, by and among Midway Amusement Games, LLC, a Delaware limited liability company, appointed as Sellers' Representative pursuant to Section 12.9 of the Purchase Agreement ("Sellers' Representative"), Warner Bros. Entertainment Inc., a Delaware corporation ("Purchaser") and JPMorgan Chase Bank, National Association (the "Escrow Agent").

Purchaser and Sellers' Representative hereby state that the Purchase Agreement has been terminated pursuant to its terms (other than by Sellers pursuant to Section 4.4(f) thereof or by Purchaser pursuant to Section 4.4(c) thereof as a result of the Platform Condition not being satisfied or waived).

Purchaser and Sellers' Representative hereby instruct the Escrow Agent to release the Fund to Purchaser pursuant to the following payment instructions:

[insert payment instructions]

Sincerely,

**WARNER BROS. ENTERTAINMENT INC.**

By:_____

Name:_____

Title: _____


**MIDWAY AMUSEMENT GAMES, LLC**, in its capacity as Sellers' Representative

By:_____

Name:_____

Title: _____

[insert date]

JPMorgan Chase Bank, N.A.
Clearance and Agency Services
4 New York Plaza, 21st Floor
NY, NY 10004
Attention: Florence Hanley/Debbie DeMarco

Midway Amusement Games LLC
c/o Midway Games Inc.
2704 West Roscoe Street
Chicago, IL 60618
Attn: General Counsel

Re: Escrow release


Dear Sir/Madam:

This notice is being delivered pursuant to Section 4(b)(ii) of the Escrow Agreement made and entered into as of May 20, 2009, by and among Midway Amusement Games, LLC, a Delaware limited liability company, appointed as Sellers' Representative pursuant to Section 12.9 of the Purchase Agreement ("Sellers' Representative"), Warner Bros. Entertainment Inc., a Delaware corporation ("Purchaser") and JPMorgan Chase Bank, National Association (the "Escrow Agent").

Purchaser hereby states that the Purchase Agreement has been terminated in accordance with to its terms (other than by Sellers pursuant to Section 4.4(f) thereof or by Purchaser pursuant to Section 4.4(c) thereof as a result of the Platform Condition not being satisfied or waived). Purchaser also certifies that a copy of these instructions has been delivered to Sellers' Representative.

If Sellers' Representative does not object in writing to Escrow Agent by 5:00 p.m. EST on the tenth (10th) Business Day after the Escrow Agent's receipt of these instructions, the Escrow Agent shall release the Fund to the Purchaser pursuant to the following payment instructions:

[insert payment instructions]

Sincerely,


**WARNER BROS. ENTERTAINMENT INC.**

By:_____

Name:_____

Title: _____

EXHIBIT C

[insert date]

JPMorgan Chase Bank, N.A.
Clearance and Agency Services
4 New York Plaza, 21st Floor
NY, NY 10004
Attention: Florence Hanley/Debbie DeMarco

Re: Escrow release

Dear Sir/Madam:

This joint notice is being delivered pursuant to Section 4(c)(i) of the Escrow Agreement made and entered into as of May 20, 2009, by and among Midway Amusement Games, LLC, a Delaware limited liability company, appointed as Sellers' Representative pursuant to Section 12.9 of the Purchase Agreement ("Sellers' Representative"), Warner Bros. Entertainment Inc., a Delaware corporation ("Purchaser") and JPMorgan Chase Bank, National Association (the "Escrow Agent").

Purchaser and Sellers' Representative hereby state that the sale of the Purchased Assets from Sellers to Purchaser shall be consummated on [insert date], (the "Closing Date").

Purchaser and Sellers' Representative hereby instruct the Escrow Agent to release the Fund to Sellers' Representative on the Closing Date pursuant to the following payment instructions:

[insert payment instructions]

Sincerely,


**WARNER BROS. ENTERTAINMENT INC.**

By:_____

Name:_____

Title: _____


**MIDWAY AMUSEMENT GAMES, LLC**, in its capacity as Sellers' Representative

By:_____

Name:_____

Title: _____

EXHIBIT D

[insert date]

JPMorgan Chase Bank, N.A.
Clearance and Agency Services
4 New York Plaza, 21st Floor
NY, NY 10004
Attention: Florence Hanley/Debbie DeMarco

Re: Escrow release

Dear Sir/Madam:

This joint notice is being delivered pursuant to Section 4(c)(ii) of the Escrow Agreement made and entered into as of May 20, 2009, by and among Midway Amusement Games, LLC, a Delaware limited liability company, appointed as Sellers' Representative pursuant to Section 12.9 of the Purchase Agreement ("Sellers' Representative"), Warner Bros. Entertainment Inc., a Delaware corporation ("Purchaser") and JPMorgan Chase Bank, National Association (the "Escrow Agent").

Purchaser and Sellers' Representative hereby state that the Purchase Agreement has been terminated by Sellers pursuant to Section 4.4(f) thereof.

Purchaser and Sellers' Representative hereby instruct the Escrow Agent to release the Fund to Sellers' Representative pursuant to the following payment instructions:

[insert payment instructions]

Sincerely,


WARNER BROS. ENTERTAINMENT INC.

By:_____

Name:_____

Title: _____


MIDWAY AMUSEMENT GAMES, LLC, in its capacity as Sellers' Representative

By:_____

Name:_____

Title: _____

EXHIBIT E

[insert date]

JPMorgan Chase Bank, N.A.
Clearance and Agency Services
4 New York Plaza, 21st Floor
NY, NY 10004
Attention: Florence Hanley/Debbie DeMarco

Warner Bros. Entertainment Inc.
4000 Warner Blvd.
Burbank, CA 91522
Facsimile: (818) 954-5445
Attn: General Counsel

Re: Escrow release

Dear Sir/Madam:

This notice is being delivered pursuant to Section 4(c)(iii) of the Escrow Agreement made and entered into as of May 20, 2009, by and among Midway Amusement Games, LLC, a Delaware limited liability company, appointed as Sellers' Representative pursuant to Section 12.9 of the Purchase Agreement ("Sellers' Representative"), Warner Bros. Entertainment Inc., a Delaware corporation ("Purchaser") and JPMorgan Chase Bank, National Association (the "Escrow Agent").

Sellers' Representative hereby states that the Purchase Agreement has been terminated by Sellers pursuant to Section 4.4(f) thereof. Sellers' Representative also certifies that a copy of these instructions has been delivered to Purchaser.

If Purchaser does not object in writing to Escrow Agent by 5:00 p.m. EST on the tenth (10th) Business Day after the Escrow Agent's receipt of these instructions, the Escrow Agent shall release the Fund to Sellers' Representative pursuant to the following payment instructions:

[insert payment instructions]

Sincerely,

**MIDWAY AMUSEMENT GAMES, LLC**, in its capacity as Sellers' Representative

By:_____

Name:_____

Title: _____

[insert date]

JPMorgan Chase Bank, N.A.
Clearance and Agency Services
4 New York Plaza, 21st Floor
NY, NY 10004
Attention: Florence Hanley/Debbie DeMarco

Warner Bros. Entertainment Inc.
4000 Warner Blvd.
Burbank, CA 91522
Facsimile: (818) 954-5445
Attn: General Counsel

Re: Escrow release

Dear Sir/Madam:

This notice is being delivered pursuant to Section 4(c)(iv) of the Escrow Agreement made and entered into as of May 20, 2009, by and among Midway Amusement Games, LLC, a Delaware limited liability company, appointed as Sellers' Representative pursuant to Section 12.9 of the Purchase Agreement ("Sellers' Representative"), Warner Bros. Entertainment Inc., a Delaware corporation ("Purchaser") and JPMorgan Chase Bank, National Association (the "Escrow Agent").

Sellers' Representative hereby states that the sale of the Purchased Assets from Sellers to Purchaser has been consummated. Sellers' Representative also certifies that a copy of these instructions has been delivered to Purchaser.

If Purchaser does not object in writing to Escrow Agent by 5:00 p.m. EST on the tenth (10th) Business Day after the Escrow Agent's receipt of these instructions, the Escrow Agent shall release the Fund to the Sellers' Representative pursuant to the following payment instructions:

[insert payment instructions]

Sincerely,


**MIDWAY AMUSEMENT GAMES, LLC**, in its capacity as Sellers' Representative


By:_____

Name:_____

Title: _____

EXHIBIT G

[insert date]

JPMorgan Chase Bank, N.A.
Clearance and Agency Services
4 New York Plaza, 21st Floor
NY, NY 10004
Attention: Florence Hanley/Debbie DeMarco

Re: Escrow release

Dear Sir/Madam:

This joint notice is being delivered pursuant to Section 4(d) of the Escrow Agreement made and entered into as of May 20, 2009, by and among Midway Amusement Games, LLC, a Delaware limited liability company, appointed as Sellers' Representative pursuant to Section 12.9 of the Purchase Agreement ("Sellers' Representative"), Warner Bros. Entertainment Inc., a Delaware corporation ("Purchaser") and JPMorgan Chase Bank, National Association (the "Escrow Agent").

Purchaser and Sellers' Representative hereby state that the Purchase Agreement has been terminated by Purchaser pursuant to Section 4.4(c) thereof as a result of the Platform Condition not being satisfied or waived.

Purchaser and Sellers' Representative hereby instruct the Escrow Agent to release $2,500,000 of the Fund plus income earned on such portion to Sellers' Representative and the balance of the Fund to Purchaser pursuant to the following payment instructions:

[insert payment instructions]

Sincerely,

WARNER BROS. ENTERTAINMENT INC.

By:_____

Name:_____

Title: _____


MIDWAY AMUSEMENT GAMES, LLC, in its capacity as Sellers' Representative

By:_____

Name:_____

Title: _____

Exhibit C

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------

| | : | Chapter 11 |
|---|---|---|
| In re | : | |
| | : | |
| MIDWAY GAMES INC., *et al.*, | : | Case No. 09-10465 (KG) |
| | : | (Jointly Administered) |
| Debtors.[1] | : | Re: Dkt. No. _____ |

-------------------------------------------------

**ORDER UNDER 11 U.S.C. §§ 105(a), 363, AND 365 AND
FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002,
6004, 6006 AND 9014 (A) APPROVING (i) BIDDING PROCEDURES, (ii) BIDDING
INCENTIVES FOR THE STALKING HORSE BIDDER AND (iii) AUCTION
PROCEDURES; (B) APPROVING NOTICE PROCEDURES FOR (i) THE
SOLICITATION OF BIDS, (ii) AN AUCTION AND (iii) THE ASSUMPTION AND
ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (C)
SCHEDULING HEARING ON APPROVAL OF A SALE OR SALES OF ALL OR
SUBSTANTIALLY ALL OF DEBTORS' ASSETS; AND
(D) GRANTING RELATED RELIEF [DKT. NO. ---]**

Upon the Motion (the "Motion")[2] of the above-captioned Debtors and Debtors In

Possession (the "Debtors"), pursuant to sections 105, 363, and 365 of title 11 of the United States

Code (the "Bankruptcy Code"), and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order, *inter alia*, (i) approving

bidding procedures and related bidding incentives; (ii) approving the form and manner of notice

of the sale(s) of all or substantially all of the Debtors' assets; (iii) approving the form and manner

of notice of the proposed assumption and assignment, including cure amounts, of certain

---

[1]    The Debtors are: Midway Games Inc., Midway Home Entertainment Inc., Midway Amusement Games, LLC, Midway Interactive Inc., Surreal Software Inc., Midway Studios - Austin Inc., Midway Studios - Los Angeles Inc., Midway Games West Inc., Midway Home Studios Inc., and Midway Sales Company, LLC.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion or the Purchase Agreement, as applicable.

executory contracts and unexpired leases; (iv) establishing a date for an auction; (v) establishing a date for a sale hearing; and (vi) granting related relief [Dkt. No. ____]; and the Court having found that this matter constitutes a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (N), and (O); and no other or further notice hereof being necessary or required; and the Court having found that the Debtors have articulated good and sufficient reasons in support of the relief requested in the Sale Motion regarding the sale process, including without limitation, (i) approval of the Bidding Procedures and Bidding Incentives and (ii) approval and authorization to serve the Notice of Auction and Sale Hearing and the Cure Amount Notice (each as defined below); and it appearing to the Court that based upon the representations contained in the Motion, the issuance of this Order is in the best interest of the Debtors, their estates and creditors, and after due deliberation and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1. The Motion is granted as set forth herein. Except as expressly provided herein, nothing herein shall be construed as a determination of the rights of any party in interest in these Chapter 11 cases.

2. The Bidding Procedures, attached hereto as Exhibit 1, are hereby authorized, approved and made part of this Order as if fully set forth herein. The Debtors are authorized to conduct a sale by auction (the "Auction") of all of the Debtors' assets (the "Assets"), including without limitation the assets (hereafter, the "Purchased Assets") subject to the Purchase Agreement (as defined below), pursuant to the Bidding Procedures and the terms of this Order.

3.     All objections to the Motion or the relief requested therein (and all reservations of rights included therein), as they pertain to the relief granted by entry of this Order, are overruled to the extent they have not been withdrawn, waived or otherwise resolved.

4.     In the event that, as a result of an Auction, all or substantially all of the Purchased Assets are sold to a party other than WBEI (as defined below) or one of its affiliates by reason of a Qualified Bid(s), or if the executed Asset Purchase Agreement dated as of May 20, 2009 (collectively with all exhibits thereto, the "Purchase Agreement") by and between certain of the Debtors signatory thereto as sellers ("Sellers")[3] and Warner Bros. Entertainment Inc. ("WBEI") as purchaser, is terminated by WBEI pursuant to Section 4.4(e) of the Purchase Agreement, WBEI shall have a joint and several administrative priority expense claim under 11 U.S.C. § 503 in each of Sellers' Bankruptcy Cases for payment, without duplication, of (i) a break-up fee in an amount equal to $1,000,000 (the "Break-Up Fee"), (ii) as reimbursement, all actual, necessary, reasonable and documented out-of-pocket expenses of WBEI; provided however, that such expense reimbursement shall not exceed $100,000 (the "Expense Reimbursement"), and (iii) the return to WBEI of the Deposit previously paid by WBEI in accordance with Section 3.3 of the Purchase Agreement. For the avoidance of doubt, WBEI shall only be entitled to payment from Sellers collectively in the amounts set forth in the preceding sentence and shall not be entitled to multiple payments of the full amount from each Seller. The Break-Up Fee and Expense Reimbursement shall be payable by Sellers to WBEI on the earlier of (y) the closing of the Alternative Transaction and (z) the effective date of a

---

[3]     The Sellers are: Midway Games Inc., Midway Amusement Games, LLC, Midway Home Entertainment Inc., Surreal Software Inc., Midway Games West Inc., Midway Studios-Los Angeles Inc. and Midway Studios-Austin Inc.

confirmed plan of reorganization for any of the Sellers, in accordance with Section 7.2(a) of the Purchase Agreement.

   5. The Court finds that the Break-Up Fee and Expense Reimbursement are fair and reasonable, were negotiated by the parties in good faith and at arms length, and are: (a) actual and necessary costs and expenses of preserving the Debtors' estates, within the meaning of 11 U.S.C. § 503(b); (b) commensurate to the real and substantial benefit that WBEI as stalking horse bidder in the Auction has conferred upon the Debtors' estates; (c) reasonable and appropriate, in light of the size and nature of the proposed sale and comparable transactions, the commitments that have been made, and the efforts that WBEI has made and will continue to make; (d) necessary to induce WBEI to continue to pursue the Sale and be bound by the Purchase Agreement; and (e) necessary costs of the Sale and a sound and appropriate exercise of the Debtors' business judgment. The Break-Up Fee and Expense Reimbursement have induced WBEI to submit a bid that will serve as a minimum bid upon which the Debtors, their creditors, and other bidders can rely. WBEI has provided a material benefit to the Debtors and their creditors by increasing the likelihood that the best possible purchase price for the Assets will be received. Accordingly, the attached Bidding Procedures and Bidding Incentives are reasonable and appropriate and consistent with maximizing value for the benefit of the Debtors' estates.

   6. The Debtors are authorized and empowered to take such steps, expend such sums of money, and do such other things as may be reasonable or necessary to implement and effect the terms of this Order and the Bidding Procedures. The Debtors are authorized but not directed to publish notice of the proposed Sale and Auction in any newspaper or other news media, in furtherance of the marketing and sale of the Assets.

7.     The Debtors are hereby authorized to conduct the Sale without the necessity of complying with any state or local bulk transfer laws or requirements.

8.     Subject to the final determination of this Court, the Debtors are authorized, in consultation with Acquisition Holdings Subsidiary I LLC, in its capacity as asserted secured lender (the "Lender") and the Official Committee of Unsecured Creditors (the "Creditors' Committee"), and in accordance with the Bidding Procedures, to (a) determine which of the Initial Bids submitted prior to the Auction and the bids made at the Auction constitute the highest or otherwise best offer(s) at each stage of these procedures, and (b) properly reject any and all Initial Bids or bids at the Auction that are (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, or the terms and conditions of the Sale, or the terms of this Order and the Bidding Procedures, or (iii) contrary to the best interests of the Debtors, their estates and creditors.

9.     As further described in the Bidding Procedures, in the event that the Debtors receive one or more Qualifying Bids, the Debtors shall conduct the Auction on [**June 29, 2009 at 10:00 a.m. (EDT)**] (the "Auction Date") at the offices of Blank Rome LLP, The Chrysler Building, 405 Lexington Avenue, New York, NY 10174 or 1201 N. Market Street, Suite 800, Wilmington, DE 19801, or at such other time and place as the Debtors determine in the exercise of their reasonable discretion, upon notice to interested parties. Each bidder participating at the Auction shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale. The Auction shall be conducted openly and any creditor shall be permitted to attend, so long as such creditor provides written notice of its plan to attend to counsel for the Debtors at least two business days prior to the Auction so that appropriate arrangements can be made. The bidding at any Auction will be transcribed by a court reporter.

10.    On [July 1, 2009 at 1:00 p.m. (EDT)] or as soon thereafter as counsel may be heard, the Sale Hearing will be held before the Honorable Kevin Gross, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 6th Floor, Wilmington, DE 19801, to consider the issuance and entry of an order, *inter alia,* approving the sale(s) of all or substantially all of the Assets free and clear of all liens, claims, encumbrances, and interests (collectively, the "Liens"), with the same to attach to the sale proceeds in the same order of priority, and to the same extent as such Liens were valid, perfected and enforceable prior to such sale. The Debtors may adjourn the Sale Hearing one or more times without further notice by making an announcement in open Court or by the filing of a hearing agenda announcing the adjournment.

11.    The notices, in substantially the same form as annexed to the Motion as Exhibits C and D, are sufficient to provide effective notice to all interested parties of the entry of this Order, the Bidding Procedures, the Auction, the Sale and the proposed assumption and assignment of executory contracts and unexpired leases pursuant to Bankruptcy Rules 2002(a)(2), 6004, 6006, and 9014, and are hereby approved.

12.    Within three (3) business days after entry of this Order (the "Mailing Date"), the Debtors will send notice of the Bidding Procedures Order, the Bidding Procedures, the Purchase Agreement, the time and place of the Auction, if held, the Sale Hearing, and the relevant objection deadlines by sending the Notice of Auction and Sale Hearing to (i) taxing authorities or recording offices which have a reasonably known interest in the relief requested, (ii) the Office of the United States Trustee for Region 3 (the "OUST"), (iii) counsel to the Creditors' Committee, (iv) counsel to WBEI, (v) counsel to the Lender, (vi) federal, state, and local regulatory authorities with jurisdiction over the Debtors, (vii) insurers, (viii) known non-

Debtor parties to executory contracts or unexpired leases, (ix) parties who have executed confidentiality agreements with respect to the Assets or parties known to have expressed an interest in the Assets, and (x) all other parties known to have requested notices pursuant to Bankruptcy Rule 2002 (collectively, the "Service Parties").

13.    On or before the Mailing Date, the Debtors shall serve the Cure Amount Notice by first class mail, postage prepaid, or hand delivery.

14.    All objections to the relief requested in the Motion in connection with the actual sale of the Debtors' assets (including without limitation any objection to the assumption or assignment of any executory contract or unexpired lease or the proposed Cure Amount with respect thereto) must be: (a) in writing; (b) signed by counsel or attested to by the objecting party; (c) filed with the Clerk of the Bankruptcy Court, 824 Market Street, Wilmington, DE 19801 on or before [**June 24, 2009 at 4:00 p.m. (Eastern Time)**] (the "Objection Deadline"); and (d) served so as to be received on or before the Objection Deadline by the following (collectively, the "Objection Notice Parties"):

> (a) counsel for the Debtors: Blank Rome LLP, The Chrysler Building, 405 Lexington Avenue, New York, NY 10174, Attn: Pamela Flaherty, Esq., Fax (212) 885-5001, and 1201 North Market Street, Suite 800, Wilmington, DE 19899, Attn: Michael D. DeBaecke, Esq. Fax: (302) 425-6464;

> (b) counsel for the Lender: Kramer Levin Naftalis & Frankel, LLP, 1177 Avenue of the Americas, New York, NY 10036, Attn: Gordon Novod, Esq., Fax (212) 715-8192;

(c) counsel for the Creditors' Committee: Milbank, Tweed, Hadley & McCloy LLC, 601 South Figueroa Street, 30th Floor, Los Angeles, CA 90017, Attn: David B. Zolkin, Esq., Fax (213) 892-4767;

(d) the OUST, 844 North King Street, Suite 2207, Wilmington, DE 19801, Attn: David Buchbinder, Esq., Fax (302) 573-6497; and

(e) counsel for WBEI: Andrews Kurth LLP, 601 South Figueroa Street, Suite 3700, Los Angeles, CA 90017, Attn: Jon L.R. Dalberg, Esq., Fax (213) 896-3137.

The foregoing requirements are collectively referred to herein as the "General Objection Procedures." Only those objections made in compliance with the General Objection Procedures will be considered by the Court at the Sale Hearing. The failure of any objecting person or entity to file its objections by the Objection Deadline and in accordance with the General Objection Procedures will be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the proposed sale of Assets, including any objection to the sale of any of the Assets free and clear of Liens, with any Liens to attach to the sale proceeds in the same order of priority, and to the same extent as such Liens were valid, perfected and enforceable prior to such sale.

15.    All objections to the assumption or assignment of an executory contract or unexpired lease, including without limitation any objection to the Debtors' proposed Cure Amount or the provision of adequate assurance of future performance in connection therewith pursuant to section 365 of the Bankruptcy Code ("Adequate Assurance") must: (a) comply with the General Objection Procedures; (b) identify the executory contract or unexpired lease to which the objector is party; (c) describe with particularity any cure the claimant contends is required under section 365 of the Bankruptcy Code (the "Cure Claim") and identify the basis(es)

8

of the alleged Cure Claim; (d) attach all documents supporting or evidencing the Cure Claim or otherwise setting forth the grounds for objection to the proposed assumption and assignment; and (e) if the response contains an objection to Adequate Assurance, state with specificity what the objecting party believes is required to provide Adequate Assurance (collectively with the General Objection Procedures, the "Assigned Contract Objection Procedures").

16.     If no objection is timely and properly filed and served in accordance with the Assigned Contract Objection Procedures, (a) the Cure Amount set forth in the Cure Amount Notice shall be controlling notwithstanding anything to the contrary in any executory contract or unexpired lease or other document and the non-debtor party to the executory contract or unexpired lease shall be forever barred from asserting any other claim arising prior to the assignment against the Debtors or Purchaser as to such executory contract or unexpired lease and (b) the Purchaser's promise to perform under the executory contract or unexpired lease shall be deemed Adequate Assurance thereunder.   To the extent the Debtors dispute any Cure Claim, such dispute shall be presented to the Court at the Sale Hearing, or such later date and time as the Debtors, the objector, and (after the Auction) the Successful Bidder, may agree or the Court may order, but such dispute shall not affect in any way the effectiveness of any assumption and assignment of an executory contract or unexpired lease.

17.     In the event one or more objections to the relief requested in the Motion is filed, the Debtors are authorized but not required, pursuant to Local Bankruptcy Rule 9006-1(d), to file a consolidated reply to such objection(s) on or before [**June 30, 2009 at 12:00 p.m. (EDT)**].

18.     To the extent there is any inconsistency between the terms of this Order and the Bidding Procedures, the terms of this Order shall control.

19.    The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

20.    This Order shall be binding upon and inure to the benefit of the Debtors, the Purchaser, and their respective successors and assigns, including any chapter 11 or chapter 7 trustee or other fiduciary appointed in these cases or subsequent cases.

21.    The Court shall retain exclusive jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

Dated: June ____, 2009

_____

The Honorable Kevin Gross
United States Bankruptcy Judge

# EXHIBIT 1

## Bidding Procedures

## BIDDING PROCEDURES

Pursuant to the prefixed Order Under 11 U.S.C. §§ 105(a), 363, and 365 And Federal Rules Of Bankruptcy Procedure 2002, 6004, 6006 And 9014 (A) Approving (i) Bidding Procedures, (ii) Bidding Incentives For The Stalking Horse Bidder And (iii) Auction Procedures; (B) Approving Notice Procedures For (i) The Solicitation Of Bids, (ii) An Auction And (iii) The Assumption And Assignment Of Executory Contracts And Unexpired Leases; (C) Scheduling Hearing On Approval Of A Sale Or Sales Of All or Substantially All Of The Debtors' Assets; And (D) Granting Related Relief, dated June [__], 2009 (the "Bidding Procedures Order") [Dkt. No. ---],[1] the following initial bidding procedures (the "Bidding Procedures") shall govern the sale (the "Sale") and competitive bidding process applicable to the sale or sales of all or substantially all of the combined assets (the "Assets") of Midway Games Inc., Midway Home Entertainment Inc., Midway Amusement Games, LLC, Midway Interactive Inc., Surreal Software Inc., Midway Studios - Austin Inc., Midway Studios - Los Angeles Inc., Midway Games West Inc., Midway Home Studios Inc., and Midway Sales Company, LLC, debtors and debtors in possession (the "Debtors"):

I.   Sale Notice

Upon the approval of these Bidding Procedures, the Debtors will distribute a copy of the Notice of Auction and Sale Hearing to the Service Parties. The Debtors will provide a copy of the Asset Purchase Agreement dated as of May 20, 2009 (collectively with all schedules and exhibits attached thereto, the "Purchase Agreement") by and between certain of the Debtors signatory thereto as sellers ("Sellers")[2] and Warner Bros. Entertainment Inc. ("WBEI") as purchaser, upon request by any party in interest.

II.  Bid Deadline and Requirements for Initial Bids

An Initial Bid must be submitted on or before the Bid Deadline which is **[June 24, 2009 at 4:00 p.m. (EDT),]** via electronic mail or facsimile, to the following:

(a) counsel for the Debtors: Blank Rome LLP, The Chrysler Building, 405 Lexington Avenue, New York, NY 10174, Attn: Pamela Flaherty, Esq., Fax (212) 885-5001, and 1201 North Market Street, Suite 800, Wilmington, DE 19899, Attn: Michael D. DeBaecke, Esq. Fax: (302) 425-6464;

---

[1]   Capitalized terms not otherwise defined in these Bidding Procedures shall have the meanings ascribed to such terms in the Bidding Procedures Order or the Purchase Agreement, as applicable.

[2]   The Sellers are: Midway Games Inc., Midway Amusement Games, LLC, Midway Home Entertainment Inc., Surreal Software Inc., Midway Games West Inc., Midway Studios-Los Angeles Inc. and Midway Studios-Austin Inc.

(b) counsel for the Lender: Kramer Levin Naftalis & Frankel, LLP, 1177 Avenue of the Americas, New York, NY 10036, Attn: Gordon Novod, Esq., Fax (212) 715-8192;

(c) counsel for the Creditors' Committee: Milbank, Tweed, Hadley & McCloy LLC, 601 South Figueroa Street, 30th Floor, Los Angeles, CA 90017, Attn: David B. Zolkin, Esq., Fax (213) 892-4767;

(d) the Office of the United States Trustee, 844 North King Street, Suite 2207, Wilmington, DE 19801, Attn: David Buchbinder, Esq., Fax (302) 573-6497; and

(e) counsel for WBEI: Andrews Kurth LLP, 601 South Figueroa Street, Los Angeles, CA 90017, Attn: Jon L.R. Dalberg, Esq., Fax (213) 896-3137.

The Debtors may extend the Bid Deadline for one or more bidders but shall not be obligated to do so.

III. Due Diligence and Other Considerations

Upon execution of a confidentiality agreement in form and substance acceptable to the Debtors, the Debtors will provide reasonable access to its books, records and management to bidders for the purpose of conducting due diligence prior to the Auction. By participating in the Auction, all bidders are deemed to acknowledge that they have had sufficient and reasonable access to the Debtors' books, records and management for the purposes of conducting due diligence.

All Initial Bids shall remain open and be irrevocable, notwithstanding the Bankruptcy Court's approval of the Sale of the Assets, until the earlier of the end of the second business day following the closing of the transaction and fifteen (15) days after the entry of a final order by the Court approving a definitive agreement providing for the Sale of the Assets. All Qualified Parties who submit an Initial Bid shall be deemed to have read, understood, consented to and agreed to be bound by the provisions of the Bidding Procedures Order and these Bidding Procedures.

IV. Determination of Qualified Bid Status

To qualify as an Initial Bid, the bid must, at a minimum, comply with the following requirements:

(a) The Initial Bid must be received by the Bid Deadline;

(b)        The Initial Bid must contain a signed definitive asset purchase agreement (together with a copy of the signed agreement that is marked to show changes from the Purchase Agreement) (a "Qualified APA") and identifying the Assets the party seeks to purchase with, at a minimum, the following requirements: (i) having terms and conditions no less favorable to the Debtors than those of the Purchase Agreement except with higher or better consideration, which can be determined by aggregating bids made on different portions of the Debtors' Assets ("Aggregate Bids") (provided that no Initial Bid shall provide for the payment to such bidder of any breakup fee, topping fee, expense reimbursement, or other similar arrangement); (ii) providing for consideration that is, alone or in conjunction with other Competing Bids when weighed against the transaction contemplated by the Purchase Agreement, in Sellers' reasonable business judgment likely to result in value to Sellers (taking into account the impact of any delay in closing the transaction contemplated by such Competing Bid(s), purchase price adjustments, arrangements regarding Sellers' Inventory and Accounts Receivable, cure amounts, contracts to be assumed and assigned, closing conditions, certainty of completion and any other relevant factors) greater than the sum of (A) the Cash Consideration of $33,000,000 provided for in the Purchase Agreement (as the same may be adjusted pursuant to the terms of the Purchase Agreement), plus (B) the amount of the Break-Up Fee, (C) if and only if the contracts between Midway Home Entertainment Inc. and Warner Bros. Interactive Entertainment with respect to Sellers' games entitled *Happy Feet*, *Ant Bully* and *Mortal Kombat v. DC Universe* are to be assigned, then so much of the amounts of $359,218, $166,126 and $7,342,476, respectively, that is to be paid to the extent that such Competing Bid(s) provide for payment thereof as a cure pursuant to Section 365(b) of the Bankruptcy Code, plus (D) the amount of the Expense Reimbursement, plus (E) $300,000; (iii) providing for a deposit in the aggregate amount of at least equal to five million dollars ($5,000,000) in accordance with Section IV(c), below; and (iv) not being subject to any (w) financing contingency, (x) contingency relating to the completion of unperformed due diligence, (y) contingency relating to the approval of the bidder's board of directors or other internal approvals or consents, or (z) any conditions precedent to the bidder's obligation to purchase the Assets other than those included in the Purchase Agreement;

(c)     The Initial Bid(s) must be accompanied by the provision of a certified or bank check, wire transfer, or letter of credit reasonably acceptable to the Debtors in the aggregate amount of at least five million dollars ($5,000,000) as a good faith deposit (the 'Deposit'), to be held in escrow and credited to the closing payment if the bidder(s) are ultimately determined to be the Successful Bidder(s) (as defined below) or to be returned to the bidder(s) otherwise and a written statement that the bidder(s) agree to be bound by the terms of these Bidding Procedures and the Bidding Procedures Order;

(d)     To the extent not previously provided to Debtors, the Initial Bid must be accompanied by evidence satisfactory to Debtors in their commercially reasonable discretion that the bidder is willing, authorized, capable and qualified financially, legally and otherwise, of unconditionally performing all obligations under its Qualified APA (or its equivalent) in the event that it submits a Successful Bid (as defined below) at the Auction;

(e)     Remain open and irrevocable until the earlier of the end of the second business day following the closing of the transaction and fifteen (15) days after the entry of a final order by the Court approving a definitive agreement providing for the Sale of Assets;

(f)     The Initial Bid must clearly state the range of cash consideration, in U.S. dollars, that the bidder(s) are prepared to pay for any or all of Debtors' assets. Only cash consideration will be evaluated for this purpose; the utilization of notes or other instruments to make up a portion of the cash consideration will not be evaluated as cash;

(g)     The Initial Bid must be accompanied by information and assurances satisfactory to the Debtors that the bidder(s) can obtain all required consents, approvals and licenses to fulfill the terms, conditions and obligations under any and all related agreements, including but not limited to, sufficient information to permit the Court, the Debtors and any applicable lessors or counterparties to determine the proposed assignee's ability to comply with the requirements of section 365 of the Bankruptcy Code (to the extent applicable);

(h)     The Initial Bid(s) must state that they have been approved (subject to stated conditions) by all necessary governing bodies or investors (e.g., board of directors or minority partners); and

(i)     The Initial Bid(s) must state that they are made by the principals of the Bidder(s), and not by any person acting as agent for another, whether the principals are disclosed or undisclosed; however, a bidder(s) may appoint a representative to act on its behalf in connection with the Initial Bid(s).

The Sellers and their advisors, in consultation with the Lender and the Creditors' Committee, will evaluate any Initial Bids submitted and determine whether to deem any such bid(s) a "Qualified Bid" and invite the "Qualified Bidder" to participate in the Auction. Initial Bids will be evaluated on the basis of factors such as but not limited to (i) the indicated purchase price, (ii) the Qualified Bidder's financial capacity to consummate a transaction if selected as the Successful Bidder, (iii) the extent and type of requested changes to the Purchase Agreement, (iv) any required government approvals and the perceived timing and difficulty in connection therewith; (v) the Qualified Bidder's ability to expeditiously consummate the transaction if selected as a Successful Bid, and (vi) other factors deemed appropriate in the Sellers' discretion. The Sellers will select those Initial Bids that they consider to be Qualified Bids on or before the commencement of the Auction, provided, however, that the Sellers, in consultation with the Lender and the Creditors' Committee, reserve the right to reject any Initial Bid as insufficient, and further provided, however, that, if no other Qualified Bid is received (other than that of WBEI), the Sellers shall have no obligation to conduct an Auction.

## V.     The Auction

In the event one or more Qualified Bids are received, an auction (the "Auction") of the Sellers' assets will be held on [June 29, 2009 at 10:00 a.m. (EDT)] at the offices of Blank Rome LLP, The Chrysler Building, 405 Lexington Avenue, New York, NY 10174 or 1201 North Market Street, Suite 800, Wilmington, DE 19801, or such other location determined by the Debtors, at which Auction the Debtors may select the highest or best Qualified Bid for any particular Asset(s) as a Successful Bid. **ALL SALE(S) SHALL BE SUBJECT TO THE APPROVAL OF THE BANKRUPTCY COURT.** The proceedings at the Auction will be transcribed by a court reporter.

The Sellers, in consultation with the Lender and the Creditors' Committee, may consider Initial Bids for individual assets or groups of assets and may consider whether such bids, when taken together (defined previously as Aggregate Bids), are higher and/or better than any other bids, including the final bid of WBEI.

WBEI, parties who submit Qualified Bids prior to the Bid Deadline, representatives of the Creditors' Committee, the Lender, the OUST, the Debtors, and the professionals of the foregoing shall be entitled to attend and be heard at the Auction. Any creditor of the Debtors that wishes to attend the Auction may do so as long as it gives written notice of its planned attendance to Debtors' counsel at least two days prior to the Auction.

Each bidder participating at the Auction must confirm on the record that it has not and will not engage in any collusion with respect to the bids submitted at the Auction.

During the Auction, bidding on the Assets shall (i) begin with the highest Qualified Bid(s) and (ii) continue with successive bids in increments of at least $150,000 over and above the previous highest Qualified Bid(s) (the "Incremental Bid Amount"), and (iii) continue thereafter in minimum increments of at least the Incremental Bid Amount. **All bids at the Auction must remain open and irrevocable until the earlier of the end of the second business day following the closing of the transaction and fifteen (15) days after the entry of a final order by the Court approving a definitive agreement(s) providing for the Sale(s) of the Assets.**

WBEI has the right to receive credit for the Break-Up Fee and the maximum possible Expense Reimbursement as part of any subsequent bid made by WBEI at the Auction. If WBEI has made the Successful Bid or the Next Highest Bid at the Auction, WBEI shall be entitled to deduct the credited Break-Up Fee and the maximum possible Expense Reimbursement from the consideration payable in connection with its subsequent winning bid.

Unless otherwise agreed to by the Debtors, in their discretion, all participating bidders will be permitted sufficient time, to be determined by the Debtors in consultation with the Lender and the Creditors' Committee, in which to respond to the previous bid at the Auction.

Prior to concluding the Auction, the Debtors shall (i) review each bid, if any, on the basis of its financial and contractual terms and the factors relevant to the sale process and the best interest of the Debtors' stakeholders, including, without limitation, those factors affecting the speed and certainty of consummating a sale transaction(s) and (ii) in consultation with the Lender and the Creditors' Committee, determine and identify the highest or best bid (or bids, in the case of Aggregate Bids) (the "Successful Bid") and the next highest or otherwise best offer(s), if any, after the Successful Bid (the "Next Highest Bid"). Any bid submitted after the conclusion of the Auction shall not be considered for any purpose. There may be more than one entity submitting a Successful Bid (a "Successful Bidder") for the Assets of the Debtors but only one Successful Bidder for any particular asset.

Prior to the conclusion of the Sale Hearing (unless otherwise agreed to by the Debtors and the Successful Bidder(s)), the bidder or bidders making the Successful Bid or Bids, if any, shall complete and sign all agreements or other documents evidencing and containing the terms and conditions upon which such bid was made, if it has not already done so.

Subject to the terms and provisions of the Purchase Agreement, the Debtors, in consultation with the Lender and the Creditors' Committee, reserve the right to reject at any time prior to the entry of an order of the Bankruptcy Court approving a sale of any of the Debtors' Assets, any offer which the Debtors deem to be (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Procedure of the United States Bankruptcy Court for the District of Delaware, or the terms and conditions of the Sale set forth herein, or (iii) contrary to the best interests of the Debtors, their estates, and their creditors. Subject to the terms and provisions of the Purchase Agreement, the Debtors will have no obligation to accept or submit for Bankruptcy Court approval any offer presented prior to or at the Auction.

VI.   The Sale Hearing

(A)     The hearing on the approval of the Sale (the "Sale Hearing") to the Successful Bidder shall be conducted by the Bankruptcy Court on [**July 1, 2009 at 1:00 p.m. (EDT)**] or at such other time as the Bankruptcy Court permits.

(B)     Subject to Bankruptcy Court approval following the Auction, the Successful Bidder(s) seeking to purchase the Assets (the "Purchaser"), shall purchase the Assets, free and clear of all liens, claims, interests and encumbrances, pursuant to the Successful Bid and the corresponding order(s) of the Court approving the Sale.

(C)     Following the Sale Hearing approving the sale of the Assets to the Successful Bidder(s), if any Successful Bidder fails to consummate an approved Sale because of a breach or failure to perform on the part of such Successful Bidder, the next highest or otherwise best Qualified Bid(s), as disclosed at the Sale Hearing, will be deemed to be the Successful Bid(s) and the Debtors will be authorized, but not required, to consummate the Sale(s) with the Qualified Bidder(s) submitting such bid(s) without further order of the Bankruptcy Court.

(D)     Any sale of the Assets shall be without representation or warranties of any kind, nature or description by the Debtors, their agents or their estate, except as provided in the purchase agreement between the Debtors and the subject Purchaser. All of the Assets shall be transferred "as is," "where is" and "with all faults." **THE DEBTORS EXPRESSLY DISCLAIM ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE AND MAKE NO WARRANTY, EXPRESS OR IMPLIED, AS TO THE NATURE, QUALITY, VALUE OR CONDITION OF ANY ASSET.**

VII.     <u>Procedures Governing Deposits</u>

(A)     All Deposits shall be subject to the jurisdiction of the Bankruptcy Court and shall be returned by the Debtors to the unsuccessful bidders as soon as reasonably practicable after the closing of the Sale; provided, <u>however,</u> that if the Successful Bidder fails to consummate an approved Sale because of a breach or failure to perform on the part of such Successful Bidder, such Successful Bidder's Deposit shall be forfeited to the Debtors, and the Debtors specifically reserve the right to seek all available damages from the defaulting Successful Bidder, except as to WBEI, in which case the provisions of the Purchase Agreement and the deposit agreement executed by the parties thereto shall control.

(B)     All Deposits shall be held, subject to the provisions of the Bidding Procedures Order and these Bidding Procedures (and in the case of WBEI, the provisions of the Purchase Agreement and the deposit agreement executed by the parties thereto) by counsel for the Debtors or, in the Debtors' discretion, by a third-party escrow agent (either, a "Custodian") in a segregated non-interest bearing bank account. Subject to the terms of the Purchase Agreement and the deposit agreement signed by the parties thereto, in the event of a dispute concerning the Sellers' right to retain any Deposit, the Custodian shall have no liability to any bidder for the failure to return such Deposit to the bidder, and the bidder's sole remedy shall be to seek relief from the Bankruptcy Court to compel the return of the Deposit; provided, <u>however,</u> that nothing in the Bidding Procedures Order or these Bidding Procedures shall waive, release or restrict any right or remedy of any person arising from the wrongful disbursement or loss of any Deposit.

VIII.   No Expense Reimbursement

Except as otherwise provided with respect to WBEI or as otherwise ordered by the Bankruptcy Court, no bidder shall be entitled to reimbursement of its costs, expenses or professional fees incurred in connection with the Sale and competitive bidding process for the Assets, including formulation and submission of any bid or any due diligence efforts.

IX.   Reservation of Rights

Subject to the terms and provisions of the Purchase Agreement, the Debtors, after consultation with the Lender and the Creditors' Committee, reserve their rights to: (i) impose at or before the Auction such other and additional terms and conditions as may be in the interest of the Debtors, their estates and creditors (so long as such terms are not materially inconsistent with the terms of the Bidding Procedures Order or these Bidding Procedures); (ii) extend the deadlines set forth in the Bidding Procedures Order and/or these Bidding Procedures; (iii) adjourn the Auction at or before the Auction; (iv) adjourn the Sale Hearing without further notice by making an announcement in open Court or by the filing of a hearing agenda pursuant to Bankr. D. Del. L.R. 9029-3; (v) waive the terms and conditions set forth herein; (vi) withdraw from the Auction some or all of the Assets at any time prior to or during the Auction; and (vii) cancel the Auction.

## Exhibit D

### RELEASE AND COVENANT NOT TO SUE

1.      This Release and Covenant Not To Sue ("Release") is executed this __ day of _____,
2009 in connection with that certain Asset Purchase Agreement (the "**Purchase Agreement**"),
executed May 20, 2009 among Midway Games, Inc., a Delaware corporation ("**Midway**") and
the other sellers listed on Schedule A thereto and enumerated below in Section 2 (individually,
"**Seller**" and, collectively, "**Sellers**") and Warner Bros. Entertainment, Inc., a Delaware
corporation ("**Warner Bros**" or "**Purchaser**").  Capitalized terms used herein and otherwise not
defined have the meanings assigned to such terms in the Purchase Agreement.

2.      For good and valuable consideration, the receipt and sufficiency of which are hereby
acknowledged, each of (i) Midway Games, Inc.; (ii) Midway Amusement Games, LLC; (iii)
Midway Home Entertainment Inc.; (iv) Surreal Software Inc; (v) Midway Games West, Inc.; (vi)
Midway Studios- Los Angeles Inc.; and (vii) Midway Studios- Austin Inc., for themselves and
each and all of their respective officers, directors, representatives, stockholders, subsidiaries,
affiliates, assigns, predecessors, successors, principals, employees, attorneys and agents (each
and all of the foregoing being hereinafter collectively referred to as "**Releasors**" or "**Sellers**", and
each such reference shall refer individually and collectively to each and all of Sellers and each
and all of their respective officers, directors, representatives, stockholders, subsidiaries, affiliates,
assigns, predecessors, successors, principals, employees, attorneys and agents) hereby, forever
and unconditionally release, discharge and acquit Warner Bros., and each of Warner Bros.'
officers, directors, representatives, stockholders, assigns participants, predecessors, successors,
affiliates, subsidiaries, principals, employees, attorneys and agents (collectively, "**Releasees**") of
any rights, claims or causes of action of Sellers against Purchaser relating to the assets,
properties, businesses or operations of Sellers arising out of events occurring on or prior to the
Closing Date, *including*, but not limited to, causes of action involving commercial tort and all
causes of action under chapter 5 of the Bankruptcy Code, but specifically *excluding* Sellers'
rights, claims or causes of action in connection with the Purchase Agreement and related
documents, and *excluding* any rights of Sellers under the Purchase Agreement or, except with
respect to any Purchased Assets, any other agreement, document or instrument contemplated by
the Purchase Agreement, including the consideration delivered by Purchaser to Sellers for the
Purchased Assets pursuant to the Purchase Agreement (hereinafter referred to as the "**Released
Matters**").

3.      Releasors, for good and valuable consideration, the receipt and adequacy of which are
hereby acknowledged, covenant and agree that Releasors will not institute any suit or action, or
prosecute or in any manner voluntarily aid the institution or prosecution of any non-governmental
claim, demand, suit, action or cause of action, state or federal, in law or in equity, against
Releasees with respect to any matter, cause or thing whatsoever arising out of, based in whole or
in part upon, relating to or existing by reason of the Released Matters.

4.      It is understood by Releasors and Releasees that this Release extends to all claims of
whatever kind and nature whatsoever, known or unknown, suspected or unsuspected, existing,
claimed to exist or which may hereafter arise out of facts, events or circumstances that presently
exist and result from or are connected with the Released Matters.

5.     This Release is given notwithstanding the provisions of, and Releasors expressly waive any benefit they may have under Section 1542 of the California Civil Code, to the extent applicable, which provides as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

6.     Releasors further waive any and all provisions, rights and benefits of any similar statute or law of California or of any other jurisdiction, to the fullest extent such provisions may be applicable and waived. Releasors acknowledge that they may hereafter discover facts in addition to or different from those which they now believe to be true with respect to the subject matter of this Release, but Releasors intend to, and Releasors hereby do, fully finally and forever settle and release any and all claims encompassed by this Release, whether known or unknown, suspected or unsuspected, claimed or concealed, asserted or unasserted, contingent or noncontingent, which now exist, may hereafter exist, or may heretofore have existed, and without regard to the subsequent discovery or existence of such different or additional facts.

7.     This Release may be modified only by a written agreement executed by a duly authorized representative of each of Sellers and Warner Bros.

8.     If the Releasors assert against the Releasees a claim that has been released hereunder, then the Releasees shall be entitled to recover from such Releasors all costs and fees, including attorneys' fees, incurred in defending against the claim and in enforcing their rights under this Release.

9.     Releasors and their counsel have reviewed, revised and approved this Release, and the normal rule of construction, to resolve ambiguities against the drafting party, shall not be employed in interpreting this Release.

10.    This Release is executed for the sole benefit of the Releasees and no other person, corporation, partnership or other entity shall have any rights  hereunder as a third party beneficiary or otherwise, except to the extent specifically provided for herein.

11.    This Release is subject to entry of a Sale Order approving the Purchase Agreement and this Release. This Release shall be effective as of the Closing. Absent (i) entry of a Sale Order approving the Purchase Agreement and this Release and (ii) occurrence of a Closing, this Release shall be null and void and without any force and effect.

12.    The undersigned represents and warrants that he is duly authorized to execute this Release on behalf of Releasors.

13.     This Release shall be governed by and construed in accordance with the laws of the State of Delaware applicable to contracts made and performed in such State without regard to conflicts of laws principles thereof.

14.     Until the Bankruptcy Case is closed or dismissed, the Bankruptcy Court shall retain exclusive jurisdiction (a) to enforce and implement the terms and provisions of this Release and all amendments thereto; (b) to resolve any disputes, controversies or claims arising out of or relating to this Release; and (c) to interpret, implement and enforce the provisions of this Release. After the Bankruptcy Case is closed, the parties agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the District of Delaware and any appellate court from any thereof, for the resolution of any such claim or dispute under this Release. The parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute. Each of the parties hereto agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

15.     This Release may be executed simultaneously in counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument. The parties hereby acknowledge and agree that facsimile signatures of this Release shall have the same force and effect as the original signature.

*[Signature Page Follows]*

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed and delivered as of the date first above written.

MIDWAY GAMES INC.
MIDWAY AMUSEMENT GAMES, LLC
MIDWAY HOME ENTERTAINMENT INC.
SURREAL SOFTWARE INC.
MIDWAY GAMES WEST INC.
MIDWAY STUDIOS- LOS ANGELES INC.
MIDWAY STUDIOS- AUSTIN INC.

By:_____
    Name:  Matthew Booty
    Title:   Chief Executive Officer

WARNER BROS. ENTERTAINMENT INC.

By:_____
    Name:
    Title

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| MIDWAY GAMES INC., *et al.*, | : | Case No. 09-10465 (KG) |
| | : | (Jointly Administered) |
| Debtors.[1] | : | **Re: Docket No.** |

---------------------------------------------------

### ORDER UNDER 11 U.S.C. §§ 105(a), 363, AND 365 AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002, 6004, 6006 AND 9014 (A) APPROVING THE SALE OF PURCHASED ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES PURSUANT TO 11 U.S.C. § 363, (B) AUTHORIZING AND APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (C) GRANTING RELATED RELIEF

Upon the motion (the "Sale Motion") of the above-captioned debtors and debtors in possession (the "Debtors"), pursuant to sections 105, 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for an order authorizing and approving (a) the sale of all or substantially all of the assets relating to the Debtor's business (the "Purchased Assets") described in and pursuant to the terms and conditions of an executed Asset Purchase Agreement, dated as of May __, 2009 (collectively with all schedules and exhibits thereto, the "Original Purchase Agreement") by and between the Debtors, as sellers (the

---

[1]      The Debtors are:  Midway Games Inc., Midway Home Entertainment Inc., Midway Amusement Games, LLC, Midway Interactive Inc., Surreal Software Inc., Midway Studios - Austin Inc., Midway Studios - Los Angeles Inc., Midway Games West Inc., Midway Home Studios Inc., and Midway Sales Company, LLC.

"Sellers")[2], and Warner Bros. Entertainment Inc. (the "Purchaser"), subject to higher and/or better offers and (b) the assumption and assignment of certain executory contracts and unexpired leases; and the Court having reviewed and considered (i) the Sale Motion and all relief related thereto, (ii) any objections thereto and (iii) the Court having heard the statements of counsel and the evidence presented in support of the relief requested by the Sale Motion at a hearing before the Court on June ___, 2009 (the "Sale Hearing"); and the Court having jurisdiction to consider and determine the Sale Motion in accordance with 28 U.S.C. §§ 157 and 1334; and due notice of the Sale Hearing and the Sale Motion having been provided, and it appearing that no other or further notice need be provided; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY FOUND AND DETERMINED:

### General

A.　All capitalized terms not otherwise defined in this Order have the meanings ascribed to such terms in the Sale Motion or the Purchase Agreement (defined below), as applicable. In the event of any inconsistency, the Purchase Agreement shall control.

B.　The Court has jurisdiction to consider the Sale Motion and the relief requested therein under 28 U.S.C. §§ 157 and 1334. The Sale Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue is proper in the Court under 28 U.S.C. §§ 1408 and 1409.

---

[2]　The Sellers are: Midway Games Inc., Midway Amusement Games, LLC, Midway Home Entertainment Inc., Surreal Software Inc., Midway Games West Inc., Midway Studios-Los Angeles Inc. and Midway Studios-Austin Inc.

C.     The statutory predicates for the relief sought in the Sale Motion are sections 105(a), 363(b), (f), and (m) and 365(a), (b) and (f) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014.

D.     On June __, 2009, the Court entered the Order Under 11 U.S.C. §§ 105(a), 363, and 365 and Federal Rules Of Bankruptcy Procedure 2002, 6004, 6006 and 9014 (A) Approving (i) Bidding Procedures, (ii) Bidding Incentives For The Stalking Horse Bidder And (iii) Auction Procedures; (B) Approving Notice Procedures For (i) The Solicitation Of Bids, (ii) An Auction And (iii) The Assumption And Assignment Of Executory Contracts And Unexpired Leases; (C) Scheduling Hearing On Approval Of A Sale Or Sales Of All or Substantially All Of Debtors' Assets; And (D) Granting Related Relief (D.I. ____) (the "Bidding Procedures Order"), pursuant to which the Court, *inter alia,* authorized the Debtors to conduct an auction (the "Auction") of all or substantially all of their assets and approved the bidding procedures annexed to the Bidding Procedures Order (the "Bidding Procedures").

E.     As evidenced by the certificates of service filed with the Court, and based on the representations made at the Sale Hearing, (i) proper, timely, adequate, and sufficient notice of the Sale Motion, the transactions contemplated therein (including the proposed assumption and assignment of the Assigned Contracts), the Bidding Procedures Order, the Bidding Procedures, the Auction and the Sale Hearing has been provided in accordance with sections 102, 105, 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014; (ii) such notice was good and sufficient and appropriate under the particular circumstances of these cases; and (iii) no other or further notice of the Sale Motion, the transactions contemplated therein (including the assumption and assignment of the Assigned

Contracts), the Bidding Procedures Order, the Bidding Procedures, the Auction, the Sale Hearing or the entry of this Order is required.

F.    A reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein has been afforded to all interested persons and entities, including, but not limited to: (i) the Office of the United States Trustee (the "OUST"); (ii) Acquisition Holdings Subsidiary I, LLC (the "Lender"); (iii) the official committee of unsecured creditors (the "Creditors' Committee") appointed in the Debtors' bankruptcy cases; (iv) known persons holding a lien, claim, encumbrance or other interest in, to or against any of the Purchased Assets; (v) known parties to the Assigned Contracts; (vi) applicable federal, state and local taxing authorities; (vii) applicable federal, state and local governmental units; and (viii) all entities who have filed a notice of appearance and request for service of papers in the Debtors' bankruptcy cases pursuant to Bankruptcy Rule 2002.

## The Bankruptcy Cases

G.    On February 12, 2009, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court. The Debtors continue to manage their assets and operate their business as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.

## The Sale Process for the Purchased Assets

H.    The Debtors have marketed the Purchased Assets diligently, in good faith and in a commercially reasonable manner to secure the highest and/or best offer or offers therefor by, among other things, delivering offering materials to potential purchasers and inviting potential purchasers to meet with management and the Debtors' professionals and providing potential purchasers with the opportunity to conduct extensive due diligence (electronic, remote,