UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MIDWAY GAMES INC., et al.,[1]<br><br>Debtors. | ) Chapter 11<br>)<br>) Case No. 09-10465 (KG)<br>) Jointly Administered<br>)<br>) Hearing Date: July 28, 2009 at 10:00 a.m.<br>) Obj. Deadline: July 21, 2009 at 4:00 p.m. |

**JOINT MOTION BY (I) CERTAIN MEMBERS OF THE PREPETITION
BOARD OF DIRECTORS OF MIDWAY GAMES INC.,
(II) SHARI E. REDSTONE, AND (III) ROBERT J. STEELE FOR RELIEF
FROM THE AUTOMATIC STAY AND ENTRY OF AN ORDER
AUTHORIZING PAYMENT OF DEFENSE COSTS UNDER
DIRECTORS AND OFFICERS' LIABILITY INSURANCE POLICIES**

William C. Bartholomay, Peter C. Brown, Joseph A. Califano, and Robert N. Waxman (the "Directors"), members of the prepetition Board of Directors (the "Board") of Midway Games Inc. ("Midway" and together with its co-debtor affiliates, the "Debtors"), Shari E. Redstone ("Redstone") and Robert J. Steele ("Steele," and together with the Directors and Redstone, the "Movants"), hereby jointly move the Court for an order lifting the automatic stay, to the extent it applies, for the limited purpose of entering an order, *inter alia*, authorizing Illinois National Insurance Company ("Illinois National"), a member underwriting company of AIU Holdings, Inc., to pay the Defense Costs (as defined herein) incurred by the Movants to defend against a pending Adversary Proceeding (as defined herein) in accordance with and subject to the terms and conditions of certain directors and officers' liability insurance policies issued to the Debtors and subject to Illinois National's reservation of rights.

---

[1] The Debtors are: Midway Games Inc., Midway Home Entertainment Inc., Midway Amusement Games, LLC, Midway Interactive Inc., Surreal Software Inc., Midway Studios - Austin Inc., Midway Studios - Los Angeles Inc., Midway Games West Inc., Midway Home Studios Inc., and Midway Sales Company, LLC.

580928.1 7/10/09

While this motion should not be construed as an admission or concession that the proceeds from insurance policies are property of the Debtors' bankruptcy estates, this Motion is brought out of an abundance of caution seeking relief from the provisions of the automatic stay pursuant to Section 362(d)(1) of title 11 of the United States Code (the "Bankruptcy Code") to permit Illinois National to make – solely with respect to matters relating to the Adversary Proceeding – payments of Defense Costs to the Movants without need for further application to or order from this Court. Movants assert that sufficient cause exists for the granting of such relief. In support of this Motion, the Movants respectfully represent as follows:

### Jurisdiction and Venue

1. The Court has jurisdiction over this matter under 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of these chapter 11 cases in this district is proper under 28 U.S.C. §§ 1408 and 1409.

### Background

2. William C. Bartholomay has served as a director of Midway since 1996.

3. Peter C. Brown served as a director of Midway from 2005 to December 2008.

4. Joseph A. Califano, Jr. has served as a director of Midway since 2004.

5. Robert N. Waxman has served as a director of Midway since December 31, 2003.

6. Shari Redstone served as a director of Midway from June 10, 2004 to November 7, 2008.

7. Robert Steele served as a director of Midway from June 2006 to December 1, 2008.

8. On February 12, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

9. The Movants have been named in a certain adversary proceeding, discussed in more detail below, brought by the Official Committee of Unsecured Creditors of Midway Games Inc. (the "Creditors Committee"). The adversary complaint alleges the Movants are liable for damages arising from their actions as directors of Midway. To defend against the adversary proceeding, the Movants will likely incur substantial legal fees and costs.

The Insurance Policies

10. On December 1, 2008, Illinois National issued to Midway an Executive and Organization Liability Insurance Policy, Policy Number 01-346-11-76, with a policy period of December 1, 2008 to December 1, 2009 (the "Primary Policy").[2] Subject to the applicability of certain retentions, the Primary Policy provides limits of liability in the amount of $10 million.

11. On December 1, 2008, certain excess insurance policies were issued to Midway by (a) AXIS Insurance Company (Policy Number: MCN710944/01/2008); (b), XL Specialty Insurance Company (Policy Numbers: ELU108569-08 & ELU108608-08); (c) Illinois National Insurance Company (Policy Number: 01-357-30-75); and (d) Allied World National Assurance Company (Policy: C011275/001) (the "Excess Policies" and together with the Primary Policy, the "Insurance Policies").[3] The Excess Policies provide $50 million coverage – in excess of the $10 million Primary Policy limits – to the Movants.

12. As former or current directors of Midway, each Movant is an "Insured Person" under the Insurance Policies.

13. The Primary Policy, subject to all of its terms and conditions and to Illinois National's reservation of rights, provides both direct and indirect coverage to the Movants on a "claims made" basis for actual or alleged wrongful acts committed in their capacity as a Midway

---

[2] A copy of the Primary Policy is attached hereto as **Exhibit A**.

[3] Copies of the Excess Policies are attached at **Exhibits B-F**.

580928.1 7/10/09

director. More specifically, the Primary Policy affords *direct* coverage to the Movants against loss which the Debtors has neither indemnified nor is permitted or required to indemnify. (This coverage grant is commonly referred to as Side A coverage.) In this regard, the Primary Policy states:

> "This policy shall pay the Loss of any Insured Person arising from a Claim made against such Insured Person for any Wrongful Act of such Insured Person, except when and to the extent that an Organization has indemnified such Insured Person. Coverage A shall not apply to Loss arising from a Claim made against an Outside Entity Executive."[4]

14. The term "Loss" is defined by the Primary Policy to mean, in relevant part, "damages, settlements, judgments (including pre/post-judgment interest on a covered judgment), Defense Costs and Crisis Loss ...."[5] The term "Defense Costs" means "reasonable and necessary fees, costs and expenses consented to by the Insurer ... resulting solely from the investigation, adjustment, defense and/or appeal of a Claim against an Insured, but excluding any compensation of any Insured Person or any Employee of an Organization."[6]

15. The Primary Policy also affords *indirect* coverage to the Movants insofar as the Primary Policy provides reimbursement coverage to the Debtors for their indemnification obligations to the Movants. (This coverage grant is commonly referred to as Side B coverage.) To date, the Debtors have not committed to indemnifying the Movants in connection with their Defense Costs incurred in the defense of the Adversary Proceeding (as defined herein). Accordingly, it appears that the Primary Policy's *direct* Side A coverage will be implicated.

16. The Primary Policy, subject to its terms and conditions, requires the Insured Persons, here the Movants, to defend and contest a covered claim made against them.

---

[4] Exhibit A, Primary Policy, 1. Insuring Agreements, Coverage A: Executive Liability Insurance, at p. 1.
[5] Id. at 2. Definitions (p), at p. 4, as modified by Endorsement No. 2.
[6] Id. at 2. Definitions (f), at p. 2.

580928.1 7/10/09

Accordingly, subject to the consent of Illinois National, the Movants are responsible for selecting and retaining counsel to defend against a covered claim. The payment of Defense Costs serves to reduce the available limits of liability.

17. The Excess Policies, subject to their respective terms, conditions and endorsements, provide for the same terms and conditions of coverage as provided by the Primary Policy.

18. The Insurance Policies thus generally provide that, subject to each policy's terms and conditions and Illinois National's reservation of rights, the insurers shall pay, among other things, the legal fees and related expenses of the Movants for claims arising out of their role as directors of Midway.

The Adversary Proceeding

19. On or about May 11, 2009, the Creditors Committee filed an action styled *The Official Committee of Unsecured Creditors of Midway Games Inc., et al., v. National Amusements Inc., et al.*, Adv. P. No. 09-50968 (the "Adversary Proceeding"), in the Bankruptcy Court.

20. The Adversary Proceeding names the Movants as defendants.[7] Subsequent to the commencement of the Adversary Proceeding, the Movants provided timely notice of the Adversary Proceeding to Illinois National and requested that Illinois National pay Movants' Defense Costs in accordance with the terms and conditions of the Primary Policy. The Movants also provided timely notice of the Adversary Proceeding to the insurers issuing the Excess Policies.

---

[7] The Adversary Proceeding names defendants other than the Movants. This Motion, and the relief requested herein, only applies to the Movants.

21. Upon entry of an order approving this Motion and subject to a reservation of its rights under the Primary Policy, Illinois National has agreed to pay the Defense Costs incurred by the Movants to defend and contest the Adversary Proceeding, subject to the terms and conditions of the Primary Policy, to Illinois National's reservation of rights, and to the following retention of counsel provisions.

Retention of Counsel

22. Pursuant to the terms and conditions of the Insurance Policies, the Directors have requested that Dewey & LeBoeuf LLP ("D&L") and Morris, Nichols, Arsht & Tunnell LLP ("Morris Nichols"), local Delaware counsel, represent them in connection with the Adversary Proceeding and that the Defense Costs of such representation be borne by Illinois National. Illinois National has consented to the retention of D&L and Morris Nichols to represent the Directors in the Adversary Proceeding.[8]

23. Ms. Redstone and Mr. Steele are represented by Mintz, Levin, Cohn, Ferris, Glovsky and Popeo P.C. ("Mintz Levin") and Saul Ewing LLP, as local Delaware counsel. Illinois National has consented to the retention of Mintz Levin and Saul Ewing LLP to represent Ms. Redstone and Mr. Steele in the Adversary Proceeding.

---

[8] By order dated March 10, 2009 [Docket No. 145] (the "Approval Order"), the Bankruptcy Court approved the retention of D&L as Special Counsel to the post-petition Board of Directors of Midway (the "Board") during the pendency of the Debtors' chapter 11 cases. Paragraph 6 of the Approval Order states that "In the event an action is commenced against any independent members of the post-petition Board arising out of or relating to their conduct as Board members pre-petition, Dewey & LeBoeuf may continue representing such Board members but shall not seek payment from the Debtors' estates in connection with such representation without prior authorization from the Court." If the relief requested in this Motion is approved, D&L intends to continue to represent independent members of the post-petition Board in matters unrelated to the adversary proceeding and will request that the Court authorize payment of fees and expenses related thereto from the Debtors' estates. The Committee expressly reserves all of its rights and intends to oppose any such requests.

## Relief Requested

24. As set forth above, Illinois National has agreed, subject to the terms and conditions of the Primary Policy and to Illinois National's reservation of rights, to pay the Defense Costs of the Movants. The Movants therefore seek entry of an order authorizing the Insurers to pay the Defense Costs on the grounds that the proceeds of the Insurance Policies, including the Primary Policy, are not assets of the Debtors' estates and, therefore, the payment of Defense Costs does not violate the automatic stay imposed by Section 362 of the Bankruptcy Code. Alternatively, if this Court finds that the proceeds of the Insurance Policies are property of the Debtors' estates, relief is sought, pursuant to Section 362(d)(1) of the Bankruptcy Code, authorizing Illinois National to pay, pursuant to the terms and conditions of the Primary Policy, the Defense Costs incurred by the Movants to defend and contest the Adversary Proceeding.

25. The Creditors Committee does not object to the relief requested in the Motion.[9]

## Basis for Relief

### The Insurance Policies are Not Property of the Estate

26. While the debtor's interest in insurance proceeds becomes property of the estate, courts have held that the non-debtor, co-insureds' interest in the proceeds do not become property of the debtor's estate. See In re World Health Alternatives, Inc., 369 B.R. 805, 809 (Bankr. D. Del. 2007) (when proceeds of a policy are payable to the directors and officers and not the estate, the proceeds are not property of the estate). Stated differently, courts recognize that non-debtor, co-insureds have a separate and distinct interest in the proceeds of an insurance policy that is jointly held with a debtor, co-insured. See In re Spaulding Composites Co., 207

---

[9] The Creditors Committee, however, expressly reserves its right to contest and/or litigate any future decision by Illinois National to deny coverage and/or attempt to seek reimbursement of any Defense Costs advanced to the Movants.

580928.1 7/10/09

7

B.R. 899, 906-07 (9th Cir. 1997). The recognition of separate and distinct property rights of the debtor and non-debtor co-insureds is supported by the doctrine that the "owner of an insurance policy cannot obtain greater rights to the proceeds of that policy ... by merely filing a bankruptcy petition." In re Denario, 267 B.R. 496, 499 (Bankr. N.D.N.Y. 2001). As the Movants have a separate and distinct interest in the Insurance Policies from the Debtors, the proceeds are not property of the Debtors' estates.

27. Moreover, the Debtors' filing for bankruptcy protection should not undermine the Movants' independent interest in the proceeds of the Insurance Policies. To bar Illinois National from paying the Movants' Defense Costs on automatic stay grounds not only infringes upon the Movants' direct interest in the policies, but also effectively grants the Debtors greater rights to the proceeds than those for which they bargained. Ochs v. Lipson (In re First Cent. Fin. Corp.), 238 B.R. 9, 13 (Bankr. E.D.N.Y. 1999)(holding that proceeds of a directors and officers insurance policy are not the property of the estate in bankruptcy or subject to the automatic stay provisions).

28. Additionally, the Debtors' interest in the Insurance Policies is very limited because the Insurance Policies do not afford direct coverage to the Debtors for their own liabilities, commonly referred to as "entity" or Side C coverage. Accordingly, the Debtors' coverage is limited to reimbursement for any fees or costs they incur to indemnify the Movants against the Adversary Proceeding. In such circumstances, because the proceeds of the Insurance Policies are a means to satisfy the Debtors' indemnity obligations to the directors and officers, there is no harm in paying the proceeds to the Movants; Illinois National is merely satisfying the Debtors' obligation to indemnify their directors and officers. See In re Louisiana World Exposition, Inc., 832 F.2d at 1391, 1400 (5th Cir. 1987)("[A]ny payment under the liability

580928.1 7/10/09

coverage reduces the amount of the potential indemnification claim to the same extent that policy amounts available for indemnification are thus reduced."); In re CHS Electronics, Inc., 261 B.R. 538, 542 (Bankr. S.D. Fla. 2001)(holding that, because the indemnification coverage was payable only for the benefit of the directors and officers, the proceeds were not property of the estate); In re Imperial Corp. of America, 144 B.R. 115, 118-119 (Bankr. S.D. Cal. 1992)(although policy provided indemnification coverage, relying on Louisiana World Exposition, the proceeds were not estate property).

29. Moreover, courts have routinely declined to consider the policy's proceeds as property of the estate where, as here, the debtor has not indemnified the directors and officers with respect to losses for which it would be entitled to Side B coverage. See, e.g., In re Allied Digital Techs. Corp., 306 B.R. 505, 512 (Bankr. D. Del. 2004)(holding that where a liability insurance policy provides for direct recovery by directors and officers, direct recovery by company, and recovery by company for indemnified amounts, policy proceeds are only property of the estate to the extent of actual indemnified amounts and to the extent that the policy will protect other estate assets from diminution); In re Adelphia Commc'ns Corp., 302 B.R. 439, 448 (Bankr. S.D.N.Y. 2003) (on remand, holding that D&O policy proceeds were not part of the bankruptcy estate because, although debtors had indemnification coverage, there was no evidence that the debtors had made any payments for which they would be entitled to such coverage, that any such payments were contemplated, or that debtors had committed themselves to any payments using this coverage).

Cause Exists to Lift the Automatic Stay

30. Courts routinely grant relief from the automatic stay allowing payment by an insurance company to non-debtor directors and officers. See, e.g., In re Arter & Hadden, L.L.P.,

9

580928.1 7/10/09

335 B.R. 666, 674 (Bankr. N.D. Ohio 2005); In re Allied Digital Techs. Corp., 306 B.R. at 513; In re CyberMedica, Inc., 280 B.R. 12, 18, (Bankr. D.Mass. 2002); Executive Risk Indem. Inc. v. Boston Reg'l Med. Ctr., Inc. (In re Boston Reg'l Med. Ctr., Inc.), Adv. Proc. No. 01-1376, Case No. 99-10860 (Bankr. D. Mass. April 2, 2002); In re Homebanc Mortgage Corp., Case No. 07-11079 (KJC) (Bankr. D. Del. Nov. 28, 2007).

31. To the extent that the proceeds of the Insurance Policies are property of the Debtors' bankruptcy estates, relief from the automatic stay for Illinois National to reimburse the Movants' Defense Costs is appropriate. More specifically, Section 362(d)(1) of the Bankruptcy Code provides as follows:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay -
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

The definition of "cause" is not defined by Section 362(d)(1) of the Bankruptcy Code. "Cause is a flexible concept and courts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay." In re SCO Group, Inc., 395 B.R. 852, 856 (Bankr. D. Del. 2007). See also Atlantic Marine, Inc. v. American Classic Voyages, Inc., 298 B.R. 222, 225 (D. Del. 2003) (a "party seeking relief must show that the balance of hardships from not obtaining relief tips significantly in [its] favor"); In re Arter & Hadden, 335 B.R. at 674 (cause exists to lift the automatic stay to avoid irreparable harm to the directors and officers).

32. The Movants will be substantially and irreparably harmed if they are prevented from exercising their rights to obtain payment of their Defense Costs incurred to defend and

contest the Adversary Proceeding. Accordingly, "cause" exists to lift the automatic stay. See In re Cybermedica, 280 B.R. at 18; In re Arter & Hadden, 335 B.R. at 674. In Cybermedica, the court lifted the automatic stay to permit the advancement of defense costs by an insurer under a directors and officers' liability policy to fund the representation of former officers and directors of a Chapter 7 debtor. 280 B.R. at 18. The Cybermedica court reasoned that advancement of defense expenses was appropriate because the insureds "may suffer substantial and irreparable harm if prevented from exercising their rights to defense payments. [They] are in need *now* of their contractual right to payment of defense costs and may be harmed if disbursements are not presently made to fund their defense . . . ." Id. See also In re Arter & Hadden, 335 B.R. at 674; Executive Risk Indem. Inc. v. Boston Reg'l Med. Ctr., Inc. (In re Boston Reg'l Med. Ctr., Inc.), Adv. Proc. No. 01-1376, Case No. 99-10860 (Bankr. D. Mass. April 2, 2002).

33. In addition, the Debtors and the Movants bargained for and relied on the protections afforded to the Movants by the Insurance Policies, and good and valuable consideration was provided for the protections afforded thereunder. To deny the use of such proceeds for their intended purpose would result in a windfall for the issuers of the Insurance Policies and unjustly strip the Debtors and the Movants of the benefit of their bargain. As the Court in First Central Financial Corp. stated, "[t]his Court is unwilling to divest the Officers and Directors of the liability protection they bargained for, including ongoing draw down of legal fees." 238 B.R. at 21. To do so here would likewise result in inequity.

34. Moreover, three of the Movants continue to serve the Debtors as members of the post-petition Board. Granting the relief requested herein will inure to the benefit of the Debtors by ensuring the continued service of such directors during the pendency of the Debtors' chapter 11 cases.

11

580928.1 7/10/09

35. Accordingly, the requested relief is appropriate because (a) the proceeds of the Insurance Policies' should not be considered property of the Debtors' estates and, as such, subject to the automatic stay; and (b) even if the Court finds that the proceeds are assets of the estates, then "cause" exists to lift and modify the automatic stay to the extent necessary to permit, subject to the terms and conditions of the Insurance Policies, the payment of Defense Costs.

36. This Motion is not, and shall not be deemed to be, (a) an admission of any fact or liability by any of the Movants as to the Adversary Proceeding or otherwise; or (b) an agreement to provide assistance to or to cooperate with any party in its efforts to secure payment under the Insurance Policies from any other source.

### No Previous Request

37. No previous request for the relief requested herein has been made to this or any other Court.

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

580928.1 7/10/09

WHEREFORE, the Movants respectfully request the Court enter an order authorizing the Insurers to pay the Defense Costs, and granting the Movants such other and further relief to which they are otherwise entitled.

/s/ Jon E. Abramczyk
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
Jon E. Abramczyk (No. 2432)
1201 North Market Street, 18th Floor
P.O. Box 1347
Wilmington, DE 19899
Tel: (302) 658-9200
Fax: (302) 658-3989

DEWEY & LEBOEUF LLP
Richard W. Reinthaler
Timothy Q. Karcher
1301 Avenue of the Americas
New York, NY 10019
Tel: (212) 259-8000
Fax: (212) 259-6333

*Attorneys for Defendants William C. Bartholomay, Peter C. Brown, Joseph A. Califano, and Robert N. Waxman*

/s/ Mark Minuti
SAUL EWING LLP
Mark Minuti (No. 2659)
Candace Toll Aaron (No. 4465)
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899
Tel: (302) 421-6840
Fax: (302) 421-5873

MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
Elizabeth B. Burnett
William W. Kannel
A.W. Phinney III
Nancy D. Adams
One Financial Center
Boston, MA 02111
Tel: (617) 542-6000
Fax: (617) 542-2241

*Attorneys for Defendants Shari E. Redstone and Robert J. Steele*

Dated: July 10, 2009