IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| MIDWAY GAMES INC., *et al.*, | : | Case No. 09-10465 (KG) |
| | : | (Jointly Administered) |
| Debtors.[1] | : | **Re: Docket No. 517** |

ORDER UNDER 11 U.S.C. §§ 105(a) AND 363 AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002, 6004, 9014, AND 9019 (A) APPROVING THE SALES OF DEBTOR MIDWAY HOME ENTERTAINMENT INC.'S EQUITY INTERESTS IN CERTAIN NON-DEBTOR FOREIGN SUBSIDIARIES, FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, (B) APPROVING AGREEMENT RESOLVING CERTAIN INTERCOMPANY CLAIMS, AND (C) GRANTING RELATED RELIEF

Upon the motion (the "Sale Motion") of the above-captioned debtors and debtors in possession (the "Debtors")[2], pursuant to sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2002, 6004, 9014, and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order (A) authorizing and approving the sales of all of Debtor MHE's Shares in its wholly owned non-debtor foreign subsidiaries (1) Midway SAS and Midway Limited, pursuant to the MGS/MGL Stock Purchase Agreement; and (2) Midway GmbH, pursuant to the Midway GmbH Stock Purchase Agreement, free and clear of all liens, claims, interests, and encumbrances; and (B) authorizing and approving the related Intercompany Claims Agreement; and the Court having reviewed and

---

[1] The Debtors are: Midway Games Inc., Midway Home Entertainment Inc., Midway Amusement Games, LLC, Midway Interactive Inc., Surreal Software Inc., Midway Studios - Austin Inc., Midway Studios - Los Angeles Inc., Midway Games West Inc., Midway Home Studios Inc., and Midway Sales Company, LLC.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Sale Motion or respective Transaction Agreements.

900200.00001/40182889v.2

considered (i) the Sale Motion and all relief related thereto, (ii) any objections thereto and (iii) the Court having heard the statements of counsel and the evidence presented in support of the relief requested by the Sale Motion at a hearing before the Court on August 18, 2009 (the "Sale Hearing"); and the Court having jurisdiction to consider and determine the Sale Motion as a core proceeding in accordance with 28 U.S.C. §§ 157(b) and 1334; and due notice of the Sale Hearing and the Sale Motion having been provided, and it appearing that no other or further notice need be provided; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY FOUND AND DETERMINED:**

A. The Court has jurisdiction to consider the Sale Motion and the relief requested therein under 28 U.S.C. §§ 157 and 1334. The Sale Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue is proper in the Court under 28 U.S.C. §§ 1408 and 1409.

B. The statutory predicates for the relief sought in the Sale Motion are sections 105(a), 363(b), (f), and (m) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 9014, and 9019.

C. As evidenced by the certificates of service filed with the Court, and based on the representations made at the Sale Hearing, (i) proper, timely, adequate, and sufficient notice of the Sale Motion, the transactions contemplated thereby, and the Sale Hearing has been provided in accordance with sections 102, 105, and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 9014, and 9019; and (ii) no other or further notice of the Sale Motion, the transactions contemplated thereby, the Sale Hearing or the entry of this Order is required.

D. A reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein has been afforded to all interested persons and entities,

including, but not limited to: (i) the Office of the United States Trustee (the "OUST"); (ii) the Creditors' Committee; (iii) known persons holding a lien, claim, encumbrance or other interest in, to or against any of the Purchased Assets; (iv) applicable federal, state and local taxing authorities; (v) applicable federal, state and local governmental units; and (vi) all entities who have filed a notice of appearance and request for service of papers in the Debtors' bankruptcy cases pursuant to Bankruptcy Rule 2002.

E. The Debtors have marketed the Shares diligently, in good faith and in a commercially reasonable manner to secure the highest and/or best offer therefor.

F. The terms and conditions of the Stock Purchase Agreements and the Intercompany Claims Agreement: (i) are fair and reasonable, (ii) are valid, binding and enforceable, (iii) constitute the highest and best offer for the Shares, (iv) will provide a greater recovery for the Sellers' creditors than would be provided by any other practical available alternative, (v) constitute reasonably equivalent value and fair consideration, and (vi) are in the best interests of the Sellers, their bankruptcy estates, creditors, and all parties in interest. The respective Sales must be approved and consummated promptly in order to maximize the value of the Sellers' estates.

G. The proposed purchasers Spiess Media and F+F Publishing (collectively, the "Purchasers") are good faith purchasers in accordance with section 363(m) of the Bankruptcy Code and, as such, are entitled to all of the protections afforded thereby.

H. Neither the Sellers nor the Purchasers have engaged in any conduct that would cause or permit the application of section 363(n) of the Bankruptcy Code to the proposed sales, including having either of the Stock Purchase Agreements voided.

## ACCORDINGLY, THE COURT HEREBY ORDERS THAT:

1. The Sale Motion is granted.

2. Any objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived or settled, and all reservations of rights included therein, are overruled on the merits. Parties who did not object, or who withdrew their objections to the Sale Motion, are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

3. The MGS/MGL Stock Purchase Agreement and all of the terms and conditions contained therein are approved and are binding upon the parties thereto.

4. The Midway GmbH Stock Purchase Agreement and all of the terms and conditions contained therein are approved and are binding upon the parties thereto.

5. The Intercompany Claims Agreement and all of the terms and conditions contained therein are approved and are binding upon the parties thereto.

6. The Debtors are authorized and directed, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, to perform all of their obligations pursuant to the Transaction Agreements and to execute such other documents and take such other actions as are reasonably necessary to effectuate the transactions contemplated by any of the Transaction Agreements.

7. The sales of the Shares, pursuant to this Order and the respective Stock Purchase Agreements, will vest each of the respective Purchasers with good title to the respective Shares and will constitute legal, valid and effective transfers of the Shares free and clear of all liens, claims, interests or other Encumbrances (collectively, "Liens") pursuant to section 363(f) of the Bankruptcy Code, with all such Liens to attach to the respective net proceeds of sale of the Shares in the order of their priority, and with the same validity, priority,

force and effect which such holder has prior to the sales, subject to the rights, claims, defenses, and objections, if any, of the Debtors and all parties in interest.

8. All persons or entities holding Liens in, to or against the Shares shall be, and they hereby are, forever barred from asserting such Liens against the respective Purchasers and their successors and assigns, or against such Shares after Closing.

9. The Transaction Agreements and any related agreements, documents or other instruments may be modified, amended, or supplemented through a written document signed by the parties thereto in accordance with the terms thereof without further order of the Court; provided, however, that any such modification, amendment or supplement is neither material nor changes the economic substance of the transactions contemplated hereby.

10. To the extent the Purchasers have any inventory that is subject to MHE's continuing obligations under the terms of that certain July 1, 2009 settlement agreement between Epic Games, Inc. ("Epic") and MHE (the "Epic Settlement Agreement") approved by the July 1, 2009 Sale Order [Dkt. No. 477], Purchasers upon closing of the respective Transactions have agreed to be bound by those obligations, including, without limitation, the obligation to immediately cease sales of any Licensed SKUs and AR Products (as such terms are defined in paragraph 4 of the Epic Settlement Agreement) upon the expiration of the Sell-off Period (as defined in paragraph 4 of the Epic Settlement Agreement) and, at Epic's option and expense, to destroy or return to Epic at the end of the Sell-off Period all unsold Licensed SKUs and AR Products. Notwithstanding anything to the contrary herein, MHE remains subject to the terms of the July 1, 2009 Sale Order and the Epic Settlement Agreement.

11. Until these cases are closed or dismissed, the Court shall retain exclusive jurisdiction (a) to enforce and implement the terms and provisions of the Transaction

Agreements, all amendments thereto, and any waivers and consents thereunder; (b) to compel the parties to the Transaction Agreements to perform all of their respective obligations thereunder; (c) to resolve any disputes, controversies or claims arising out of or relating to the Transaction Agreements; and (d) to interpret, implement and enforce the provisions of this Order.

12. This Order shall be binding upon (i) the Debtors and their estates, (ii) all creditors of, and holders of equity interests in, any Debtor, (iii) all holders of Liens against or on all or any portion of the Shares, (iv) the Purchasers, and (v) all successors and assigns of any of the foregoing, including any trustees that may be appointed in any of the Debtors' bankruptcy cases.

13. The failure to include any particular provision of the Transaction Agreements in this Order shall not diminish or impair the effectiveness of that provision, it being the intent of the Court and the parties that the Transaction Agreements be approved and authorized in their entirety.

14. This Order constitutes a final order pursuant to 28 U.S.C. § 158(a). As provided by Bankruptcy Rule 7062, this Order shall be effective and enforceable immediately. The provisions of Bankruptcy Rule 6004(g) staying the effectiveness of this Order for ten (10) days are hereby waived. This Court has found that time is of the essence in closing the transactions contemplated by the Transaction Agreements and the parties to the Transaction Agreements shall be authorized to close the respective transactions as soon as possible consistent with the terms of the Transaction Agreements.

15. Upon Closing, the Debtors shall be authorized and directed to deposit and segregate the monies collected in respect of the Transaction Agreements in a debtor in

possession bank account in the name of Midway Home Entertainment Inc., to be held pending further Court order.

Dated: August 18, 2009

/s/ Kevin Gross<br>
The Honorable Kevin Gross<br>
United States Bankruptcy Judge

900200.00001/40182889v.2