# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re : | Chapter 11 |
| MIDWAY GAMES INC., *et al.*,[1] : | Case No. 09-10465 (KG) |
| Debtors. : | (Jointly Administered) |

**Hearing Date: September 29, 2009 @ 10:00 a.m. (EDT)**
**Objections Due: September 22, 2009 @ 4:00 p.m. (EDT)**

## MOTION FOR ENTRY OF AN ORDER
## APPROVING WIND-DOWN INCENTIVE PLAN

The above-captioned debtors and debtors in possession (each a "Debtor" and collectively, the "Debtors") hereby submit this Motion (the "Motion") for entry of an order in substantially the form attached hereto approving the wind-down incentive plan (the "Wind-Down Plan") attached hereto as Exhibit 1, effective as of September 11, 2009. In support of this Motion, the Debtors respectfully state as follows:

### JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory and legal predicates for the relief sought herein are §§ 105, 363(b), and 503(c)(3) of the Bankruptcy Code.

---

[1] The Debtors are: Midway Games Inc., Midway Home Entertainment Inc., Midway Amusement Games, LLC, Midway Interactive Inc., Surreal Software Inc., Midway Studios - Austin Inc., Midway Studios - Los Angeles Inc., Midway Games West Inc., Midway Home Studios Inc., and Midway Sales Company, LLC.

## BACKGROUND AND STATUS OF CASE

4. On February 12, 2009 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5. The Debtors have continued in possession of their respective properties and have continued to maintain their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of an examiner.

6. The general circumstances and events leading to the commencement of the Debtors' cases are described in the Declaration of Ryan O'Desky in Support of the Debtors' Chapter 11 Petitions and First Day Relief (the "O'Desky Declaration"), filed on February 12, 2009. [Dkt. No. 2] The O'Desky Declaration is incorporated by reference herein.

7. An official committee of unsecured creditors (the "Creditors' Committee") was appointed on February 23, 2009.

8. Debtor Midway Games Inc. ("Midway Games") is a publicly held Delaware corporation with its corporate headquarters located at 2704 West Roscoe Street, Chicago, Illinois 60618. Midway Games is the ultimate corporate parent of all of the other above-referenced Debtors.

9. On July 1, 2009, the Court entered an Order under 11 U.S.C. §§ 105(a), 363, and 365 and Federal Rules of Bankruptcy Procedure 2002, 6004, 6006 and 9014 (A) Approving the Sale of the Purchased Assets Free and Clear of All Liens, Claims, Interests and Encumbrances Pursuant to 11 U.S.C. § 363, (B) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Related Relief (the "Sale Order") [Dkt. No. 477]. Pursuant to the Sale Order and the terms and

conditions of the applicable asset purchase agreement (the "WBEI APA"), the selling Debtors sold substantially all of their assets to WBEI. The sale to WBEI closed on July 10, 2009.

10. Pursuant to the terms of the WBEI APA and Sale Order, and to effectuate the purchase of assets by WBEI, post-closing the Debtors and WBEI negotiated and entered into a Transition Services Agreement (the "TSA"). (WBEI APA, § 8.14; Sale Order, ¶¶ 6, 33)

11. On August 11, 2009, the Debtors filed their Motion for an Order Approving Transition Services Incentive Plan, Effective as of August 5, 2009 (the "TSI Plan Motion") [Dkt. No. 535]. By the TSI Plan Motion, the Debtors sought Court approval of the Transition Services Incentive Plan (the "TSI Plan") as a means to effectuate performance by the Debtors under the TSA. On August 26, 2009, the Court entered the Order Approving Transition Services Incentive Plan [Dkt. No. 580]. The employees performing transition services will be performing these additional services over and above the ordinary services the employees perform on a day-to-day basis on behalf of the Debtors. Amounts payable under the TSI Plan are payable by the Debtors only out of the fee paid by WBEI, if, as, and when such fee is collected and only out of the amount of such fee in excess of all of the costs associated with performing the applicable services under the TSA, including salaries, fringe benefits, costs of enforcing the TSA and any damages suffered by the Debtors as a result of any breach of the TSA. (TSI Plan, Section 1). The Debtors shall have no obligation to pay, and the participating employees shall have no right to receive, any incentive payments under the TSI Plan in excess of the amounts actually paid by WBEI in excess of such costs of the Debtors. (*Id.*)

12. On July 13, 2009, following the closing of the sale to WBEI, the Debtors gave the required sixty (60) day notice under the federal Worker Adjustment and Retraining

Notification Act of 1988 to approximately 62 remaining employees in the Debtors' Chicago Studio and related offices. The final day for these employees is September 11, 2009.

13. On August 18, 2009, the Court entered an Order Under 11 U.S.C. §§ 105(a) and 363 and Federal Rules of Bankruptcy Procedure 2002, 6004, 9014, and 9019 (A) Approving the Sales of Debtor Midway Home Entertainment Inc.'s Equity Interests in Certain Non-Debtor Foreign Subsidiaries, Free and Clear of All Liens, Claims, Interests and Encumbrances, (B) Approving Agreement Resolving Certain Intercompany Claims, and (C) Granting Related Relief Debtors (the "Foreign Subsidiaries Sale Order") [Dkt. No. 562]. Pursuant to the Foreign Subsidiaries Sale Order and the terms and conditions of the applicable asset purchase agreements, (1) Debtor Midway Home Entertainment Inc. ("Midway Home Entertainment") sold all of its equity interests in its wholly owned non-debtor foreign subsidiaries (A) Midway Games SAS and Midway Games Limited; and (B) Midway Games GmbH, and (2) in connection with these two private sales, the Debtors entered into a settlement and resolution of certain intercompany claims pursuant to a form of Intercompany Claims Agreement. The sale of Midway Home Entertainment's equity interests in certain non-debtor foreign subsidiaries closed on August 19, 2009.

14. On August 19, 2009, the Court entered an Order Under 11 U.S.C. §§ 105(a), 363, and 365 and Federal Rules of Bankruptcy Procedure 2002, 6004, 6006 and 9014 (A) Approving the Sale of Purchased Assets Free and Clear of All Liens, Claims, Interests and Encumbrances Pursuant to 11 U.S.C. Sec. 363, (B) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts in Connection Therewith, and (C) Granting Related Relief (the "San Diego Sale Order") [Dkt. No. 566]. Pursuant to the San Diego Sale Order and the terms and conditions of the applicable asset purchase agreement, the Debtors (1)

sold substantially all of the Debtors' remaining assets used in connection with and arising out of the operation of Midway Home Entertainment's video game design and development business conducted at the studio located in San Diego, California to THQ Inc. and (2) in connection with that sale, assumed and assigned certain executory contracts. The sale of the assets located in San Diego closed on August 19, 2009.

15. On August 26, 2009, the Court entered an Order Authorizing Use of Segregated Funds to Pay for Ordinary Course of Business Expenses and Authorized Professional Fees and Expenses (the "Segregated Funds Order") [Dkt. No. 583]. Pursuant to the Segregated Funds Order, the Debtors are authorized to use sale proceeds that were segregated and deposited into a debtor in possession bank account in the name of Midway Home Entertainment, Inc. to pay for ordinary course of business expenses, such as employee compensation,[2] and authorized professional fees and expenses.

## WIND-DOWN PLAN

16. Due to the sale to WBEI, the foreign subsidiaries sale, and the San Diego studio sale, the Debtors are faced with the winding-down and liquidation of their business operations.

---

[2] To date, the Court has entered the following employee compensation-related orders: Order Granting Debtors' Motion for Order (I) Authorizing Payment of Prepetition Wages, Compensation, Employee Benefits, Expense Reimbursement and Related Items, and the Continuation of Certain Employment Policies, and (II) Authorizing and Directing Applicable Banks to Honor and Pay All Checks Respect Thereto [Dkt. No. 34]; Order Approving Payment of Discretionary Bonuses to Non-Insiders of the Debtors [Dkt. No. 143]; Order Authorizing, But Not Directing, (I) Debtors to Honor Certain Employee Programs Postpetition and (II) Payment of Prepetition Claims in Connection with Such Programs [Dkt. No. 144]; Order Authorizing, But Not Directing, (I) Debtors to Honor Certain Employee Programs Postpetition and (II) Payment of Prepetition Claims in Connection With Such Programs [Dkt. No. 200]; Order Approving a Key Employee Incentive Plan [Dkt. No. 282]; and Order Authorizing, But Not Directing, (I) Debtors to Honor Certain Employee Programs Postpetition and (II) Payment of Prepetition Claims in Connection with Such Programs [Dkt. No. 283].

17. In connection with the winding-down of the Debtors' businesses, the Debtors, in cooperation with the Creditors' Committee, have formulated the Wind-Down Plan. The Wind-Down Plan provides incentives that will encourage certain employees to remain employed by the Debtors so that they can perform the necessary wind-down functions. The Debtors also require the expertise of these employees to assist the Debtors in connection with the formulation of an expected chapter 11 plan of liquidation. Approximately twenty individuals will receive distributions in the aggregate maximum amount of $104,119.79 under the Wind-Down Plan in exchange for performance of various accounting, human resources, information technology, legal and business operations tasks. A more-detailed description of the Wind-Down Plan is attached hereto as Exhibit 1.

18. Given the anticipated difficulties and extra costs that would be incurred should the Debtors be required to search for and hire replacement employees at this time, the continued employment of these employees represents a substantial benefit to the estates. As such, the Debtors have determined, in the exercise of their sound and reasonable business judgment, that in order to properly motivate these employees to continue to put forth maximum effort in the face of winding-down the Debtors' business operations, and in order to help ensure that the Debtors' estates are maximized for the benefit of all stakeholders during the course of these bankruptcy proceedings, the Wind-Down Plan and the proposed incentive payments in connection therewith should be approved. Such payments would be in addition to the participants' base salaries, employee benefits, and any other payments they may be due under the TSI Plan. A chart setting forth the proposed termination date for each individual employee under the Wind-Down Plan as compared to the termination date for each individual employee under the TSI Plan is included with Exhibit 1. This chart also details the proposed incentive payment

under the Wind-Down Plan for each individual employee under the Wind-Down Plan. The Creditors' Committee has negotiated and approved the proposed Wind-Down Plan.

## RELIEF REQUESTED

19. By this Motion, the Debtors seek entry of an order pursuant to sections 105(a), 363(b), and 503(c)(3) of the Bankruptcy Code approving the Wind-Down Plan.

## BASIS FOR RELIEF

*Applicable Authority*

20. Section 105(a) of the Bankruptcy Code provides in relevant part: "[T]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

21. Section 363(b)(1) of the Bankruptcy Code provides: "[T]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."

22. As set forth above, the Wind-Down Plan does not contemplate any payments to insiders. Accordingly, sections 503(c)(1) and 503(c)(2) of the Bankruptcy Code are not applicable to this Motion. Section 503(c)(3) prohibits transfers that are outside the ordinary course of business and are not justified by the facts and circumstances of a particular case.

*Implementation of the Wind-Down Plan Satisfies the*
*Standards of Section 363(b) of the Bankruptcy Code*

23. The Wind-Down Plan satisfies section 363(b) of the Bankruptcy Code. Under section 363(b), a debtor may use property of the estate outside of the ordinary course of its business where the use of such property represents an exercise of the debtor's sound business judgment. *See, e.g., In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)); *Dai-Ichi Kangyo Bank, Ltd. v.*

*Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999).

24. The Debtors believe that approval of the Wind-Down Plan will accomplish a sound business purpose by assisting the Debtors in maximizing the value of their assets for the benefit of all of the Debtors' stakeholders. The Debtors have determined that the payments under the Wind-Down Plan are appropriate to properly compensate and motivate the remaining employees to achieve a successful outcome in these cases. Moreover, the payments proposed pursuant to the Wind-Down Plan are appropriate and reasonable in light of the facts and circumstances, cost savings and the likely benefits to be achieved.

***The Wind-Down Plan Is Not Prohibited By Section 503(c)(3) of the Bankruptcy Code***

25. The Wind-Down Plan is not prohibited by section 503(c)(3) of the Bankruptcy Code. Section 503(c)(3) of the Bankruptcy Code only prohibits "transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case." 11 U.S.C. § 503(c)(3) (Emphasis added). Based upon the above, the Wind-Down Plan clearly is justified by the "facts and circumstances" of these cases and, thus, not prohibited by section 503(c)(3) of the Bankruptcy Code.

26. The standard for approval under the "facts and circumstances" test of section 503(c)(3) is similar to the standard for approval under section 363(b)(1) of the Bankruptcy Code. *See, e.g., In re Nobex Corp.*, No, 05-20500, 2006 WL 4063024, at *3 (Bankr. D. Del. Jan. 19, 2006) (holding that sale-related incentive compensation was not prohibited by section 503(c)(3) of the Bankruptcy Code where the standards of section 363 of the Bankruptcy Code were satisfied). Courts have examined certain factors to determine if compensation programs are appropriate under section 503(c)(3) of the Bankruptcy Code. Some of the factors courts have focused on include:

a.  whether the plan is calculated to achieve the desired performance;

b.  whether the cost of the plan is reasonable within the context of the debtor's assets, liabilities, and earnings potential;

c.  whether the scope of the plan is fair and reasonable;

d.  whether the plan is consistent with industry standards;

e.  whether the debtor engaged in due diligence related to the need for the plan, the employees that needed to be incentivized, and what types of plans are generally applicable in a particular industry; and

f.  whether the debtor received independent counsel in performing due diligence and in creating and authorizing the incentive compensation.

*See, e.g., In re Global Home Products*, 369 B.R. at 786 (*citing In re Dana Corp.*, 358 B.R. at 576-77). Courts will balance the foregoing factors; a debtor need not satisfy every factor to demonstrate that its proposed compensation plan should be approved. *See e.g., In re Global Home Products,* 369 B.R. at 786 (holding that the debtors' compensation structure was a proper exercise of the debtors' business judgment even though, for instance, the debtors did not use a benefits consultant to structure the program).

27. As noted above, the proposed Wind-Down Plan payments directly relate to the Debtors' goal of maximizing the value of the Debtors' estates for the benefit of all stakeholders. Further, as noted above, the proposed payments under the Wind-Down Plan are modest given the size of these chapter 11 cases and given the anticipated difficulties and extra costs that would be incurred should the Debtors be required to search for and hire replacement employees at this time or, in the alternative, if the Creditors' Committee were forced to employ third party consultants in an attempt to complete the tasks currently performed by the Debtors' employees. Therefore, as a result of all of the foregoing, the Debtors believe that the terms of the Wind-Down Plan not only are justified and reasonable under the circumstances, but also are

critical to the successful outcome of these cases and fully authorized under the Bankruptcy Code. The Debtors have articulated valid and reasonable business reasons for implementation of the Wind-Down Plan. Accordingly, the Debtors respectfully request approval of the Wind-Down Plan.

## NOTICE

28. Notice of this Motion has been provided to: (a) the Office of the United States Trustee; (b) the United States Securities and Exchange Commission; (c) the Office of the United States Attorney for the District of Delaware; (d) the Internal Revenue Service; (e) counsel to the Creditors' Committee; and (f) other parties requesting notice under Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PREVIOUS RELIEF REQUESTED

29. No previous application for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors respectfully request entry of an order in substantially the form attached hereto and such other and further relief as is deemed just and proper.

Dated: September 11, 2009         **BLANK ROME LLP**

*/s/ David W. Carickhoff*
Michael D. DeBaecke (No. 3186)
David W. Carickhoff (No. 3715)
Victoria Guilfoyle (No. 5183)
1201 North Market Street
Suite 800
Wilmington, DE 19801
Telephone: (302) 425-6412
Facsimile: (302) 425-6464

-and-

Jeffrey N. Siegel
Marc E. Richards
Pamela E. Flaherty
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
Telephone: (212) 885-5000
Facsimile: (212) 885-5001

*Attorneys for Debtors and
Debtors In Possession*