## EXHIBIT 1

## (~~Proposed~~ Joint Chapter 11 Plan of Liquidation)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:                                  :    Chapter 11
                                        :
MIDWAY GAMES INC., *et al.*,            :    Case No. 09-10465 (KG)
                                        :    (Jointly Administered)
                    Debtors.[1]         :

## DEBTORS' JOINT CHAPTER 11 PLAN OF LIQUIDATION

BLANK ROME LLP
Michael D. DeBaecke (No. 3186)
David W. Carickhoff (No. 3715)
Victoria Guilfoyle (No. 5183)
1201 North Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464

-and-

Jeffrey N. Siegel
Marc E. Richards
Pamela E. Flaherty
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
Telephone: (212) 885-5000
Facsimile: (212) 885-5001

Attorneys for Midway Games Inc, *et al.*,
Debtors and Debtors in Possession

---

[1] The Debtors are: Midway Games Inc., Midway Home Entertainment Inc., Midway Amusement Games, LLC, Midway Interactive Inc., Surreal Software Inc., Midway Studios - Austin Inc., Midway Studios - Los Angeles Inc., Midway Games West Inc., Midway Home Studios Inc., and Midway Sales Company, LLC.

# TABLE OF CONTENTS

| ARTICLE I | RULES OF INTERPRETATION, COMPUTATION OF TIME; DEFINITIONS | 1 |
|---|---|---|
| 1.01 | "Administrative Claim" | 2 |
| 1.02 | "Allowed" | 2 |
| 1.03 | "Allowed Claim" | 3 |
| 1.04 | "Allowed [Class] Claim" | 3 |
| 1.05 | "Assets" | 3 |
| 1.06 | "Available Cash" | 3 |
| 1.07 | "Avoidance Action" | 3 |
| 1.08 | "Ballot" | 3 |
| 1.09 | "Balloting Agent" | 3 |
| 1.10 | "Bankruptcy Code" | 3 |
| 1.11 | "Bankruptcy Court" | 3 |
| 1.12 | "Bankruptcy Rules" | 4 |
| 1.13 | "Bar Date" | 4 |
| 1.14 | "Bar Date Order" | 4 |
| 1.15 | "Business Day" | 4 |
| 1.16 | "Cash" | 4 |
| 1.17 | "Catch-Up Distribution" | 4 |
| 1.18 | "Causes of Action" | 4 |
| 1.19 | "Chapter 11 Cases" | 4 |
| 1.20 | "Claim" | 4 |
| 1.21 | "Class" | 4 |
| 1.22 | "Confirmation" | 4 |
| 1.23 | "Confirmation Date" | 5 |
| 1.24 | "Confirmation Hearing" | 5 |
| 1.25 | "Confirmation Order" | 5 |
| 1.26 | "Creditor" | 5 |
| 1.27 | "Creditors' Committee" | 5 |
| 1.28 | "Creditors' Committee Action" | 5 |
| 1.29 | "Creditors' Committee Settlement" | 5 |
| 1.30 | "Disclosure Statement" | 5 |
| 1.31 | "Disputed Claim" | 5 |
| 1.32 | "Disputed Claims Reserve" | 6 |
| 1.33 | "Distribution" | 6 |
| 1.34 | "Distribution Address" | 6 |
| 1.35 | "Distribution Date" | 6 |
| 1.36 | "Distribution Fund" | 6 |
| 1.37 | "Distribution Record Date" | 6 |
| 1.38 | "Effective Date" | 6 |
| 1.39 | "Estate" | 6 |

| | | |
|---|---|---|
| 1.40 | "Executory Contract" | 6 |
| 1.41 | "Fee Claim" | 6 |
| 1.42 | "File" or "Filed" | 6 |
| 1.43 | "Final Administrative Claims Bar Date" | 6 |
| 1.44 | "Final Order" | 7 |
| 1.45 | "Former Directors" | 7 |
| 1.46 | "General Unsecured Claim" | 7 |
| 1.47 | "Impaired" | 7 |
| 1.48 | "Indenture Trustee" | 7 |
| 1.49 | "Indentures" | 7 |
| 1.50 | "Indenture Trustee Charging Lien" | 7 |
| 1.51 | "Indenture Trustee Fee" | 7 |
| 1.52 | "Initial Administrative Claims Bar Date" | 7 |
| 1.53 | "Initial Assumptions" | 7 |
| 1.54 | "Initial Defendants" | 7 |
| 1.55 | "Initial Distribution Date" | 7 |
| 1.56 | "Intercompany Claim" | 8 |
| 1.57 | "Interest" | 8 |
| 1.58 | "IRS" | 8 |
| 1.59 | "Liquidating Trust" | 8 |
| 1.60 | "Liquidation Trust Advisory Board" | 8 |
| 1.61 | "Liquidating Trust Agreement" | 8 |
| 1.62 | "Liquidating Trust Beneficiaries" | 8 |
| 1.63 | "Liquidating Trust Interest" | 8 |
| 1.64 | "Liquidating Trust Claims" | 8 |
| 1.65 | "Liquidating Trustee" | 8 |
| 1.66 | "Liquidating Trust Fund Reserve Amount" | 8 |
| 1.67 | "Liquidating Trust Funds" | 9 |
| 1.68 | "Lien" | 9 |
| 1.69 | "NAI" | 9 |
| 1.70 | "NAI Subordinated Claim" | 9 |
| 1.71 | "Named Officers" | 9 |
| 1.72 | "NBA" | 9 |
| 1.73 | "Net Distributable Value" | 9 |
| 1.74 | "Noteholders" | 9 |
| 1.75 | "Notes" | 9 |
| 1.76 | "Ordinary Course Payment" | 9 |
| 1.77 | "Person" | 9 |
| 1.78 | "Petition Date" | 9 |
| 1.79 | "Permissible Investments" | 9 |
| 1.80 | "Plan Supplement" | 9 |
| 1.81 | "Priority Claim" | 10 |
| 1.82 | "Priority Tax Claim" | 10 |
| 1.83 | "Pro Rata" | 10 |
| 1.84 | "Purchaser" | 10 |

| | | |
|---|---|---|
| 1.85 | "Sale Transactions" | 10 |
| 1.86 | "Schedules" | 10 |
| 1.87 | "Secured Claim" | 10 |
| 1.88 | "State Wage Claims" | 10 |
| 1.89 | "Tax Code" | 10 |
| 1.90 | "Treasury Regulations" | 10 |
| 1.91 | "Unexpired Lease" | 11 |
| 1.92 | "U.S. Trustee" | 11 |
| 1.93 | "Voting Deadline" | 11 |
| 1.94 | "Warner" | 11 |
| 1.95 | "Warner Purchase Agreement" | 11 |
| 1.96 | "Warner Sale Motion" | 11 |
| 1.97 | "Warner Sale Order" | 11 |
| 1.98 | "Warner Transaction" | 11 |
| ARTICLE II | CREDITORS' COMMITTEE SETTLEMENT; SUBSTANTIVE CONSOLIDATION OF ASSETS AND LIABILITIES OF DEBTORS; CANCELLATION OF INTERCOMPANY CLAIMS | 11 |
| 2.01 | Settlement and Compromise | 11 |
| 2.02 | Substantive Consolidation | 11 |
| 2.03 | Cancellation of Intercompany Claims | 12 |
| ARTICLE III | TREATMENT OF UNCLASSIFIED CLAIMS | 13 |
| 3.01 | Administrative Claims | 13 |
| 3.02 | Administrative Claim Bar Dates | 13 |
| 3.03 | Fee Claims | 13 |
| 3.04 | Priority Tax Claims | 14 |
| ARTICLE IV | CLASSIFICATION OF CLAIMS AND INTERESTS | 14 |
| 4.01 | General Rules of Classification | 14 |
| 4.02 | "Class 1 Claims" | 14 |
| 4.03 | "Class 2 Claims" | 14 |
| 4.04 | "Class 3A Claims" | 14 |
| 4.05 | "Class 3B Claims" | 14 |
| 4.06 | "Class 4 Claim" | 14 |
| 4.07 | "Class 5 Interests" | 14 |
| ARTICLE V | TREATMENT OF CLASSES OF CLAIMS AND INTERESTS | 14 |
| 5.01 | Class 1 Secured Claims | 15 |
| 5.02 | Class 2 Priority Claims | 15 |
| 5.03 | Class 3A General Unsecured Claims against Midway | 15 |
| 5.04 | Class 3B General Unsecured Claims against Subsidiary Debtors | 15 |
| 5.05 | Class 4 NAI Subordinated Claim against Midway | 15 |
| 5.06 | Class 5 Interests | 15 |
| 5.07 | State Wage Claims | 15 |
| 5.08 | Corporate Indemnities for Post-Petition Date Service | 16 |

| | | |
|---|---|---|
| 5.09 | Corporate Indemnities for Pre-Petition Date Service. | 16 |
| 5.10 | Resolution of Claims of Named Officers. | 17 |

**ARTICLE VI** MEANS OF IMPLEMENTATION OF THE PLAN ....................................... 17

| | | |
|---|---|---|
| 6.01 | The Sale Transactions. | 17 |
| 6.02 | Liquidating Trust. | 17 |
| 6.03 | Dismissal of Officers and Directors and Dissolution of Debtors and Board. | 22 |
| 6.04 | Binding Effect. | 22 |
| 6.05 | Corporate Action. | 22 |
| 6.06 | Effectuating Documents and Further Transactions. | 23 |
| 6.07 | Cancellation of Notes, Instruments, Indentures and Interests. | 23 |
| 6.08 | Closing of the Chapter 11 Cases. | 23 |
| 6.09 | Creditors' Committee Settlement. | 23 |

**ARTICLE VII** ACCEPTANCE OR REJECTION OF THIS PLAN OR CONSENT TO DIFFERENT TREATMENT ....................................... 26

| | | |
|---|---|---|
| 7.01 | Classes of Claims Entitled to Vote; Presumed Acceptances by Unimpaired Classes. | 26 |
| 7.02 | Classes of Claims and Interests Not Entitled to Vote. | 27 |
| 7.03 | Acceptance by Voting Classes of Claims and Interests. | 27 |
| 7.04 | Cramdown. | 27 |

**ARTICLE VIII** TREATMENT OF CLAIMS AND DISTRIBUTIONS UNDER THIS PLAN ....................................... 27

| | | |
|---|---|---|
| 8.01 | Distribution. | 27 |
| 8.02 | Liquidating Trust Distributions. | 27 |
| 8.03 | Liquidating Trustee's Retention of Third Party to Implement Distributions. | 28 |
| 8.04 | Liquidating Trust Fund Reserve Amount. | 28 |
| 8.05 | Disputed Claims Reserve. | 28 |
| 8.06 | Subsequent Distributions. | 29 |
| 8.07 | Distributions to Noteholders. | 29 |
| 8.08 | Preservation of Subordination Rights. | 30 |
| 8.09 | Miscellaneous Distribution Provisions. | 30 |
| 8.10 | Objections to Claims. | 31 |
| 8.11 | Prosecution of Objections to Claims. | 31 |
| 8.12 | Estimation of Claims. | 32 |
| 8.13 | Settlement of Claims. | 32 |
| 8.14 | Setoff and Recoupment. | 32 |

**ARTICLE IX** EXECUTORY CONTRACTS ....................................... 33

| | | |
|---|---|---|
| 9.01 | Rejection. | 33 |

**ARTICLE X** SETTLEMENT, SATISFACTION, EXCULPATION, INJUNCTION AND RELEASE ....................................... 33

| | | |
|---|---|---|
| 10.01 | Discharge. | 33 |
| 10.02 | Settlement of Claims and Releases. | 33 |

| | | |
|---|---|---|
| 10.03 | Term of Bankruptcy Injunction or Stay. | 34 |
| 10.04 | Exculpation. | 34 |
| 10.05 | Injunction. | 34 |
| 10.06 | Releases By Debtors. | 35 |
| 10.07 | Preservation of Claims. | 36 |
| 10.08 | Preservation of Insurance. | 36 |
| 10.09 | Release of Assets. | 36 |
| 10.10 | Binding Effect. | 37 |
| ARTICLE XI | CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE | 37 |
| 11.01 | Conditions to Plan Confirmation. | 37 |
| 11.02 | Conditions to Effective Date. | 37 |
| 11.03 | Waiver of Conditions to Confirmation and Effective Date. | 37 |
| ARTICLE XII | ADMINISTRATIVE PROVISIONS | 38 |
| 12.01 | Retention of Jurisdiction. | 38 |
| 12.02 | Liquidating Trustee Standing. | 40 |
| 12.03 | Revocation of this Plan. | 40 |
| 12.04 | Successors and Assigns. | 40 |
| 12.05 | Plan Supplement. | 40 |
| 12.06 | Post-Effective Date Fees and Expenses. | 40 |
| 12.07 | Severability. | 40 |
| 12.08 | Governing Law. | 41 |
| 12.09 | Controversy Concerning Impairment. | 41 |
| 12.10 | Dissolution of the Creditors' Committee. | 41 |
| 12.11 | Indenture Trustee as Claim Holder. | 41 |
| 12.12 | Books and Records. | 41 |
| 12.13 | Application of Section 1146(c) of the Bankruptcy Code. | 41 |
| 12.14 | Applicability of Section 1125 of the Bankruptcy Code. | 42 |
| 12.15 | Conflicts. | 42 |
| 12.16 | Entire Agreement. | 42 |
| 12.17 | Closing of Chapter 11 Cases. | 42 |
| 12.18 | Notices. | 42 |

900200.00001/40186703v.5

## EXHIBITS

Exhibit A          Class 3A and Class 3B Recovery Sensitivity Tables

Exhibit B          Liquidation Analysis

900200.00001/40186703v.5

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) |
|  | ) |
| MIDWAY GAMES INC., et al., | ) Chapter 11 |
|  | ) |
| Debtors. | ) Case No. 09-10465 (KG) |
|  | ) Jointly Administered |

## JOINT CHAPTER 11 PLAN OF LIQUIDATION

Midway Games Inc. ("Midway" or "Parent"), Midway Home Entertainment Inc. ("MHE"), Midway Amusement Games, LLC ("MAG"), Midway Interactive Inc. ("Midway Interactive"), Surreal Software Inc. ("Surreal Software"), Midway Studios – Austin Inc. ("Midway Austin"), Midway Studios - Los Angeles Inc. ("Midway L.A."), Midway Games West Inc. ("Midway Games West"), Midway Home Studios Inc. ("Midway Home Studios") and Midway Sales Company, LLC ("Midway Sales") (except for Midway, the "Subsidiary Debtors") (collectively, Midway and the Subsidiary Debtors shall be referred to as the "Debtors"), debtors and debtors in possession under Chapter 11 of the Bankruptcy Code, with the full support of the Creditors' Committee, hereby propose this Joint Chapter 11 plan of liquidation (as such may be amended or modified, including any exhibits or schedules thereto, the "Plan") as their plan to be confirmed by the United States Bankruptcy Court for the District of Delaware pursuant to Section 1129 of Title 11 of the United States Code, 11 U.S.C. §101 et seq. The Debtors are proponents of this Plan within the meaning of Section 1129 of the Bankruptcy Code, 11 U.S.C. § 1129. Reference is made to the Debtors' joint disclosure statement, filed contemporaneously with this Plan (the "Disclosure Statement"), for a discussion of the Debtors' history, businesses and properties and the events in these Chapter 11 Cases and for a summary and analysis of this Plan.

## ARTICLE I
## RULES OF INTERPRETATION, COMPUTATION OF TIME; DEFINITIONS

(a)     *Generally.*  For purposes of this Plan, unless otherwise provided herein: any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (b) any reference in this Plan to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified, or supplemented pursuant to this Plan; (c) any reference to a Person as a holder of a Claim includes that Person's heirs, successors and assigns; (d) all references herein to Sections, Articles, and Exhibits are references to sections, articles, and exhibits of or to this Plan; (e) the words "herein," "hereunder," "hereof," "hereto" and others

of similar inference refer to this Plan in its entirety rather than to a particular portion of this Plan, unless otherwise specified; (f) captions and headings included herein are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (g) all references to "his" shall include references to "her" or "its", where deemed appropriate; (h) subject to the provisions of any contract, articles of incorporation, code of regulations, similar constituent documents, instrument, release, or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules; (i) the rules of construction set forth in Section 102 of the Bankruptcy Code will apply; (j) to the extent there is an inconsistency between any of the express provisions of this Plan and any provision of any exhibit hereto or the Liquidating Trust Agreement or the Disclosure Statement, this Plan shall govern, (k) to the extent the express provisions of this Plan, the Liquidating Trust Agreement, the Disclosure Statement, or any document executed in connection therewith, the Confirmation Order or any documents executed in connection with the Confirmation Order (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing) conflicts with or is in any way inconsistent with the terms of the Confirmation Order, the terms and provisions of the Confirmation Order shall govern.

(b)     *Exhibits.*     Unless otherwise noted, all exhibits attached to this Plan are incorporated into and are a part of this Plan as if set forth in full herein and, to the extent not annexed hereto, such exhibits shall be filed with the Bankruptcy Court prior to the Confirmation Hearing as part of the Plan Supplement and shall be deemed part of this Plan. Copies of exhibits can be obtained upon reasonable written request to Michael D. DeBaecke, Esquire, of Blank Rome LLP, 1201 N. Market Street, Suite 800, Wilmington, DE 19801, counsel to the Debtors.

(c)     *Time Periods.*     In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

(d)     *Definitions.*     As used in this Plan, the following terms have the respective meanings specified below (such meanings to be equally applicable to both the singular and the plural, and masculine and feminine forms of the terms defined). Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, will have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.01     "*Administrative Claim*" means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases pursuant to Sections 503(b) and 507(a)(2) or 507(b) of the Bankruptcy Code, including but not limited to: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the Debtors' business; (b) any indebtedness or obligations incurred or assumed by the Debtors in connection with the conduct of their business; and (c) all fees and charges assessed against the Estates pursuant to Section 1930 of chapter 123 of title 28 of the United States Code; *provided, however,* that the term Administrative Claim does not include any Fee Claim.

1.02     "*Allowed*" means a Claim, Secured Claim, Administrative Claim, Fee Claim, Priority Claim or Priority Tax Claim: (a) (i) proof of which has been timely filed with the

Bankruptcy Court or has been deemed timely filed by a Final Order, or if no such proof of claim is so filed, which has been scheduled by the Debtors other than as disputed, contingent or unliquidated, and (ii) as to which no party in interest has timely filed an objection, a motion to equitably subordinate, or otherwise sought to limit recovery within the time limits specified in this Plan or permitted by the Bankruptcy Court, or (b) which is allowed by a Final Order of the Bankruptcy Court (other than the Confirmation Order), or (c) which is allowed by this Plan pursuant to the Confirmation Order, except that in the case of this subpart (c) the relevant Claim, Secured Claim, Administrative Claim, Fee Claim, Priority Claim or Priority Tax Claim shall be allowed only as of the Effective Date.

1.03    "*Allowed Claim*" means a Claim to the extent it is Allowed.

1.04    "*Allowed [Class] Claim*" means a Claim that is Allowed in a specified class or of a specified type; for example, Allowed Class 3A Claim.

1.05    "*Assets*" means all assets of each of the Debtors of any nature whatsoever, including, without limitation, the property of the Estates under Section 541 of the Bankruptcy Code, including Cash, contractual rights arising under prior Bankruptcy Court orders and any and all other claims, Causes of Action, Liquidating Trust Claims and rights of the Debtors arising under federal or state law and any interests in property, real and personal, tangible and intangible.

1.06    "*Available Cash*" means, as determined by the Debtors as of the Effective Date, the amount of Cash in the Distribution Fund, less the amount of Cash estimated to be necessary to fund adequately the (i) Allowed Administrative Claims, Allowed Fee Claims, Allowed Secured Claims, Allowed Priority Claims, Allowed Priority Tax Claims, Allowed Class 1 Claims and Allowed Class 2 Claims; and (ii) the Administrative Reserve; (iii) the Disputed Claims Reserve; and (iv) the Liquidating Trust Reserve Amount.

1.07    "*Avoidance Action*" means an action pursuant to Section 510, 542, 543, 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code brought by or on behalf of the Debtors or the Debtors' Estates or the Liquidating Trust.

1.08    "*Ballot*" means the form transmitted to Creditors by the Balloting Agent for voting to accept or reject this Plan in accordance with Section 1126 of the Bankruptcy Code.

1.09    "*Balloting Agent*" means Epiq Bankruptcy Solutions, LLC.

1.10    "*Bankruptcy Code*" means Sections 101, et seq. of Title 11 of the United States Code, as now in effect or hereafter amended.

1.11    "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware or any other court or adjunct thereof exercising competent jurisdiction over the Chapter 11 Cases.

-3-

1.12    "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, and the local rules of the Bankruptcy Court, as applicable to the Chapter 11 Cases.

1.13    "*Bar Date*" means July 15, 2009 or August 11, 2009 (as to governmental units) with respect to Claims arising before the Petition Date.

1.14    "*Bar Date Order*" means the Order Establishing Bar Dates for Filing Proofs of Claims and Approving Form and Manner of Notice Thereof entered by the Bankruptcy Court in the Debtors' Chapter 11 Cases on May 21, 2009, as the same may be amended, modified or supplemented.

1.15    "*Business Day*" means any day other than Saturday, Sunday or a "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

1.16    "*Cash*" means cash and cash equivalents in lawful currency of the United States of America, including, but not limited to, bank deposits, checks, and other similar items.

1.17    "*Catch-Up Distribution*" means a Distribution of Cash to the holder of an Allowed Class 3 Claim in the amount of such holder's Pro Rata share of Available Cash that it would have received but for such Allowed Claim having been treated as a Disputed Claim or partially Disputed Claim at the time of the Distribution(s) to certain other holders of Allowed Class 3 Claims; provided that no interest shall be distributable or accrue with respect thereto.

1.18    "*Causes of Action*" means any and all claims, causes of action, demands, rights, actions, bills, suits, damages, injuries, remedies, accounts, powers, privileges, licenses and franchises of any Debtor of any kind or character whatsoever, known, unknown, accrued or to accrue, contingent or non-contingent, matured or unmatured, suspected or unsuspected, foreseen or unforeseen, whether arising before, on or after the Petition Date, in contract or in tort, in law or in equity, or under any other theory of law, whether asserted or assertable directly or derivatively in law or equity or otherwise by way of claim, counterclaim, cross-claim, third party action, action for indemnity or contribution or otherwise, including, without limitation, Avoidance Actions.

1.19    "*Chapter 11 Cases*" means these cases (No. 09-10465 et seq. (KG)) filed by the Debtors, which are jointly administered in the Bankruptcy Court under Chapter 11 of the Bankruptcy Code.

1.20    "*Claim*" means a claim against any of the Debtors, as such term is defined in Section 101(5) of the Bankruptcy Code.

1.21    "*Class*" means a group of Claims or Interests as classified under this Plan.

1.22    "*Confirmation*" means the entry of the Confirmation Order on the docket of the Bankruptcy Court.

-4-

1.23    "*Confirmation Date*" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the Bankruptcy Court's docket.

1.24    "*Confirmation Hearing*" means the hearing at which the Bankruptcy Court approves this Plan and Confirmation Order.

1.25    "*Confirmation Order*" means the order of the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code.

1.26    "*Creditor*" means a Person that holds an Allowed Claim.

1.27    "*Creditors' Committee*" means the Official Committee of Unsecured Creditors of the Debtors first appointed in the Chapter 11 Cases by the Office of the United States Trustee on February 23, 2009, and as hereafter constituted.

1.28    "*Creditors' Committee Action*" means that adversary proceeding initiated in the Chapter 11 Cases by the Creditors' Committee against a number of former directors of Midway and the former controlling shareholders of Midway, including, without limitation, National Amusements, Inc. ("NAI"), Sumco, Inc. ("Sumco"), Sumner Redstone, Shari E. Redstone, Robert J. Steele, Joseph A. Califano, Robert N. Waxman, William C. Bartholomay, and Peter C. Brown and identified as Adv. Pro. No. 09-50968 (KG), as such action has been or may be amended from time to time.

1.29    "*Creditors' Committee Settlement*" means that settlement and compromise reached among the members of the Creditors' Committee that hold Claims against Midway and the members of the Creditors' Committee that hold Claims against the Subsidiary Debtors as reflected in this Plan. The Debtors did not participate and were not involved in the negotiations and deliberations surrounding the Creditors' Committee Settlement.

1.30    "*Disclosure Statement*" means the disclosure statement respecting this Plan approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code, as the same may be amended, modified or supplemented.

1.31    "*Disputed Claim*" means a Claim (or any portion thereof) as to which: (a) an objection has been timely filed, and such objection has not been: (i) withdrawn, or (ii) overruled or denied in whole by a Final Order; (b) before the deadline for an objection to the Claim to be filed, the amount of the Claim specified in the applicable proof of claim that exceeds the amount of any corresponding Claim scheduled by the Debtors in the Schedules or such Claim is scheduled as disputed, contingent or unliquidated by the Debtors; (c) there is a dispute as to classification of the Claim; (d) there is a dispute as to the appropriate estimated amount of such Claim under Section 502(c) of the Bankruptcy Code; (e) the Claim is contingent or unliquidated; (f) the Claim is subject to dispute, contest, offset, setoff, recoupment, defense, or counterclaim asserted in an adversary proceeding or contested matter before the Bankruptcy Court at the time of any Distribution pursuant to Section 502(d) of the Bankruptcy Code or otherwise applicable law; or (g) the Claim is not otherwise an Allowed Claim.

-5-

1.32   "_Disputed Claims Reserve_"   means the reserve established pursuant to Section 8.05 of this Plan.

1.33   "_Distribution_"   means the distribution of Cash from the Distribution Fund in accordance with this Plan and Liquidating Trust, as well as any supplemental distributions from the Distribution Fund occurring from time to time.

1.34   "_Distribution Address_"   means the last known address of a Creditor, whether derived from the Schedules, a proof of claim filed with the Court, a notice of transfer of Claim filed pursuant to Bankruptcy Rule 3001(e), or other written notification to the Debtors or the Liquidating Trustee concerning where a Distribution under this Plan is to be sent.

1.35   "_Distribution Date_"   means the date on which a Distribution is made pursuant to this Plan to holders of Allowed Claims and includes, without limitation, the Initial Distribution Date.

1.36   "_Distribution Fund_"   means the Cash available for (i) payment, in accordance with the provisions of this Plan and orders of the Bankruptcy Court entered on the docket of the Chapter 11 Cases, of Allowed Administrative Claims, Allowed Fee Claims, Allowed Secured Claims, Allowed Priority Claims, Allowed Priority Tax Claims, Allowed Class 1 Claims, Allowed Class 2 Claims and Allowed Claims in Class 3A and 3B and (ii) funding of the Disputed Claims Reserve and the Liquidating Trust Reserve Amount.

1.37   "_Distribution Record Date_"   means the close of business on the business day immediately preceding any Distribution Date.

1.38   "_Effective Date_"   means the date the conditions set forth in Section 11.02 of this Plan are satisfied or waived.

1.39   "_Estate_"   means the estate created for each of the Debtors in their Chapter 11 Cases pursuant to Section 541 of the Bankruptcy Code.

1.40   "_Executory Contract_"   means any executory contract within the meaning of Section 365 of the Bankruptcy Code in effect between the Debtors and another Person as of the Petition Date.

1.41   "_Fee Claim_"   means any Claim against the Debtors of a professional Person employed under Section 327 or 1103 of the Bankruptcy Code in accordance with Sections 328, 330 and/or 331 of the Bankruptcy Code.

1.42   "_File_" or "_Filed_"   means file or filed with the Bankruptcy Court in the Chapter 11 Cases.

1.43   "_Final Administrative Claims Bar Date_"   has the meaning set forth in Section 3.02(B) of this Plan.

900200.00001/40186703v.5

1.44 "*Final Order*" means an order or judgment, as entered on the docket of the applicable court, that has not been reversed, modified or amended, is not stayed and as to which the time to appeal or to seek review or rehearing or petition for certiorari has expired without an appeal or application for review or rehearing or petition having been Filed, or, if Filed that remains pending.

1.45 *"Former Directors"* means William C. Bartholomay, Peter C. Brown, Joseph A. Califano, Shari E. Redstone, Robert J. Steele, and Robert N. Waxman.

1.46 "*General Unsecured Claim*" means any Claim against any of the Debtors, other than a Secured Claim, Administrative Claim, Fee Claim, Priority Claim, or Priority Tax Claim.

1.47 "*Impaired*" means any Class, or any Claim or Interest in a Class, that is impaired within the meaning of Section 1124 of the Bankruptcy Code and shall include, without limitation, Class 3 Claims.

1.48 "*Indenture Trustee*" means Wells Fargo Bank, National Association solely in its capacity as Indenture Trustee of the Notes.

1.49 "*Indentures*" means, collectively, (i) the Indenture, dated as of September 19, 2005, between Midway Games Inc. and Wells Fargo Bank, National Association, as Indenture Trustee, and (ii) the Indenture, dated as of May 30, 2006, between Midway Games Inc. and Wells Fargo Bank, National Association, as Indenture Trustee.

1.50 "*Indenture Trustee Charging Lien*" means any Lien or other priority in payment to which the Indenture Trustee is entitled, pursuant to the Indentures, against distributions to be made to holders of Allowed Note Claims, for payment of any Indenture Trustee Fee.

1.51 "*Indenture Trustee Fee*" means the reasonable compensation, fees, expenses, disbursements and indemnity claims, including, without limitation, attorneys' and agents' fees, expenses and disbursements, incurred by the Indenture Trustee, whether prior to or after the Petition Date and whether prior to or after the consummation of this Plan.

1.52 "*Initial Administrative Claims Bar Date*" means December 4, 2009.

1.53 "*Initial Assumptions*" has the meaning set forth in Section 6.09(A) of this Plan.

1.54 "*Initial Defendants*" means each of the defendants originally named in the Creditors' Committee Action. For the avoidance of doubt, the Initial Defendants are NAI, Sumco, Sumner Redstone, and each of the Former Directors.

1.55 "*Initial Distribution Date*" means the date on which the first Distribution is made by the Liquidating Trustee to holders of Allowed Class 3A and Class 3B Claims in accordance with the terms of this Plan and Liquidating Trust Agreement. The Initial Distribution Date shall occur as soon as practicable after the Effective Date.

-7-

1.56    "*Intercompany Claim*" means any Claim held by any Debtor against any other Debtor.

1.57    "*Interest*" means: (a) an equity interest in Midway or a Subsidiary Debtor as the context dictates, or (b) any warrant, option, or other contractual right to purchase an equity interest in Midway or any Subsidiary Debtor.

1.58    "*IRS*" means the Internal Revenue Service of the United States of America.

1.59    "*Liquidating Trust*" means the liquidating trust established on the Effective Date, in accordance with this Plan and Liquidating Trust Agreement, for the benefit of the Liquidating Trust Beneficiaries to which the Assets will be transferred; the Liquidating Trust shall conduct no business and shall qualify as a liquidating trust pursuant to Treasury Regulations Section 301.7701-4(d).

1.60    "*Liquidation Trust Advisory Board*" means the board established and constituted as provided in the Liquidating Trust Agreement for the purpose of reviewing, advising and guiding the activities and performance of the Liquidating Trustee, and having the rights and responsibilities set forth in the Liquidating Trust Agreement. The members of the Liquidating Trust Advisory Board will be identified in the Plan Supplement.

1.61    "*Liquidating Trust Agreement*" means the trust agreement between the Debtors, the Creditors Committee and the Liquidating Trustee that, among other things, creates and establishes the Liquidating Trust, describes the powers, duties and responsibilities of the Liquidating Trustee, and provides for the liquidation and distribution of the Assets, which trust agreement shall be substantially in the form filed in the Plan Supplement.

1.62    "*Liquidating Trust Beneficiaries*" means each holder of an Allowed Class 3A and 3B Claim.

1.63    "*Liquidating Trust Interest*" has the meaning set forth in the Liquidating Trust Agreement.

1.64    "*Liquidating Trust Claims*" means all Causes of Action asserted, or which may be asserted, by or on behalf of any of the Debtors or any of the Debtors' Estates, including those Causes of Action set forth in the Creditors' Committee Action.

1.65    "*Liquidating Trustee*" means the Person selected by the Creditors' Committee, as set forth in the Plan Supplement, or, after the Effective Date, such other Person appointed by the Liquidating Trust Advisory Board in accordance with the Liquidating Trust Agreement, or as otherwise determined by the Bankruptcy Court.

1.66    "*Liquidating Trust Fund Reserve Amount*" means a reserve of $2 million, which reserve shall be in place to fund all expenses of administration of the Liquidating Trust, including, but not limited to, the fees and expenses of the professionals selected pursuant to the Liquidating Trust Agreement and the costs related thereto and any obligations under sections 5.07, 5.08, and 5.09 of the Plan.

-8-

1.67 "*Liquidating Trust Funds*" means the $2 million of Cash used to initially fund the Liquidating Trust Fund Reserve Amount plus any Cash transferred by the Debtors, any Cash generated from the liquidation of remaining Assets, any amounts held in the Disputed Claims Reserve, any proceeds recovered by the Litigation Trust from the Litigation Trust Claims, and any other funds that become available to the Liquidating Trust.

1.68 "*Lien*" means "lien" as defined in Section 101(37) of the Bankruptcy Code.

1.69 "*NAI*" means National Amusements, Inc.

1.70 "*NAI Subordinated Claim*" means the Claim asserted by NAI against Midway arising from the Unsecured Subordinated Loan Agreement, dated February 29, 2008, between NAI and Midway, which Claim is contractually subordinated to the Claims of the Noteholders.

1.71 "*Named Officers*" means Mathew Booty, Ryan O'Desky, Deborah K. Fulton and Miguel Iribarren.

1.72 "*NBA*" means NBA Properties, Inc.

1.73 "*Net Distributable Value*" ("*NDV*") means the Available Cash for Distribution to holders of Allowed Class 3A and Class 3B Claims after payment or funding of all Allowed Secured Claims, Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Claims, Allowed Fee Claims and the Liquidating Trust Fund Reserve Amount and Disputed Claims Reserve.

1.74 "*Noteholders*" means the beneficial owners of the Notes.

1.75 "*Notes*" means, collectively, the 6.0% Convertible Senior Notes due 2025, and the 7.125% Convertible Senior Notes due 2026, issued by Midway pursuant to the Indentures.

1.76 "*Ordinary Course Payment*" means a payment by any of the Debtors of a liability incurred in the ordinary course of business after the Petition Date.

1.77 "*Person*" means any individual, corporation, partnership, limited liability company, association, indenture trustee, estate, trust, an unincorporated organization, joint stock company, joint venture, the Creditors' Committee, Interest holders, creditor, administrative expense claimant, United States trustee, governmental unit or any other entity.

1.78 "*Petition Date*" means February 12, 2009.

1.79 "*Permissible Investments*" has the meaning set forth in Section 6.02(D)(iv).

1.80 "*Plan Supplement*" means the compilation of documents and form of documents, schedules and exhibits to be Filed on or before seven (7) days prior to the Voting Deadline and which may be amended from time to time until Confirmation.

-9-

1.81    "*Priority Claim*" means any unsecured Claim to the extent entitled to priority in payment pursuant to Section 507(a) of the Bankruptcy Code, other than an Administrative Claim or Priority Tax Claim.

1.82    "*Priority Tax Claim*" means any unsecured Claim to the extent entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

1.83    "*Pro Rata*" means, when used with reference to a Distribution of property pursuant to Articles III, V and XIII of this Plan, proportionately so that with respect to a particular Allowed Claim, the ratio of (i)(A) the amount of property distributed on account of such Claim to (B) the amount of such Claim, is the same as the ratio of (ii)(A) the amount of property distributed on account of all Allowed Claims of the Class in which such Claim is included to (B) the amount of all Allowed Claims in that Class and all other Classes receiving the same treatment.

1.84    "*Purchaser*" means:

    A.    with respect to the Warner Purchase Agreement, Warner and its permitted successors and assigns;

    B.    with respect to any other purchaser of Assets of any of the Debtors, such purchaser and its permitted successors and assigns.

1.85    "*Sale Transactions*" means the Warner Transaction and any and all other transactions pursuant to which Assets of the Debtors have or will be sold.

1.86    "*Schedules*" means the schedules, as may have been amended from time to time, of assets and liabilities filed by the Debtors with the Bankruptcy Court in accordance with Sections 521 and 1106(a)(2) of the Bankruptcy Code.

1.87    "*Secured Claim*" means any Claim to the extent such claim constitutes a secured Claim pursuant to Sections 506 or 1111(b) of the Bankruptcy Code.

1.88    "*State Wage Claims*" means the claims asserted after the Petition Date or which may be asserted after the Petition Date against Matthew Booty and/or Ryan O'Desky or any other former employees of any of the Debtors under the *Illinois Wage Payment and Collection Act*, 820 ILCS 115/1.16, relating to wages, vacation pay, or other compensation-related amounts allegedly due former employees of one or more of the Debtors, and any similar claims asserted after the Petition Date against any current or former employees of any of the Debtors under any similar state statutes.

1.89    "*Tax Code*" means the Internal Revenue Code of 1986, as amended.

1.90    "*Treasury Regulations*" means final, temporary and proposed regulations promulgated by the U.S. Treasury Department in respect of the Tax Code.

-10-

1.91 "*Unexpired Lease*" means any unexpired lease of real or personal property within the meaning of Section 365 of the Bankruptcy Code in effect between any of the Debtors and another Person as of the Petition Date.

1.92 "*U.S. Trustee*" means the Office of the United States Trustee for Region 3.

1.93 "*Voting Deadline*" means the deadline to vote on this Plan as may be set by the Bankruptcy Court.

1.94 "*Warner*" means Warner Bros. Entertainment Inc.

1.95 "*Warner Purchase Agreement*" means that certain Asset Purchase Agreement, dated as of May 20, 2009, by and among Midway and the other sellers listed on Schedule A thereto and Warner, as may be amended consistent with the Warner Sale Order.

1.96 "*Warner Sale Motion*" means the sale motion filed by the Debtors with the Bankruptcy Court seeking authority to consummate the Warner Transaction.

1.97 "*Warner Sale Order*" means the order approving the Sale Transaction among Midway and Warner entered in the Chapter 11 Cases on July 1, 2009 at Docket No. 477.

1.98 "*Warner Transaction*" means the transaction evidenced and authorized by the Warner Purchase Agreement and the Warner Sale Order.

## ARTICLE II
## CREDITORS' COMMITTEE SETTLEMENT;
## SUBSTANTIVE CONSOLIDATION OF ASSETS AND LIABILITIES
## OF DEBTORS; CANCELLATION OF INTERCOMPANY CLAIMS

2.01 *Settlement and Compromise.* As more fully described herein, this Plan will implement the Creditors' Committee Settlement, pursuant to which the Estates will be substantively consolidated for purposes of the classification and treatment of claims and distributions to Creditors in Classes 3A and 3B in accordance with the provisions of Section 6.09 of this Plan. Although the Debtors were not party to the negotiations that led to the Creditors' Committee Settlement, the Debtors have agreed to seek implementation of the Creditors' Committee Settlement through this Plan. To the extent necessary, this Plan constitutes a motion for approval of the aforementioned compromise and settlement pursuant to Bankruptcy Rule 9019 and Section 1123(b)(3) of the Bankruptcy Code and consistent with Section 1129 of the Bankruptcy Code. The Confirmation Order, subject to the occurrence of the Effective Date, will constitute an order of the Bankruptcy Court finding and determining that such compromise and settlement is (a) in the best interests of the Debtors, their Estates, and creditors holding Claims in Class 3A and Class 3B, (b) fair, equitable and reasonable, (c) made in good faith and (d) approved by the Bankruptcy Court.

2.02 *Substantive Consolidation.* The Plan also shall serve as a motion by the Debtors seeking entry, pursuant to Section 105 of the Bankruptcy Code, of an order authorizing, upon the Effective Date, the substantive consolidation of the Estates and all of the debts of all of the

-11-

Debtors for purposes of classifying and treating all Claims under this Plan, including for voting, confirmation and Distribution purposes; provided, however, that the Creditors' Committee Settlement specifically provides for treatment of holders of Claims in Class 3A, Class 3B and Class 4 in the manner specified in Section 6.09 of this Plan. Substantive consolidation will not (i) alter the state of incorporation of any Debtor for purposes of determining the applicable law of any of the Causes of Action, (ii) alter or impair the legal and equitable rights of the Liquidating Trustee to enforce any of the Causes of Action, or (iii) otherwise impair, release, discharge, extinguish or affect any of the Causes of Action or issues raised as a part thereof.

If substantive consolidation is ordered as provided herein, then on and after the Effective Date, and subject to the Creditors' Committee Settlement's treatment of Claims in Class 3A, Class 3B and Class 4, all assets and liabilities of the Debtors shall be treated under the Liquidating Trust as though they were merged into the Estate of Midway for purposes of treatment of and distributions on Allowed Claims. All guarantees by any Debtor of the obligations of any other Debtor shall be eliminated so that any Claim and any guarantee thereof by any other Debtor, as well as any joint and several liability of any Debtor with respect to any other Debtor, shall be treated as one collective obligation of the Debtors. Substantive consolidation shall not affect any prepetition or postpetition guarantees, Liens, or security interests that are required to be maintained under the Bankruptcy Code, under this Plan, or in connection with contracts or leases that were assumed or entered into during the Chapter 11 Cases. Any alleged defaults under any applicable agreement with the Debtors arising from substantive consolidation under this Plan shall be deemed cured as of the Effective Date. Notwithstanding anything in this Plan or in the Confirmation Order to the contrary, the entry of the Confirmation Order ordering substantive consolidation of the Estates shall not have any effect upon the separate and distinct legal entities as they existed at the time of any prepetition transaction that is the subject of any litigation asserting claims for fraudulent conveyance; *provided, however,* that the foregoing provisions shall not serve to prejudice or compromise whatever rights, if any, the Debtors or the Liquidating Trustee, as applicable, may have to contend in any pending or future adversary proceeding that the Debtors or the Liquidating Trustee, as applicable, may prosecute claims for fraudulent conveyance arising from transfers made by one or more of the Debtors based on any theory or doctrine, including any federal, state, or common law alter-ego, veil-piercing, or any other theory or doctrine that would permit or require the disregard of corporate separateness, or facts as they existed at the time of the transaction in question. Substantive consolidation shall not affect the obligation of each Debtor or the Liquidating Trustee to pay quarterly fees to the Office of the United States Trustee pursuant to 28 U.S.C. §1930 until the earliest to occur of a case being closed, converted, or dismissed.

2.03 *Cancellation of Intercompany Claims.* Upon the Effective Date, all Intercompany Claims and Interests will be extinguished except as necessary to preserve the Causes of Action and the other Liquidating Trust Assets.

-12-

## ARTICLE III
## TREATMENT OF UNCLASSIFIED CLAIMS

3.01    *Administrative Claims.*  Administrative Claims are unclassified under this Plan. Each holder of an Allowed Administrative Claim shall receive: (a) to the extent not already paid in full, payment in full in Cash, without interest, as soon as practicable after the later of the Effective Date and the date such Administrative Claim becomes an Allowed Administrative Claim; or (b) to the extent not yet due and payable, payment in accordance with the terms and conditions of the particular transaction giving rise to the Administrative Claim; or (c) to the extent such Claims are Administrative Claims of the U.S. Trustee for fees pursuant to 28 U.S.C. § 1930(a)(6), payment in full in Cash in accordance with the applicable schedule for payment of such fees; or (d) treatment on such other terms as may be mutually agreed upon in writing between the holder of such Allowed Administrative Claim and the Debtors or the Liquidating Trustee; *provided, however,* that interim and/or final payment of Allowed Administrative Claims shall be made in accordance with this Plan or subsequent Bankruptcy Court approval.

3.02    *Administrative Claim Bar Dates.*

   A.    *Initial Administrative Claims Bar Date.*    Requests for payment of Administrative Claims that arose during the period from the Petition Date through and including September 30, 2009 were required to be filed and served pursuant to the procedures set forth in the Bankruptcy Court's order dated September 29, 2009 no later than the Initial Administrative Claims Bar Date.  Any Person that was required to but failed to file such an Administrative Claim request on or before the Initial Administrative Claims Bar Date forever shall be barred from asserting such Administrative Claim against the Debtors or the Estates.

   B.    *Final Administrative Claims Bar Date.*    All Administrative Claims accruing on or after September 30, 2009 and not otherwise paid in the ordinary course of the Debtors' business shall be filed with the Bankruptcy Court within forty-five (45) days following the Effective Date (the "*Final Administrative Claims Bar Date*"), and objections (if any) to such Administrative Claims shall be filed no later than ninety (90) days after the Effective Date.

   C.    *Failure to Timely File.*    Any Person that fails to file a timely request for the payment of an Administrative Claim shall (a) be forever barred, estopped and enjoined from asserting such Administrative Claim against each of the Debtors, the Liquidating Trust, the Assets, or the Liquidating Trust Funds (or filing a request for the allowance thereof in the event such Person received sufficient notice of the applicable Administrative Claims Bar Date); (b) not be permitted to participate in any Distribution under this Plan on account of such Administrative Claim, and (c) be enjoined from commencing or continuing any action, employment of process or act to collect, offset or recover any such Administrative Claim against the Debtors, the Liquidating Trust, the Assets, or the Liquidating Trust Funds.

3.03    *Fee Claims.*  Fee Claims are unclassified under this Plan.  Each holder of an Allowed Fee Claim shall receive, in Cash, to the extent not already paid, the amounts allowed by the Bankruptcy Court: (a) on or as soon as practicable following the date upon which the Bankruptcy Court enters a Final Order allowing such Allowed Fee Claim; or (b) upon such other

-13-

terms as may be mutually agreed upon between the holder of such Allowed Fee Claim and the Debtors or the Liquidating Trustee. Any and all parties requesting allowance and/or payment of a Fee Claim for any period ending on or before the Effective Date must file and serve final fee applications therefor no later than forty-five (45) days after the Effective Date or be forever barred from requesting allowance of such Fee Claims.

3.04    *Priority Tax Claims.* Priority Tax Claims are unclassified under this Plan. As soon as practicable after the later of (a) the Effective Date or (b) the date on which a Priority Tax Claim becomes an Allowed Claim, such Allowed Priority Tax Claim shall be paid in full in Cash unless otherwise agreed in writing between the holder of such Allowed Priority Tax Claim and the Debtors or the Liquidating Trustee.

## ARTICLE IV
## CLASSIFICATION OF CLAIMS AND INTERESTS

4.01    *General Rules of Classification.* A Claim or Interest is classified in a particular Class for voting and Distribution purposes only to the extent the Claim or Interest has not been paid, released or otherwise satisfied and qualifies within the description of that Class, and is classified in another Class or Classes to the extent any remainder of the Claim or Interest qualifies within the description of such other Class or Classes.

For purposes of this Plan, Claims and Interests are classified as follows:

4.02    "*Class 1 Claims*" shall consist of all Allowed Secured Claims against any Debtor.

4.03    "*Class 2 Claims*" shall consist of all Allowed Priority Claims against any Debtor.

4.04    "*Class 3A Claims*" shall consist of all Allowed General Unsecured Claims against Midway, except the Class 4 Claim.

4.05    "*Class 3B Claims*" shall consist of all Allowed General Unsecured Claims against any Subsidiary Debtor.

4.06    "*Class 4 Claim*" shall consist of the NAI Subordinated Claim to the extent it is an Allowed Claim.

4.07    "*Class 5 Interests*" shall consist of all Interests.

## ARTICLE V
## TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

Each Allowed Claim shall receive the treatment specified below for the applicable Class in full settlement and satisfaction of all rights of the holder with respect to such Allowed Claim; *provided, however*, that the holder of such Claim may agree in writing to receive less favorable treatment. The treatment of Claims herein shall be consistent with the priority scheme set forth in Section 507 of the Bankruptcy Code.

-14-

5.01     *Class 1 Secured Claims.*  Class 1 is not Impaired.  On or as soon as practicable after the later of:  (a) the Effective Date, or (b) the date on which a Class 1 Claim becomes an Allowed Claim, the Liquidating Trustee shall, at its election, either (1) pay such Allowed Class 1 Claim in full in Cash, without interest, or (2) return the collateral securing such claim to the holder of such Allowed Class 1 Claim.

5.02     *Class 2 Priority Claims.*  Class 2 is not Impaired.  On or as soon as practicable after the later of:  (a) the Effective Date, or (b) the date on which a Class 2 Claim becomes an Allowed Class 2 Claim, the Liquidating Trustee shall pay such Allowed Class 2 Claim in full in Cash, without interest.

5.03     *Class 3A General Unsecured Claims against Midway.*  Class 3A is Impaired.  On or as soon as practicable after the later of:  (a) the Effective Date or (b) the date any such Class 3A General Unsecured Claim becomes an Allowed Class 3A Claim, the Liquidating Trustee shall pay such Allowed Class 3A Claim its Pro Rata share of Net Distributable Value in accordance with the Creditors' Committee Settlement.

5.04     *Class 3B General Unsecured Claims against Subsidiary Debtors.*  Class 3B is impaired.  On or as soon as practicable after the later of:  (a) the Effective Date or (b) the date any such Class 3B General Unsecured Claim becomes an Allowed Class 3B Claim, the Liquidating Trustee shall pay such Allowed Class 3B Claim its Pro Rata share of the Net Distributable Value in accordance with the Creditors' Committee Settlement.

5.05     *Class 4 NAI Subordinated Claim against Midway.*  Class 4 is Impaired.  The Class 4 Claim shall receive no Distribution of any kind under this Plan on account of such Claim in accordance with the Creditors' Committee Settlement and is deemed to reject this Plan.

5.06     *Class 5 Interests.  Class 5 is Impaired.*  Class 5 Interests shall receive no Distribution of any kind under this Plan on account of such Interests and are deemed to reject this Plan, except the Debtors that hold Interests in any of the other Debtors are deemed to accept this Plan.  On the Effective Date all warrants, options or other contractual rights to purchase an Interest in Midway or any Subsidiary Debtor shall be deemed canceled and of no further force and effect.

5.07     *State Wage Claims.*  Subject to Section 5.10 of this Plan, Debtors, and after the Effective Date, the Liquidating Trustee shall defend, indemnify and hold harmless, to the extent provided in the applicable certificates of incorporation, by-laws or similar constituent documents of any of the Debtors or by written agreement, policies, or procedures of any such Debtors or by statute, Matthew Booty, Ryan O'Desky and all other employees of any of the Debtors from and against the State Wage Claims and shall settle, compromise and/or pay any amounts required to be paid by any of Matthew Booty, Ryan O'Desky and/or, if applicable, any other employees of the Debtors, if and to the extent the State Wage Claims or any of them are adversely determined against any of Messrs. Booty and/or O'Desky and/or any other such employee.  The obligations under this Section 5.07 shall be paid and performed as an Allowed Administrative Claim.

-15-

5.08    *Corporate Indemnities for Post-Petition Date Service.* Notwithstanding any other term or provision contained herein, but subject to Section 5.10 of this Plan, Debtors, and after the Effective Date, the Liquidating Trustee shall defend, indemnify and hold harmless any Person who has served as one of the Debtors' directors, officers or employees, or as a director, officer or employee of another corporation, partnership or other legal entity but only to the extent (a) that such Person would have been entitled to such defense, indemnification and hold harmless as of the Petition Date in the applicable certificates of incorporation, by-laws or similar constituent documents of any of the Debtors or by written agreement, policies or procedures of any of such Debtors or by statute, in each case for post-Petition Date service in such capacity and (b) that any issuer of officer and director insurance policy is not defending, indemnifying or holding harmless such Person and (c) such Person's liability under such claim arises from a post-Petition Date act, omission, transaction, agreement, event or other occurrence in his or her capacity as an officer, director or employee (as applicable). The foregoing obligations of the Debtors and the Liquidating Trustee shall not apply to (i) the Initial Defendants (ii) any pre-Petition Date act, omission, transaction, agreement, event or other occurrence or (iii) any Claim (including Administrative Claims) filed or asserted in these Chapter 11 Cases prior to the Effective Date by a Person entitled to the protections set forth in this Section 5.08. The obligation to defend, indemnify and hold harmless as set forth in this Section 5.08 shall be paid and performed as an Allowed Administrative Claim. Notwithstanding the foregoing, (A) the Liquidating Trustee shall not be required to maintain any reserve for claims that may arise under this Section 5.08 and (B) the obligation to defend, indemnify and hold harmless as set forth in this Section 5.08 shall not apply to any Claims made later than the earlier of (i) the expiration of eighteen (18) months after the Effective Date or (ii) the date on which an order for a final decree closing the Chapter 11 Cases has been entered in accordance with the Bankruptcy Code and the Bankruptcy Rules.

5.09    *Corporate Indemnities for Pre-Petition Date Service.* Notwithstanding any other term or provision contained in this Plan, but subject to Section 5.10 of this Plan, the Debtors, and after the Effective Date, the Liquidating Trustee shall defend, indemnify and hold harmless the Named Officers against any claim against such Persons based on conduct or acts occurring prior to the Petition Date that would have been covered under the Debtors' directors and officers insurance policy that was in effect as of the Petition Date had such claim been made immediately prior to the Petition Date; provided that the obligations of the Debtors or the Liquidating Trustee under this Section 5.09 shall not exceed an aggregate of $500,000 and shall not apply to any Claims made later than the earlier of (i) the expiration of eighteen (18) months after the Effective Date or (ii) the date on which an order for a final decree closing the Chapter 11 Cases has been entered in accordance with the Bankruptcy Code and Bankruptcy Rules and, *provided, further*, that the foregoing defense and indemnity under this Section 5.09 shall not apply (i) to any Persons other than the Named Officers, (ii) any post-Petition act, omission, transaction, agreement, event or other occurrence or (iii) any Claim (including Administrative Claims) filed or asserted by any of the Named Officers in these Chapter 11 Cases. Furthermore, any Allowed Claims for indemnification arising under the applicable certificates of incorporation, by-laws or similar constituent documents of any of the Debtors or by written agreement, policies or procedures of any of the Debtors or by statute and relating to pre-Petition Date acts or conduct and any claims described in the first sentence of this Section 5.09 in excess of the dollar limitation or outside the time limitation shall be treated as Allowed Class 3A Claims. The

-16-