Liquidating Trustee shall provide the Named Officers and all other Persons requesting written notice with at least twenty (20) days notice of the Liquidating Trustee's intent to make a final Distribution and/or to close the Chapter 11 Cases.

5.10    *Resolution of Claims of Named Officers.* The defense, indemnification and hold harmless obligations set forth in provisions of Section 5.07, 5.08 and 5.09 above and ARTICLE X of this Plan, and Confirmation of this Plan, are conditioned upon (i) the withdrawal and termination of all indemnification-based Claims filed by the Named Officers, (ii) the resolution, to the satisfaction of the Creditors' Committee, of all Claims filed by the Named Officers for severance, paid time off and any other matters prior to or in connection with the Confirmation Hearing and (iii) the acknowledgment by the Named Officers that, as of the date of Confirmation, they have no knowledge of any undisclosed claims asserted against them that would trigger the provisions of sections 5.08 or 5.09 of the Plan.

## ARTICLE VI
## MEANS OF IMPLEMENTATION OF THE PLAN

6.01    *The Sale Transactions.* The Debtors, or the Liquidating Trustee, as the case may be, shall fulfill any remaining obligations of the Estates in respect of the Sale Transactions, subject to the Estates' rights and claims in respect of such Sale Transactions.

6.02    *Liquidating Trust.*

A.    *Establishment of Liquidating Trust.* On or prior to the Effective Date, the Debtors, the Creditors' Committee and the Liquidating Trustee shall execute the Liquidating Trust Agreement and shall take all other steps necessary to establish the Liquidating Trust for the benefit of the Liquidating Trust Beneficiaries in accordance with and pursuant to the terms of this Plan. The terms of the Liquidating Trust Agreement, together with this Plan, shall define the obligations, duties, compensation, indemnification and exculpation of the Liquidating Trustee in full.

B.    *Funding of Liquidating Trust.* The Liquidating Trust will be funded with all of the Assets, including the Liquidating Trust Claims, on the Effective Date of this Plan.

C.    *Appointment of Liquidating Trustee.* The identity of the Liquidating Trustee will be designated in the Plan Supplement. The structure and governance of the Liquidating Trust shall be determined and will be set forth in the Liquidating Trust Agreement included in the Plan Supplement. The Liquidating Trustee shall be the sole representative of the Debtors with respect to Causes of Action for purposes of Section 1123(b)(3)(B) of the Bankruptcy Code and, upon the Effective Date, subject to the provisions of the Liquidating Trust Agreement, such Causes of Action shall be subject to the exclusive control and authority of the Liquidating Trustee. Any recoveries by the Liquidating Trust will be maintained in the Distribution Fund and distributed by the Liquidating Trustee to holders of Allowed Claims in accordance with this Plan and the Liquidating Trust Agreement. In the event the Liquidating Trustee is no longer willing or able to serve as trustee, then the Liquidating Trustee's successor shall be appointed by the Liquidating Trust Advisory Board in accordance with the provisions of

-17-

the Liquidating Trust Agreement and notice of the appointment of such successor Liquidating Trustee shall be filed with the Bankruptcy Court.

D.  *Provisions Applicable to Liquidating Trust.*

(i)  *Transfer and Vesting of Liquidating Trust Assets in Liquidating Trust.* Notwithstanding any prohibition of assignability under applicable non-bankruptcy law, on the Effective Date and periodically thereafter if additional Assets become available, the Debtors and the Creditors' Committee shall be deemed to have automatically transferred to the Liquidating Trust all of their right, title, and interest in and to all of such Assets, including, without limitation, the Liquidating Trust Claims, and in accordance with Section 1141 of the Bankruptcy Code, all such Assets shall automatically irrevocably vest in the Liquidating Trust free and clear of all Claims and Liens, subject only to the Allowed Claims of the applicable Liquidating Trust Beneficiaries, as set forth in this Plan, and the reasonable fees and expenses of administering the applicable Liquidating Trust, including, without limitation, the reasonable fees and expenses of its Liquidating Trustee, as provided in the Liquidating Trust Agreement. Thereupon, the Debtors and Creditors' Committee shall have no interest in or with respect to such additional Assets or the Liquidating Trust. All rights in connection with the vesting and transfer of the Assets, including the Liquidating Trust Claims, and any attorney-client privileges, work-product protection, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Liquidating Trust shall vest in the Liquidating Trust. The Liquidating Trust Claims shall also include any other claims or causes of action against third parties not presently asserted by the Debtors or Creditors' Committee. All bank accounts established by the Debtors shall be transferred to and held by the Liquidating Trustee on behalf of the Liquidating Trust Beneficiaries, subject to the provisions of this Plan and the Liquidating Trust Agreement. The Debtors, the Creditors' Committee and the Liquidating Trustee are authorized to take all necessary actions to effectuate the transfer of such privileges, protections and immunities.

Notwithstanding the foregoing, for purposes of Section 553 of the Bankruptcy Code, the transfer of the Liquidating Trust Claims to the Liquidating Trust will not affect the mutuality of obligations which otherwise may have existed prior to the effectuation of such transfer. Notwithstanding anything to the contrary in this Plan, the transfer of the Liquidating Trust Claims does not diminish, and fully preserves, any defenses a defendant would have if such Liquidating Trust Claims had been retained by the Debtors.

(ii)  *Preservation of Confidences and Attorney-Client Privilege.* To effectively investigate, marshal, defend or pursue the Assets, including the Liquidating Trust Claims, the Debtors, the Creditors' Committee, the Liquidating Trust, the Liquidating Trustee and the Liquidating Trust Advisory Board, and all counsel thereto, must be able to exchange information with each other on a confidential basis and cooperate in common interest efforts without waiving any applicable privilege. Given the common interests of the parties and the Liquidating Trust's position as successor to the Assets, including the Liquidating Trust Claims, sharing such information in the manner described in the previous sentence, shall not waive or limit any applicable privilege or exemption from disclosure or discovery related to such information. The Debtors, the Creditors' Committee, the Liquidating Trustee and the

-18-

Liquidating Trust Advisory Board are authorized to take all necessary actions to effectuate the transfer of such privileges. The Confirmation Order will provide that the receipt by the Liquidating Trustee and the Liquidating Trust Advisory Board of transferred privileges shall be without waiver in recognition of the joint and/or successorship interest in prosecuting claims on behalf of the Debtors' estates. Notwithstanding any agreement or order entered by the Bankruptcy Court to the contrary, the Creditors' Committee will be permitted to share any discovery obtained prior to and after the Effective Date with the Liquidating Trustee and the Liquidating Trustee Advisory Board.

(iii) *Treatment of Liquidating Trust for U.S. Federal Income Tax Purposes; No Successor-in-Interest.* The Liquidating Trust shall be established for the primary purpose of liquidating its assets, in accordance with Treasury Regulation Section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust. Accordingly, the Liquidating Trustee shall in an expeditious but orderly manner, liquidate and convert to Cash the Assets, including, the Liquidating Trust Claims, make timely distributions of the proceeds therefrom to the Liquidating Trust Beneficiaries and not unduly prolong their duration. The Liquidating Trust shall not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth herein or in the Liquidating Trust Agreement.

The Liquidating Trust is intended to qualify as a "grantor trust" for federal income tax purposes with the Liquidating Trust Beneficiaries treated as grantors and owners of the Liquidating Trust. For all U.S. federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) shall treat the transfer of the Assets by the Debtors to the Liquidating Trust, as set forth in the Liquidating Trust Agreement, as a transfer of such assets by the Debtors to the Liquidating Trust Beneficiaries entitled to distributions from the Liquidating Trust Assets, followed by a transfer by such beneficiaries to the Liquidating Trust. Thus, the Liquidating Trust Beneficiaries shall be treated as the grantors and owners of a grantor trust for U.S. federal income tax purposes.

As soon as practicable after the Effective Date, the Liquidating Trustee (to the extent that he or she deems it necessary or appropriate in his or her sole discretion) shall value the Assets in the Liquidating Trust, based on the good faith determination of the Liquidating Trustee, and shall apprise his or her Liquidating Trust Beneficiaries of such valuation. The valuation shall be used consistently by all parties (including the Debtors, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) for all federal income tax purposes. The Bankruptcy Court shall resolve any dispute regarding the valuation of the Assets.

(iv) *Investment and Distribution of Liquidating Trust Assets.* The right and power of the Liquidating Trustee to invest the Assets transferred to the Liquidating Trust, the proceeds thereof, or any income earned by the Liquidating Trust, shall be limited to the right and power to (i) invest such Assets (pending distributions in accordance with this Plan) in investments consistent with Section 345 of the Bankruptcy Code and which are (a) direct obligations of, or obligations guaranteed by, the United States of America, or (b) obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States as an agency or instrumentality thereof; *provided, however,* that

-19-

the scope of any such investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treasury Regulations Section 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise ("*Permissible Investments*").

Subject to the provisions of this Article VI, the Liquidating Trustee shall distribute to the Liquidating Trust Beneficiaries all Available Cash plus all net cash proceeds from the subsequent liquidation of the Assets (including as Cash for this purpose, all Cash equivalents) at such time intervals as decided by the Liquidating Trustee following consultation with the Liquidating Trust Advisory Board, pursuant to and in accordance with the terms of this Plan and the Liquidating Trust Agreement. The Liquidating Trustee shall make distributions from the Liquidating Trust no less frequently than once per twelve-month period, such period to be measured from the Effective Date; *provided, however,* that the Liquidating Trustee may, following consultation with the Liquidating Trust Advisory Board, cause the Liquidating Trust to retain an amount of net cash proceeds or net cash income reasonably necessary to maintain the value of its Assets or to meet Claims and contingent liabilities (including Disputed Claims). The Liquidating Trustee may also determine that in a given period or on the anniversary of the Effective Date, there are insufficient assets to make a Distribution.

In accordance with and subject to the provisions of the Liquidating Trust Agreement, upon the creation of the Liquidating Trust, the Liquidating Trustee shall reserve no less than the Liquidating Trust Fund Reserve Amount to satisfy obligations under the Plan and the payment of professional and other fees and expenses to be incurred by the Debtors or the Liquidating Trustee in implementing and consummating the terms of this Plan, winding up the affairs of the Debtors and otherwise completing the tasks necessary for the operation and administration of the Liquidating Trust and to close the Chapter 11 Cases.

The Liquidating Trustee shall require any Liquidating Trust Beneficiary or other distributee to furnish to the Liquidating Trustee in writing its Employer or Taxpayer Identification Number as assigned by the IRS and the Liquidating Trustee may condition any distribution to any Liquidating Trust Beneficiary or other distributee upon receipt of such identification number.

(v)     *Liquidating Trustee's Authority and Duties.* From and after the Effective Date, the Liquidating Trustee shall serve as trustee of the Liquidating Trust, and shall have all powers, rights and duties of a trustee, as set forth in the Liquidating Trust Agreement. Among other things, the Liquidating Trustee shall, subject to the Liquidating Trust Agreement: (a) administer this Plan; (b) hold and administer the Assets, including the Liquidating Trust Claims, (c) subject to the obligation to consult with the Liquidating Trust Advisory Board, have the sole authority and discretion on behalf of the Liquidating Trust to evaluate and determine strategy with respect to any and all Liquidating Trust Claims Action, and to litigate, settle, transfer, release or abandon and/or compromise in any manner any and all such Liquidating Trust Claims on any terms and conditions as it may determine in good faith based on the best interests of the Liquidating Trust Beneficiaries, (d) have the power and authority to retain, as an expense of the Liquidating Trust, attorneys, advisors, other professionals and employees as may

-20-

be appropriate to perform the duties required of the Liquidating Trustee hereunder or in the Liquidating Trust Agreement, (e) invest, segregate, deposit, reserve and distribute Cash, (f) make distributions to the Liquidating Trust Beneficiaries as provided in the Liquidating Trust Agreement and this Plan, (g) have the right to receive reasonable compensation for performing services as the Liquidating Trustee and to pay the reasonable fees, costs and expenses of any counsel, professionals, advisors or employees as may be necessary to assist the Liquidating Trustee in performing the duties and responsibilities required under this Plan and the Liquidating Trust Agreement, (h) file, litigate, settle, compromise or withdraw objections to Claims as set forth in Article XII herein, (i) have the right to provide periodic reports and updates to the Liquidating Trust Board and the Liquidating Trust Beneficiaries regarding the status of the administration of the Assets, including, the Liquidating Trust Claims, and the liabilities and transfers of the Liquidating Trust, (j) file customary quarterly reports with the Bankruptcy Court within forty-five (45) days of the end of the applicable quarterly period and serve copies of such reports on Persons requesting written notice thereof, (k) pay quarterly fees when due to the Office of the United States Trustee until the earliest to occur of a Debtor's case being closed, converted, or dismissed, and (l) file appropriate tax returns. The Liquidating Trustee may also consult the Liquidating Trust Advisory Board at such times and with respect to such issues relating to the conduct of the Liquidating Trust as the Liquidating Trustee considers desirable and in accordance with the terms of the Liquidating Trust Agreement.

(vi)     *Sale, Transfer or Abandonment of Non-Cash Property.*     Any non-Cash property of the Estates may be sold, transferred or abandoned by the Liquidating Trustee, so long as such sale, transfer or abandonment complies with the terms of this Plan and requirements of the Bankruptcy Code and applicable law. Notice of such sale, transfer, or abandonment shall ·be provided to the Bankruptcy Court, the U.S. Trustee, and any necessary governmental agencies. If, in the Liquidating Trustee's judgment, any non-Cash property cannot be sold in a commercially reasonable manner, the Liquidating Trustee shall have the right to abandon or otherwise dispose of such property, including by donation of such property to a charity or a local state or county Person. Except in the case of willful misconduct, gross negligence, fraud or criminal conduct, no Person or party in interest shall have a cause of action against the Liquidating Trustee, arising from or related to the disposition of non-Cash property in accordance with the terms of this Plan.

(vii)     *Termination of Liquidating Trust.*     The Liquidating Trust will terminate as soon as practicable, but in no event later than the fifth (5th) anniversary of the Effective Date; *provided, however*, that, on or prior to the date of such termination, the Bankruptcy Court, upon motion by a party-in-interest, may extend the term of the Liquidating Trust for a finite period, if such an extension is necessary to liquidate the Assets or for other good cause. Notwithstanding the foregoing, multiple extensions may be obtained so long as Bankruptcy Court approval is obtained prior to the expiration of each extended term; *provided further, however*, that the Liquidating Trustee receives an opinion of counsel or a favorable ruling from the IRS that any further extension would not adversely affect the status of the Liquidating Trust as a grantor trust for U.S. federal income tax purposes.

-21-

(viii) *Termination of Liquidating Trustee.* The duties, responsibilities and powers of the Liquidating Trustee shall terminate in accordance with the terms of the Liquidating Trust Agreement.

(ix) *Exculpation; Indemnification.* **As further set forth in the Liquidating Trust Agreement, the Liquidating Trustee, the members of the Liquidating Trust Advisory Board, and their respective professionals, and any duly authorized agent or representative thereof (in its capacity as such) are hereby exculpated and, from the Assets, indemnified and held harmless from and against liabilities, including, without limitation, reasonable attorneys' fees arising out of or due to their actions or omissions, or consequences in respect of the Debtors and Plan implementation or consummation, other than acts arising from each such Person's willful misconduct, gross negligence, fraud or criminal conduct.**

(x) *Preservation of Records and Documents.* The Liquidating Trustee shall: (i) take commercially reasonable efforts to preserve all records and documents (including any electronic records or documents) related to the Assets and Causes of Action (including, the Liquidating Trust Claims), as applicable and necessary, for a period of five (5) years from the Effective Date or, if actions with respect to any applicable Causes of Action are then pending, until the Liquidating Trustee notifies the Liquidating Trust Beneficiaries such records are no longer required to be preserved; and (ii) provide the Liquidating Trust, the Liquidating Trust Beneficiaries and their respective counsel, agents and advisors, with reasonable access to such records and documents.

(xi) *Discovery.* The Liquidating Trustee shall be authorized to employ Bankruptcy Rule 2004 and any other bankruptcy tools of discovery as such are available to the Estates.

6.03 *Dismissal of Officers and Directors and Dissolution of Debtors and Board.* Upon the Effective Date, (i) the existing board of directors of any Debtor and any remaining officer of any Debtor shall be dismissed and (ii) each of the Debtors shall be deemed dissolved without any further action required on the part of the Debtors, the shareholders of the Debtors, or the officers and directors of the Debtors.

6.04 *Binding Effect.* Except as otherwise expressly provided in this Plan, on and after the Effective Date, this Plan shall bind the Creditors' Committee and all Holders of Claims and Equity Interests.

6.05 *Corporate Action.* Each of the matters provided for under this Plan involving any corporate action to be taken or required by the Debtors shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved without any requirement of further action by the Debtors, the Debtors' shareholders or the Debtors' boards of directors or managers. Without limiting the foregoing, including, without limitation, this Section 6.05 of this Plan, the Debtors (and their respective boards of directors or managing bodies) are hereby authorized in their sole discretion, to dissolve or otherwise terminate on the Effective Date (i) their existence, by filing a certificate of dissolution and a copy

-22-

of the Confirmation Order with the Secretary of State of their respective States of incorporation, (ii) the existence of wholly-owned non-Debtor subsidiaries, or (iii) any remaining health, welfare or benefit plans. As of the Effective Date, neither the Debtors nor the Liquidating Trustee shall be required to file any document, or take any other action, to withdraw any Debtor's business operation from any state in which it previously conducted business operations. The Confirmation Order shall contain directing language to the appropriate governmental units to such effect.

6.06 *Effectuating Documents and Further Transactions*. The Debtors, the Creditors' Committee and the Liquidating Trustee shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases and other agreements and take such other action as may be necessary to effectuate and further evidence the terms and conditions of this Plan.

6.07 *Cancellation of Notes, Instruments, Indentures and Interests*. On the Effective Date, except to the extent provided otherwise in this Plan, any non-executory agreement, note, instrument, certificate or other document evidencing or creating any Claim or Equity Interest in or against any of the Debtors, including without limitation the Notes and the Indentures, shall be automatically cancelled, discharged and terminated and of no further force and effect, without any further act or action by the Debtors or the Indenture Trustee, and deemed surrendered without further act or action under any applicable agreement, law, regulation, order or rule and any obligations of the Debtors under the agreements, notes, instruments, certificates or other documents governing such Claims and Interests shall be terminated provided, however, that the Notes and the Indentures shall continue in effect solely for the purposes of (i) allowing Noteholders to receive their Distributions hereunder, (ii) allowing the Indenture Trustee to make the Distributions to be made on account of the Notes, and (iii) permitting the Indenture Trustee to assert its Indenture Trustee Charging Lien against such Distributions for payment of the Indenture Trustee Fee. The cancellation of Interests effected by this Plan shall be without affect on and without prejudice to any claims asserted on behalf of the Estates in the Creditors' Committee Action.

6.08 *Closing of the Chapter 11 Cases*. At such time as the Liquidating Trustee deems appropriate, after all Disputed Claims filed against the Debtors have become Allowed Claims or have been disallowed by Final Order, all remaining Assets have been liquidated and converted into Cash or otherwise disposed of or abandoned, including Liquidating Trust Claims and such Cash has been distributed in accordance with this Plan, the Liquidating Trustee shall seek an order from the Bankruptcy Court for a final decree closing the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.

6.09 *Creditors' Committee Settlement*. The principal terms of the Creditors' Committee Settlement were reached during discussions that took place in October, 2009 between the members of the Creditors Committee that hold Class 3A and Class 3B Claims respectively. The Debtors were not party to those negotiations and deliberations. The terms and provisions of the Creditors' Committee Settlement are set forth below and are to be implemented by this Plan:

A. *Initial Assumptions*. Distributions on account of Allowed Class 3A Claims and Class 3B Claims and the determination that Class 4 Claims will receive no

Distributions are based upon the following initial preliminary assumptions made by the Creditors' Committee in October, 2009 (the "*Initial Assumptions*"):

(i)     Net Distributable Value ("NDV") available to holders of Class 3A Claims and Class 3B Claims after payment of all Allowed Secured Claims, Allowed Administrative Claims, Allowed Priority Claims, Allowed Priority Tax Claims, Allowed Fee Claims and the Liquidating Trust Reserve, is estimated to be $34.67 million.

(ii)    Aggregate Allowed Class 3A Claims of $154.82 million;

(iii)   Aggregate Allowed Class 3B Claims of $36.66 million; and

(iv)    Allowed Class 4 Claims, but for the substantive consolidation, would be structurally subordinate to the payment in full of the Class 3B Claims and are contractually subordinate to payment in full of the Notes which constitute substantially all of the Class 3A Claims. Midway is a holding company and substantially all of its Assets were owned by its subsidiaries. Because of the substantial disparity between the NDV and the total amount of Class 3A and Class 3B Claims, it is unlikely that under any set of circumstances there would ever be any Assets available to make a Distribution to the holders of Allowed Class 4 Claims. Therefore, Class 4 Claims are disregarded for purposes of the Creditors' Committee Settlement.

B.      *Substantive Consolidation.*     The Estates are to be substantively consolidated and Intercompany Claims are to be cancelled as set forth in this Plan.

C.      *Treatment/Distribution of Class 3A and Class 3B Creditors.*     Creditors holding Class 3A Claims and Class 3B Claims would realize the following amounts and percentages based upon the Initial Assumptions:

(i)     Each Creditor holding an Allowed Class 3A Claim will receive, on a Pro Rata basis with other Creditors holding Allowed Class 3A Claims, its share of approximately $25.5 million of NDV, representing an estimated 16.5% recovery on its Allowed Class 3A Claim.

(ii)    Each Creditor holding an Allowed Class 3B Claim will receive, on a Pro Rata basis with other Creditors holding Allowed Class 3B Claims, its share of approximately $9.2 million of NDV, or an estimated 25% recovery on its Allowed Class 3B Claim.

(iii)   In the event NDV increases or decreases from the figure set forth in the Initial Assumptions, Distributions to Allowed Class 3B Claims and to Allowed Class 3A Claims will be adjusted ratably such that the ratio of each Class' aggregate respective recovery will remain unchanged until all Allowed Class 3B Claims have been paid in full.

(iv)    In the event that either or both of the aggregate Allowed Class 3A Claims or Allowed Class 3B Claims increase or decrease from the amounts identified in the Initial Assumptions, Distributions to holders of such Allowed Claims will be adjusted such that

-24-

the ratio of each Class' aggregate respective recovery will remain unchanged until all Allowed Class 3B Claims have been paid in full.

(v)     Attached hereto as <u>Exhibit A</u> are recovery sensitivity tables which show the recoveries to holders of Allowed Class 3A Claims and holders of Allowed Class 3B Claims in the event of changes to any of the components comprising the Initial Assumptions.

(vi)    Attached hereto as <u>Exhibit B</u> is a liquidation analysis prepared by FTI Consulting at the request of the Creditors Committee.

D. *Intercompany Claims.*    Intercompany Claims will be extinguished and cancelled as of the Effective Date and will receive no distribution.

E. The Liquidating Trustee shall pay, on or as soon as reasonably practicable after the Effective Date, all Indenture Trustee Fees, in full in Cash, up to a maximum amount of $425,000.00 without application to or approval of the Bankruptcy Court and without a reduction to the recoveries of the holders of the Notes. Notwithstanding the foregoing, to the extent any Indenture Trustee Fees are not paid by the Liquidating Trustee, the Indenture Trustee may assert its charging lien against any recoveries received on behalf of the holders of the Notes for payment of such unpaid amounts. The Liquidating Trustee also shall pay, on or as soon as reasonably practicable after the Effective Date, all reasonable attorneys' fees and expenses incurred by the NBA in connection with the Chapter 11 Cases since the Petition Date without application to or approval of the Bankruptcy Court.

F. From and after the Effective Date, the Indenture Trustee shall be exculpated from any claims, causes of action and other assertions of liability arising out of the exercise and discharge (or the omission) of the powers and duties conferred upon such Indenture Trustee by the Indenture or this Plan or any order of the Bankruptcy Court entered pursuant to or in furtherance of this Plan, or applicable law, including without limitation in connection with the negotiation of any terms of this Plan, including, in particular, the terms of the Creditors' Committee Settlement embodied herein, except for any act, omission, transaction, agreement, event or other occurrence constituting willful misconduct, gross negligence, fraud or criminal conduct of the Indenture Trustee. No holder of a Claim or other party in interest shall have or pursue any claim or cause of action against the Indenture Trustee for making Distributions in accordance with the Creditors' Committee Settlement, this Plan, or for otherwise implementing the provisions of this Plan.

G. As of the Effective Date, each holder of a Claim that votes in favor of the Plan shall be deemed to forever release, waive and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, or then existing or thereafter arising in law, equity or otherwise, that are based in whole or in part on any act, omission, transaction or other occurrence taking place on or prior to the Effective Date in any way relating to the Notes, the Debtors, and the Chapter 11 Cases, including without limitation in connection with the negotiation of any terms of this Plan, including, in particular, the terms of the Creditors' Committee Settlement embodied herein, that

-25-

such Person has, had or may have, against the Indenture Trustee and any of its respective present or former directors, officers, employees, agents, representatives, attorneys, accountants, underwriters, investment bankers or financial advisors and any of their respective successors or assigns; *provided, however,* that the releases set forth herein will have no effect on the liability of the Indenture Trustee arising from any act, omission, transaction, agreement, event or other occurrence constituting willful misconduct, gross negligence, fraud or criminal conduct of the Indenture Trustee.

H. As of and on the Effective Date, the Debtors, their Estates, and any of their successors, assigns or representatives, shall be deemed to have waived, released and discharged all rights or claims, whether based upon tort, fraud, contract or otherwise, and whether arising out of the Chapter 11 Cases, cash collateral orders, or otherwise, including without limitation in connection with the negotiation of any terms of this Plan, including, in particular, the terms of the Creditors' Committee Settlement embodied herein, which they possessed or may possess prior to the Effective Date against the Indenture Trustee, and its present or former directors, officers, employees, agents, representatives, attorneys, accountants, underwriters, investment bankers or financial advisors, and any of their respective successors or assigns; *provided, however,* that the release set forth herein will have no effect on the liability of the Indenture Trustee arising from any act, omission, transaction, agreement, event or other occurrence constituting willful misconduct, gross negligence, fraud or criminal conduct of the Indenture Trustee.

ALTHOUGH THE DEBTORS AND CREDITORS COMMITTEE BELIEVE THAT THE ABOVE ESTIMATED PRO RATA RECOVERIES FOR THE HOLDERS OF ALLOWED CLASS 3A AND 3B CLAIMS WERE REASONABLE WHEN MADE, THE FINAL AMOUNTS OF ALLOWED CLAIMS IN EACH CLASS MAY MATERIALLY EXCEED, AND THE ACTUAL AMOUNT OF NDV MAY BE MATERIALLY LESS THAN THE ESTIMATED AGGREGATE AMOUNTS STATED IN THE INITIAL ASSUMPTIONS ABOVE AND, THEREFORE, POSSIBLY DECREASE THE ESTIMATED PRO RATA RECOVERY FOR SUCH HOLDERS. Actual recoveries under this Plan will be dependent upon a variety of factors including, but not limited to, whether, and to what extent, Disputed Claims are resolved in favor of the Debtors' Estates rather than the creditors asserting such Disputed Claims, and of course the marshaling and liquidation of any remaining Assets and the outcome of any litigation pursued by the Liquidating Trustee. Accordingly, no representation can be or is being made with respect to whether each estimated recovery shown above actually will be realized by the holders of Allowed Class 3A and 3B Claims.

## ARTICLE VII
## ACCEPTANCE OR REJECTION
## OF THIS PLAN OR CONSENT TO DIFFERENT TREATMENT

7.01     *Classes of Claims Entitled to Vote; Presumed Acceptances by Unimpaired Classes.* Allowed Claims in Class 3A and Class 3B are Impaired under this Plan. Under Section 1126(a) of the Bankruptcy Code, holders of Allowed Claims in Class 3A and Class 3B may vote to accept or reject this Plan. Allowed Claims in Class 1 and Class 2 are not Impaired under this

Plan and therefore, under Section 1126(f) of the Bankruptcy Code, holders of such Allowed Claims are conclusively presumed to accept this Plan.

7.02 *Classes of Claims and Interests Not Entitled to Vote.* The Class 4 Claim and Class 5 Interests are Impaired, and are not entitled to receive any Distribution under this Plan on account of such Claims or Interests. Under Section 1126(g) of the Bankruptcy Code, holders of the Class 4 Claim and Class 5 Interests are deemed to reject this Plan.

7.03 *Acceptance by Voting Classes of Claims and Interests.* Each beneficial holder of an Allowed Class 3A or Class 3B Claim, will have accepted this Plan if it votes to accept this Plan by: (a) appropriately marking the Ballot for the Class in which such Allowed Claim is placed under this Plan, and (b) timely returning such ballot as instructed on the face thereof. Any Ballot not executed in accordance with the filing instructions on the Ballot pertaining to this Plan shall not be counted for voting purposes. A class of claims will be determined to have accepted this Plan if the Bankruptcy Court determines that this Plan has been accepted by a majority in number and two-thirds in dollar amount of those claims actually voting in such class.

7.04 *Cramdown.* If one (but not both) of Class 3A or Class 3B accepts this Plan in accordance with Sections 1126 and 1129(a) of the Bankruptcy Code, the Debtors may request that the Bankruptcy Court confirm this Plan in accordance with Section 1129(b) of the Bankruptcy Code as to non-accepting Classes, without the necessity of amending this Plan or providing any further notice. Notwithstanding the foregoing, the Debtors reserve the right to alter, amend, modify, revoke or withdraw this Plan or any document in the Plan Supplement, including to amend or modify it to satisfy the requirements of Section 1129(b) of the Bankruptcy Code, if necessary.

## ARTICLE VIII
## TREATMENT OF CLAIMS AND DISTRIBUTIONS UNDER THIS PLAN

8.01 *Distribution.* Except as otherwise provided in this Article VIII, Distributions to holders of Allowed Claims will be deemed made on the Effective Date if made on the Effective Date or as promptly thereafter as practicable. As soon as practicable following the occurrence of the Effective Date the Liquidating Trustee shall make Distributions. Distributions under this Plan shall be funded from Cash on hand, net of reserves. The Plan contemplates the ongoing liquidation of the Debtors' remaining Assets, and the use of sale and litigation proceeds to fund Distributions to Creditors, including any net proceeds from the Creditors' Committee Action and other Causes of Action. Cash Distributions to holders of Allowed Claims shall be made by the Liquidating Trustee and in such order as is determined by the Liquidating Trustee consistent with this Plan, the Liquidating Trust Agreement and applicable bankruptcy law.

8.02 *Liquidating Trust Distributions.* The Liquidating Trustee, on behalf of the Liquidating Trust, or such other Entity as may be designated in accordance with the Liquidating Trust Agreement, will make the Distributions required under this Plan in accordance with this Plan and the Liquidating Trust Agreement and in accordance with the priorities set forth in the Bankruptcy Code, and administer and liquidate any Assets in the Liquidating Trust and otherwise wind down the Estates, including, without limitation, the following which shall be

-27-

funded with Cash-on-hand: (a) general administration costs (e.g., trustee/trust fees, etc.), (b) access to and review of information for any and all potential Claims, (c) access to and review of information for any and all Causes of Action, (d) analysis and assessment related to Claims objection/resolution, (e) analysis and assessment related to Causes of Action, (f) preparation of Claims objection/resolution, (g) preparation and/or prosecution of Causes of Action, and (h) Distribution of proceeds.

8.03 *Liquidating Trustee's Retention of Third Party to Implement Distributions.* The Liquidating Trustee may employ or contract with other Persons to assist in or make the Distributions required under this Plan.

8.04 *Liquidating Trust Fund Reserve Amount.* On the Effective Date or as soon thereafter as Practicable, the Liquidating Trustee shall establish and maintain the Liquidating Trust Fund Reserve Amount, which shall consist of an amount of Cash projected to be necessary to satisfy the payment of professional and other fees and expenses to be incurred by the Debtors or the Liquidating Trustee in implementing and consummating the terms of this Plan, winding up the affairs of the Debtors, and otherwise completing the tasks necessary to close the Chapter 11 Cases, as well as any obligations under sections 5.07, 5.08, and 5.09 of this Plan. Consistent with and in compliance with the provisions of the Plan, the Liquidating Trustee may from time to time following consultation with the Liquidating Trust Advisory Board, and in its sole discretion decrease or increase the Liquidating Trust Fund Reserve by transferring funds to or from the Distribution Fund, the Disputed Claims Reserve (after settlement), or the proceeds of the Causes of Action.

8.05 *Disputed Claims Reserve.*

A. *Establishment of Disputed Claims Reserve; Distributions from Disputed Claims Reserve.* On the Effective Date or as soon thereafter as practicable, the Liquidating Trustee may also separately establish and maintain the Disputed Claims Reserve for any distributable amounts required to be set aside on account of Disputed Claims. If applicable, the Liquidating Trustee shall make a Catch-Up Distribution from the Disputed Claims Reserve on account of a Disputed Claim only when and to the extent that such Disputed Claim has become an Allowed Claim pursuant to the entry of a Final Order. No Distribution shall be made on account of any Claim to the extent it is Disputed, unless and until such Disputed Claim becomes an Allowed Claim.

B. *Investment of Disputed Claims Reserve.* In respect of the Disputed Claims Reserve, the Liquidating Trustee, shall be permitted, from time to time, to invest all or a portion of the Cash in the Disputed Claims Reserve in Permissible Investments.

C. *Release of Funds from Disputed Claims Reserve.* To the extent a Disputed Class 3A or 3B Claim against a Debtor is disallowed, the Cash and other property that otherwise would be distributed pursuant to this Section 8.05 will instead be distributed or allocated in accordance with Section 8.06.

-28-

D. *Expedited Determination of Taxes With Respect to Disputed Claims Reserve.* The Liquidating Trustee may request an expedited determination of taxes of the Disputed Claims Reserve, under Section 505(b) of the Bankruptcy Code for all returns filed for or on behalf of the Disputed Claims Reserve for all taxable periods through the dissolution or termination of the Disputed Claims Reserve.

8.06    *Subsequent Distributions.* After the Effective Date, to the extent Cash is available for Distribution, from whatever source, to holders of Allowed Class 3A and Class 3B Claims, the Liquidating Trustee shall: allocate such Cash Pro Rata among the holders of Allowed Class 3A and 3B Claims that were Allowed on the Effective Date or subsequently have become Allowed on or before such Distribution in accordance with the Creditors' Committee Settlement and the holders of any still pending Disputed Class 3A and 3B Claims (to the extent provided by this Plan); with the amount allocated to Allowed Class 3A and 3B Claims retained in the Disputed Claims Reserve to be administered in accordance with Article VIII of this Plan, provided, however, that any Distributions from the Disputed Claims Reserve shall be net of certain costs and expenses as provided in this Plan. Notwithstanding the foregoing, any non-Class 3A or non-Class 3B Disputed Claim which, if Allowed, would have been paid in full prior to any Class 3A or Class 3B Claim shall be paid in full from the Disputed Claims Reserve if and to the extent it is subsequently Allowed.

8.07    *Distributions to Noteholders.*

A. *Distributions to Holders of Note Claims.* Notwithstanding any provision contained in this Plan to the contrary, the distribution provisions contained in the Indentures shall continue in effect to the extent necessary to authorize the Indenture Trustee to receive and distribute to the holders of Allowed Note Claims, Distributions pursuant to this Plan on account of Allowed Note Claims, and shall terminate completely upon completion of all such Distributions.

B. *Indenture Trustee Fees.* In order not to reduce the amount of the Distributions payable to the holders of the Note Claims, the Liquidating Trustee shall pay, on or as soon as reasonably practicable after the Effective Date, all Indenture Trustee Fees, in full in Cash, without application to or approval of the Bankruptcy Court and without a reduction to the recoveries of the holders of the Notes. Notwithstanding the foregoing, to the extent any Indenture Trustee Fees are not paid, the Indenture Trustee may assert its charging lien against any recoveries received on behalf of the holders of the Notes for payment of such unpaid amounts.

C. *Additional Trustee's Fees and Expenses.* To the extent that the Indenture Trustee provides services related to Distributions pursuant to this Plan, the Indenture Trustee will receive from the Liquidating Trustee, without further Bankruptcy Court approval, reasonable compensation for such services and reimbursement of reasonable expenses incurred in connection with such services.

D. *Payments on Note Claims to be Made to Indenture Trustee.* The Distributions to be made under this Plan to holders of Allowed Note Claims shall be made to the Indenture

-29-

Trustee, which, subject to the right of the Indenture Trustee to assert its Indenture Trustee Charging Lien against the Distributions, shall transmit the Distributions to the holders of such Allowed Note Claims in accordance with the Applicable Indenture.

8.08    *Preservation of Subordination Rights.* Except as otherwise provided herein, or in a subsequent agreement between the Liquidating Trustee and the beneficial holder of an Allowed Claim, all subordination rights and claims relating to the subordination by the Debtors or the Liquidating Trustee of any Allowed Claim shall remain valid, enforceable and unimpaired in accordance with Section 510 of the Bankruptcy Code or otherwise.

8.09    *Miscellaneous Distribution Provisions.*

A. *Unclaimed Property.* If a Distribution under this Plan remains unclaimed for six (6) months following the date of the attempted Distribution thereof, then, except as otherwise specifically provided below, the holder of the applicable Allowed Claim shall cease to be entitled to such Distribution and such Distribution shall be transferred to the Administrative Reserve or otherwise distributed in accordance with the terms of this Plan. After final Distributions have been made in accordance with the terms of this Plan and the Liquidating Trust Agreement, if the amount of undeliverable Cash remaining is less than $10,000, the Liquidating Trustee, in his or her sole discretion, may donate such amount to a charity.

B. *Method and Delivery of Cash Distributions.* Any Cash Distribution to be made pursuant to this Plan may be made by draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law. Cash payments made pursuant to this Plan shall be in good currency and funds of the United States of America. All Distributions by wire transfer shall be deemed made as of the date the Federal Reserve or other wire transfer is made. Except as otherwise agreed with the holder or an Allowed Claim, Distributions to holders of Allowed Claims shall be distributed by mail upon compliance by the holder with the provisions of this Plan: (a) at the address set forth on the respective proof of claim filed by the holder of such Claim; (b) at the address set forth in any written certification of address change delivered to the Liquidating Trustee) after the date of filing of any related proof of claim; or (c) at the address reflected in the applicable Debtor's Schedules or books and records if no proof of claim has been filed and the Liquidating Trustee has not received a timely written notice of a change of address.

C. *Holding and Investment of Undeliverable Distributions.* If any Distribution to a holder of an Allowed Claim is returned to the Liquidating Trustee as undeliverable, no further Distributions will be made to such holder unless and until the applicable Liquidating Trustee is notified in writing of such holder's then-current address. Undeliverable Distributions shall be held by the Liquidating Trustee for the benefit of the Liquidating Trust Beneficiaries, pursuant to this Section 8.09(C) until such time as a Distribution becomes deliverable. Undeliverable Cash will be held in a segregated bank account in the name of the Liquidating Trustee for the benefit of the potential claimants of such funds. The Liquidating Trustee holding undeliverable Cash may invest such Cash in Permissible Investments.

D. *Disputes Over Identity of Claim Holder*. If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any Distribution, the Liquidating Trustee may, in lieu of making a Distribution to such Person, make such Distribution into a segregated account until the disposition thereof shall be determined by Bankruptcy Court order or by written agreement among the interested parties to such dispute.

E. *Time Bar to Cash Payments*. Checks issued by the Liquidating Trustee in respect of Allowed Claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof. Requests for reissuance of any check shall be made to the Liquidating Trustee by the holder of the Allowed Claim to whom such check originally was issued on or before one hundred twenty (120) days after the date the check becomes null and void. After such date, if such request was not given, a holder shall have forfeited its right to such Distribution, and the funds represented by such check shall be distributed to other holders of Allowed Claims pursuant to Section 8.06 of this Plan as part of a subsequent Distribution.

F. *Fractional Cents*. Notwithstanding any other provisions of this Plan to the contrary, no payment of fractional cents will be made under this Plan. Cash will be issued to holders entitled to receive a Distribution of Cash in whole cents (rounded to the nearest whole cent when and as necessary).

G. *No Distribution in Excess of Allowed Amount of Claim*. Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall receive, respecting such Claim, any Distribution (of a value set forth herein) in excess of the Allowed amount of such Claim.

H. *De Minimis Distributions*. No Cash payment of less than $50.00 shall be required to be made to the holder of any Claim with respect to an interim Distribution or final Distribution.

I. *Withholding Taxes*. Any federal or state withholding taxes or other amounts required to be withheld under any applicable law shall be deducted and withheld from any Plan Distributions. In order to receive a Distribution, each holder of an Allowed Claim must provide a tax identification number (and/or other information required under applicable law). The Liquidating Trustee shall otherwise comply, to the extent applicable, with all tax withholding and reporting requirements imposed under applicable law.

8.10    *Objections to Claims*. Except as otherwise set forth in this Plan and unless otherwise ordered by the Bankruptcy Court, all objections to Claims shall be filed with the Bankruptcy Court and served on the applicable claimant on or prior to one hundred and eighty (180) days after the later of: (a) the Effective Date; and (b) the date a Claim is filed with the Bankruptcy Court and served on counsel for the Debtors or the Liquidating Trustee, as applicable. The Liquidating Trustee may seek to extend such time to object to Claims, by motion to the Bankruptcy Court.

8.11    *Prosecution of Objections to Claims*. Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, upon the Effective Date and thereafter the

-31-

Liquidating Trustee shall have the exclusive right to make and file objections to Claims in the Chapter 11 Cases. Except as set forth herein, nothing in this Plan, the Confirmation Order or any order in furtherance of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any right, claim, or Cause of Action by the Liquidating Trustee, including but not limited to, any right of setoff, or other legal or equitable defense which the applicable Debtor possessed immediately prior to the commencement of the Chapter 11 Cases, against or with respect to any Claim. Except as set forth in this Plan, upon Confirmation, the Liquidating Trustee shall have, retain, reserve and be entitled to assert all Causes of Action which the Debtors had immediately prior to the commencement of the Chapter 11 Cases fully as if the Chapter 11 Cases had not been commenced.

8.12 *Estimation of Claims*. The Liquidating Trustee may, at any time, request that the Bankruptcy Court estimate any disputed, contingent or unliquidated Claim (including, without limitation, any Administrative Claim) regardless of whether the Debtors or the Creditors' Committee have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any disputed, contingent or unliquidated Claim (including, without limitation, any Administrative Claim), that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, then the Liquidating Trustee may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another. Claims (including, without limitation, any Administrative Claim) may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

8.13 *Settlement of Claims*. Subsequent to the Effective Date, the Liquidating Trustee shall have the authority to resolve any Disputed Claim for an Allowed Claim subject only to the filing of a notice of such settlement with the Bankruptcy Court. Any such settlement shall be binding under this Plan and upon all parties in interest in the Chapter 11 Cases.

8.14 *Setoff and Recoupment*. In the event the Debtors have a claim of any nature whatsoever against a holder of a Claim, the Liquidating Trustee may, but is not required to, setoff against such holder's Claim (and any Distributions or other rights to receive property arising out of such Claim under this Plan) the Debtors' or Liquidating Trustee's claim against such holder, subject to the provisions of Section 553 of the Bankruptcy Code and other applicable law. Neither the failure to setoff nor the allowance of any Claim under this Plan shall constitute a waiver or release by the Debtors, the Creditors' Committee, or the Liquidating Trustee of any claims that the Debtors or the Creditors' Committee or Liquidating Trustee have against a the holder of such Claim, all of which are expressly preserved. Nothing contained or omitted from this Plan shall limit, adversely affect, or otherwise impair any rights of setoff or recoupment the Debtors, the Creditors' Committee and/or the Liquidating Trustee may possess, as against all third parties.

## ARTICLE IX
## EXECUTORY CONTRACTS

9.01 *Rejection.*

A. *Unexpired Leases and Executory Contracts to be Rejected.* On the Effective Date, by entry of the Confirmation Order, the Debtors, pursuant to Section 365 of the Bankruptcy Code, shall be deemed to have rejected all of their Executory Contracts and Unexpired Leases except those that: (i) have been assumed pursuant to an order of the Bankruptcy Court, which may include the Confirmation Order, or (ii) are the subject of motions to assume or reject pending on the Effective Date, including, without limitation, in respect of the Sale Transactions. The Confirmation Order will constitute an order of the Bankruptcy Court approving such assumption or rejection pursuant to Section 365 of the Bankruptcy Code as of the Effective Date.

B. *Deadline to File Rejection Damage Claims.* Each Person who is a party to an Executory Contract or Unexpired Lease rejected under this Plan must file with the Bankruptcy Court and serve on counsel for the Liquidating Trustee, not later than sixty (60) days after the Effective Date, a proof of claim for damages alleged to arise from the rejection of the applicable contract or lease or such Person shall be forever barred from filing a Claim and will not receive a Distribution related to such alleged rejection damages.

## ARTICLE X
## SETTLEMENT, SATISFACTION,
## EXCULPATION, INJUNCTION AND RELEASE

10.01 *Discharge.* Pursuant to Section 1141(d)(3) of the Bankruptcy Code, Confirmation of this Plan will not discharge the Debtors; *provided, however,* upon Confirmation of this Plan, the occurrence of the Effective Date and Distributions hereunder, Creditors may not seek payment or recourse against or otherwise be entitled to any Distribution from the Liquidating Trust Assets except as expressly provided in this Plan and the Liquidating Trust Agreement.

10.02 *Settlement of Claims and Releases.* Pursuant to Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided under this Plan, the provisions of this Plan will constitute a good faith compromise and settlement of all claims or controversies relating to the rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or any Distribution to be made pursuant to this Plan on account thereof. The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such Claims or controversies and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtors and their respective estates, property, Creditors and Interest holders, and is fair, equitable and reasonable. **Upon a Creditor's receipt of a Distribution on account of an Allowed Claim pursuant to the Plan, such Creditor forever shall be barred from amending any proof of claim upon which such Allowed Claim may be based.**

-33-

10.03 *Term of Bankruptcy Injunction or Stay.* Except as otherwise expressly provided in this Plan or the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and which are in effect on the Confirmation Date, shall remain in full force and effect until the Effective Date.

10.04 *Exculpation.* **The Debtors, the Creditors' Committee and its members and each of their respective affiliates, officers who provided service after the Petition Date, directors who provided service after the Petition Date, managers, employees, members or agents (each acting in such capacity), and any professional Persons employed by any of them, will not have or incur any liability to any Person for any action taken or omitted to be taken in connection with or related to or arising out of, the formulation, preparation, dissemination, negotiation, implementation, confirmation, or consummation of this Plan, the Disclosure Statement, any motion, order, release, settlement, transaction, or other agreement or document created or entered into or approved by the Bankruptcy Court, or any other post-Petition Date action taken or omitted to be taken in connection with this Plan or any other matter or proceeding in the Chapter 11 Cases, and all Claims based upon or arising out of such actions or omissions will be forever barred, waived and released; _provided, however_, that nothing herein shall affect the liability of any Person arising from any act, omission, transaction, agreement, event or other occurrence, constituting willful misconduct, gross negligence, fraud or criminal conduct. For the avoidance of doubt, the foregoing exculpation and release provisions, and those release provisions set forth in Section 10.06 below, include William C. Bartholomay, Peter C. Brown, Joseph A. Califano, and Robert N. Waxman and with respect to each of Messrs. Bartholomay, Brown, Califano, and Waxman, are (i) in exchange for and in full satisfaction and release of all claims, of whatever nature, including without limitation prepetition Claims and Administrative Claims, asserted or that may be asserted by any of them, or by any assignee or subrogee of same, against any of the Debtor Released Parties (as defined in Section 10.06 below) in connection with the Debtors or their Chapter 11 Cases, and (ii) in exchange for the immediate dismissal, with prejudice, upon entry of the Confirmation Order, of Messrs. Bartholomay, Brown, Califano, and Waxman's pending appeal of the final cash collateral order. Each of Messrs. Bartholomay, Brown, Califano, and Waxman have agreed to the exculpation and mutual releases set forth in Sections 10.04 and 10.06 herein and have agreed that the Confirmation Order will expressly provide for such exculpation and mutual releases.**

10.05 *Injunction.* **This Plan provides and the Confirmation Order shall provide, among other things, that any Person (other than the Debtors, the Creditors' Committee, the Debtors' Estates or the Liquidating Trustee) who has held, holds, or may hold a claim against or interest in the Debtors' Estates, the Assets, the Liquidating Trust, or the Liquidating Trust Funds, or any claim against or interest in any Person (including any Debtor) for which the Debtors' Estates or the Liquidating Trust are or may be directly liable or indirectly liable by way of contribution, indemnity (including an obligation to pay defense costs under this Plan or otherwise) or otherwise is, with respect to any such claim or interest, permanently enjoined from and after the Effective Date from taking any of the following actions (other than actions taken in the Bankruptcy Court or in any of the Bankruptcy Cases to enforce any rights or obligations under this Plan or to defend**

-34-

challenges to the validity or amount of a Disputed Claim): (i) asserting, commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting any of the Debtors' Estates, the Assets, the Liquidating Trust, or the Liquidating Trust Funds on account of any claim for which the Debtors or Liquidating Trustee are directly or indirectly liable by way of contribution, indemnity or otherwise, including without limitation any State Wage Claims; (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against any of the Debtors' Estates, the Assets, the Liquidating Trust, or the Liquidating Trust Funds; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any lien of any kind against the Debtors' Estates, the Assets, the Liquidating Trust, or the Liquidating Trust Funds on account of any claim for which any of the Debtors or Liquidating Trustee are or may be directly or indirectly liable by way of contribution, indemnity or otherwise; (iv) asserting any right of setoff of any kind, directly or indirectly, against any obligation due to any of the Debtors' Estates or the Liquidating Trust, on account of any claims for which any of the Debtors' Estates or Liquidating Trust are or may be directly or indirectly liable by way of contribution, indemnity or otherwise; (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan; and (vi) prosecuting, commencing, continuing or otherwise asserting any right, claim or cause of action released pursuant to this Plan or that is otherwise inconsistent with the provisions of this Plan. Any Person injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages, from the willful violator(s). Notwithstanding the foregoing, holders of Disputed Claims are not enjoined from and shall retain all rights to defend or prosecute such Disputed Claims in the Bankruptcy Court, including, without limitation, the right to assert affirmative defenses, setoff, or recoupment, if applicable.

10.06 *Releases By Debtors.* Except as otherwise expressly provided in this Plan and subject to the terms of any prior court orders, each of the Debtors and any Person or entity seeking to exercise rights or claims of or on behalf of the Debtors or the Debtors' Estates shall be deemed to have waived, released and discharged (i) any of the other Debtors, (ii) any of the Named Officers, present directors, and the Former Directors, (iii) the Creditors' Committee and any of its members, but solely in their capacities as members of the Creditors' Committee, and (iv) any professionals employed by the Debtors or Creditors' Committee in the Chapter 11 Cases (collectively, the "*Debtor Released Parties*"), from all claims (as such term is defined in section 101(5) of the Bankruptcy Code), obligations, suits, damages, demands, debts, rights, or causes of action that may be brought by or on behalf of the Debtors or the Debtors' Estates against the Debtor Released Parties of whatever kind or nature, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, in law or equity, that are based in whole or in part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date, relating to or in connection with the Debtors, the Chapter 11 Cases, the conduct of the Debtors' business, or this Plan; *provided, however,* that, except as to the matters alleged in the Creditors' Committee Action against the Former

Directors, the foregoing release (i) will have no effect on the liability of any Debtor Released Parties arising from an act, omission, transaction, agreement, event or other occurrence constituting willful misconduct, gross negligence, fraud or criminal conduct and (ii) will not constitute a release or waiver of any defense available to the Debtors or the Liquidating Trustee in connection with any Disputed Claim (including Administrative Claims) asserted against the Debtors, the Debtors' Estates or the Liquidating Trust by any Debtor Released Party. The definition of Debtor Released Parties does not include NAI, Sumco or Sumner Redstone but does include each of the Former Directors; provided, however, that, as to Shari E. Redstone ("Redstone") and Robert J. Steele ("Steele"), the releases described in this Section 10.06 shall be in exchange for and full satisfaction of all claims, of whatever nature, including without limitation prepetition Claims and Administrative Claims, asserted or that may be asserted by Redstone or Steele, or by any assignee or subrogee of Redstone or Steele, against any of the Debtor Released Parties in connection with the Debtors or their Chapter 11 Cases. Each of Redstone and Steele have agreed to the mutual releases set forth herein and have agreed that the Confirmation Order will expressly provide but does include such releases. For the avoidance of doubt, the releases of the Former Directors as set forth in this Section 10.06 includes a release from all claims asserted or that could have been asserted against them in the Creditors' Committee Action. Notwithstanding any release provided to the Former Directors under this Plan, nothing in the Plan shall in any way prejudice claims asserted in the Creditors' Committee Action against any Person that is not a Debtor Released Party. Such claims are expressly reserved and preserved for the benefit of the Estates, and, following the Effective Date, the Liquidation Trust. The releases described herein shall be binding upon all Persons.

10.07 *Preservation of Claims.* Nothing in this Plan shall discharge, release, limit or impair the rights or defenses of the Debtors, the Creditors' Committee or the Liquidating Trustee with respect to any Claims or Interests. The Debtors, the Creditors' Committee and the Liquidating Trustee reserve all rights, claims, defenses, and privileges against all Persons and therefore no preclusion doctrine, including without limitation the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to them by virtue of or in connection with Confirmation, consummation or effectiveness of this Plan. Upon the occurrence of the Effective Date, pursuant to Section 1123(b)(3) of the Bankruptcy Code, the Liquidating Trustee shall have the exclusive right to enforce and/or defend, as to any Person, any and all claims, Causes of Action, demands and rights of the Debtors that arose before or after the Petition Date.

10.08 *Preservation of Insurance.* The provisions of this Plan shall not diminish or impair the enforceability of any insurance policies that may cover claims against any Debtor or any other Person or prevent any Person from seeking or enforcing coverage with respect to any claim under any applicable insurance policies of the Debtors.

10.09 *Release of Assets.* Until the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Debtors, their Assets and property. Thereafter, jurisdiction of the Bankruptcy Court shall be limited to the subject matters set forth in Section 12.01 of this Plan, and the Liquidating Trustee shall perform and wind up the affairs of the Debtors, as provided herein, including disposing of the Assets in accordance with this Plan.

10.10 *Binding Effect.* Except as otherwise provided in Section 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against, or Interest in, the Debtors and their respective successors and assigns, whether or not the Claim or Interest of such holder is Impaired under this Plan and whether or not such holder has accepted this Plan.

## ARTICLE XI
## CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE

11.01 *Conditions to Plan Confirmation.* Except as provided in Section 11.03 below, the following are conditions precedent to Confirmation of this Plan by the Bankruptcy Court:

A.     The Bankruptcy Court shall have approved by Final Order the Disclosure Statement in form and substance reasonably acceptable to the Debtors and the Creditors' Committee; and

B.     The Confirmation Order shall have been entered as a Final Order in form and substance reasonably acceptable to the Debtors and the Creditors' Committee.

C.     The Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been filed in form and substance reasonably acceptable to the Debtors and the Creditors' Committee.

11.02 *Conditions to Effective Date.* Except as provided in Section 11.03 below, this Plan may not be consummated, and the Effective Date shall not occur, unless each of the following conditions set forth below has been either satisfied or waived.

A.     The Confirmation Order shall have been entered by the Bankruptcy Court in form and substance reasonably acceptable to the Debtors and the Creditors' Committee and shall be a Final Order;

B.     The Liquidating Trust Agreement has been executed;

C.     All of the Assets have been transferred to the Liquidating Trust; and

D.     All other actions, documents, agreements and instruments necessary to commence implementation of this Plan shall have been received, recorded, executed, and/or delivered and/or implemented.

11.03 *Waiver of Conditions to Confirmation and Effective Date.* Each of the conditions to Confirmation of this Plan or the occurrence of the Effective Date may be waived in whole or in part by the Debtors in consultation with the Creditors' Committee, or by the Creditors' Committee, as applicable, without notice and a hearing; *provided however,* that any such waiver(s) must be in writing and filed with the Bankruptcy Court if the Debtors and Creditors' Committee are not in agreement regarding such waiver. Any waiver(s) in accordance with this

Section 11.03 shall not prejudice or otherwise affect the Debtors', the Creditors' Committee's or the Liquidating Trustee's rights to assert that the consummation of this Plan, notwithstanding any such waiver(s), would effectively legally or equitably moot any appeal of the Confirmation Order. The failure to satisfy or waive any condition may be asserted by the Debtors or the Creditors' Committee, as applicable, regardless of the circumstances giving rise to the failure of such condition to be satisfied (including, without limitation, any act, action, failure to act, or inaction by the Debtors or Creditors' Committee). The failure of the Debtors or the Creditors' Committee to exercise any of the foregoing rights shall not be deemed a waiver of any other rights and each such right shall be deemed an ongoing right that may be asserted or waived (as set forth herein) at any time or from time to time.

## ARTICLE XII
## ADMINISTRATIVE PROVISIONS

12.01 *Retention of Jurisdiction.* Notwithstanding Confirmation of this Plan or occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction for the following purposes, without limitation:

A. Determination of the allowability of Claims against, or the administrative expenses of, the Debtors (except those Claims that are Allowed Claims pursuant to this Plan, unless such determination is made pursuant to a reconsideration or modification of the entire Plan), and the validity, extent, priority, and nonavailability of consensual and nonconsensual Liens and other encumbrances;

B. Determination of the Debtors' tax liability pursuant to Section 505 of the Bankruptcy Code;

C. Approval, pursuant to Section 365 of the Bankruptcy Code, of all matters related to the assumption and assignment, or rejection, of any Executory Contract or Unexpired Lease of any of the Debtors;

D. Resolution of controversies and disputes regarding the enforcement or interpretation of this Plan, the Confirmation Order, or the Bankruptcy Court's orders that survive Confirmation of this Plan pursuant to this Plan or other applicable law;

E. Implementation of the provisions of this Plan, and entry of orders in aid of Confirmation and consummation of this Plan and enforcing settlements or orders entered during the Chapter 11 Cases or as part of this Plan, including, without limitation, appropriate orders to protect the Debtors and the Liquidating Trustee from actions by creditors and resolution of disputes and controversies regarding property of the Debtors' Estates and the Liquidating Trust;

F. Modification of this Plan pursuant to Section 1127 of the Bankruptcy Code;

G. Commencement and adjudication of any Causes of Action that arose prior to the Confirmation Date or in connection with the implementation of this Plan and other actions against third parties brought or to be brought by the Debtors, the Creditors' Committee or

-38-

Liquidating Trustee, as representatives of the Debtors' Estates or the Liquidating Trust, as applicable;

H.   Entry of a Final Order closing the Chapter 11 Cases;

I.   Resolution of disputes concerning Disputed Claims, Claims for disputed Distributions and recharacterization or equitable subordination of Claims;

J.   Resolution of any disputes concerning any release under this Plan of a non-Debtor or any injunction under this Plan, or in the Confirmation Order, against acts, employment of process, or actions against such non-Debtors;

K.   Resolution of any disputes concerning whether an Entity had sufficient notice of, among other things, (i) the Chapter 11 Cases; (ii) the Bar Date, the Initial Administrative Claims Bar Date or the Final Administrative Claim Bar Date; (iii) the hearing on the approval of the Disclosure Statement as containing adequate information; or (iv) the hearing on Confirmation of this Plan;

L.   Issuance of injunctions, granting and implementation of other orders, or taking such other actions as may be necessary or appropriate to restrain interference by any Person with consummation or enforcement of this Plan;

M.   Resolution of controversies and disputes regarding settlement agreements, orders, injunctions, judgments, and other matters entered or approved by the Bankruptcy Court in connection with any adversary proceeding, discovery, or contested matter in the Chapter 11 Cases;

N.   Correction of any defect, cure of any omission or reconciliation of any inconsistency in this Plan, the Confirmation Order, or any other documents relating to this Plan, as may be necessary to carry out the purposes or intent of this Plan;

O.   Adjudication of any pending adversary proceeding, or other controversy or dispute, in the Chapter 11 Cases, which arose prior to the Confirmation Date and over which the Bankruptcy Court had jurisdiction prior to Confirmation of this Plan;

P.   Entry and implementation of such orders as may become necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

Q.   Resolution of Claims arising under Section 503(b) of the Bankruptcy Code;

R.   Resolution of controversies and disputes in connection with each Sale Transaction or each Purchase Agreement or any approval orders in connection therewith;

S.   Determination of any other matters that may arise in connection with or related to the administration of the Debtors' Estates or the Liquidating Trust, Claims, Interests,

Executory Contracts, Unexpired Leases, this Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with this Plan or the Disclosure Statement; and

        T.      Resolutions of Liquidating Trust Claims.

12.02 *Liquidating Trustee Standing.* The Liquidating Trustee shall have standing to be heard on any matter over which the Bankruptcy Court retains jurisdiction and that relates, in any manner, to the administration of the Liquidating Trust.

12.03 *Revocation of this Plan.* The Debtors reserve the right in their absolute discretion to revoke or withdraw this Plan as to any or all of the Debtors prior to the Confirmation Date. If the Debtors revoke or withdraw this Plan as to any or all of the Debtors, or if Confirmation as to any or all of the Debtors does not occur, then, with respect to such Debtors, this Plan will be null and void in all respects, and nothing contained in this Plan will: (1) constitute a waiver or release of any Claims by or against, or any Interests in, such Debtors or (2) prejudice in any manner the rights of any Debtors or any other party.

12.04 *Successors and Assigns.* The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the heirs, executors, administrators, successors, or assigns of such Entity.

12.05 *Plan Supplement.* The Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court or its designee during normal business hours. Holders of Claims and Interests may obtain a copy of the Plan Supplement by contacting the Voting Agent, or by visiting http://www.chapter11.epiqsystems.com. The documents contained in the Plan Supplement are an integral part of this Plan and shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

12.06 *Post-Effective Date Fees and Expenses.* From and after the Effective Date, the Liquidating Trustee, on behalf of his or her Liquidating Trust, shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay (i) the reasonable professional fees and expenses incurred by the Liquidating Trust, including, without limitation, the reasonable fees and expenses of the former professionals of the Debtors and the Creditors' Committee in connection with the implementation and administration of the Liquidating Trust and transitioning of any of the Assets to the Liquidating Trust and (ii) any professionals retained by such Liquidating Trust, related to the consummation and to the implementation of this Plan, except as otherwise provided in the applicable Liquidating Trust Agreement. In addition, the Liquidating Trustee shall pay from the Liquidating Trust all fees and expenses of the professionals of the Debtors and Creditors' Committee that have been allowed by the Bankruptcy Court in connection with the preparation of such professionals' final fee applications.

12.07 *Severability.* If, prior to Confirmation of this Plan, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors (in consultation with the Creditors' Committee), shall have

the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

12.08 *Governing Law.* Except to the extent the Bankruptcy Code, the Bankruptcy Rules, or other federal laws apply, or as otherwise expressly provided in this Plan, the rights and obligations arising under this Plan shall be governed by the laws of the State of Delaware without giving effect to principles of conflicts of law.

12.09 *Controversy Concerning Impairment.* If a controversy arises as to whether any Claims or Interests of any Class of Claims or Interests are impaired under this Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before the Confirmation Date.

12.10 *Dissolution of the Creditors' Committee.* On the Effective Date, the Creditors' Committee shall be dissolved and its members released and discharged of and from all further authority, duties, responsibilities and obligations relating to, arising from, and in connection with the Chapter 11 Cases. Authority to prosecute pending Causes of Action transferred previously to and/or commenced by the Creditors' Committee pursuant to a prior order automatically shall be assigned to the Liquidating Trustee without further order.

12.11 *Indenture Trustee as Claim Holder.* Consistent with Bankruptcy Rule 3003(c), the Debtors shall recognize Proofs of Claim filed by the Indenture Trustee in respect of the Claims of Noteholders. Accordingly, any Claim related solely to amounts payable on and under the Notes and the respective Indentures, including in particular, the amounts of principal and interest due and payable on the Notes, proof of which is filed by the registered or beneficial holder of a Claim, shall be disallowed as duplicative of the proof of claim filed by the Indenture Trustee, without need for any further action or Bankruptcy Court order. Notwithstanding the foregoing, Noteholders and their properly designated proxies will be the only parties entitled to vote for or against this Plan on account on their Claims. Distributions to Noteholders will be made in accordance with Section 8.07 of this Plan.

12.12 *Books and Records.* On and after the Effective Date, the Liquidating Trustee shall maintain reasonable access to the Debtors' books and records, to the extent required to administer and effectuate this Plan (including, without limitation, to prosecute the Causes of Action and objections to Disputed Claims).

12.13 *Application of Section 1146(c) of the Bankruptcy Code.* Pursuant to Section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or securities under this Plan, the creation of any mortgage, deed of trust, or other security interest, the making or

-41-

assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Plan, shall not be subject to any stamp, real estate transfer, sales, use, mortgage recording or similar tax, and each recording or other agent of any governmental office shall record any such documents of issuance, transfer, or exchange without any further direction or order from the Bankruptcy Court.

12.14 *Applicability of Section 1125 of the Bankruptcy Code.* The protection afforded by Section 1125(e) of the Bankruptcy Code with regard to solicitation of acceptances or rejections of this Plan shall apply to the fullest extent provided by law, and the entry of the Confirmation Order shall constitute the determination by the Bankruptcy Court that the Debtors, and each of their respective officers, directors, partners, employees, members, agents, attorneys, accountants or other professionals, shall have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code pursuant to Section 1125(e) of the Bankruptcy Code.

12.15 *Conflicts.* To the extent the express provisions of this Plan, the Liquidating Trust Agreement, the Disclosure Statement, or any document executed in connection therewith, the Confirmation Order or any documents executed in connection with the Confirmation Order (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing) conflicts with or is in any way inconsistent with the terms of the Confirmation Order, the terms and provisions of the Confirmation Order shall govern.

12.16 *Entire Agreement.* This Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into this Plan.

12.17 *Closing of Chapter 11 Cases.* The Liquidating Trustees shall promptly, upon the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by the Bankruptcy Rules and any applicable orders of the Bankruptcy Court to close the Chapter 11 Cases.

12.18 *Notices.* Any notice required or permitted to be provided under this Plan shall be in writing and served by either (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery, or (iii) reputable overnight delivery service, freight prepaid, to be addressed as follows (subject to modification as to the identity of any addressee below upon notice given to the Liquidating Trustee and other identified addressees): (i) if to the Liquidating Trustee, Buchwald Capital Advisors LLC, 380 Lexington Avenue, 17th Floor, New York, NY 10168-1799, Attn: Lee E. Buchwald, telephone (212-551-1040), facsimile (212-656-1578) (ii) if to the Debtors, c/o Midway Games Inc., 806 West Washington Blvd, Suite 203, Chicago IL 60607, Attn.: Ryan O'Desky, telephone (773-961-2032), facsimile (312-624-8772) with copies to, Michael D. DeBaecke, Esquire, Blank Rome, LLP, 1201 N. Market Street, Suite 800, Wilmington, DE 19801, telephone (302-425-6412), facsimile (302-425-6464) and Marc E. Richards, Esquire, Blank Rome LLP, The Chrysler Building, 405 Lexington Avenue, New York, New York, 10174, telephone (212-885-5231), facsimile (212-885-5001); (iii) if to the Creditors' Committee, David B. Zolkin, Esquire, Milbank, Tweed, Hadley & McCloy LLP, 601 S. Figueroa Street, 30th Floor, Los Angeles, CA 90017, telephone (213-892-4410), facsimile (213-892-4710) and (iv) if to the Indenture Trustee, Wells Fargo Bank, N.A., 45 Broadway, 12th Floor, New

York, New York 10006, Attn: James R. Lewis, Vice President, telephone (212-515-5258), facsimile (212-866-524-4681), with copies to, David E. Retter, Esquire, Kelley, Drye & Warren, LLP, 101 Park Ave., New York, New York telephone (212-808-7800), facsimile (212-808-7897).

Dated: March 26, 2010
      Wilmington, Delaware

MIDWAY GAMES INC.

By:   /s/ Matthew Booty
      Name:   Matthew Booty
      Title:    President

MIDWAY AMUSEMENT GAMES, LLC

By:   /s/ Matthew Booty
      Name:   Matthew Booty
      Title:    President

MIDWAY HOME ENTERTAINMENT INC.

By:   /s/ Matthew Booty
      Name:   Matthew Booty
      Title:    President

SURREAL SOFTWARE INC.

By:   /s/ Matthew Booty
      Name:   Matthew Booty
      Title:    President

MIDWAY GAMES WEST INC.

By:   /s/ Matthew Booty
      Name:   Matthew Booty
      Title:    President

MIDWAY STUDIOS – AUSTIN INC.

By:   /s/ Matthew Booty
      Name:   Matthew Booty
      Title:    President

MIDWAY INTERACTIVE INC.

By:   /s/ Matthew Booty
       Name:     Matthew Booty
       Title:      President

MIDWAY HOME STUDIOS INC

By:   /s/ Matthew Booty
       Name:     Matthew Booty
       Title:      President

MIDWAY SALES COMPANY, LLC

By:   /s/ Matthew Booty
       Name:     Matthew Booty
       Title:      President

MIDWAY STUDIOS-LOS ANGELES INC

By:   /s/ Matthew Booty
       Name:     Matthew Booty
       Title:      President

-44-