**Exhibit A**

**Class 3 Recovery Sensitivities Tables**

The tables below reflects the potential range of recovery values on a percentile basis for the holders of Class 3A and 3B Claims. Recovery at both levels varies pro rata based on changes to the NDV and 3A Claims.

## Class 3A Recovery

| Net Distribution Value | Class 3A Claims | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | $100.0 | $110.0 | $120.0 | $130.0 | $150.0 | $154.8 | $160.0 | $170.0 | $180.0 | $190.0 | $200.0 |
| $ 27.0 | 17.3% | 16.3% | 15.4% | 14.3% | 13.1% | 12.8% | 12.5% | 13.0% | 11.5% | 11.0% | 10.6% |
| $ 28.0 | 18.0% | 16.9% | 15.9% | 15.1% | 13.6% | 13.3% | 13.0% | 12.4% | 11.9% | 11.4% | 11.0% |
| $ 29.0 | 18.6% | 17.5% | 16.5% | 15.6% | 14.1% | 13.8% | 13.4% | 12.9% | 12.3% | 11.8% | 11.3% |
| $ 30.0 | 19.3% | 18.1% | 17.1% | 16.2% | 14.6% | 14.3% | 13.9% | 13.3% | 12.7% | 12.2% | 11.7% |
| $ 31.0 | 19.9% | 18.7% | 17.7% | 16.7% | 15.1% | 14.7% | 14.4% | 13.7% | 13.2% | 12.6% | 12.1% |
| $ 32.0 | 20.6% | 19.3% | 18.2% | 17.2% | 15.6% | 15.2% | 14.8% | 14.2% | 13.6% | 13.0% | 12.5% |
| $ 33.0 | 21.2% | 19.9% | 18.8% | 17.8% | 16.0% | 15.7% | 15.3% | 14.6% | 14.0% | 13.4% | 12.9% |
| $ 34.0 | 21.8% | 20.5% | 19.4% | 18.3% | 16.5% | 16.2% | 15.8% | 15.1% | 14.4% | 13.8% | 13.3% |
| $ 34.7 | 22.2% | 20.9% | 19.7% | 18.7% | 16.9% | 16.5% | 16.1% | 15.4% | 14.7% | 14.1% | 13.6% |
| $ 35.0 | 22.5% | 21.1% | 19.9% | 18.9% | 17.0% | 16.6% | 16.2% | 15.5% | 14.9% | 14.2% | 13.7% |
| $ 36.0 | 23.1% | 21.7% | 20.5% | 19.4% | 17.5% | 17.1% | 16.7% | 16.0% | 15.3% | 14.7% | 14.1% |
| $ 37.0 | 23.8% | 22.3% | 21.1% | 19.9% | 18.0% | 17.6% | 17.2% | 16.4% | 15.7% | 15.1% | 14.5% |
| $ 38.0 | 24.4% | 22.9% | 21.6% | 20.5% | 18.5% | 18.1% | 17.6% | 16.9% | 16.1% | 15.5% | 14.9% |
| $ 39.0 | 25.1% | 23.5% | 22.2% | 21.0% | 19.0% | 18.5% | 18.1% | 17.3% | 16.6% | 15.9% | 15.3% |

## Class 3B Recovery

| Net Distribution Value | Class 3A Claims | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | $100.0 | $110.0 | $120.0 | $130.0 | $150.0 | $154.8 | $160.0 | $170.0 | $180.0 | $190.0 | $200.0 |
| $ 27.0 | 26.3% | 24.7% | 23.3% | 22.1% | 19.4% | 19.3% | 19.0% | 18.2% | 17.4% | 16.7% | 16.0% |
| $ 28.0 | 27.3% | 25.7% | 24.2% | 22.9% | 20.7% | 20.2% | 19.7% | 18.8% | 18.0% | 17.3% | 16.6% |
| $ 29.0 | 28.3% | 26.6% | 25.1% | 23.7% | 21.4% | 20.9% | 20.4% | 19.5% | 18.7% | 17.9% | 17.2% |
| $ 29.0 | 29.3% | 27.5% | 25.9% | 24.5% | 22.1% | 21.6% | 21.1% | 20.1% | 19.3% | 18.5% | 17.8% |
| $ 30.0 | 30.3% | 28.4% | 26.8% | 25.4% | 22.9% | 22.4% | 21.8% | 20.8% | 19.9% | 19.1% | 18.3% |
| $ 31.0 | 31.2% | 29.3% | 27.7% | 26.2% | 23.6% | 23.1% | 22.5% | 21.5% | 20.6% | 19.8% | 19.0% |
| $ 32.0 | 32.2% | 30.2% | 28.5% | 27.0% | 24.4% | 23.8% | 23.2% | 22.2% | 21.3% | 20.4% | 19.6% |
| $ 33.0 | 33.2% | 31.1% | 29.4% | 27.8% | 25.1% | 24.5% | 23.9% | 22.9% | 21.9% | 21.0% | 20.2% |
| $ 34.7 | 33.7% | 31.6% | 29.8% | 28.2% | 25.5% | 24.9% | 24.3% | 23.2% | 22.3% | 21.4% | 20.5% |
| $ 35.0 | 34.8% | 32.6% | 30.7% | 29.0% | 26.1% | 25.5% | 24.9% | 23.9% | 22.9% | 21.9% | 21.0% |
| $ 36.0 | 35.8% | 33.6% | 31.6% | 29.9% | 27.0% | 26.4% | 25.7% | 24.6% | 23.6% | 22.6% | 21.7% |
| $ 37.0 | 24.4% | 22.9% | 21.6% | 20.5% | 18.5% | 18.1% | 17.6% | 16.9% | 16.1% | 15.5% | 14.9% |
| $ 38.0 | 24.4% | 22.9% | 21.6% | 20.5% | 18.5% | 18.1% | 17.6% | 16.9% | 16.1% | 15.5% | 14.9% |
| $ 39.0 | 25.1% | 23.5% | 22.2% | 21.0% | 19.0% | 18.5% | 18.1% | 17.3% | 16.6% | 15.9% | 15.3% |

- The tables below reflects the potential range of recovery values on a percentile basis for the holders of Class 3A and 3B Claims. Recovery at both levels varies pro rata based on changes to the NDV and 3B Claims.

**Class 3A Recovery**

**Class 3B Claim**

| Net Distribution Value | $26.0 | $28.0 | $30.0 | $32.0 | $34.0 | $36.7 | $38.0 |
|---|---|---|---|---|---|---|---|
| $ 27.0 | 13.9% | 13.7% | 13.5% | 13.3% | 13.1% | 12.8% | 12.7% |
| $ 28.0 | 14.4% | 14.2% | 14.0% | 13.8% | 13.6% | 13.3% | 13.2% |
| $ 29.0 | 14.9% | 14.7% | 14.5% | 14.3% | 14.0% | 13.8% | 13.6% |
| $ 30.0 | 15.4% | 15.2% | 15.0% | 14.8% | 14.5% | 14.3% | 14.1% |
| $ 31.0 | 16.0% | 15.7% | 15.5% | 15.2% | 15.0% | 14.7% | 14.6% |
| $ 32.0 | 16.5% | 16.2% | 16.0% | 15.7% | 15.5% | 15.2% | 15.1% |
| $ 33.0 | 17.0% | 16.7% | 16.5% | 16.2% | 16.0% | 15.7% | 15.5% |
| $ 34.0 | 17.5% | 17.2% | 17.0% | 16.7% | 16.5% | 16.2% | 16.0% |
| $ 34.7 | 17.8% | 17.6% | 17.3% | 17.0% | 16.8% | 16.5% | 16.3% |
| $ 35.0 | 18.0% | 17.7% | 17.5% | 17.2% | 17.0% | 16.6% | 16.5% |
| $ 36.0 | 18.5% | 18.2% | 18.0% | 17.7% | 17.4% | 17.1% | 16.9% |
| $ 37.0 | 19.0% | 18.8% | 18.5% | 18.2% | 17.9% | 17.6% | 17.4% |
| $ 38.0 | 19.6% | 19.3% | 19.0% | 18.7% | 18.4% | 18.1% | 17.9% |
| $ 39.0 | 20.1% | 19.8% | 19.5% | 19.2% | 18.9% | 18.5% | 18.4% |

**Class 3B Recovery**

**Class 3B Claims**

| Net Distribution Value | $26.0 | $28.0 | $30.0 | $32.0 | $34.0 | $36.7 | $38.0 | $40.0 | $42.0 | $44.0 | $46.0 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| $ 27.0 | 21.1% | 20.8% | 20.5% | 20.1% | 19.9% | 19.5% | 19.3% | 19.0% | 18.7% | 18.5% | 18.2% |
| $ 28.0 | 21.9% | 21.5% | 21.2% | 20.9% | 20.6% | 20.2% | 20.0% | 19.7% | 19.4% | 19.2% | 18.9% |
| $ 29.0 | 22.7% | 22.3% | 22.0% | 21.6% | 21.3% | 20.9% | 20.7% | 20.4% | 20.1% | 19.9% | 19.6% |
| $ 30.0 | 23.4% | 23.1% | 22.7% | 22.4% | 22.0% | 21.6% | 21.4% | 21.1% | 20.8% | 20.5% | 20.3% |
| $ 31.0 | 24.2% | 23.8% | 23.5% | 23.1% | 22.8% | 22.4% | 22.1% | 21.8% | 21.5% | 21.2% | 20.9% |
| $ 32.0 | 25.0% | 24.6% | 24.2% | 23.9% | 23.5% | 23.1% | 22.9% | 22.5% | 22.2% | 21.9% | 21.6% |
| $ 33.0 | 25.8% | 25.4% | 25.0% | 24.6% | 24.3% | 23.8% | 23.6% | 23.2% | 22.9% | 22.6% | 22.3% |
| $ 34.0 | 26.6% | 26.2% | 25.8% | 25.4% | 25.0% | 24.5% | 24.3% | 23.9% | 23.6% | 23.3% | 23.0% |
| $ 34.7 | 27.1% | 26.7% | 26.3% | 25.9% | 25.5% | 25.0% | 24.8% | 24.4% | 24.1% | 23.7% | 23.4% |
| $ 35.0 | 27.3% | 26.9% | 26.5% | 26.1% | 25.7% | 25.2% | 25.0% | 24.6% | 24.3% | 24.0% | 23.6% |
| $ 36.0 | 28.1% | 27.7% | 27.3% | 26.9% | 26.5% | 26.0% | 25.7% | 25.3% | 25.0% | 24.7% | 24.3% |
| $ 37.0 | 28.9% | 28.5% | 28.0% | 27.6% | 27.2% | 26.7% | 26.4% | 26.1% | 25.7% | 25.3% | 25.0% |
| $ 38.0 | 29.7% | 29.2% | 28.8% | 28.4% | 27.9% | 27.4% | 27.1% | 26.8% | 26.4% | 26.0% | 25.7% |
| $ 39.0 | 30.5% | 30.0% | 29.5% | 29.1% | 28.7% | 28.1% | 27.9% | 27.5% | 27.1% | 26.7% | 26.3% |

# Recovery Sensitivities – Class 3B Claim Sensitivities

- The tables below reflects the potential range of recovery values on a percentile basis for the holders of Class 3A and 3B Claims. Recovery at both levels varies pro rata based on changes to the NDV and 3B Claims.

## Class 3A Claims

| Net Distribution Value | $26.0 | $28.0 | $30.0 | $32.0 | $34.0 | $36.7 | $38.0 | $40.0 | $42.0 | $44.0 | $46.0 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| $ 27.0 | 21.5 | 21.2 | 20.9 | 20.6 | 20.3 | 19.9 | 19.7 | 19.4 | 19.1 | 18.9 | 18.6 |
| $ 28.0 | 22.3 | 22.0 | 21.6 | 21.3 | 21.0 | 20.6 | 20.4 | 20.1 | 19.8 | 19.6 | 19.3 |
| $ 29.0 | 23.1 | 22.8 | 22.4 | 22.1 | 21.8 | 21.3 | 21.1 | 20.8 | 20.5 | 20.3 | 20.0 |
| $ 30.0 | 23.9 | 23.5 | 23.2 | 22.8 | 22.5 | 22.1 | 21.9 | 21.6 | 21.3 | 21.0 | 20.7 |
| $ 31.0 | 24.7 | 24.3 | 24.0 | 23.6 | 23.3 | 22.8 | 22.6 | 22.3 | 22.0 | 21.7 | 21.4 |
| $ 32.0 | 25.5 | 25.1 | 24.7 | 24.4 | 24.0 | 23.5 | 23.3 | 23.0 | 22.7 | 22.4 | 22.1 |
| $ 33.0 | 26.3 | 25.9 | 25.5 | 25.1 | 24.8 | 24.3 | 24.0 | 23.7 | 23.4 | 23.1 | 22.7 |
| $ 34.0 | 27.1 | 26.7 | 26.3 | 25.9 | 25.5 | 25.0 | 24.8 | 24.4 | 24.1 | 23.8 | 23.4 |
| $ 34.7 | 27.6 | 27.2 | 26.8 | 26.4 | 26.0 | 25.5 | 25.3 | 24.9 | 24.6 | 24.2 | 23.9 |
| $ 35.0 | 27.9 | 27.5 | 27.0 | 26.6 | 26.3 | 25.7 | 25.5 | 25.1 | 24.8 | 24.5 | 24.1 |
| $ 36.0 | 28.7 | 28.2 | 27.8 | 27.4 | 27.0 | 26.5 | 26.2 | 25.9 | 25.5 | 25.2 | 24.8 |
| $ 37.0 | 29.5 | 29.0 | 28.6 | 28.2 | 27.8 | 27.2 | 27.0 | 26.6 | 26.2 | 25.9 | 25.5 |
| $ 38.0 | 30.3 | 29.8 | 29.4 | 28.9 | 28.5 | 28.0 | 27.7 | 27.3 | 26.9 | 26.5 | 26.2 |
| $ 39.0 | 31.1 | 30.5 | 30.1 | 29.7 | 29.3 | 28.7 | 28.4 | 28.0 | 27.6 | 27.2 | 26.9 |

## Class 3B Recovery

## Class 3B Claims

| Net Distribution Value | $26.0 | $28.0 | $30.0 | $32.0 | $34.0 | $36.7 | $38.0 | $40.0 | $42.0 | $44.0 | $46.0 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| $ 27.0 | 5.5 | 5.8 | 6.1 | 6.4 | 6.7 | 7.1 | 7.3 | 7.6 | 7.9 | 8.1 | 8.4 |
| $ 28.0 | 5.7 | 6.0 | 6.4 | 6.7 | 7.0 | 7.4 | 7.6 | 7.9 | 8.2 | 8.4 | 8.7 |
| $ 29.0 | 5.9 | 6.2 | 6.6 | 6.9 | 7.2 | 7.7 | 7.9 | 8.2 | 8.5 | 8.7 | 9.0 |
| $ 30.0 | 6.1 | 6.5 | 6.8 | 7.2 | 7.5 | 7.9 | 8.1 | 8.4 | 8.7 | 9.0 | 9.3 |
| $ 31.0 | 6.3 | 6.7 | 7.0 | 7.4 | 7.7 | 8.2 | 8.4 | 8.7 | 9.0 | 9.3 | 9.6 |
| $ 32.0 | 6.5 | 6.9 | 7.3 | 7.6 | 8.0 | 8.5 | 8.7 | 9.0 | 9.3 | 9.6 | 9.9 |
| $ 33.0 | 6.7 | 7.1 | 7.5 | 7.9 | 8.2 | 8.7 | 9.0 | 9.3 | 9.6 | 9.9 | 10.3 |
| $ 34.0 | 6.9 | 7.3 | 7.7 | 8.1 | 8.5 | 9.0 | 9.2 | 9.6 | 9.9 | 10.2 | 10.6 |
| $ 34.7 | 7.0 | 7.5 | 7.9 | 8.3 | 8.7 | 9.2 | 9.4 | 9.8 | 10.1 | 10.4 | 10.8 |
| $ 35.0 | 7.1 | 7.5 | 8.0 | 8.4 | 8.7 | 9.3 | 9.5 | 9.9 | 10.2 | 10.5 | 10.9 |
| $ 36.0 | 7.3 | 7.8 | 8.2 | 8.6 | 9.0 | 9.5 | 9.8 | 10.1 | 10.5 | 10.8 | 11.2 |
| $ 37.0 | 7.5 | 8.0 | 8.4 | 8.8 | 9.2 | 9.8 | 10.0 | 10.4 | 10.8 | 11.1 | 11.5 |
| $ 38.0 | 7.7 | 8.2 | 8.6 | 9.1 | 9.5 | 10.0 | 10.3 | 10.7 | 11.1 | 11.5 | 11.8 |
| $ 39.0 | 7.9 | 8.4 | 8.9 | 9.3 | 9.7 | 10.3 | 10.6 | 11.0 | 11.4 | 11.8 | 12.1 |

**Exhibit B**

**Liquidation Analysis**

**MIDWAY GAMES INC., et al.,**
**LIQUIDATION ANALYSIS**
**Prepared by FTI Consulting, Inc.**

### A.    Introduction

Under the "best interests" of creditors test set forth in section 1129(a)(7) of the Bankruptcy Code, the Bankruptcy Court may not confirm a chapter 11 plan unless the plan provides each holder of a claim or interest who does not otherwise vote in favor of the plan with property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor was liquidated under chapter 7 of the Bankruptcy Code. To demonstrate that the Plan satisfies the "best interests" of creditors test, FTI has prepared the following hypothetical Liquidation Analysis, which is based upon certain assumptions discussed in the Disclosure Statement and in the notes accompanying the Liquidation Analysis (the "Notes"). Capitalized terms not defined in the Notes shall have the meanings ascribed to them in the Plan and the Disclosure Statement.

The Liquidation Analysis estimates potential Cash distributions to Holders of Allowed Claims and Interests in a hypothetical chapter 7 liquidation of the Debtors' assets. Asset values discussed in the Liquidation Analysis may differ materially from values referred to in the Plan and Disclosure Statement. FTI has prepared the Liquidation Analysis with the assistance of the Debtors.

### B.  Scope, Intent, and Purpose of the Liquidation Analysis

The determination of the costs of, and hypothetical proceeds from, the liquidation of the Debtors' assets is an uncertain process involving the extensive use of estimates and assumptions that, although considered reasonable by the Debtors, are inherently subject to significant business, economic and competitive uncertainties and contingencies beyond the control of the Debtors, their management, and their advisors. Inevitably, some assumptions in the Liquidation Analysis would not materialize in an actual chapter 7 liquidation, and unanticipated events and circumstances could affect the ultimate results in an actual chapter 7 liquidation. The Liquidation Analysis was prepared for the sole purpose of generating a reasonable good-faith estimate of the proceeds that would be generated if the Debtors were liquidated in accordance with chapter 7 of the Bankruptcy Code. The Liquidation Analysis is not intended and should not be used for any other purpose. The underlying financial information in the Liquidation Analysis was not compiled or examined by any independent accountants. No independent appraisals were conducted in preparing the Liquidation Analysis. NEITHER FTI NOR THE DEBTORS MAKE ANY REPRESENTATION OR WARRANTY THAT THE ACTUAL RESULTS WOULD OR WOULD NOT APPROXIMATE THE ESTIMATES AND ASSUMPTIONS REPRESENTED IN THE LIQUIDATION ANALYSIS. ACTUAL RESULTS COULD VARY MATERIALLY.

In comparing a chapter 7 to chapter 11 proceeding both the debtors' and FTI believe the estate would bear substantial costs related to the appointment of the chapter 7 trustee and professionals to represent the trustee. Additionally, the Debtors estimated Allowed Claims based upon a review of Claims listed on the Debtors' Schedules and proofs of Claim filed before the General Bar Date and estimates for Claims not currently asserted in the Chapter 11 Cases, but which could be asserted before the Governmental Bar Date and the Administrative Bar Date. The Debtors' estimate of Claims set forth in the Liquidation Analysis should not be relied on for any other purpose, including determining the value of any distribution to be made on account of Claims and Interests under the Plan. NOTHING CONTAINED IN THE LIQUIDATION ANALYSIS IS INTENDED TO BE OR CONSTITUTES A CONCESSION OR ADMISSION OF THE DEBTORS. THE ACTUAL AMOUNT OF ALLOWED CLAIMS IN THE CHAPTER 11 CASES COULD MATERIALLY DIFFER FROM THE ESTIMATED AMOUNTS SET FORTH IN THE LIQUIDATION ANALYSIS.

**Midway Games, Inc.**
Liquidation Analysis [1]
As of 2/1/10

*$ in millions*

| | Chapter 11 Liquidation Scenario | Chapter 7 Liquidation Scenario | Difference |
|---|---|---|---|
| **Cash Proceeds:** | | | |
| Cash Held by Debtor (1/11/10) | $ 39.6 | $ 39.6 | $ - |
| **Total Cash Proceeds:** | 39.6 | 39.6 | - |
| | | | |
| **Distributions from through Conversion Date (2/15/10) [2]:** | | | |
| Chapter 11 Professional Fees | (0.4) | (0.4) | - |
| Operational Cost Est. (1/4/10 to Conversion) | (0.1) | (0.1) | - |
| **Total Distributions through Conversion Date (2/15/10):** | (0.6) | (0.6) | - |
| | | | |
| **Potential Proceeds / Recoveries after Conversion Date [3]:** | 0.5 | 0.5 | - |
| | | | |
| ***Remaining Distributable Proceeds for Chapter 7 Trustee*** | | 39.5 | |
| | | | |
| **Distributions after Conversion Date, Including Admin Claims:** | | | |
| Chapter 11 Professional Fees [4] | (3.0) | (2.7) | 0.3 |
| Operational Cost Est. (Conversion to Confirmation) [5] | (0.1) | - | 0.1 |
| Chapter 7 Trustee Fees [6] | - | (0.6) | (0.6) |
| Chapter 7 Trustee - Professional Fees & Other Costs [7] | - | (0.5) | (0.5) |
| Litigation Trust Account [8] | (2.0) | (2.0) | - |
| Administrative Claims | (0.4) | (0.4) | - |
| **Total Distributions after Conversion Date:** | (5.5) | (6.2) | (0.7) |
| | | | |
| **Secured Claims:** | | | |
| Secured Claims | (0.0) | (0.0) | - |
| **Total Secured Claims:** | (0.0) | (0.0) | - |
| | | | |
| **Priority Claims:** | | | |
| Priority Claims | (1.9) | (1.9) | - |
| **Total Priority Claims:** | (1.9) | (1.9) | - |
| | | | |
| **Amount Available for Distribution to Unsecured Creditors** | 32.1 | 31.4 | (0.7) |
| | | | |
| **Recovery % by Claim Class:** | | | |
| Class 1 Secured Claims | 100.0% | 100.0% | |
| Class 2 Priority Claims | 100.0% | 100.0% | |
| Class 3A General Unsecured Claims against Midway [9] | 15.3% | 14.9% | |
| Class 3B General Unsecured Claims against Subsidiary Debtors | 23.2% | 22.7% | |
| Class 4 NAI Subordinated Claim against Midway | 0.0% | 0.0% | |
| Class 5 Interests | 0.0% | 0.0% | |

2

Midway Games, Inc.
Liquidation Analysis [1]
As of 2/1/10

## Notes:

(1) Estimated recoveries are highly contingent upon satisfactory resolution of filed Claims. Neither Midway nor FTI have performed an exhaustive review of the claims at this time, and as such these recoveries are illustrative only based on high level review of materials filed with the Bankruptcy Court or provided by the Debtors. No legal review has been performed at this point. Amounts included herein, unless otherwise specified, are tentative, preliminary and subject to material change.

(2) The chapter 7 Liquidation Scenario assumes that a conversion from chapter 11 to chapter 7 occurs on 2/15/10. Distributions from 1/4/10 to Conversion Date include estimated payments made between 1/4/10 and 2/15/10.

(3) Potential Proceeds / Recoveries after Conversion Date includes $500,000 the estates expect to receive from recently filed tax returns.

(4) Chapter 11 Professional Fees include an estimated success fee to the Debtor's Investment Banking firm, Lazard. Lazard has not sought payment of such fee as of the date hereof. Fees in the chapter 11 scenario include 20% holdback amounts from prior months, as well as estimated February professional fees. Fees in the chapter 7 scenario include 20% Holdback amounts from prior months as well as 50% of professional fees for February.

(5) Cost of winding down the estate between the estimated Conversion Date of 2/15/10 and Confirmation Date of 4/2/10.

(6) 1.5% of distributable proceeds, however, this figure could be as high as approximately 3% of distributable proceeds (based upon the statutory cap on the compensation of a chapter 7 trustee as set forth in Section 326 of the Bankruptcy Code). If there is meaningful litigation over issues such as substantive consolidation or allocations of value, then any trustee's fees could be higher than estimated herein. The above figure also assumes that a single trustee is appointed for all of the converted cases rather than multiple trustees. If multiple trustees are appointed, the actual trustee fees are likely to be materially higher.

(7) Includes provision for professionals retained by the US Trustee, Claims Agent Fees, and other costs of liquidating the estate. These fees could be substantially higher if there is meaningful litigation over issues such as substantive consolidation or allocations of value. Such litigation could result in substantially higher professional fees. FTI believes that the professional fees associated with such a fight would range in the hundreds if thousands or, even, the millions. The above figure also assumes that a single trustee is appointed for all of the converted cases rather than multiple trustees. If multiple trustees are appointed, the actual trustee fees are likely to be materially higher.

{8} The Litigation Trust consists of cash proceeds to be set aside to pursue litigation against NAI, the Redstone Entities and certain Outside Members of Midway's Board of Directors. Proceeds in the trust will also b e used to pay legal fees, document storage and other miscellaneous costs associated with the litigation proceedings. Any unused proceeds in the Liquidation Trust that are not used will eventually be distributed to holders of Class 3 Claims.

3

Midway Games, Inc.
Liquidation Analysis [1]
As of 2/1/10

## Notes (continued):

(9) The chapter 11 liquidation scenario assumes the modified substantive consolidation as agreed to by the members of Unsecured Creditors Committee. FTI believes that if the chapter 11 cases are converted to chapter 7 there is a reasonable likelihood of significant disputes over the propriety of substantive consolidation and the proper allocation of value among the respective estates and potential equitable subordination and recharacterization of certain claims. Therefore, for the illustrative purposes of this exercise, FTI assumes the same modified substantive consolidation in the chapter 7 liquidation scenario as that agreed to by the members of Unsecured Creditors Committee for chapter 11. If the above issues are forced to be litigated, FTI believes the aggregate cost for the estates could range in the millions of dollars, and would materially reduce creditor recoveries.

# EXHIBIT 2

## (Plan Supplement)

## EXHIBIT A

## LIQUIDATING TRUST AGREEMENT

This *Liquidating Trust Agreement* ("Agreement") dated as of [May __], 2010 is established by (1) Midway Games Inc. ("Midway" or "Parent"), and its wholly owned subsidiaries Midway Home Entertainment Inc. ("MHE"), Midway Amusement Games, LLC ("MAG"), Midway Interactive Inc. ("Midway Interactive"), Surreal Software Inc. ("Surreal Software"), Midway Studios - Austin Inc. ("Midway Austin"), Midway Studios - Los Angeles Inc. ("Midway L.A."), Midway Games West Inc. ("Midway Games West"), Midway Home Studios Inc. ("Midway Home Studios"), and Midway Sales Company, LLC (collectively, hereafter, with each of Midway, MHE, MAG, Midway Interactive, Surreal Software, Midway Austin, Midway LA, Midway Games West and Midway Home Studios, referred to as the "Debtors"), each a debtor-in-possession in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") in Chapter 11 Case Nos. 09-10465 through 09-10474 (collectively, hereafter referred to as the "Cases"), (2) the Official Committee of Unsecured Creditors of the Debtors (the "Creditors' Committee") and (3) Buchwald Capital Advisors LLC (the "Liquidating Trustee"), and is executed in connection with and pursuant to the terms of the *Debtors' Joint Chapter 11 Plan of Liquidation* (Docket No. 914) (the "Plan"), in accordance with the Court's Findings of Fact and Conclusions of Law (as defined below), which provides for, among other things, the establishment of a common law trust under Delaware Law established hereby (the "Liquidating Trust").

### WITNESSETH

WHEREAS, on February 12, 2009, each of the Debtors filed a separate voluntary petition pursuant to Chapter 11 of the Bankruptcy Code with the Bankruptcy Court;

WHEREAS, on February 23, 2009, the Creditors' Committee was appointed in the Cases;

WHEREAS, the Plan was filed on February 23, 2010 and jointly proposed by the Debtors, with the full support of the Creditors' Committee;

WHEREAS, on [May __], 2010, the Bankruptcy Court entered its [Findings of Fact and Conclusions of Law Regarding Confirmation of the Plan];

WHEREAS, on [May __], 2010, the Bankruptcy Court entered its [Judgment and Order Confirming the Plan;

WHEREAS, the Liquidating Trust is created pursuant to, and to effectuate, the Plan;

WHEREAS, as set forth in the Plan, the Liquidating Trust is created on behalf, and for the sole benefit, of holders of Allowed General Unsecured Claims in Class 3A and Class 3B for any amount owed, including any amount owed after receipt of such holders' pro rata share of Net Distributable Value (each such holder, a "Liquidating Trust Beneficiary" and, collectively, the "Liquidating Trust Beneficiaries");

WHEREAS, the Liquidating Trust is obligated and authorized, among other things, to (i) collect, distribute and liquidate the Liquidating Trust Assets (as defined below) funded into

#4818-6594-1253

the Liquidating Trust for the benefit of the Liquidating Trust Beneficiaries and (ii) wind down the Debtors' Estates under the Plan in accordance with the terms of this Agreement and the Plan, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust;

WHEREAS, the Plan provides that the Liquidating Trust Beneficiaries are entitled to receive Distributions of Net Distributable Value in accordance with Section 6.09.C of the Plan;

WHEREAS, pursuant to the Plan, the Debtors, the Liquidating Trustee, and the Liquidating Trust Beneficiaries are required to treat, for all federal income tax purposes, the transfer of the Liquidating Trust Assets by the Debtors to the Liquidating Trust as set forth in the Plan and this Agreement, as a transfer of such assets by the Debtors to the Liquidating Trust Beneficiaries entitled to distributions from the Liquidating Trust Assets, followed by a transfer of such assets by such beneficiaries to the Liquidating Trust, and the Liquidating Trust Beneficiaries shall be treated as the grantors and owners of a grantor trust for federal income tax purposes;

WHEREAS, the Liquidating Trust is intended to be treated as a grantor trust for federal income tax purposes; and

WHEREAS, the Bankruptcy Court shall have jurisdiction over the Liquidating Trust, the Liquidating Trustee and the Liquidating Trust Assets, including, without limitation, any Causes of Action, including without limitation, Avoidance Actions, as provided in this Agreement and in the Plan;

NOW, THEREFORE, in consideration of the promises and the mutual covenants contained herein and in the Plan, the Debtors, the Creditors' Committee and the Liquidating Trustee agree as follows:

## ARTICLE I
## DEFINITIONS AND INTERPRETATIONS

1.1 <u>Definitions</u>.

1.1.1 "Agreement" shall have the meaning set forth in the introductory paragraph to this Agreement.

1.1.2 "Allowed Senior Claims" shall mean each of Allowed Class 1 Claims, Allowed Class 2 Claims, Allowed Administrative Claims and Allowed Fee Claims (each as defined in the Plan).

1.1.3 "Bankruptcy Code" means Sections 101, et seq. of Title 11 of the United States Code, as now in effect or hereafter amended.

1.1.4 "Bankruptcy Court" shall have the meaning set forth in the introductory paragraph to this Agreement.

1.1.5 "Causes of Action" shall have the meaning set forth in the Plan.

2

1.1.6    "Cases" shall have the meaning set forth in the introductory paragraph to this Agreement.

1.1.7    "Creditors' Committee" shall have the meaning set forth in the introductory paragraph to this Agreement.

1.1.8    "Creditors' Committee Action"    means that adversary proceeding initiated in the Cases by the Creditors' Committee against a number of former directors of Midway and the former controlling shareholders of Midway, including, without limitation, National Amusements, Inc., Sumco, Inc., Sumner Redstone, Shari E. Redstone, Robert J. Steele, Joseph A. Califano, Robert N. Waxman, William C. Bartholomay, and Peter C. Brown and identified as Adv. Pro. No. 09-50968 (KG), as such action has been or may be amended from time to time.

1.1.9    "Debtors" shall have the meaning set forth in the introductory paragraph to this Agreement.

1.1.10    "Distribution Date" shall mean each respective date determined by the Liquidating Trustee on which distributions are made by the Liquidating Trustee to the Liquidating Trust Beneficiaries, each such distribution to be made no less frequently than once per twelve-month period, and each such period to be measured from the Effective Date.

1.1.11    "Effective Date" shall have the meaning set forth in the Plan.

1.1.12    "Estate" or "Estates" means the estate or estates, as applicable, of each or all of the Debtors created pursuant to section 541 of the Bankruptcy Code upon the commencement of the Cases for each Debtor.

1.1.13    "Initial Distribution Date" means the Distribution Date on which the first Distribution is made by the Liquidating Trustee to Liquidating Trust Beneficiaries that were, as of the Effective Date, holders of Allowed Class 3A and Class 3B Claims under the Plan in accordance with the terms of this Plan and Liquidating Trust Agreement.

1.1.14    "Liquidating Trust" shall have the meaning set forth in the introductory paragraph to this Agreement.

1.1.15    "Liquidating Trust Assets" means the Cash, Causes of Action and all other Assets transferred by the Debtors and the Creditors' Committee into the Liquidating Trust upon the Effective Date or pursuant to this Agreement, and includes, without limitation, the Liquidating Trust Claims.

1.1.16    "Liquidating Trust Claims" means all Causes of Action asserted, or which may be asserted, by or on behalf of any of the Debtors or any of the Debtors' Estates, including those Causes of Action set forth in the Creditors' Committee Action.

1.1.17    "Liquidating Trust Advisory Board" means the board established and constituted as provided in this Agreement for the purpose of reviewing, advising and guiding the activities and performance of the Liquidating Trustee, and having the rights and responsibilities

set forth in this Agreement. The members of the Liquidating Trust Advisory Board will be designated representatives of: Highbridge International LLC, NBA Properties, Inc. and Multi Packaging Solutions, Inc.

1.1.18 "Liquidating Trust Beneficiaries" shall have the meaning set forth in the Recitals to this Agreement, or any successors to such Liquidating Trust Beneficiaries pursuant to Section 5.5 of this Agreement.

1.1.19 "Liquidating Trust Funds Reserve Amount" means a reserve of $2 million of Cash, which reserve shall be in place to fund all expenses of administration of the Liquidating Trust, including, but not limited to, the fees and expenses of the professionals selected pursuant to this Agreement and the costs related thereto and any obligations under sections 5.07, 5.08, and 5.09 of the Plan.

1.1.20 "Liquidating Trust Funds" means the $2 million of Cash used to initially fund the Liquidating Trust Funds Reserve Amount plus any Cash transferred by the Debtors, any Cash generated from the liquidation of remaining Liquidating Trust Assets, any amounts held in the Disputed Claims Reserve, any proceeds recovered by the Liquidating Trust from the Liquidating Trust Claims, and any other funds that become available to the Liquidating Trust.

1.1.21 "Liquidating Trustee" means the Person set forth in the introductory paragraph to this Agreement, or any successor to such Person appointed in accordance with the provisions of this Agreement.

1.1.22 "Liquidating Trustee Professional" shall have the meaning set forth in Section 3.2 of this Agreement.

1.1.23 "LTAB Members" means the members of the Liquidating Trust Advisory Board whom will be made up of one designated representative from each of: Highbridge International LLC, NBA Properties, Inc., and Multi Packaging Solutions, Inc.

1.1.24 "Permissible Investments" shall have the meaning set forth in Section 2.7.1 of this Agreement.

1.1.25 "Plan" shall have the meaning set forth in the introductory paragraph to this Agreement.

1.1.26 "Register" shall have the meaning set forth in Section 5.1 of this Agreement.

1.2     Use of Plan Definitions. All capitalized terms which are used in this Agreement and not otherwise defined herein shall have the same meaning set forth in the Plan. In the case of any inconsistency between the terms of this Agreement and the terms of the Plan, the terms of the Plan shall govern and control.

1.3     Certain References. Reference in this Agreement to any Section or Article is, unless otherwise specified, to that such section or article under this Agreement. The words

"hereof," "herein," and similar terms shall refer to this Agreement and not to any particular section or article of this Agreement.

## ARTICLE II
## ESTABLISHMENT, PURPOSE AND FUNDING OF LIQUIDATING TRUST

2.1     Creation and Name. There is hereby created the Liquidating Trust, which shall be known as the "Midway Liquidating Trust," and is the "Liquidating Trust" referred to in the Plan. The Liquidating Trustee may conduct the affairs of the Liquidating Trust under the name of the "Liquidating Trust."

2.2     Purpose of Liquidating Trust. The Debtors, the Creditors' Committee and the Liquidating Trustee, pursuant to the Plan and in accordance with the Bankruptcy Code, hereby create the Liquidating Trust for the purposes of (i) collecting, distributing and liquidating the Liquidating Trust Assets and (ii) otherwise winding down the Debtors' Estates for the benefit of the Liquidating Trust Beneficiaries in accordance with the terms of this Agreement and the Plan. The activities of the Liquidating Trust shall be limited to those activities set forth in Article IV hereof and as otherwise contemplated by the Plan. The Liquidating Trustee understands and agrees that the Liquidating Trust has no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust.

2.3     Funding of Liquidating Trust. The Liquidating Trust will be irrevocably funded with the Liquidating Trust Assets on the Effective Date of the Plan.

2.4     Transfer of Liquidating Trust Assets.

2.4.1     Pursuant to the Plan, which is incorporated by reference herein, and to the extent that they were not automatically transferred to the Liquidating Trust on the Effective Date in accordance with Section 6.02(D)(i) of the Plan, the Debtors and the Creditors' Committee hereby grant, release, assign, convey, transfer and deliver, on behalf of the Liquidating Trust Beneficiaries, the Liquidating Trust Assets to the Liquidating Trust as of the Effective Date, to be held in trust for the benefit of the Liquidating Trust Beneficiaries for the uses and purposes as specified in this Agreement and the Plan.

2.4.2     All Liquidating Trust Assets will vest with the Liquidating Trust free and clear of all Claims and Liens, subject only to the Allowed Claims of the applicable Liquidating Trust Beneficiaries, as set forth in this Plan, and the reasonable fees and expenses of administering the applicable Liquidating Trust, including, without limitation, the reasonable fees and expenses of its Liquidating Trustee (including the fees and expenses of its counsel), as provided in this Agreement and the payment of Allowed Senior Claims that must be paid in accordance with the Plan.

2.4.3     All rights in connection with the vesting and transfer of the Liquidating Trust Assets, including the Liquidating Trust Claims, and any attorney-client privileges, work-product protection, or other privilege or immunity attaching to any documents or communications of the Debtors' or Creditors' Committee's professionals associated therewith

(whether written or oral), will vest with the Liquidating Trust. For avoidance of doubt, the Liquidating Trust Claims include any other claims or causes of action against third parties that have not been asserted by the Debtors or Creditors' Committee. All bank accounts established by the Debtors will be transferred to and held in the Liquidating Trust on behalf of the Liquidating Trust Beneficiaries, subject to the provisions of the Plan and this Agreement. The Debtors, the Creditors' Committee and the Liquidating Trustee are authorized to take all necessary actions to effectuate the foregoing.

2.4.4    The Debtors and the Creditors' Committee shall execute and deliver or cause to be executed and delivered all such documents (in recordable form where necessary or appropriate) and the Debtors and Creditors' Committee shall take or cause to be taken such further action as may reasonably be necessary or appropriate, to vest or perfect in or confirm to the Liquidating Trust title to and possession of the Liquidating Trust Assets.

2.4.5    Notwithstanding the foregoing, for purposes of section 553 of the Bankruptcy Code, the transfer of the Liquidating Trust Claims to the Liquidating Trust will not affect the mutuality of obligations which otherwise may have existed prior to the effectuation of such transfer.

2.5    Preservation of Confidences and Attorney-Client Privilege.    To effectively investigate, marshal, defend or pursue the Liquidating Trust Assets, including the Liquidating Trust Claims, the Debtors, the Creditors' Committee, the Liquidating Trust, the Liquidating Trustee and the Liquidating Trust Advisory Board, and all counsel thereto, must be able to exchange information with each other on a confidential basis and cooperate in common interest efforts without waiving any applicable privilege. Given the common interests of the parties and the Liquidating Trust's position as holder to the Liquidating Trust Assets, including the Liquidating Trust Claims, sharing such information in the manner described in the previous sentence, shall not waive or limit any applicable privilege or exemption from disclosure or discovery related to such information. The Debtors, the Creditors' Committee, the Liquidating Trustee and the Liquidating Trust Advisory Board are authorized to take all necessary actions (if any) to effectuate the transfer of such privileges.

2.6    Treatment of Liquidating Trust for U.S. Federal Income Tax Purposes; No Successor-in-Interest.

2.6.1    The Liquidating Trust is hereby established for the primary purpose of liquidating its assets, in accordance with Treasury Regulation Section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust. Accordingly, the Liquidating Trustee shall in an expeditious but orderly manner, liquidate and convert to Cash the Liquidating Trust Assets, including, the Liquidating Trust Claims and make timely distributions of the proceeds therefrom to the Liquidating Trust Beneficiaries. The Liquidating Trust shall not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth herein or in the Plan.

2.6.2    The Liquidating Trust is intended to qualify as a "grantor trust" for federal income tax purposes with the Liquidating Trust Beneficiaries treated as grantors and

owners of the Liquidating Trust. For all U.S. federal income tax purposes, all parties (including, without limitation, the Debtors, the Creditors' Committee the Liquidating Trustee, and the Liquidating Trust Beneficiaries) shall treat the transfer of the Liquidating Trust Assets by the Debtors and the Creditors' Committee to the Liquidating Trust, as set forth herein, as a transfer of such assets by the Debtors and Creditors' Committee to the Liquidating Trust Beneficiaries entitled to distributions from the Liquidating Trust Assets, followed by a transfer by such beneficiaries to the Liquidating Trust. Thus, the Liquidating Trust Beneficiaries shall be treated as the grantors and owners of a grantor trust for U.S. federal income tax purposes.

2.6.3    As soon as practicable after the Effective Date, the Liquidating Trustee (to the extent that it deems it necessary or appropriate in its sole discretion) shall value the Liquidating Trust Assets, based on the good faith determination of the Liquidating Trustee, and shall apprise the Liquidating Trust Beneficiaries of such valuation. The valuation shall be used consistently by all parties (including the Debtors, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) for all federal income tax purposes. The Bankruptcy Court shall resolve any dispute regarding the valuation of the Liquidating Trust Assets.

### 2.7    Investment and Distribution of Liquidating Trust Assets.

2.7.1    The right and power of the Liquidating Trustee to invest the Liquidating Trust Assets transferred to the Liquidating Trust, the proceeds thereof, or any income earned by the Liquidating Trust, shall be limited to the right and power to invest such Liquidating Trust Assets (pending distributions in accordance with this Agreement and the Plan) in investments consistent with section 345 of the Bankruptcy Code and which are (a) direct obligations of, or obligations guaranteed by, the United States of America, or (b) obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States as an agency or instrumentality thereof; *provided, however*, that the scope of any such investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treasury Regulations Section 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise ("Permissible Investments").

2.7.2    Subject to the provisions of this Agreement, the Liquidating Trustee shall, after payment of all Allowed Senior Claims and/or appropriately reserving Cash on account of Senior Claims that are Disputed Claims, distribute to the Liquidating Trust Beneficiaries all Cash plus all net cash proceeds from the subsequent liquidation of the Liquidating Trust Assets (including as Cash for this purpose, all Cash equivalents) at such time intervals as decided by the Liquidating Trustee following consultation with the Liquidating Trust Advisory Board, pursuant to and in accordance with the terms of the Plan and this Agreement. The Liquidating Trustee shall make distributions from the Liquidating Trust no less frequently than once per twelve-month period, such period to be measured from the Effective Date; *provided, however*, that the Liquidating Trustee may, following consultation with the Liquidating Trust Advisory Board, cause the Liquidating Trust to retain an amount of net cash proceeds or net cash income reasonably necessary to maintain the value of Liquidating Trust Assets or to meet Claims and contingent liabilities (including Disputed Claims). The Liquidating Trustee also may determine, upon consultation with the Liquidating Trust Advisory Board, that in a

given period or on the anniversary of the Effective Date, there are insufficient assets to make a Distribution.

2.7.3    In accordance with and subject to the provisions of this Agreement, after the Liquidating Trust's payment of, or reserve for, Allowed Administrative Claims, Allowed Fee Claims, Allowed Class 1 Claims and Allowed Class 2 Claims, there shall remain in reserve no less than the Liquidating Trust Funds Reserve Amount to satisfy obligations under the Plan and the payment of professional and other fees and expenses to be incurred, following the entry of the order confirming the Plan, by the Debtors, the Creditors' Committee and the Liquidating Trustee in implementing and consummating the terms of this Plan, winding up the affairs of the Debtors and otherwise completing the tasks necessary for the operation and administration of the Liquidating Trust and to close the Cases.

2.7.4    The Liquidating Trustee may require any Liquidating Trust Beneficiary or other distributee to furnish to the Liquidating Trustee in writing its Employer or Taxpayer Identification Number as assigned by the Internal Revenue Service ("IRS") and the Liquidating Trustee may condition any distribution to any Liquidating Trust Beneficiary or other distributee upon receipt of such identification number.

2.7.5    The Liquidating Trustee may withhold from the amount distributable from the Liquidating Trust at any time to any Person (except with respect to the IRS) such sum or sums as may be sufficient to pay any tax or taxes or other charge or charges that have been or may be imposed on such Person or upon the Liquidating Trust with respect to the amount distributable or to be distributed under the income tax laws of the United States or of any state or political subdivision or entity by reason of any distribution provided for in this Agreement, whenever such withholding is required by any law, regulation, rule, ruling, directive or other governmental requirement, and the Liquidating Trustee, subject to consultation with the Liquidating Trust Advisory Board, may enter into agreements with taxing or other authorities for the payment of such amounts as may be withheld in accordance with the provisions of this Section 2.7.5. Notwithstanding the foregoing but without prejudice to the Liquidating Trustee's rights hereunder, such Person shall have the right with respect to the United States, or any state, or any political subdivision of either, to contest the imposition of any tax or other charge by reason of any distribution hereunder.

2.8    Securities Law.    Under section 1145 of the Bankruptcy Code, the issuance of beneficial interests in the Liquidating Trust to the Liquidating Trust Beneficiaries under the Plan, to the extent such interests are deemed to be "securities," shall be exempt from registration under the Securities Act of 1933, as amended, and all applicable state and local laws requiring registration of securities.

## ARTICLE III
## ADMINISTRATION OF THE LIQUIDATING TRUST

3.1    Rights, Powers and Privileges.    The Liquidating Trustee shall have only the rights, powers, duties and privileges expressly provided in this Agreement and the Plan. Subject to the Liquidating Trustee's obligation to consult with the Liquidating Trust Advisory Board, and without seeking further approval of the Bankruptcy Court as further described in Section 3.5

below, the Liquidating Trustee shall have the power to take the actions granted in the subsections below and any powers reasonably incidental thereto, which the Liquidating Trustee, in its reasonable discretion, deems necessary or appropriate to fulfill the purpose of the Liquidating Trust, unless otherwise expressly limited or restricted by the Plan or this Agreement:

3.1.1   file, initiate, decline to initiate, analyze, investigate, compromise and settle all Causes of Action;

3.1.2   commence and/or pursue any and all actions involving Liquidating Trust Assets that could arise or be asserted at any time, unless otherwise waived or relinquished in the Plan;

3.1.3   hold legal title to any and all rights of the Debtors and the Liquidating Trust Beneficiaries in or arising from the Liquidating Trust Assets;

3.1.4   protect and enforce the rights to the Liquidating Trust Assets (including, without limitation, any and all Causes of Action) vested in the Liquidating Trust by this Agreement and the Plan by any method deemed appropriate including, without limitation, by judicial proceedings or otherwise;

3.1.5   compromise, adjust, arbitrate, sue on or defend, abandon, or otherwise deal with and settle, in accordance with the terms of this Agreement, claims in favor of or against the Liquidating Trust;

3.1.6   determine and satisfy any and all liabilities created or incurred by the Liquidating Trust;

3.1.7   file, if necessary, any and all tax and information returns with respect to the Liquidating Trust (including the Disputed Claims Reserve) and pay taxes properly payable by the Liquidating Trust, if any, including any taxes related to amounts reserved on behalf of Disputed Claims;

3.1.8   request any appropriate tax determination with respect to the Liquidating Trust;

3.1.9   in reliance upon the official claims register maintained in the Debtors' Cases, maintain on the Liquidating Trustee's books and records, a register evidencing the beneficial interest herein held by each Liquidating Trust Beneficiary;

3.1.10   administer, reconcile, compromise, estimate and/or resolve Claims (including the filing of any objections to such Claims as appropriate) and make distributions to holders of Allowed Claims as provided for in, or contemplated by, this Agreement and the Plan;

3.1.11   open and maintain bank accounts on behalf of or in the name of the Liquidating Trust;

3.1.12   make all tax withholdings and make tax elections by and on behalf of the Liquidating Trust;

3.1.13   establish and maintain a website for the purpose of providing notice of Liquidating Trust activities in lieu of providing reports to the Liquidating Trust Advisory Board or to Liquidating Trust Beneficiaries, subject to providing notice of such website to same;

3.1.14   send annually to each Liquidating Trust Beneficiary a separate statement stating the Liquidating Trust Beneficiary's share of income, gain, loss, deduction or credit and instruct all such Liquidating Trust Beneficiaries to report such items on their federal tax returns;

3.1.15   establish such reserves for Disputed Claims, taxes, assessments, Liquidating Trustee's fees and professional fees and other expenses of administration of the Liquidating Trust as may be necessary and appropriate for the proper operation of matters incident to the Liquidating Trust;

3.1.16   pay all costs and expenses and make all other payments relating to the Liquidating Trust Assets;

3.1.17   retain and pay third parties pursuant to Section 3.2 of this Agreement;

3.1.18   make distributions in accordance with the terms hereof;

3.1.19   exercise all powers expressly provided under this Agreement and the Plan to the Liquidating Trustee;

3.1.20   invest any moneys held as part of the Liquidating Trust Assets in accordance with the terms of Section 3.3 of this Agreement; and

3.1.21   terminate the Liquidating Trust consistent with the terms of this Agreement and the Plan.

3.2   Employment and Compensation of Professionals.  The Liquidating Trustee shall have the authority, in consultation with and subject to the approval of the Liquidating Trust Advisory Board, to employ and compensate attorneys, accountants, investment advisors and other professionals (collectively, the "Liquidating Trustee Professionals") as determined from time to time by the Liquidating Trustee.  The Liquidating Trustee may pay the reasonable fees and expenses of such professionals as an expense of the Liquidating Trust without application to the Bankruptcy Court subject to the following procedure: Each Liquidating Trustee Professional shall serve its fee invoice upon the Liquidating Trustee and each LTAB Member no more frequently than once a month.  Each of the Liquidating Trustee and the Liquidating Trust Advisory Board shall have until fourteen (14) days after its receipt of an invoice (the "Objection Deadline") to review such invoice and deliver to the applicable Liquidating Trustee Professional, any objections thereto.  Any objection to an invoice (each an "Objection") must: (i) be in writing; (ii) set forth the precise nature of the Objection and the amount of objectionable fees and expenses at issue.  If no timely Objection is timely filed, served and received in respect of an invoice, then the Liquidating Trustee Professional shall be entitled to payment from the Liquidating Trust on such invoice.  If a timely Objection is filed, the objecting party and the affected Professional may attempt to resolve the Objection on a consensual basis.  If the parties are unable to reach a resolution of the Objection, the affected Professional may file a request for

payment of the disputed amount with the Bankruptcy Court and serve such request on the Liquidating Trustee and the LTAB Members on regular notice.

3.3    Investment and Safekeeping of Liquidating Trust Assets and the Liquidating Trust Funds. All moneys and other Liquidating Trust Assets and Liquidating Trust Funds received by the Liquidating Trustee shall, until distributed, paid over or utilized as herein provided, be held in the Liquidating Trust for the benefit of the Liquidating Trust Beneficiaries, for the payment or reserve for payment of Allowed Senior Claims or for the payment of expenses of administering the Liquidating Trust, as applicable, but need not be segregated from other Liquidating Trust Assets, unless, and to the extent, required by law. The Liquidating Trustee shall be under no liability for interest or producing income on any moneys received by the Liquidating Trust and held for distribution or payment to the Liquidating Trust Beneficiaries, except as such interest shall actually be received and held by the Liquidating Trustee. Investments of any moneys held by the Liquidating Trustee shall be administered in view of the manner in which individuals of ordinary prudence, discretion and judgment would act in the management of their own affairs; *provided, however,* that the right and power of the Liquidating Trustee to invest moneys held by the Liquidating Trustee, the proceeds from any sale of shares of stock, or any income earned by the Liquidating Trust, shall be limited to the right and power to invest such moneys, pending periodic distributions in accordance with Article IV hereof and the Plan and subject to any limitations imposed under Section 2.7.1 hereof. For the removal of doubt, the investment powers of the Liquidating Trustee, other than those reasonably necessary to maintain (i) the value of the Liquidating Trust Assets and the Liquidating Trust Funds and (ii) the liquidating and wind down purposes of the Liquidating Trust, are limited to powers to invest in demand and time deposits, such as short-term certificates of deposits, in banks or other savings institutions, or other temporary, liquid investments, such as Treasury bills.

3.4    Limitations on Liquidating Trustee. The Liquidating Trustee shall not at any time, on behalf of the Liquidating Trust or Liquidating Trust Beneficiaries: (i) enter into or engage in any trade or business, and no part of the Liquidating Trust Assets and the Liquidating Trust Funds or the proceeds, revenue or income therefrom shall be used or disposed of by the Liquidating Trust in furtherance of any trade or business, or (ii) except as provided below, reinvest any Liquidating Trust Assets and the Liquidating Trust Funds.

3.4.1    The Liquidating Trustee may only invest funds held in the Liquidating Trust consistent with the requirements of this Agreement, the Bankruptcy Code and any order of the Bankruptcy Court modifying such requirements and, *provided* that if the Liquidating Trustee does so, it shall have no liability in the event of insolvency of any institution in which it has invested any funds of the Liquidating Trust Estate.

3.4.2    The Liquidating Trustee shall hold, collect, conserve, protect and administer the Liquidating Trust in accordance with the express provisions of this Agreement and the Plan, and pay and distribute amounts as set forth herein for the purposes set forth in this Agreement.

3.5    Bankruptcy Court Approval of Actions of Liquidating Trustee or Liquidating Trust Advisory Board. Except as provided in the Plan or otherwise specified in this Agreement, the Liquidating Trustee and the Liquidating Trust Advisory Board need not obtain the order or

approval of the Bankruptcy Court in the exercise of any power, rights, or duties conferred hereunder, or account to the Bankruptcy Court. The Liquidating Trust Advisory Board shall exercise its business judgment for the benefit of the Liquidating Trust Beneficiaries in order to maximize the value of the Liquidating Trust Assets and distributions, giving due regard to the cost, risk, and delay of any course of action. Notwithstanding the foregoing, each of the Liquidating Trustee and the Liquidating Trust Advisory Board shall have the right (but not the obligation) to submit to the Bankruptcy Court any question or questions regarding which it may desire to have explicit approval of the Bankruptcy Court for the taking of any specific action proposed to be taken by either of the Liquidating Trustee or the Liquidating Trust Advisory Board with respect to the Liquidating Trust Assets, the Liquidating Trust Funds the Liquidating Trust, this Agreement, the Plan, and/or the Debtors, including the administration and distribution of the Liquidating Trust Assets and the Liquidating Trust Funds. The Bankruptcy Court shall retain jurisdiction for such purposes and shall approve or disapprove any such proposed action upon motion by the Liquidating Trustee or the Liquidating Trust Advisory Board, as applicable. In addition, the Liquidating Trustee shall have the authority, but not the obligation, to seek Bankruptcy Court approval to sell any Liquidating Trust Asset free and clear of any and all liens, claims and encumbrances.

## ARTICLE IV
## DISTRIBUTIONS FROM THE LIQUIDATING TRUST

4.1     Distributions.  On each Distribution Date (and after payment of or reserve for Allowed Senior Claims), the Liquidating Trustee shall distribute Liquidating Trust Assets to or for the benefit of the Liquidating Trust Beneficiaries; *provided*, *however*, that the Liquidating Trustee must retain and reserve an escrow of such amounts as are reasonably necessary to satisfy amounts that would be distributable in respect of Disputed Claims if the Disputed Claims were allowed in the face amount of such Disputed Claims (the "Disputed Claims Reserve"), and any such other amounts (such as other claims or other contingent liabilities) as may reasonably be necessary to fulfill the purposes of the Plan or this Agreement. The Initial Distribution Date shall occur as soon as practicable after the Effective Date.

4.2     Share of Distributions.  Each Liquidating Trust Beneficiary shall receive its share of any and all distributions in accordance with the Plan, except that the Liquidating Trustee may withhold from amounts distributable to any Person, any and all amounts, determined in the Liquidating Trustee's reasonable sole discretion, to be required by any law, regulation, rule, ruling, directive or other governmental requirement.

4.3     Delivery of Distributions.  All Distributions to be made under this Agreement shall be delivered to Liquidating Trust Beneficiaries in accordance with Section 8.09.B of the Plan and, to the extent that an Allowed Claim constitutes Allowed Note Claims, in accordance with Section 8.07 of the Plan.

4.4     Fractional Dollars; De Minimis Distributions.     Notwithstanding anything contained herein to the contrary, payments of fractions of dollars will not be made. Whenever any payment of a fraction of a dollar under the Plan or Liquidating Trust would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest dollar

(up or down), with half dollars being rounded down. No Distribution will be required to be made under this Agreement to any Liquidating Trust Beneficiary unless such beneficiary is to receive at least Fifty Dollars ($50.00); *provided, however*, the Liquidating Trustee may make a payment of any amount with respect to any Allowed Claim in its sole discretion. To the extent that any interim Distribution is not paid to a Liquidating Trust Beneficiary on the grounds that it amounts to less than Fifty Dollars ($50.00), the amount of such withheld Distribution shall be reserved for addition to any future Distribution or as the final Distribution to such Liquidating Trust Beneficiary, and may be made at that time if the total distribution is at least Fifty Dollars ($50.00).

     4.5    Timing of Distributions. Any payment or other Distribution required to be made under this Agreement on a day other than a Business Day shall be made on the next succeeding Business Day. All payments or Distributions due on the Effective Date shall be made thereon or as soon as practicable thereafter but in no event later than ten (10) calendar days after the Effective Date. Any payment of Cash made pursuant to this Agreement shall be deemed made when such payment by check or wire transfer is transmitted.

     4.6    Distributions After Allowance or Disallowance of a Disputed Claim. Once a Disputed Claim becomes an Allowed Claim, the Liquidating Trustee shall, as soon as practicable following the entry of a Final Order regarding the allowance of such Claim and to the extent of the allowance of such Claim, distribute to the holder thereof, from the Disputed Claims Reserve, such amount of Liquidating Trust Assets as would have been distributed to such holder if the allowed portion of its Claim had been an Allowed Claim on the Effective Date, less such holder's share of any taxes paid or payable by the Disputed Claim Reserve. If a Disputed Claim becomes disallowed, in all or in part, the Liquidating Trustee shall reallocate the disallowed amount previously set aside in the Disputed Claims Reserve in connection with such Disputed Claim among the Liquidating Trust Beneficiaries and the Disputed Claims Reserve on behalf of Disputed Claims not yet resolved, as applicable, all to be distributed pursuant to Article IV of this Agreement.

     4.7    Payments Limited to Liquidating Trust Assets. All payments to be made by the Liquidating Trustee to or for the benefit of any Liquidating Trust Beneficiary shall be made only to the extent that the Liquidating Trustee has sufficient reserves to make such payments in accordance with this Agreement and the Plan. Each Liquidating Trust Beneficiary shall have recourse only to the Liquidating Trust Assets for distribution under this Agreement and the Plan.

     4.8    Fees and Expenses.

     4.8.1    Subject to the limitations set forth herein and in the Plan, the Liquidating Trustee must pay the operating and administrative expenses of the Liquidating Trust before approving distributions to or for the benefit of Liquidating Trust Beneficiaries.

     4.8.2    The Liquidating Trustee shall satisfy any fees and expenses of the Liquidating Trust first with the Liquidating Trust Funds and thereafter the Liquidating Trust Assets as set forth in Section 4.9 of this Agreement.

4.9     Priority of Distributions. Any recovery by the Liquidating Trust on account of the Liquidating Trust Assets shall be applied in the following order:

> (i)     first, to satisfy the expenses of the Liquidating Trustee of administering the Liquidating Trust, including reasonable fees and expenses of any attorneys, advisors, other professionals and employees employed by the Liquidating Trustee;
>
> (ii)     second, to holders of Allowed Senior Claims; and
>
> (iii)     third, to holders of Allowed Class 3A and Class 3B Claims in accordance with the Plan and this Agreement.

4.10     Compliance with Laws. Any and all distributions of Liquidating Trust Assets shall be in compliance with applicable laws, including, but not limited to, applicable federal and state securities laws.

4.11     Unclaimed/Undeliverable Distributions. If any distribution under the Plan or this Agreement remains unclaimed or undeliverable, the relevant provisions contained Section 8.09 of the Plan shall dictate the treatment of the proceeds of such unclaimed or undeliverable distribution.     Nothing contained in the Plan or this Agreement shall require the issuer of any distribution to attempt to locate any Liquidating Trust Beneficiary.

4.12     Setoff Rights. The setoff and recoupment rights of the Liquidating Trustee are set forth in Section 8.14 of the Plan.

4.13     Right to Object to Claims and Administrative Claims. The Liquidating Trustee shall have the exclusive responsibility and authority for administering, disputing, objecting to, compromising and settling or otherwise resolving and finalizing Distributions (if any) with respect to any Claim or Administrative Claim, consistent with Section 8.11 of the Plan. In addition, pursuant to Section 8.12 of the Plan, the Liquidating Trustee may (without obligation), at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim or Administrative Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Creditors' Committee have previously objected to such Claim.

4.14     Claims Objection Deadline. Except as otherwise set forth in the Plan and unless otherwise ordered by the Bankruptcy Court, all objections to Claims shall be filed with the Bankruptcy Court and served on the applicable claimant on or prior to one hundred and eighty (180) days after the later of: (a) the Effective Date; and (b) the date a Claim is filed with the Bankruptcy Court. The Liquidating Trustee may seek to extend such time to object to Claims, by motion to the Bankruptcy Court.

4.15     No Distributions Pending Allowance. If a Claim or any portion of a Claim is disputed, no payment or Distribution shall be made on account of the disputed portion of such Claim (or the entire Claim, if the entire Claim is disputed), unless such Disputed Claim or some portion thereof becomes an Allowed Claim. To the extent that an order disallowing a Disputed Claim, or any portion thereof, has become a Final Order, the Liquidating Trustee is authorized to reallocate the amount previously set aside in the Disputed Claims Reserve for that portion of the

Disputed Claim that has been disallowed in accordance with Section 4.6 of this Agreement, even if there is an ongoing appeal of such Final Order. The Liquidating Trustee is further authorized to withhold payments on behalf of Claims, which would otherwise be Allowed Claims, to the extent that such Claims are subject to a right of setoff or recoupment pursuant to sections 553 and 558 of the Bankruptcy Code, or the Liquidating Trustee determines such Claims are subject to a potential right of setoff or recoupment pursuant to sections 553 and 558 of the Bankruptcy Code. The Liquidating Trustee may, pursuant to sections 553 and 558 of the Bankruptcy Code or applicable non-bankruptcy law, but shall not be required to, setoff against or recoup from any Claim on which payments are to be made pursuant to the Plan, any claims or Causes of Action of any nature whatsoever the Litigating Trustee may have against the holder of such Claim.

## ARTICLE V
## LIQUIDATING TRUST BENEFICIARIES

5.1     Identification of Liquidating Trust Beneficiaries. The beneficial interests of each Liquidating Trust Beneficiary in the Liquidating Trust shall be recorded and set forth in a register (the "Register") maintained by the Liquidating Trustee expressly for such purpose. In order to determine the actual names and addresses of the Liquidating Trust Beneficiaries, the Liquidating Trustee may either (i) rely upon the official claims register maintained in the Debtors' Cases, or (ii) deliver a notice to the Liquidating Trust Beneficiaries. Such notice will include a form for each Liquidating Trust Beneficiary to complete in order to be properly registered as a Liquidating Trust Beneficiary and be eligible for distributions under the Liquidating Trust. The Liquidating Trustee agrees that upon thirty (30) days' prior written notice delivered to it by a Liquidating Trust Beneficiary, the Liquidating Trustee shall make available, during regular business hours, the Register for inspection by such Liquidating Trust Beneficiary or such Liquidating Trust Beneficiary's authorized representative. Each Distribution by the Liquidating Trustee to the Liquidating Trust Beneficiaries shall be made in accordance with the terms set forth in Article V hereof. Notwithstanding the foregoing, for purposes of maintaining the Register, the Liquidating Trustee may treat the Indenture Trustee under each of the Indentures as the Liquidating Trust Beneficiary for those Liquidating Trust Beneficiaries that are Noteholders under the applicable Indenture.

5.2     Beneficial Interest Only. The ownership of a beneficial interest in the Liquidating Trust shall not entitle any Liquidating Trust Beneficiary or the Debtors to any title in or to the Liquidating Trust Assets or to any right to call for a partition or division of such Liquidating Trust Assets or to require an accounting, except as specifically provided herein.

5.3     Ownership of Beneficial Interests Hereunder. Each Liquidating Trust Beneficiary shall own a beneficial interest in the Liquidating Trust equal in proportion to the Pro Rata share of such Liquidating Trust Beneficiary's Allowed Claim in accordance with the Plan.

5.4     Evidence of Beneficial Interest. Ownership of a beneficial interest in the Liquidating Trust Assets shall not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except as maintained in the Register of the Liquidating Trust by the Liquidating Trustee.

5.5    Limitation on Transferability.  It is understood and agreed that the beneficial interests in the Liquidating Trust shall be non-assignable during the term of this Agreement except by operation of law.  An assignment by operation of law shall not be effective until appropriate notification and proof thereof is submitted to the Liquidating Trustee, and the Liquidating Trustee may continue to pay all amounts to or for the benefit of the assigning Liquidating Trust Beneficiaries until receipt of proper notification and proof of assignment by operation of law.  The Liquidating Trustee may rely upon such proof without the requirement of any further investigation.  Any notice of a change of beneficial interest ownership as permitted by operation of law shall be forwarded to the Liquidating Trustee by registered or certified mail as set forth herein.  The notice shall be executed by both the transferee and the transferor, and the signatures of the parties shall be acknowledged before a notary public and as required by Bankruptcy Rule 3001(e).  The notice must clearly describe the interest to be transferred.  The Liquidating Trustee may conclusively rely upon such signatures and acknowledgments as evidence of such transfer without the requirement of any further investigation.

5.6    Conflicting Claims.  If any conflicting claims or demands are made or asserted with respect to the Liquidating Trust Assets, or if there is any disagreement between the assignees, transferees, heirs, representatives or legatees succeeding to all or a part of the Liquidating Trust Assets resulting in adverse claims or demands being made in connection with such assets, then, in any of such events, the Liquidating Trustee shall be entitled, at its sole election, to refuse to comply with any such conflicting claims or demands.  In so refusing, the Liquidating Trustee may elect to make no payment or distribution with respect to the Liquidating Trust Assets that are the subject of the claims or demands involved, or any part thereof and to refer such conflicting claims or demands to the Bankruptcy Court, which shall have exclusive jurisdiction over resolution of such conflicting claims or demands.  In so doing, the Liquidating Trustee shall not be or become liable to any of such parties for its refusal to comply with any of such conflicting claims or demands, nor shall the Liquidating Trustee be liable for interest on any funds which it may so withhold.  The Liquidating Trustee shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court or (ii) all differences have been resolved by a valid written agreement among all of such parties and the Liquidating Trustee.

## ARTICLE VI
## CONCERNING THE LIQUIDATING TRUSTEE;
## SELECTION, REMOVAL, COMPENSATION AND
## INDEMNIFICATION OF LIQUIDATING TRUSTEE

6.1    Liquidating Trustee.  The Liquidating Trustee accepts and undertakes to discharge the Liquidating Trust created by this Agreement upon the terms and conditions hereof.  The Liquidating Trustee shall exercise such of the rights and powers vested in it by this Agreement, and use the same degree of care and skill in its exercise as a prudent person would exercise or use under the circumstances in the conduct of its own affairs. The Debtors and the Liquidating Trust Advisory Board specifically recognize and acknowledge that the Liquidating Trustee engages in other activities unrelated to the Liquidating Trust herein, and agree that, subject to the provisions of this Agreement, the Liquidating Trustee shall be entitled to engage in such other activities as the Liquidating Trustee, in its sole discretion, deems appropriate, so long as such

activities are not in conflict with the interests of the Liquidating Trust and the Liquidating Trustee devotes such time as is necessary to fulfill all of the Liquidating Trustee's duties as Liquidating Trustee

6.2    Action by Liquidating Trustee. The Liquidating Trust shall be administered by the Liquidating Trustee as set forth in this Agreement.

6.3    Binding Nature of Liquidating Trustee's Action. All actions taken and determinations made by the Liquidating Trustee in accordance with the provisions of the Plan or this Agreement shall be final and binding upon any and all Liquidating Trust Beneficiaries.

6.4    Term of Service. The Liquidating Trustee shall serve until the earliest of (a) the completion of all the Liquidating Trustee's duties, responsibilities and obligations under this Agreement and the Plan; (b) termination of the Liquidating Trustee in accordance with this Agreement; or (c) the Liquidating Trustee's death, resignation or removal.

6.5    Intentionally Omitted.

6.6    Resignation of Liquidating Trustee. The Liquidating Trustee may resign as Liquidating Trustee of the Trust by an instrument in writing delivered to the Liquidating Trust Advisory Board at least ninety (90) days before the proposed effective date of resignation. The Liquidating Trustee shall continue to serve as Liquidating Trustee after the delivery of the Liquidating Trustee's resignation until the proposed effective date of the Liquidating Trustee's resignation, unless the Liquidating Trust Advisory Board consents to an earlier effective date of the Liquidating Trustee's resignation, which shall be the date the appointment of a successor Liquidating Trustee in accordance with Section 6.8 hereof becomes effective, but nothing in this Section 6.6 shall restrict the right to remove the Liquidating Trustee as provided in Section 6.7 hereof. Upon the effective date of the Liquidating Trustee's resignation, the Liquidating Trustee shall be paid all compensation due it hereunder within five (5) business days. In the event of a resignation, the resigning Liquidating Trustee shall render to the Liquidating Trust Beneficiaries a full and complete accounting of monies and Liquidating Trust Assets received, disbursed, and held during the term of office of that Liquidating Trustee.

6.7    Removal. The Liquidating Trustee may be removed from office by the Liquidating Trust Advisory Board with Cause immediately, or without Cause upon thirty (30) days' prior written notice. "Cause" shall include, without limitation: (i) gross negligence, fraud or willful misconduct (as determined by a Final Order) in connection with the affairs of the Liquidating Trust, (ii) a physical and/or mental disability that substantially prevents the Liquidating Trustee from performing the duties of Liquidating Trustee hereunder, or (iii) breach of fiduciary duty or an unresolved conflict of interest. In the event the Liquidating Trustee is removed without cause, within five (5) business days of the effective date of such removal, the Liquidating Trustee shall be paid all compensation and reimbursement of expenses due it. In the event the Liquidating Trustee is removed for cause, the Liquidating Trustee shall apply to the Bankruptcy Court, which shall have original jurisdiction, for an award of its fees and reimbursement of its expenses. In addition, the Liquidating Trustee may be removed at any time by any other person upon entry of an order of the Bankruptcy Court following a noticed motion for removal served upon the Liquidating Trustee and the LTAB Members. Any person seeking

removal through an order of the Bankruptcy Court must demonstrate to the Bankruptcy Court that such removal is appropriate for Cause. The removal in this instance shall be effective on the date specified in the order

6.8    Appointment of Successor. In the event of a vacancy by reason of the death or removal of the Liquidating Trustee or prospective vacancy by reason of resignation, a successor Liquidating Trustee shall be appointed by the Liquidating Trust Advisory Board.    The Liquidating Trust Advisory Board may appoint a successor Liquidating Trustee as soon as practicable, but in any event within thirty (30) days after the occurrence of the vacancy or, in the case of resignation, at least thirty (30) days before the proposed resignation is to take effect.  If the Liquidating Trust Advisory Board fails to appoint a successor Liquidating Trustee within the prescribed period, any member of the Liquidating Trust Advisory Board or any Beneficiary may petition the Bankruptcy Court to appoint a proposed successor Liquidating Trustee.  If the Liquidating Trust Advisory Board fails to appoint or if any member of the Liquidating Trust Advisory Board or any Beneficiary fails to have appointed a successor Liquidating Trustee, then (i) if the Liquidating Trustee is resigning pursuant to Section 6.6, the Liquidating Trustee may appoint a qualified successor, or (ii) if the Liquidating Trustee is removed pursuant to Section 6.7 or upon the Liquidating Trustee's death, the Bankruptcy Court may appoint a successor Liquidating Trustee.

6.9    Vesting of Rights in Successor Liquidating Trustee. Every successor Liquidating Trustee shall execute, acknowledge, and deliver to the Liquidating Trust, the Liquidating Trust Advisory Board, and any predecessor Liquidating Trustee, an instrument accepting such appointment subject to the terms and provisions hereof.  The successor Liquidating Trustee, without any further act, deed or conveyance, shall become vested with all the rights, powers, trusts and duties of the predecessor Liquidating Trustee, except that the successor Liquidating Trustee shall not be liable for the acts or omissions of the predecessor Liquidating Trustee. Notwithstanding anything to the contrary herein, a removed or resigning Liquidating Trustee shall, at the expense of the Liquidating Trust and when requested in writing by the successor Liquidating Trustee, execute and deliver an instrument or, instruments conveying and transferring to such successor Liquidating Trustee under the Liquidating Trust all the estates, properties, rights, powers, and trusts of such predecessor Liquidating Trustee.

6.10    Continuance of Liquidating Trust. The death, resignation, or removal of the Liquidating Trustee shall not operate to terminate the Liquidating Trust created by this Agreement or to revoke any existing agency (other than any agency of the Liquidating Trustee as the Liquidating Trustee) created pursuant to the terms of this Agreement or invalidate any action taken by the Liquidating Trustee, and the Liquidating Trustee agrees that the provisions of this Agreement shall be binding upon and inure to the benefit of the Liquidating Trustee and the Liquidating Trustee's legal and personal representatives, successors or assigns, as the case may be.  In the event of the resignation or removal of the Liquidating Trustee, the Liquidating Trustee shall, at the expense of the Liquidating Trust, promptly (i) execute and deliver by the effective date of resignation or removal such documents, instruments, and other writings as may be reasonably requested by the successor Liquidating Trustee to effect the termination of the resigning or removed Liquidating Trustee's capacity under this Agreement and the conveyance of the Liquidating Trust Assets and Liquidating Trust Funds then held by the resigning or removed Liquidating Trustee to the successor Liquidating Trustee; (ii) deliver to the successor

18

Liquidating Trustee all material documents, instruments, records, and other writings relating to the Liquidating Trust as may be in the possession or under the control of the resigning or removed Liquidating Trustee; and (iii) otherwise assist and cooperate in effecting the assumption of the resigning or removed Liquidating Trustee's obligations and functions by the successor Liquidating Trustee. The resigning or removed Liquidating Trustee hereby irrevocably appoints the successor Liquidating Trustee with full power of substitution to perform any and all acts that such resigning or removed Liquidating Trustee is obligated to perform under this Section 6.10. Such appointment shall not be affected by the subsequent disability or incompetence of the Liquidating Trustee making such appointment.

6.11 Compensation. As compensation for the first eighteen (18) months of services as Liquidating Trustee (commencing with the Effective Date of the Plan), the Liquidating Trustee shall receive compensation in the form of a $5,000 monthly fee, paid in advance. Thereafter, compensation will be paid at a rate and in a manner to be agreed upon by and between the Liquidating Trustee and the Liquidating Trust Advisory Board, or, in the event that the Liquidating Trust Advisory Board has been dissolved, upon application to the Bankruptcy Court on thirty (30) days' written notice to Liquidating Trust Beneficiaries. In addition, the Liquidating Trustee shall be paid the additional sum of $5,000 for all work performed by the Liquidating Trust in advance of the Effective Date of the Plan. The Liquidating Trustee also shall be reimbursed for its reasonable expenses on a monthly basis, including, but not limited to, travel expenses, reasonably required and incurred in the performance of its duties (including, expenses incurred during the month preceding the Effective Date). Compensation of any successor Liquidating Trustee shall be determined and approved by the Liquidating Trust Advisory Board. The payment of the Liquidating Trustee's compensation and the reimbursement of its expenses shall be charged against the Liquidating Trust Funds and thereafter paid from the other Liquidating Trust Assets. The Liquidating Trustee reserves the right to request of the Liquidating Trust Advisory Board that it be paid a success fee in connection with the distributions to be made to Liquidating Trust Beneficiaries under this Agreement. Notwithstanding any other provision herein, the award and payment of any such success fee will be at the sole discretion of the Liquidating Trust Advisory Board and based upon the Liquidating Trust Advisory Board's evaluation of the Liquidating Trustee's performance in connection with, among other matters, (i) Liquidating Trust Beneficiary recoveries, (ii) collection of Liquidating Trust Assets, (iii) success in pursuit of any legal actions and (iv) control over Liquidating Trust expenses. The Liquidation Trust Advisory Board shall have no obligation to award any success fee to the Liquidating Trustee.

6.12 Standard of Care; Indemnification; Exculpation. The Liquidating Trustee, acting in its capacity as the Liquidating Trustee or in any other capacity contemplated by this Agreement or the Plan, and the members of the Liquidating Trust Advisory Board ("LTAB Members") shall not be personally liable in connection with the affairs of the Liquidating Trust to the Liquidating Trust or to any Person, including the Liquidating Trust Beneficiaries, except for such of the Liquidating Trustee's or such LTAB Member's acts or omissions that constitute fraud, willful misconduct, or gross negligence, each as finally determined by a court of competent jurisdiction. The Liquidating Trustee shall not be personally liable to the Liquidating Trust or to any Person, including the Liquidating Trust Beneficiaries, for the acts or omissions of any officer, employee, or agent of the Liquidating Trust unless the Liquidating Trustee acted with gross negligence or willful misconduct, each as finally determined by a court of competent

19

jurisdiction, in the selection, retention, or supervision of such officer, employee, or agent of the Liquidating Trust. The Liquidating Trustee (including each former Liquidating Trustee) shall be indemnified by the Liquidating Trust against and held harmless by the Liquidating Trust from any losses, claims, damages, liabilities or expenses (including, without limitation, attorney fees, disbursements, and related expenses) to which the Liquidating Trustee may become subject in connection with any action, suit, proceeding, or investigation brought or threatened against the Liquidating Trustee in the Liquidating Trustee's capacity as Liquidating Trustee, or in any other capacity contemplated by this Agreement or the Plan or in connection with any matter arising out of or related to the Plan, this Agreement, or the affairs of the Trust, *provided*, *however*, that that the Liquidating Trust shall not be required to indemnify the Liquidating Trustee from and against expenses arising from the Liquidating Trustee's own fraud, willful misconduct, or gross negligence, each as finally determined by a court of competent jurisdiction. If the Liquidating Trustee becomes involved in any action, proceeding, or investigation in connection with any matter arising out of or in connection with the Plan, this Agreement or the affairs of the Liquidating Trust, the Liquidating Trust shall periodically advance or otherwise reimburse on demand the Liquidating Trustee's reasonable legal and other expenses (including, without limitation, the cost of any investigation and preparation and attorney fees, disbursements, and related expenses) incurred in connection therewith, but the Liquidating Trustee shall be required to repay promptly to the Liquidating Trust the amount of any such advanced or reimbursed expenses paid to the Liquidating Trustee to the extent that it is finally determined by a court of competent jurisdiction that the Liquidating Trustee engaged in fraud, willful misconduct, or gross negligence in connection with the affairs of the Liquidating Trust with respect to which such expenses were paid. The Liquidating Trust shall indemnify and hold harmless the employees and agents of the Liquidating Trust, including the LTAB Members to the same extent as provided in this Section 6.12 for the Liquidating Trustee. The provisions of this Section 6.12 shall remain available to and be binding on any former Liquidating Trustee or the estate of any decedent Liquidating Trustee. The indemnities contained in this Section 6.12 shall survive the resignation or removal of the Liquidating Trustee and the termination of this Agreement.

6.13 Reliance by Liquidating Trustee. The Liquidating Trustee may rely, and shall be fully authorized and protected in acting or refraining from acting, on any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order, or other instrument or document that the Liquidating Trustee believes to be genuine and to have been signed or presented by the proper party or parties or, in the case of facsimiles, to have been sent by the proper party or parties, and the Liquidating Trustee may conclusively rely as to the truth of the statements and correctness of the opinions expressed therein, to the extent such writings conform to the requirements of this Agreement. The Liquidating Trustee may consult with counsel, and any opinion or advice of counsel shall be full and complete authorization and protection in respect of any action taken, suffered or omitted by the Liquidating Trustee in accordance therewith. The Liquidating Trustee shall have the right at any time to seek instructions from the Bankruptcy Court (or any other court of competent jurisdiction after the Bankruptcy Case is finally closed) concerning the Liquidating Trust Assets, this Agreement, the Plan, or any other document executed in connection therewith, and any such instructions given shall be full and complete authorization and protection in respect of any action taken, suffered or omitted by the Liquidating Trustee in accordance therewith.

20

6.14  Reliance by Persons Dealing With the Trust.  In the absence of actual knowledge to the contrary, any Person dealing with the Liquidating Trust shall be entitled to rely on the authority of the Liquidating Trustee to act in connection with the acquisition, management, or disposition of Liquidating Trust Assets and shall have no obligation to inquire into the existence of such authority.  Upon the sale by the Liquidating Trustee of any portion of the Liquidating Trust Assets, such Liquidating Trust Assets shall be delivered to the purchaser thereof free and clear of any liens or other encumbrances, claims, or interests of the Liquidating Trustee or the Liquidating Trust Beneficiaries, except as may otherwise be agreed to by the purchaser.  Persons dealing with the Liquidating Trustee shall look only to the Liquidating Trust Assets to satisfy any liability incurred by the Liquidating Trustee to such person in carrying out the terms of this Agreement and, subject to the express provisions of this Agreement, the Liquidating Trustee shall have no personal or individual obligation to satisfy any such liability.

6.15  Discharge of Liquidating Trustee.

6.15.1  Statement of Discharge.  The Liquidating Trustee shall upon termination of the Liquidating Trust or upon the Liquidating Trustee's resignation, removal, or death (in which case the Liquidating Trustee's estate shall) render a statement of charge and discharge containing the following information: (i) all assets and funds of the Liquidating Trust originally charged under the Liquidating Trustee's control, (ii) a summarized accounting, in sufficient detail, of all purchases, sales, gains, losses, and income in connection with the Liquidating Trust during the Liquidating Trustee's term of service, and (iii) the ending balance of all assets and funds of the Liquidating Trust as of the date of discharge.  At the discretion of the Liquidating Trustee and Liquidating Trust Advisory Board, such statement may be audited by independent accountants in accordance with generally accepted auditing standards.

6.15.2  Approval of Statement of Discharge.  The statement of charge and discharge required by Section 6.15.1 shall be presented to the Liquidating Trust Advisory Board.  Unless the Liquidating Trust Advisory Board requests that such statement of charge and discharge not be approved within thirty (30) days after the date on which such statement of charge and discharge was presented to the Liquidating Trust Advisory Board, the withdrawing Liquidating Trustee shall be discharged from all liability to the Liquidating Trust or any Person who has had or may then or thereafter have an interest in the Liquidating Trust for acts or omissions in the Liquidating Trustee's capacity as the Liquidating Trustee or in any other capacity contemplated by this Agreement or the Plan.

6.15.3  Costs Relating to Statement of Discharge.  The expenses of any accounting, including, but not limited to any statement of charge or discharge, shall be paid by the Liquidating Trust as an expense of the Liquidating Trust.

6.16  Annual Reporting and Filing Requirements.

6.16.1  Not later than thirty (30) days' following its receipt of written notice delivered to it by the Debtors, the Liquidating Trustee shall furnish a report to the Liquidating Trust Advisory Board of (i) all Liquidating Trust Assets disbursed to Liquidating Trust Beneficiaries, (ii) all Liquidating Trust Assets disbursed for professional fees and costs of administering the Liquidating Trust (including compensation paid to the Liquidating Trustee and

its counsel) and (iii) all Liquidating Trust Assets held by the Liquidating Trust during the preceding calendar year. The Liquidating Trustee's report will be available and provided to any Liquidating Trust Beneficiary upon reasonable request.

6.16.2 The Liquidating Trustee shall file tax returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and any other applicable laws or regulations.

6.16.3 The tax returns filed by the Liquidating Trustee shall report all Liquidating Trust earnings (including Liquidating Trust earnings set aside in the Disputed Claims Reserve to be reported as provided in the Plan) for the taxable year being reported.

6.16.4 Expenses Relating to Annual Reporting and Filing Requirements. The expenses related to any reporting and filing requirements shall be paid by the Liquidating Trust as an expense of the Liquidating Trust.

6.17 Disputed Claims Reserve.

6.17.1 Subject to definitive guidance from the Internal Revenue Service, or a court of competent jurisdiction to the contrary (including the receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so requests one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the Liquidating Trustee), the Liquidating Trustee shall (A) timely elect to treat the Disputed Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation Section 1.468B-9, and (B) to the extent permitted by applicable law, report consistent with the foregoing for state and local income tax purposes. All parties (including the Liquidating Trustee, and Liquidating Trust Beneficiaries) shall report for tax purposes consistent with the foregoing.

6.17.2 In the event, and to the extent, any amounts retained on account of Disputed Claims in the Disputed Claims Reserve are insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims, such taxes shall be (i) reimbursed from any subsequent amounts retained on account of Disputed Claims, or (ii) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts distributable by the Liquidating Trustee as a result of the resolutions of such Disputed Claims.

6.18 Confidentiality. The Liquidating Trustee shall, while serving as Liquidating Trustee under this Agreement and for a period of twelve (12) months following the termination of this Agreement or following its removal or resignation hereunder, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the Liquidating Trust Assets relate or of which it has become aware in its capacity as Liquidating Trustee.

6.19 Dispute Resolution. In the event of a dispute between the Liquidating Trustee and the Liquidating Trust Advisory Board involving an allegation that either party has failed to act in a manner consistent with the Plan or this Agreement, the parties shall meet and confer and attempt to reach a consensual resolution of the dispute. Should a consensual resolution not be reached, the Liquidating Trustee or the Liquidating Trust Advisory Board may seek appropriate

relief from the Bankruptcy Court, and the Bankruptcy Court shall retain jurisdiction to resolve such disputes.

## ARTICLE VII
## LIQUIDATING TRUST ADVISORY BOARD

7.1     Appointment of the Liquidating Trust Advisory Board. Upon the Effective Date, the Liquidating Trust Advisory Board shall be established. The members of the Liquidating Trust Advisory Board will be one designated representative of each of: Highbridge International LLC, NBA Properties, Inc. and Multi Packaging Solutions, Inc.

7.1.1     Term of LTAB Members. LTAB Members shall serve until the earlier of (i) the effective date of the resignation or removal of such LTAB Member; (ii) the date on which the Liquidating Trustee has finally determined that no additional Liquidating Trust Assets exist for distribution to Liquidating Trust Beneficiaries; or (iii) the termination of the Liquidating Trust pursuant to the terms of this Agreement.

7.1.2     Confidentiality of Information and Conflicts of Interest. The Liquidating Trustee shall have authority to exclude any LTAB Member from any deliberations, or withhold any information from any LTAB Member, regarding matters affecting the Liquidating Trust or Liquidating Trust Assets in which such excluded LTAB Member is encumbered by a conflict of interest which has been disclosed or otherwise becomes known to the Liquidating Trustee. The non-conflicted LTAB Members may overrule the Liquidating Trustee's decision to exclude or withhold information from a conflicted LTAB Member by unanimous vote of any non-conflicted LTAB Members; *provided, however*, that the Liquidating Trustee shall not be liable to the LTAB or the Liquidating Trust in any way for any statements made or actions taken by such conflicted LTAB Member following such overruling by the Liquidating Trust Advisory Board, and the Liquidating Trust shall hold the Liquidating Trustee harmless for any claims that may arise as a result of such conflicted LTAB Member's statements and actions. Any LTAB Member that is excluded from deliberations or denied access to information under this Section may challenge the Liquidating Trustee's determination in accordance with the dispute resolution procedures set out in Section 6.19 of this Agreement.

7.2     Powers and Duties of Liquidating Trust Advisory Board. The Liquidating Trust Advisory Board shall review the activities and performance of and consult with the Liquidating Trustee as set forth in this Section 7.2, and will have authority to remove and/or replace the Liquidating Trustee as set forth in Sections 6.7 and 6.8 hereof. For the avoidance of doubt, all actions taken or proposed to be taken by the Liquidating Trust Advisory Board shall be taken by the Liquidating Trust Advisory Board as directed by a majority in number of LTAB Members. Without limiting the foregoing, neither the Liquidating Trust Advisory Board nor the LTAB Members shall exercise any control or authority over the Liquidating Trust or the Liquidating Trust Assets that is inconsistent with the provisions of this Agreement.

7.3     Retention of Professionals. The Liquidating Trust Advisory Board and individual LTAB Members may retain professionals in the performance of their respective duties hereunder at their own expense. Neither the Liquidating Trust nor the Liquidating Trustee shall be responsible or in any way liable for the fees and/or expenses of professionals retained by the

Liquidating Trust Advisory Board or the LTAB Members; provided, however, that the Liquidating Trust Advisory Board may, without application to the Bankruptcy Court, retain legal counsel for the following limited purposes: (i) the filing and prosecution of an Objection to an invoice delivered to it by any Liquidating Trustee Professional pursuant to Section 3.2 above and (ii) in connection with any dispute over the removal of the Liquidating Trustee pursuant to Section 6.7 above. The Liquidating Trustee shall promptly pay from the Liquidating Trust Assets the reasonable attorneys fees of such counsel upon receipt of direction from the Liquidating Trust Advisory Board to do so. Neither the Liquidating Trust Advisory Board nor any LTAB Member shall have liability to any counsel retained by the Liquidating Trust Advisory Board for the purposes specified in this Section 7.3.

7.4     Reliance by LTAB Members. The LTAB Members may rely, and shall be fully protected in acting or refraining from acting, on any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order, or other instrument or document that the LTAB Member has no reason to believe to be other than genuine and to have been signed or presented by the proper party or parties or, in the case of facsimiles, to have been sent by the proper party or parties, and the LTAB Members may conclusively rely as to the truth of the statements and correctness of the opinions expressed therein. The LTAB Members may consult with any counsel employed by the Liquidating Trust or by the Liquidating Trust Advisory Board and any opinion of counsel shall be full and complete authorization and protection in respect of any action taken or suffered by the Liquidating Trust Advisory Board in accordance therewith.

7.5     Resignation of LTAB Member. An LTAB Member may resign at any time. From and after the date of its resignation from the Liquidating Trust Advisory Board, the resigning LTAB Member shall have no further rights or obligations under this Agreement.

7.6     Removal of LTAB Members. An LTAB Member may be removed from office upon the unanimous vote of the Liquidating Trustee and the other LTAB Members for cause. Cause shall include, without limitation: (i) fraud or willful misconduct in connection with the affairs of the Liquidating Trust; (ii) such physical or mental disability as substantially prevents such LTAB Member from performing the duties of an LTAB Member; or (iii) breach of fiduciary duty or an unresolved conflict of interest.

7.7     Compensation of Liquidating Trust Advisory Board. The Liquidating Trust Advisory Board shall not be compensated for services rendered to the Liquidating Trust. However, the LTAB Members shall be reimbursed, first from the Liquidating Trust Funds and thereafter solely from the other Liquidating Trust Assets, for all reasonable out-of-pocket expenses incurred by serving on the Liquidating Trust Advisory Board, except fees and expenses of professionals retained by individual LTAB Members.

7.8     Replacement of LTAB Members. In the event that an LTAB Member resigns or is removed as an LTAB Member in accordance with the provisions of this Article VII, the remaining LTAB Members, if any, may, in their sole discretion and upon a majority vote, select a replacement LTAB Member from the remaining Liquidating Trust Beneficiaries; provided, however, that no Liquidating Trust Beneficiary that holds an Allowed Class 3 A and/or Class 3B Claim that is less than $100,000 will be eligible to serve as an LTAB Member.

7.9     Dissolution of Liquidating Trust Advisory Board.     The Liquidating Trust Advisory Board may voluntarily dissolve itself at any time upon a majority vote of the then existing LTAB Members. Except as expressly stated in this Agreement, in the event and from the date of such dissolution of the Liquidating Trust Advisory Board, (i) the LTAB Members shall have no further rights or obligations as LTAB Members under this Agreement, (ii) the provisions herein regarding the Liquidating Trust Advisory Board and the LTAB Members shall have no further application and (iii) the Liquidating Trustee will have no duty and will not be liable to any Person for failing to report, consult or give notice to such dissolved Liquidating Trust Advisory Board or any LTAB Member.

## ARTICLE VIII
## OBLIGATIONS OF LIQUIDATING TRUSTEE

8.1     Reports and Records.

8.1.1     Consultation. The Liquidating Trustee shall consult with the Liquidating Trust Advisory Board in good faith regarding all material issues affecting the Liquidating Trust, including, without limitation, the resolution of objections to Disputed Claims and the disposition of Liquidating Trust Assets, and seek the prior approval (written, as applicable) from the Liquidating Trust Advisory Board as may be required by this Agreement except to the extent (i) the Liquidating Trust Advisory Board or any individual LTAB Member is encumbered by a conflict of interest which has been disclosed or otherwise becomes known to the Liquidating Trustee, in which event the Liquidating Trustee shall seek the advice and approval, as may be required, of the Liquidating Trust Advisory Board without such LTAB Member, except as provided in Section 7.1.2 hereof, and (ii) the Liquidating Trust Advisory Board instructs the Liquidating Trustee, in writing, that the Liquidating Trustee need not consult it with respect to one or more particular issues. In addition, the Liquidating Trustee, at the written request of the Liquidating Trust Advisory Board, shall present one or more budgets for the Liquidating Trust that set forth expected disbursements for litigation, operations, and other purposes.

8.1.2     Interim Reports to the Liquidating Trust Advisory Board. During the term of this Agreement, the Liquidating Trustee shall make available to the Liquidating Trust Advisory Board, on a quarterly basis, the status and the amount of the remaining Liquidating Trust Assets, the amount and recipient of any distributions made to the date of such report, the status of any reserves established pursuant to the Plan or this Agreement and the amount maintained in each such reserve and the disbursements of fees and expenses incurred by the Liquidating Trustee and any professionals, and such other information as the Liquidating Trust Advisory Board shall reasonably request.

8.1.3     Distribution of Reports. Within ten (10) business days after the end of the relevant report preparation period, the Liquidating Trustee shall make available any information listed in Section 8.1.2 above to the Liquidating Trust Advisory Board and (if requested) to the Office of the United States Trustee, and, to the extent required under the Federal Rules of Bankruptcy Procedure or other local rules, shall file the same with the Bankruptcy Court. Upon request, the Liquidating Trustee shall provide copies of any quarterly or annual reports to any Liquidating Trust Beneficiary of record.

8.1.4    The Liquidating Trustee may post any report or records required to be provided under this Section 8.1 on a website maintained by the Liquidating Trustee in lieu of actual delivery of such reports or records to the Liquidating Trust Advisory Board or Liquidating Trust Beneficiaries (unless otherwise required by law), subject to the provision of notice of such website and its purpose to the Liquidating Trust Advisory Board and the Persons listed in Section 5.1 above.

8.2    Records.  The Liquidating Trustee shall maintain records and books of account relating to the Liquidating Trust Assets, the management thereof and all material transactions undertaken by the Liquidating Trustee, which records and books of account shall be maintained in accordance with GAAP consistently applied, except to the extent that any change is approved by the Liquidating Trust's independent accountants. The Liquidating Trustee shall also maintain records and books of accounts relating to all distributions contemplated under the Plan.

8.3    Access to Information by Liquidating Trust Beneficiaries.  Each Liquidating Trust Beneficiary, at its own cost, shall have access to the business records of the Liquidating Trust for the purpose of obtaining information relating to the management of Liquidating Trust Assets for any purpose reasonably related to the interests generally of the Liquidating Trust Beneficiaries, so long as access is reasonably exercised during normal business hours (after at least ten (10) business days' notice to the Liquidating Trustee), does not constitute an undue burden on the Liquidating Trustee, and is not detrimental to the Liquidating Trust. Nothing herein contained is intended to restrict any Liquidating Trust Beneficiary from access to the business records of the Liquidating Trust that the Liquidating Trustee, in its discretion, elects to provide.

8.4    United States Trustee Fees.  Following the transfer of all Liquidating Trust Assets to the Liquidating Trust on and after the Effective Date and through the date that a final decree is entered in the Cases, the Liquidating Trust shall be obligated to pay any U.S. Trustee fees pursuant to 28 U.S.C. § 1930(a)(6) on account of each Estate. Solely for the purpose of payment of such U.S. Trustee fees, the Midway Estate shall be treated as the only Estate from which Liquidating Trust Assets are to be distributed under the Plan and under this Agreement. Although the Liquidating Trust shall pay U.S. Trustee fees on account of each of the other Estates, such fees will be calculated based upon there having been no distributions on account of such Estates.

## ARTICLE IX
## DURATION OF LIQUIDATING TRUST

9.1    Duration/Termination of the Liquidating Trust.  The Liquidating Trust shall terminate upon the earlier of (i) the date which is the fifth (5th) anniversary of the Effective Date, or (ii) the distribution of all Liquidating Trust Assets.  Notwithstanding the foregoing, with Bankruptcy Court approval, the Liquidating Trustee or any other party-in-interest may extend the term of the Liquidating Trust for one or more finite terms based upon the particular facts and circumstances at that time, if it is in the best interest of the Liquidating Trust Beneficiaries and an extension is necessary to the liquidating purpose of the Liquidating Trust. After all liabilities of the Liquidating Trust have been satisfied or duly provided for, such remaining Liquidating Trust Assets shall be distributed to Liquidating Trust Beneficiaries as a final distribution.  The Liquidating Trust may not be terminated at any time by the Liquidating Trust Beneficiaries.

9.2    Continuance of Liquidating Trust for Winding Up.  After the termination of the Liquidating Trust and for the purpose of liquidating and winding up the affairs of the Liquidating Trust, the Liquidating Trustee may continue to act as such until its duties have been fully performed, including, without limitation, such post-distribution tasks as necessary to wind up the affairs of the Liquidating Trust.  Except as otherwise specifically provided herein, upon the discharge of all liabilities of the Liquidating Trust and final distribution of the Liquidating Trust Assets, the Liquidating Trustee shall have no further duties or obligations hereunder, and this Agreement (other than as expressly set forth herein) shall terminate.  Any costs and expenses of the Liquidating Trust and Liquidating Trustee associated with same shall be paid for first from the Liquidating Trust Funds, and thereafter out of the Liquidating Trust Assets which may be reserved for such costs and expenses.

## ARTICLE X
## MISCELLANEOUS

10.1    Notices.  Any notice or other communication which may be or is required to be given, served, or sent to the Liquidating Trust shall be in writing and shall be sent by registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by hand delivery or facsimile (if receipt is confirmed) addressed as follows:

> If to the Liquidating Trust:

>> Liquidating Trustee
>> Buchwald Capital Advisors LLC
>> 380 Lexington Avenue, 17th Floor
>> New York, NY 10168-1799
>> Tel:  (212) 551-1040
>> Fax: (212) 656-1578
>> Attn: Lee E. Buchwald, President

>> With copies to:

>> _____
>> _____
>> _____

> If to the Liquidating Trust Advisory Board:

10.2    No Bond.  Notwithstanding any state law to the contrary, the Liquidating Trustee (including any successor) shall be exempt from giving any bond or other security in any jurisdiction.

10.3    Governing Law; Severability.  This Agreement shall be governed by construed under and interpreted in accordance with the laws of the State of Delaware.  If a court of

competent jurisdiction determines that any provision of this Agreement is invalid or unenforceable under such applicable law, such invalidity or unenforceability shall not invalidate the entire Agreement. In that case, this Agreement shall be construed so as to limit any term or provision so as to make it enforceable or valid within the requirements of applicable law, and, if such term or provision cannot be so limited, this Agreement shall be construed to omit such invalid or unenforceable provisions, *provided* that such construction, to the maximum extent possible, shall give effect to the purposes of the Plan. Furthermore, each of the parties hereto agrees (a) that this Agreement involves at least $100,000.00, and (b) that this Agreement has been entered into by the parties hereto in express reliance upon 6 Del. C. § 2708. Each of the parties hereto hereby irrevocably and unconditionally agrees (a) to be subject to the jurisdiction of the courts of the State of Delaware and of the federal courts sitting in the State of Delaware and (b) that service of process may, to the fullest extent permitted by law, also be made on such party by prepaid certified mail with a proof of mailing receipt validated by the United States Postal Service constituting evidence of valid service, and that service made pursuant to (b) above shall, to the fullest extent permitted by law, have the same legal force and effect as if served upon such party personally within the State of Delaware.

10.4    Successors and Assigns. This Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns.

10.5    Headings. The various headings of this Agreement are inserted for convenience only and shall not affect the meaning or understanding of this Agreement or any provision hereof.

10.6    No Execution. All funds in the Liquidating Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a Liquidating Trust Beneficiary, or returned to the Liquidating Trust, as applicable, and no Liquidating Trust Beneficiary, or any other Person can execute upon, garnish or attach the Liquidating Trust Assets, the Liquidating Trust Funds or the Liquidating Trust in any manner or compel payment from the Liquidating Trust except by a Final Order of the Bankruptcy Court that is not subject to appeal. Payment will be solely governed by this Agreement and the Plan.

10.7    Intention of Parties to Establish Grantor Liquidating Trust. This Agreement is intended to create a grantor trust for United States federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a grantor trust.

10.8    Amendment. Material amendments to this Agreement require Bankruptcy Court approval after notice to the Liquidating Trust Advisory Board. This Agreement may be amended by the Liquidating Trustee without Bankruptcy Court approval to correct typographical errors or if such amendment is not material and does not adversely affect the interests of any Liquidating Trust Beneficiary, but such amendment shall not be effective until thirty (30) days after the Liquidating Trust Advisory Board shall have been given written notice of such amendment; *provided, however*, that the Liquidating Trustee shall consult with and obtain the prior written consent of the Liquidating Trust Advisory Board before making any non-material amendment. The Liquidating Trustee also shall consult with and obtain the prior written consent of the Liquidating Trust Advisory Board before seeking Bankruptcy Court approval of any material amendment.

10.9 <u>Counterparts and Facsimile Signatures</u>. This Agreement may be executed in counterparts and a facsimile or other electronic form of signature shall be of the same force and effect as an original.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year written above.

MIDWAY GAMES INC.

By:_____
Name:_____
Title:_____

MIDWAY HOME ENTERTAINMENT INC.

By:_____
Name:_____
Title:_____

MIDWAY AMUSEMENT GAMES, LLC

By:_____
Name:_____
Title:_____

MIDWAY INTERACTIVE INC.

By:_____
Name:_____
Title:_____

SURREAL SOFTWARE INC.

By:_____
Name:_____
Title:_____

MIDWAY STUDIOS - AUSTIN INC.

By:_____
Name:_____
Title:_____

MIDWAY STUDIOS - LOS ANGELES INC.

By:_____
Name:_____
Title:_____

MIDWAY GAMES WEST INC.

By:_____
Name:_____
TITLE:_____

MIDWAY HOME STUDIOS INC.

By:_____
Name:_____
Title:_____

MIDWAY SALES COMPANY, LLC

By:_____
Name:_____
Title:_____

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, ON BEHALF OF THE DEBTORS' ESTATES AND THEIR CREDITORS:**

By: _____

Co-Chair of the Committee
Harvey E. Benjamin
NBA Properties, Inc.


By: _____

Co-Chair of the Committee
Eric Colandrea
Highbridge International LLC

Liquidating Trustee

By:_____
Name:_____
Title:_____