# EXHIBIT B

## SETTLEMENT OF CLAIMS AGREEMENT

SETTLEMENT OF CLAIMS AGREEMENT ("Agreement") made this    day of May,
2010 between Midway Games Inc. ("Midway") and the undersigned individual (the
"Undersigned").

### RECITALS:

A.      On February 12, 2009 ("Petition Date"), Midway and its wholly owned
subsidiaries Midway Home Entertainment Inc. ("MHE"), Midway Amusement Games, LLC
("MAG"), Midway Interactive Inc. ("Midway Interactive"), Surreal Software Inc. ("Surreal
Software"), Midway Studios - Austin Inc. ("Midway Austin"), Midway Studios - Los Angeles
Inc. ("Midway L.A."), Midway Games West Inc. ("Midway Games West"), Midway Home
Studios Inc. ("Midway Home Studios"), and Midway Sales Company, LLC ("Midway Sales")
(except for Midway, the "Subsidiary Debtors") (collectively, Midway and the Subsidiary
Debtors shall be referred to as the "Debtors") each filed voluntary petitions for relief under
Chapter 11 of Title 11 of the United States Code, as amended (the "Bankruptcy Code"), with the
United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") (the
"Chapter 11 Cases"); and

B.      Prior to and after the Petition Date, the Undersigned served as an officer
and director of one or more of the Debtors.

C.      The Undersigned filed a proof of claim in the Chapter 11 Cases against
Midway (the "Claim"):

> Proof of Claim No. 231 filed July 14, 2009, general unsecured claim,
> $513,952.19; priority, $10,950.00;

D.      The Undersigned also filed a Notice of Administrative Expense Claim and
Amendment and Addendum to Proof of Claim [Docket No. 231] dated December 1, 2009
asserting administrative claims of not less than $235,971.40 and amending the previously filed
Priority Claim to $14,263.00 of which $10,950 is entitled to priority.

E.      The Debtors filed a Joint Plan of Liquidation dated March 26, 2010
("Plan"), confirmation of which is scheduled for May 21, 2010. The Plan contains provisions set
forth on Exhibit A annexed hereto (the "Settlement Provisions") and is intended that the
Undersigned benefit from the Settlement Provisions.

F.      The Official Unsecured Creditors Committee ("Creditors Committee") has
raised certain objections and challenges to the Claim in informal discussions.

WHEREAS Midway and the Undersigned, with the consent of the Creditors
Committee, wish to finally settle and resolve the Claim and avoid the fees and costs associated
with the litigation surrounding the Claim, provided the Settlement Provisions are included in the
Debtors' confirmed Plan (as so confirmed, the "Plan") and Confirmation Order.

NOW, THEREFORE, for full and valuable consideration, and based upon the foregoing recitals and terms, covenants and conditions contained herein, the parties hereto agree as follows, subject to Bankruptcy Court approval:

1.      The Settlement Provisions contained in the Plan and annexed hereto are integral to the within Settlement.

2.      As of the Effective Date of the Plan (the "Effective Date"), the Undersigned shall have an Allowed Class 3A Claim in the amount of $372,500 subject to the rights and benefits afforded the Undersigned by the Settlement Provisions all of which rights and benefits are expressly reserved. The Undersigned waives, releases, and agrees not to assert or pursue any other claims, of whatever nature or priority against any of the Debtors or against the Liquidating Trust.

3.      The Undersigned will receive an Allowed Priority Claim in the sum of $3,313.10 on account of paid time off (PTO) accrued prior to the Petition Date.

4.      The Undersigned hereby acknowledges to the best of his information and belief that as of the date of Confirmation, the Undersigned has no knowledge of any undisclosed claims asserted against him that would trigger the provisions of sections 5.08 or 5.09 of the Plan.

5.      This Agreement may be executed in multiple counterparts, each of which shall be considered an original but all of which shall constitute one agreement. Any document transmitted by facsimile or email shall be treated, in all manner and respect, as an original document and the signature of any party on any document transmitted by facsimile or email shall be considered, for all purposes, as an original signature. Any document signed and transmitted by facsimile or email shall be considered to have the same binding legal effect as an original signed document. Each party agrees not to raise an objection to any document that was transmitted by facsimile or email or to assert as a defense that any document is not binding on the party who signed the document and transmitted it by facsimile or email.

6.      This Agreement, including the exhibit and other writings referred to herein or delivered pursuant hereto, constitutes the entire agreement between the parties with respect to the subject matter hereof, and supersedes all prior oral or written agreements, commitments or understandings with respect thereto. No amendment hereof shall be binding on the parties unless in writing and signed by authorized representatives of all parties hereto.

7.      This Agreement shall be deemed to be a contract entered into in the State of Delaware and it and all matters arising out of the transactions contemplated hereby or related thereto shall be governed, construed and interpreted in all respects in accordance with the Laws of the State of Delaware, without reference to principles of conflicts of law thereof. Any action to enforce this Agreement, or to interpret or construe the meaning of this Agreement, shall be brought in the Bankruptcy Court as long as Chapter 11 Cases remain open.

8.      The excuse or waiver of the performance by a party of any obligation of the other party under this Agreement shall only be effective if evidenced by a written statement signed by the party so excusing or waiving. No delay in exercising any right or remedy shall constitute a waiver thereof, and no waiver by any party hereto of the breach of any covenant of

2

this Agreement shall be construed as a waiver of any preceding or succeeding breach of the same or any other covenant or condition of the Agreement.

9.    This Agreement shall not be construed more strictly against one party than against the other merely by virtue of the fact that it may have been prepared primarily by counsel for one of the parties, it being recognized that all parties hereto have been represented by counsel and have contributed substantially and materially to the preparation of this Agreement.

The parties hereto are executing this Agreement intending to be legally bound.

MIDWAY GAMES INC., Debtor and Debtor in Possession

By: _____
Its Counsel:

The Undersigned, Matthew V. Booty

By: _____
Matthew V. Booty

Agreed and Consented To:
Official Unsecured Creditors Committee

By: _____
Its Counsel

## EXHIBIT A

## SETTLEMENT PROVISIONS FROM PLAN

5.07 *State Wage Claims*. Subject to Section 5.10 of this Plan, Debtors, and after the Effective Date, the Liquidating Trustee shall defend, indemnify and hold harmless, to the extent provided in the applicable certificates of incorporation, by-laws or similar constituent documents of any of the Debtors or by written agreement, policies, or procedures of any such Debtors or by statute, Matthew Booty, Ryan O'Desky and all other employees of any of the Debtors from and against the State Wage Claims and shall settle, compromise and/or pay any amounts required to be paid by any of Matthew Booty, Ryan O'Desky and/or, if applicable, any other employees of the Debtors, if and to the extent the State Wage Claims or any of them are adversely determined against any of Messrs. Booty and/or O'Desky and/or any other such employee. The obligations under this Section 5.07 shall be paid and performed as an Allowed Administrative Claim.

5.08 *Corporate Indemnities for Post-Petition Date Service*. Notwithstanding any other term or provision contained herein, but subject to Section 5.10 of this Plan, Debtors, and after the Effective Date, the Liquidating Trustee shall defend, indemnify and hold harmless any Person who has served as one of the Debtors' directors, officers or employees, or as a director, officer or employee of another corporation, partnership or other legal entity but only to the extent (a) that such Person would have been entitled to such defense, indemnification and hold harmless as of the Petition Date in the applicable certificates of incorporation, by-laws or similar constituent documents of any of the Debtors or by written agreement, policies or procedures of any of such Debtors or by statute, in each case for post-Petition Date service in such capacity and (b) that any issuer of officer and director insurance policy is not defending, indemnifying or holding harmless such Person and (c) such Person's liability under such claim arises from a post-Petition Date act, omission, transaction, agreement, event or other occurrence in his or her capacity as an officer, director or employee (as applicable). The foregoing obligations of the Debtors and the Liquidating Trustee shall not apply to (i) the Initial Defendants (ii) any pre-Petition Date act, omission, transaction, agreement, event or other occurrence or (iii) any Claim (including Administrative Claims) filed or asserted in these Chapter 11 Cases prior to the Effective Date by a Person entitled to the protections set forth in this Section 0. The obligation to defend, indemnify and hold harmless as set forth in this Section 0 shall be paid and performed as an Allowed Administrative Claim. Notwithstanding the foregoing, (A) the Liquidating Trustee shall not be required to maintain any reserve for claims that may arise under this Section 0 and (B) the obligation to defend, indemnify and hold harmless as set forth in this Section 0 shall not apply to any Claims made later than the earlier of (i) the expiration of eighteen (18) months after the Effective Date or (ii) the date on which an order for a final decree closing the Chapter 11 Cases has been entered in accordance with the Bankruptcy Code and the Bankruptcy Rules.

5.09 *Corporate Indemnities for Pre-Petition Date Service*. Notwithstanding any other term or provision contained in this Plan, but subject to Section 5.10 of this Plan, the Debtors, and after the Effective Date, the Liquidating Trustee shall defend, indemnify and hold harmless the Named Officers against any claim against such Persons based on conduct or acts occurring prior to the Petition Date that would have been covered under the Debtors' directors and officers insurance policy that was in effect as of the Petition Date had such claim been made immediately prior to the Petition Date; provided that the obligations of the Debtors or the Liquidating Trustee

under this Section 0 shall not exceed an aggregate of $500,000 and shall not apply to any Claims made later than the earlier of (i) the expiration of eighteen (18) months after the Effective Date or (ii) the date on which an order for a final decree closing the Chapter 11 Cases has been entered in accordance with the Bankruptcy Code and Bankruptcy Rules and, *provided, further*, that the foregoing defense and indemnity under this Section 0 shall not apply (i) to any Persons other than the Named Officers, (ii) any post-Petition act, omission, transaction, agreement, event or other occurrence or (iii) any Claim (including Administrative Claims) filed or asserted by any of the Named Officers in these Chapter 11 Cases. Furthermore, any Allowed Claims for indemnification arising under the applicable certificates of incorporation, by-laws or similar constituent documents of any of the Debtors or by written agreement, policies or procedures of any of the Debtors or by statute and relating to pre-Petition Date acts or conduct and any claims described in the first sentence of this Section 0 in excess of the dollar limitation or outside the time limitation shall be treated as Allowed Class 3A Claims. The Liquidating Trustee shall provide the Named Officers and all other Persons requesting written notice with at least twenty (20) days notice of the Liquidating Trustee's intent to make a final Distribution and/or to close the Chapter 11 Cases.

5.10   *Resolution of Claims of Named Officers.* The defense, indemnification and hold harmless obligations set forth in provisions of Section 5.07, 5.08 and 5.09 above and ARTICLE X of this Plan, and Confirmation of this Plan, are conditioned upon (i) the withdrawal and termination of all indemnification-based Claims filed by the Named Officers, (ii) the resolution, to the satisfaction of the Creditors' Committee, of all Claims filed by the Named Officers for severance, paid time off and any other matters prior to or in connection with the Confirmation Hearing and (iii) the acknowledgment by the Named Officers that, as of the date of Confirmation, they have no knowledge of any undisclosed claims asserted against them that would trigger the provisions of sections 5.08 or 5.09 of the Plan.

10.06   *Releases By Debtors.* Except as otherwise expressly provided in this Plan and subject to the terms of any prior court orders, each of the Debtors and any Person or entity seeking to exercise rights or claims of or on behalf of the Debtors or the Debtors' Estates shall be deemed to have waived, released and discharged (i) any of the other Debtors, (ii) any of the Named Officers, present directors, and the Former Directors, (iii) the Creditors' Committee and any of its members, but solely in their capacities as members of the Creditors' Committee, and (iv) any professionals employed by the Debtors or Creditors' Committee in the Chapter 11 Cases (collectively, the "Debtor Released Parties"), from all claims (as such term is defined in section 101(5) of the Bankruptcy Code), obligations, suits, damages, demands, debts, rights, or causes of action that may be brought by or on behalf of the Debtors or the Debtors' Estates against the Debtor Released Parties of whatever kind or nature, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, in law or equity, that are based in whole or in part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date, relating to or in connection with the Debtors, the Chapter 11 Cases, the conduct of the Debtors' business, or this Plan; provided, however, that, except as to the matters alleged in the Creditors' Committee Action against the Former Directors, the foregoing release (i) will have no effect on the liability of any Debtor Released Parties arising from an act, omission, transaction, agreement, event or other occurrence constituting willful misconduct, gross negligence, fraud or criminal conduct and (ii) will not constitute a release or waiver of any defense available to the Debtors or the Liquidating Trustee in connection with any Disputed

Claim (including Administrative Claims) asserted against the Debtors, the Debtors' Estates or the Liquidating Trust by any Debtor Released Party. The definition of Debtor Released Parties does not include NAI, Sumco or Sumner Redstone but does include each of the Former Directors; provided, however, that, as to Shari E. Redstone ("Redstone") and Robert J. Steele ("Steele"), the releases described in this Section 10.06 shall be in exchange for and full satisfaction of all claims, of whatever nature, including without limitation prepetition Claims and Administrative Claims, asserted or that may be asserted by Redstone or Steele, or by any assignee or subrogee of Redstone or Steele, against any of the Debtor Released Parties in connection with the Debtors or their Chapter 11 Cases. Each of Redstone and Steele have agreed to the mutual releases set forth herein and have agreed that the Confirmation Order will expressly provide for such releases. For the avoidance of doubt, the releases of the Former Directors as set forth in this Section 10.06 includes a release from all claims asserted or that could have been asserted against them in the Creditors' Committee Action. Notwithstanding any release provided to the Former Directors under this Plan, nothing in the Plan shall in any way prejudice claims asserted in the Creditors' Committee Action against any Person that is not a Debtor Released Party. Such claims are expressly reserved and preserved for the benefit of the Estates, and, following the Effective Date, the Liquidation Trust. The releases described herein shall be binding upon all Persons.

# EXHIBIT C

## SETTLEMENT OF CLAIMS AGREEMENT

SETTLEMENT OF CLAIMS AGREEMENT ("Agreement") made this 13$^{th}$day of May, 2010 between Midway Games Inc. ("Midway") and the undersigned individual (the "Undersigned").

### RECITALS:

A.      On February 12, 2009 ("Petition Date"), Midway and its wholly owned subsidiaries Midway Home Entertainment Inc. ("MHE"), Midway Amusement Games, LLC ("MAG"), Midway Interactive Inc. ("Midway Interactive"), Surreal Software Inc. ("Surreal Software"), Midway Studios - Austin Inc. ("Midway Austin"), Midway Studios - Los Angeles Inc. ("Midway L.A."), Midway Games West Inc. ("Midway Games West"), Midway Home Studios Inc. ("Midway Home Studios"), and Midway Sales Company, LLC ("Midway Sales") (except for Midway, the "Subsidiary Debtors") (collectively, Midway and the Subsidiary Debtors shall be referred to as the "Debtors") each filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, as amended (the "Bankruptcy Code"), with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") (the "Chapter 11 Cases"); and

B.      Prior to and after the Petition Date, the Undersigned served as an officer of one or more of the Debtors.

C.      The Undersigned filed a proof of claim in the Chapter 11 Cases against Midway (the "Claim"):

Proof of Claim No. 233 filed July 14, 2009, general unsecured claim, $290,922.98; priority, $10,301.97;

D.      The Undersigned also filed a Notice of Administrative Expense Claim and Amendment and Addendum to Proof of Claim [Docket No. 233] dated December 1, 2009 asserting an indemnification claim of an unspecified amount and amending the Priority Claim from $10,301.97 to $10,950.

E.      The Debtors filed a Joint Plan of Liquidation dated March 26, 2010 ("Plan"), confirmation of which is scheduled for May 21, 2010. The Plan contains provisions set forth on Exhibit A annexed hereto (the "Settlement Provisions") and is intended that the Undersigned benefit from the Settlement Provisions.

F.      The Official Unsecured Creditors Committee ("Creditors Committee") has raised certain objections and challenges to the Claim in informal discussions.

WHEREAS Midway and the Undersigned, with the consent of the Creditors Committee, wish to finally settle and resolve the Claim and avoid the fees and costs associated with the litigation surrounding the Claim, provided the Settlement Provisions are included in the Debtors' confirmed Plan (as so confirmed, the "Plan") and Confirmation Order.

499287.01600/6852234v.3

NOW, THEREFORE, for full and valuable consideration, and based upon the foregoing recitals and terms, covenants and conditions contained herein, the parties hereto agree as follows, subject to Bankruptcy Court approval:

1.    The Settlement Provisions contained in the Plan and annexed hereto are integral to the within Settlement.

2.    As of the Effective Date of the Plan (the "Effective Date"), the Undersigned shall have an Allowed Class 3A Claim in the amount of $261,000 subject to the rights and benefits afforded the Undersigned by the Settlement Provisions all of which rights and benefits are expressly reserved. The Undersigned waives, releases, and agrees not to assert or pursue any other claims, of whatever nature or priority against any of the Debtors or against the Liquidating Trust.

3.    The Undersigned will receive an Allowed Priority Claim in the sum of $922.98 on account of paid time off (PTO) accrued prior to the Petition Date.

4.    The Undersigned hereby acknowledges to the best of his information and belief that as of the date of Confirmation, the Undersigned has no knowledge of any undisclosed claims asserted against him that would trigger the provisions of sections 5.08 or 5.09 of the Plan.

5.    This Agreement may be executed in multiple counterparts, each of which shall be considered an original but all of which shall constitute one agreement. Any document transmitted by facsimile or email shall be treated, in all manner and respect, as an original document and the signature of any party on any document transmitted by facsimile or email shall be considered, for all purposes, as an original signature. Any document signed and transmitted by facsimile or email shall be considered to have the same binding legal effect as an original signed document. Each party agrees not to raise an objection to any document that was transmitted by facsimile or email or to assert as a defense that any document is not binding on the party who signed the document and transmitted it by facsimile or email.

6.    This Agreement, including the exhibit and other writings referred to herein or delivered pursuant hereto, constitutes the entire agreement between the parties with respect to the subject matter hereof, and supersedes all prior oral or written agreements, commitments or understandings with respect thereto. No amendment hereof shall be binding on the parties unless in writing and signed by authorized representatives of all parties hereto.

7.    This Agreement shall be deemed to be a contract entered into in the State of Delaware and it and all matters arising out of the transactions contemplated hereby or related thereto shall be governed, construed and interpreted in all respects in accordance with the Laws of the State of Delaware, without reference to principles of conflicts of law thereof. Any action to enforce this Agreement, or to interpret or construe the meaning of this Agreement, shall be brought in the Bankruptcy Court as long as Chapter 11 Cases remain open.

8.    The excuse or waiver of the performance by a party of any obligation of the other party under this Agreement shall only be effective if evidenced by a written statement signed by the party so excusing or waiving. No delay in exercising any right or remedy shall constitute a waiver thereof, and no waiver by any party hereto of the breach of any covenant of

499287.01600/6852234v.3

this Agreement shall be construed as a waiver of any preceding or succeeding breach of the same or any other covenant or condition of the Agreement.

9. This Agreement shall not be construed more strictly against one party than against the other merely by virtue of the fact that it may have been prepared primarily by counsel for one of the parties, it being recognized that all parties hereto have been represented by counsel and have contributed substantially and materially to the preparation of this Agreement.

The parties hereto are executing this Agreement intending to be legally bound.

MIDWAY GAMES INC., Debtor and Debtor in Possession

By: _____
Its Counsel:

The Undersigned, Miguel Iribarren

By: _____
Miguel Iribarren

Agreed and Consented To:
Official Unsecured Creditors Committee

By: _____
Its Counsel

3

## EXHIBIT A

## SETTLEMENT PROVISIONS FROM PLAN

5.07 *State Wage Claims.* Subject to Section 5.10 of this Plan, Debtors, and after the Effective Date, the Liquidating Trustee shall defend, indemnify and hold harmless, to the extent provided in the applicable certificates of incorporation, by-laws or similar constituent documents of any of the Debtors or by written agreement, policies, or procedures of any such Debtors or by statute, Matthew Booty, Ryan O'Desky and all other employees of any of the Debtors from and against the State Wage Claims and shall settle, compromise and/or pay any amounts required to be paid by any of Matthew Booty, Ryan O'Desky and/or, if applicable, any other employees of the Debtors, if and to the extent the State Wage Claims or any of them are adversely determined against any of Messrs. Booty and/or O'Desky and/or any other such employee. The obligations under this Section 5.07 shall be paid and performed as an Allowed Administrative Claim.

5.08 *Corporate Indemnities for Post-Petition Date Service.* Notwithstanding any other term or provision contained herein, but subject to Section 5.10 of this Plan, Debtors, and after the Effective Date, the Liquidating Trustee shall defend, indemnify and hold harmless any Person who has served as one of the Debtors' directors, officers or employees, or as a director, officer or employee of another corporation, partnership or other legal entity but only to the extent (a) that such Person would have been entitled to such defense, indemnification and hold harmless as of the Petition Date in the applicable certificates of incorporation, by-laws or similar constituent documents of any of the Debtors or by written agreement, policies or procedures of any of such Debtors or by statute, in each case for post-Petition Date service in such capacity and (b) that any issuer of officer and director insurance policy is not defending, indemnifying or holding harmless such Person and (c) such Person's liability under such claim arises from a post-Petition Date act, omission, transaction, agreement, event or other occurrence in his or her capacity as an officer, director or employee (as applicable). The foregoing obligations of the Debtors and the Liquidating Trustee shall not apply to (i) the Initial Defendants (ii) any pre-Petition Date act, omission, transaction, agreement, event or other occurrence or (iii) any Claim (including Administrative Claims) filed or asserted in these Chapter 11 Cases prior to the Effective Date by a Person entitled to the protections set forth in this Section 0. The obligation to defend, indemnify and hold harmless as set forth in this Section 0 shall be paid and performed as an Allowed Administrative Claim. Notwithstanding the foregoing, (A) the Liquidating Trustee shall not be required to maintain any reserve for claims that may arise under this Section 0 and (B) the obligation to defend, indemnify and hold harmless as set forth in this Section 0 shall not apply to any Claims made later than the earlier of (i) the expiration of eighteen (18) months after the Effective Date or (ii) the date on which an order for a final decree closing the Chapter 11 Cases has been entered in accordance with the Bankruptcy Code and the Bankruptcy Rules.

5.09 *Corporate Indemnities for Pre-Petition Date Service.* Notwithstanding any other term or provision contained in this Plan, but subject to Section 5.10 of this Plan, the Debtors, and after the Effective Date, the Liquidating Trustee shall defend, indemnify and hold harmless the Named Officers against any claim against such Persons based on conduct or acts occurring prior to the Petition Date that would have been covered under the Debtors' directors and officers insurance policy that was in effect as of the Petition Date had such claim been made immediately prior to the Petition Date; provided that the obligations of the Debtors or the Liquidating Trustee

under this Section 0 shall not exceed an aggregate of $500,000 and shall not apply to any Claims made later than the earlier of (i) the expiration of eighteen (18) months after the Effective Date or (ii) the date on which an order for a final decree closing the Chapter 11 Cases has been entered in accordance with the Bankruptcy Code and Bankruptcy Rules and, *provided, further,* that the foregoing defense and indemnity under this Section 0 shall not apply (i) to any Persons other than the Named Officers, (ii) any post-Petition act, omission, transaction, agreement, event or other occurrence or (iii) any Claim (including Administrative Claims) filed or asserted by any of the Named Officers in these Chapter 11 Cases. Furthermore, any Allowed Claims for indemnification arising under the applicable certificates of incorporation, by-laws or similar constituent documents of any of the Debtors or by written agreement, policies or procedures of any of the Debtors or by statute and relating to pre-Petition Date acts or conduct and any claims described in the first sentence of this Section 0 in excess of the dollar limitation or outside the time limitation shall be treated as Allowed Class 3A Claims. The Liquidating Trustee shall provide the Named Officers and all other Persons requesting written notice with at least twenty (20) days notice of the Liquidating Trustee's intent to make a final Distribution and/or to close the Chapter 11 Cases.

5.10  *Resolution of Claims of Named Officers.*  The defense, indemnification and hold harmless obligations set forth in provisions of Section 5.07, 5.08 and 5.09 above and ARTICLE X of this Plan, and Confirmation of this Plan, are conditioned upon (i) the withdrawal and termination of all indemnification-based Claims filed by the Named Officers, (ii) the resolution, to the satisfaction of the Creditors' Committee, of all Claims filed by the Named Officers for severance, paid time off and any other matters prior to or in connection with the Confirmation Hearing and (iii) the acknowledgment by the Named Officers that, as of the date of Confirmation, they have no knowledge of any undisclosed claims asserted against them that would trigger the provisions of sections 5.08 or 5.09 of the Plan.

10.06  *Releases By Debtors.*  Except as otherwise expressly provided in this Plan and subject to the terms of any prior court orders, each of the Debtors and any Person or entity seeking to exercise rights or claims of or on behalf of the Debtors or the Debtors' Estates shall be deemed to have waived, released and discharged (i) any of the other Debtors, (ii) any of the Named Officers, present directors, and the Former Directors, (iii) the Creditors' Committee and any of its members, but solely in their capacities as members of the Creditors' Committee, and (iv) any professionals employed by the Debtors or Creditors' Committee in the Chapter 11 Cases (collectively, the "Debtor Released Parties"), from all claims (as such term is defined in section 101(5) of the Bankruptcy Code), obligations, suits, damages, demands, debts, rights, or causes of action that may be brought by or on behalf of the Debtors or the Debtors' Estates against the Debtor Released Parties of whatever kind or nature, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, in law or equity, that are based in whole or in part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date, relating to or in connection with the Debtors, the Chapter 11 Cases, the conduct of the Debtors' business, or this Plan; provided, however, that, except as to the matters alleged in the Creditors' Committee Action against the Former Directors, the foregoing release (i) will have no effect on the liability of any Debtor Released Parties arising from an act, omission, transaction, agreement, event or other occurrence constituting willful misconduct, gross negligence, fraud or criminal conduct and (ii) will not constitute a release or waiver of any defense available to the Debtors or the Liquidating Trustee in connection with any Disputed

Claim (including Administrative Claims) asserted against the Debtors, the Debtors' Estates or the Liquidating Trust by any Debtor Released Party. The definition of Debtor Released Parties does not include NAI, Sumco or Sumner Redstone but does include each of the Former Directors; provided, however, that, as to Shari E. Redstone ("Redstone") and Robert J. Steele ("Steele"), the releases described in this Section 10.06 shall be in exchange for and full satisfaction of all claims, of whatever nature, including without limitation prepetition Claims and Administrative Claims, asserted or that may be asserted by Redstone or Steele, or by any assignee or subrogee of Redstone or Steele, against any of the Debtor Released Parties in connection with the Debtors or their Chapter 11 Cases. Each of Redstone and Steele have agreed to the mutual releases set forth herein and have agreed that the Confirmation Order will expressly provide for such releases. For the avoidance of doubt, the releases of the Former Directors as set forth in this Section 10.06 includes a release from all claims asserted or that could have been asserted against them in the Creditors' Committee Action. Notwithstanding any release provided to the Former Directors under this Plan, nothing in the Plan shall in any way prejudice claims asserted in the Creditors' Committee Action against any Person that is not a Debtor Released Party. Such claims are expressly reserved and preserved for the benefit of the Estates, and, following the Effective Date, the Liquidation Trust. The releases described herein shall be binding upon all Persons.

# EXHIBIT D

## SETTLEMENT OF CLAIMS AGREEMENT

SETTLEMENT OF CLAIMS AGREEMENT ("Agreement") made this 14th day of May, 2010 between Midway Games Inc. ("Midway") and the undersigned individual (the "Undersigned").

### RECITALS:

A.    On February 12, 2009 ("Petition Date"), Midway and its wholly owned subsidiaries Midway Home Entertainment Inc. ("MHE"), Midway Amusement Games, LLC ("MAG"), Midway Interactive Inc. ("Midway Interactive"), Surreal Software Inc. ("Surreal Software"), Midway Studios - Austin Inc. ("Midway Austin"), Midway Studios - Los Angeles Inc. ("Midway L.A."), Midway Games West Inc. ("Midway Games West"), Midway Home Studios Inc. ("Midway Home Studios"), and Midway Sales Company, LLC ("Midway Sales") (except for Midway, the "Subsidiary Debtors") (collectively, Midway and the Subsidiary Debtors shall be referred to as the "Debtors") each filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, as amended (the "Bankruptcy Code"), with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") (the "Chapter 11 Cases"); and

B.    Prior to and after the Petition Date, the Undersigned served as an officer of one or more of the Debtors.

C.    The Undersigned also asserts a claim for post petition accrued but unpaid time off ("PTO") in the sum of $4,969.83.

D.    The Undersigned filed a proof of claim in the Chapter 11 Cases against Midway (the "Claim"):

> Proof of Claim No. 273 filed July 15, 2009, general unsecured claim, $2,017,000; priority, $10,950;

E.    The Undersigned also filed a Administrative Claims and Amendment and Addendum to Proof of Claim [Docket No. 749] dated December 2, 2009 asserting administrative claims and not less than $550,000.

F.    The Debtors filed a Joint Plan of Liquidation dated March 26, 2010 ("Plan"), confirmation of which is scheduled for May 21, 2010. The Plan contains provisions set forth on Exhibit A annexed hereto (the "Settlement Provisions") and is intended that the Undersigned benefit from the Settlement Provisions.

G.    The Official Unsecured Creditors Committee ("Creditors Committee") has raised certain objections and challenges to the Claim in informal discussions.

WHEREAS Midway and the Undersigned, with the consent of the Creditors Committee, wish to finally settle and resolve the Claim and avoid the fees and costs associated

with the litigation surrounding the Claim, provided the Settlement Provisions are included in the Debtors' confirmed Plan (as so confirmed, the "Plan") and Confirmation Order.

NOW, THEREFORE, for full and valuable consideration, and based upon the foregoing recitals and terms, covenants and conditions contained herein, the parties hereto agree as follows, subject to Bankruptcy Court approval:

1.     The Settlement Provisions contained in the Plan and annexed hereto are integral to the within Settlement.

2.     As of the Effective Date of the Plan (the "Effective Date"), the Undersigned shall have an Allowed 3A Claim in the amount of $247,500 subject to the rights and benefits afforded the Undersigned by the Settlement Provisions all of which rights and benefits are expressly reserved. The Undersigned waives, releases, and agrees not to assert or pursue any other claims, of whatever nature or priority against any of the Debtors or against the Liquidating Trust.

3.     The Undersigned will receive an Allowed Priority Claim in the sum of $4,669.83 for paid time off (PTO) accrued prior to the Petition Date.

4.     The Undersigned hereby acknowledges to the best of his information and belief that as of the date of Confirmation, the Undersigned has no knowledge of any undisclosed claims asserted against him that would trigger the provisions of sections 5.08 or 5.09 of the Plan.

5.     This Agreement may be executed in multiple counterparts, each of which shall be considered an original but all of which shall constitute one agreement. Any document transmitted by facsimile or email shall be treated, in all manner and respect, as an original document and the signature of any party on any document transmitted by facsimile or email shall be considered, for all purposes, as an original signature. Any document signed and transmitted by facsimile or email shall be considered to have the same binding legal effect as an original signed document. Each party agrees not to raise an objection to any document that was transmitted by facsimile or email or to assert as a defense that any document is not binding on the party who signed the document and transmitted it by facsimile or email.

6.     This Agreement, including the exhibit and other writings referred to herein or delivered pursuant hereto, constitutes the entire agreement between the parties with respect to the subject matter hereof, and supersedes all prior oral or written agreements, commitments or understandings with respect thereto. No amendment hereof shall be binding on the parties unless in writing and signed by authorized representatives of all parties hereto.

7.     This Agreement shall be deemed to be a contract entered into in the State of Delaware and it and all matters arising out of the transactions contemplated hereby or related thereto shall be governed, construed and interpreted in all respects in accordance with the Laws of the State of Delaware, without reference to principles of conflicts of law thereof. Any action to enforce this Agreement, or to interpret or construe the meaning of this Agreement, shall be brought in the Bankruptcy Court as long as Chapter 11 Cases remain open.

2

8.    The excuse or waiver of the performance by a party of any obligation of the other party under this Agreement shall only be effective if evidenced by a written statement signed by the party so excusing or waiving. No delay in exercising any right or remedy shall constitute a waiver thereof, and no waiver by any party hereto of the breach of any covenant of this Agreement shall be construed as a waiver of any preceding or succeeding breach of the same or any other covenant or condition of the Agreement.

9.    This Agreement shall not be construed more strictly against one party than against the other merely by virtue of the fact that it may have been prepared primarily by counsel for one of the parties, it being recognized that all parties hereto have been represented by counsel and have contributed substantially and materially to the preparation of this Agreement.

The parties hereto are executing this Agreement intending to be legally bound.

MIDWAY GAMES INC., Debtor and Debtor in Possession

By: Marc F Richards

Its Counsel:

The Undersigned, Deborah Fulton

By: Deborah Fulton

Agreed and Consented To:
Official Unsecured Creditors Committee

By:
Its Counsel

3

499287.01600/6852232v.3

## EXHIBIT A

## SETTLEMENT PROVISIONS FROM PLAN

5.07 *State Wage Claims.* Subject to Section 5.10 of this Plan, Debtors, and after the Effective Date, the Liquidating Trustee shall defend, indemnify and hold harmless, to the extent provided in the applicable certificates of incorporation, by-laws or similar constituent documents of any of the Debtors or by written agreement, policies, or procedures of any such Debtors or by statute, Matthew Booty, Ryan O'Desky and all other employees of any of the Debtors from and against the State Wage Claims and shall settle, compromise and/or pay any amounts required to be paid by any of Matthew Booty, Ryan O'Desky and/or, if applicable, any other employees of the Debtors, if and to the extent the State Wage Claims or any of them are adversely determined against any of Messrs. Booty and/or O'Desky and/or any other such employee. The obligations under this Section 5.07 shall be paid and performed as an Allowed Administrative Claim.

5.08 *Corporate Indemnities for Post-Petition Date Service.* Notwithstanding any other term or provision contained herein, but subject to Section 5.10 of this Plan, Debtors, and after the Effective Date, the Liquidating Trustee shall defend, indemnify and hold harmless any Person who has served as one of the Debtors' directors, officers or employees, or as a director, officer or employee of another corporation, partnership or other legal entity but only to the extent (a) that such Person would have been entitled to such defense, indemnification and hold harmless as of the Petition Date in the applicable certificates of incorporation, by-laws or similar constituent documents of any of the Debtors or by written agreement, policies or procedures of any of such Debtors or by statute, in each case for post-Petition Date service in such capacity and (b) that any issuer of officer and director insurance policy is not defending, indemnifying or holding harmless such Person and (c) such Person's liability under such claim arises from a post-Petition Date act, omission, transaction, agreement, event or other occurrence in his or her capacity as an officer, director or employee (as applicable). The foregoing obligations of the Debtors and the Liquidating Trustee shall not apply to (i) the Initial Defendants (ii) any pre-Petition Date act, omission, transaction, agreement, event or other occurrence or (iii) any Claim (including Administrative Claims) filed or asserted in these Chapter 11 Cases prior to the Effective Date by a Person entitled to the protections set forth in this Section 0. The obligation to defend, indemnify and hold harmless as set forth in this Section 0 shall be paid and performed as an Allowed Administrative Claim. Notwithstanding the foregoing, (A) the Liquidating Trustee shall not be required to maintain any reserve for claims that may arise under this Section 0 and (B) the obligation to defend, indemnify and hold harmless as set forth in this Section 0 shall not apply to any Claims made later than the earlier of (i) the expiration of eighteen (18) months after the Effective Date or (ii) the date on which an order for a final decree closing the Chapter 11 Cases has been entered in accordance with the Bankruptcy Code and the Bankruptcy Rules.

5.09 *Corporate Indemnities for Pre-Petition Date Service.* Notwithstanding any other term or provision contained in this Plan, but subject to Section 5.10 of this Plan, the Debtors, and after the Effective Date, the Liquidating Trustee shall defend, indemnify and hold harmless the Named Officers against any claim against such Persons based on conduct or acts occurring prior to the Petition Date that would have been covered under the Debtors' directors and officers insurance policy that was in effect as of the Petition Date had such claim been made immediately prior to the Petition Date; provided that the obligations of the Debtors or the Liquidating Trustee

under this Section 0 shall not exceed an aggregate of $500,000 and shall not apply to any Claims made later than the earlier of (i) the expiration of eighteen (18) months after the Effective Date or (ii) the date on which an order for a final decree closing the Chapter 11 Cases has been entered in accordance with the Bankruptcy Code and Bankruptcy Rules and, *provided, further*, that the foregoing defense and indemnity under this Section 0 shall not apply (i) to any Persons other than the Named Officers, (ii) any post-Petition act, omission, transaction, agreement, event or other occurrence or (iii) any Claim (including Administrative Claims) filed or asserted by any of the Named Officers in these Chapter 11 Cases. Furthermore, any Allowed Claims for indemnification arising under the applicable certificates of incorporation, by-laws or similar constituent documents of any of the Debtors or by written agreement, policies or procedures of any of the Debtors or by statute and relating to pre-Petition Date acts or conduct and any claims described in the first sentence of this Section 0 in excess of the dollar limitation or outside the time limitation shall be treated as Allowed Class 3A Claims. The Liquidating Trustee shall provide the Named Officers and all other Persons requesting written notice with at least twenty (20) days notice of the Liquidating Trustee's intent to make a final Distribution and/or to close the Chapter 11 Cases.

5.10    *Resolution of Claims of Named Officers.* The defense, indemnification and hold harmless obligations set forth in provisions of Section 5.07, 5.08 and 5.09 above and ARTICLE X of this Plan, and Confirmation of this Plan, are conditioned upon (i) the withdrawal and termination of all indemnification-based Claims filed by the Named Officers, (ii) the resolution, to the satisfaction of the Creditors' Committee, of all Claims filed by the Named Officers for severance, paid time off and any other matters prior to or in connection with the Confirmation Hearing and (iii) the acknowledgment by the Named Officers that, as of the date of Confirmation, they have no knowledge of any undisclosed claims asserted against them that would trigger the provisions of sections 5.08 or 5.09 of the Plan.

10.06    *Releases By Debtors.* Except as otherwise expressly provided in this Plan and subject to the terms of any prior court orders, each of the Debtors and any Person or entity seeking to exercise rights or claims of or on behalf of the Debtors or the Debtors' Estates shall be deemed to have waived, released and discharged (i) any of the other Debtors, (ii) any of the Named Officers, present directors, and the Former Directors, (iii) the Creditors' Committee and any of its members, but solely in their capacities as members of the Creditors' Committee, and (iv) any professionals employed by the Debtors or Creditors' Committee in the Chapter 11 Cases (collectively, the "Debtor Released Parties"), from all claims (as such term is defined in section 101(5) of the Bankruptcy Code), obligations, suits, damages, demands, debts, rights, or causes of action that may be brought by or on behalf of the Debtors or the Debtors' Estates against the Debtor Released Parties of whatever kind or nature, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, in law or equity, that are based in whole or in part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date, relating to or in connection with the Debtors, the Chapter 11 Cases, the conduct of the Debtors' business, or this Plan; provided, however, that, except as to the matters alleged in the Creditors' Committee Action against the Former Directors, the foregoing release (i) will have no effect on the liability of any Debtor Released Parties arising from an act, omission, transaction, agreement, event or other occurrence constituting willful misconduct, gross negligence, fraud or criminal conduct and (ii) will not constitute a release or waiver of any defense available to the Debtors or the Liquidating Trustee in connection with any Disputed

Claim (including Administrative Claims) asserted against the Debtors, the Debtors' Estates or the Liquidating Trust by any Debtor Released Party. The definition of Debtor Released Parties does not include NAI, Sumco or Sumner Redstone but does include each of the Former Directors; provided, however, that, as to Shari E. Redstone ("Redstone") and Robert J. Steele ("Steele"), the releases described in this Section 10.06 shall be in exchange for and full satisfaction of all claims, of whatever nature, including without limitation prepetition Claims and Administrative Claims, asserted or that may be asserted by Redstone or Steele, or by any assignee or subrogee of Redstone or Steele, against any of the Debtor Released Parties in connection with the Debtors or their Chapter 11 Cases. Each of Redstone and Steele have agreed to the mutual releases set forth herein and have agreed that the Confirmation Order will expressly provide for such releases. For the avoidance of doubt, the releases of the Former Directors as set forth in this Section 10.06 includes a release from all claims asserted or that could have been asserted against them in the Creditors' Committee Action. Notwithstanding any release provided to the Former Directors under this Plan, nothing in the Plan shall in any way prejudice claims asserted in the Creditors' Committee Action against any Person that is not a Debtor Released Party. Such claims are expressly reserved and preserved for the benefit of the Estates, and, following the Effective Date, the Liquidation Trust. The releases described herein shall be binding upon all Persons.

**EXHIBIT E**

## SETTLEMENT OF CLAIMS AGREEMENT

SETTLEMENT OF CLAIMS AGREEMENT ("Agreement") made this      day of May, 2010 between Midway Games Inc. ("Midway") and the undersigned individual (the "Undersigned").

### RECITALS:

A.      On February 12, 2009 ("Petition Date"), Midway and its wholly owned subsidiaries Midway Home Entertainment Inc. ("MHE"), Midway Amusement Games, LLC ("MAG"), Midway Interactive Inc. ("Midway Interactive"), Surreal Software Inc. ("Surreal Software"), Midway Studios - Austin Inc. ("Midway Austin"), Midway Studios - Los Angeles Inc. ("Midway L.A."), Midway Games West Inc. ("Midway Games West"), Midway Home Studios Inc. ("Midway Home Studios"), and Midway Sales Company, LLC ("Midway Sales") (except for Midway, the "Subsidiary Debtors") (collectively, Midway and the Subsidiary Debtors shall be referred to as the "Debtors") each filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, as amended (the "Bankruptcy Code"), with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") (the "Chapter 11 Cases"); and

B.      Prior to and after the Petition Date, the Undersigned served as an officer of one or more of the Debtors.

C.      The Undersigned is continuing to serve in such capacity.

D.      The Undersigned filed a proof of claim in the Chapter 11 Cases against Midway (the "Claim"):

Proof of Claim No. 232 filed November 25, 2009, general unsecured claim, $235,971.40; priority, $3965.02;

E.      The Undersigned also filed a Notice of Administrative Expense Claim and Amendment and Addendum to Proof of Claim [Docket No. 232] dated November 25, 2009 asserting administrative claims of not less than $137,500 and amending the previously filed priority claim from $3,965.02 to $5,947.54.

F.      The Debtors filed a Joint Plan of Liquidation dated March 26, 2010 ("Plan"), confirmation of which is scheduled for May 21, 2010. The Plan contains provisions set forth on Exhibit A annexed hereto (the "Settlement Provisions") and is intended that the Undersigned benefit from the Settlement Provisions.

G.      The Official Unsecured Creditors Committee ("Creditors Committee") has raised certain objections and challenges to the Claim in informal discussions.

WHEREAS Midway and the Undersigned, with the consent of the Creditors Committee, wish to finally settle and resolve the Claim and avoid the fees and costs associated

with the litigation surrounding the Claim, provided the Settlement Provisions are included in the Debtors' confirmed Plan (as so confirmed, the "Plan") and Confirmation Order.

NOW, THEREFORE, for full and valuable consideration, and based upon the foregoing recitals and terms, covenants and conditions contained herein, the parties hereto agree as follows, subject to Bankruptcy Court approval:

1.     The Settlement Provisions contained in the Plan and annexed hereto are integral to the within Settlement.

2.     As of the Effective Date of the Plan (the "Effective Date"), the Undersigned shall have an Allowed 3A Claim in the amount of $110,000 subject to the rights and benefits afforded the Undersigned by the Settlement Provisions all of which rights and benefits are expressly reserved. The Undersigned waives, releases, and agrees not to assert or pursue any other claims, of whatever nature or priority against any of the Debtors or against the Liquidating Trust. The only exception to the foregoing is for unreimbursed expenses (i.e. federal express and the like) incurred by Midway and paid for by the Undersigned. Any such unreimbursed expenses will be paid in the normal course upon presentation of appropriate underlying documentation.

3.     The Undersigned will continue to be paid compensation through date of termination.

4.     The Undersigned will receive an Allowed Administrative Claim in the sum of $42,122.74 on account of paid time off (PTO) accrued since the Petition Date which shall be paid upon termination of employment of the Undersigned by Midway.

5.     The Undersigned will receive an Allowed Priority Claim in the sum of $5,947.54 which shall be paid upon termination of employment of the Undersigned by Midway.

6.     The Undersigned hereby acknowledges to the best of his information and belief that as of the date of Confirmation, the Undersigned has no knowledge of any undisclosed claims asserted against him that would trigger the provisions of sections 5.08 or 5.09 of the Plan.

7.     This Agreement may be executed in multiple counterparts, each of which shall be considered an original but all of which shall constitute one agreement. Any document transmitted by facsimile or email shall be treated, in all manner and respect, as an original document and the signature of any party on any document transmitted by facsimile or email shall be considered, for all purposes, as an original signature. Any document signed and transmitted by facsimile or email shall be considered to have the same binding legal effect as an original signed document. Each party agrees not to raise an objection to any document that was transmitted by facsimile or email or to assert as a defense that any document is not binding on the party who signed the document and transmitted it by facsimile or email.

8.     This Agreement, including the exhibit and other writings referred to herein or delivered pursuant hereto, constitutes the entire agreement between the parties with respect to the subject matter hereof, and supersedes all prior oral or written agreements, commitments or

2

understandings with respect thereto. No amendment hereof shall be binding on the parties unless in writing and signed by authorized representatives of all parties hereto.

9. This Agreement shall be deemed to be a contract entered into in the State of Delaware and it and all matters arising out of the transactions contemplated hereby or related thereto shall be governed, construed and interpreted in all respects in accordance with the Laws of the State of Delaware, without reference to principles of conflicts of law thereof. Any action to enforce this Agreement, or to interpret or construe the meaning of this Agreement, shall be brought in the Bankruptcy Court as long as Chapter 11 Cases remain open.

10. The excuse or waiver of the performance by a party of any obligation of the other party under this Agreement shall only be effective if evidenced by a written statement signed by the party so excusing or waiving. No delay in exercising any right or remedy shall constitute a waiver thereof, and no waiver by any party hereto of the breach of any covenant of this Agreement shall be construed as a waiver of any preceding or succeeding breach of the same or any other covenant or condition of the Agreement.

11. This Agreement shall not be construed more strictly against one party than against the other merely by virtue of the fact that it may have been prepared primarily by counsel for one of the parties, it being recognized that all parties hereto have been represented by counsel and have contributed substantially and materially to the preparation of this Agreement.

The parties hereto are executing this Agreement intending to be legally bound.

MIDWAY GAMES INC., Debtor and Debtor in Possession

By: MARCE RICHARDS
Its Counsel:

The Undersigned, Ryan G. O'Desky

By: _____ O'Dz_____ 5/5/10
Ryan G. O'Desky

Agreed and Consented To:
Official Unsecured Creditors Committee

3

499287.00001/6846980v.5

By: 
Its Counsel

4

## EXHIBIT A

## SETTLEMENT PROVISIONS FROM PLAN

5.07    *State Wage Claims.* Subject to Section 5.10 of this Plan, Debtors, and after the Effective Date, the Liquidating Trustee shall defend, indemnify and hold harmless, to the extent provided in the applicable certificates of incorporation, by-laws or similar constituent documents of any of the Debtors or by written agreement, policies, or procedures of any such Debtors or by statute, Matthew Booty, Ryan O'Desky and all other employees of any of the Debtors from and against the State Wage Claims and shall settle, compromise and/or pay any amounts required to be paid by any of Matthew Booty, Ryan O'Desky and/or, if applicable, any other employees of the Debtors, if and to the extent the State Wage Claims or any of them are adversely determined against any of Messrs. Booty and/or O'Desky and/or any other such employee. The obligations under this Section 5.07 shall be paid and performed as an Allowed Administrative Claim.

5.08    *Corporate Indemnities for Post-Petition Date Service.* Notwithstanding any other term or provision contained herein, but subject to Section 5.10 of this Plan, Debtors, and after the Effective Date, the Liquidating Trustee shall defend, indemnify and hold harmless any Person who has served as one of the Debtors' directors, officers or employees, or as a director, officer or employee of another corporation, partnership or other legal entity but only to the extent (a) that such Person would have been entitled to such defense, indemnification and hold harmless as of the Petition Date in the applicable certificates of incorporation, by-laws or similar constituent documents of any of the Debtors or by written agreement, policies or procedures of any of such Debtors or by statute, in each case for post-Petition Date service in such capacity and (b) that any issuer of officer and director insurance policy is not defending, indemnifying or holding harmless such Person and (c) such Person's liability under such claim arises from a post-Petition Date act, omission, transaction, agreement, event or other occurrence in his or her capacity as an officer, director or employee (as applicable). The foregoing obligations of the Debtors and the Liquidating Trustee shall not apply to (i) the Initial Defendants (ii) any pre-Petition Date act, omission, transaction, agreement, event or other occurrence or (iii) any Claim (including Administrative Claims) filed or asserted in these Chapter 11 Cases prior to the Effective Date by a Person entitled to the protections set forth in this Section 0. The obligation to defend, indemnify and hold harmless as set forth in this Section 0 shall be paid and performed as an Allowed Administrative Claim. Notwithstanding the foregoing, (A) the Liquidating Trustee shall not be required to maintain any reserve for claims that may arise under this Section 0 and (B) the obligation to defend, indemnify and hold harmless as set forth in this Section 0 shall not apply to any Claims made later than the earlier of (i) the expiration of eighteen (18) months after the Effective Date or (ii) the date on which an order for a final decree closing the Chapter 11 Cases has been entered in accordance with the Bankruptcy Code and the Bankruptcy Rules.

5.09    *Corporate Indemnities for Pre-Petition Date Service.* Notwithstanding any other term or provision contained in this Plan, but subject to Section 5.10 of this Plan, the Debtors, and after the Effective Date, the Liquidating Trustee shall defend, indemnify and hold harmless the Named Officers against any claim against such Persons based on conduct or acts occurring prior to the Petition Date that would have been covered under the Debtors' directors and officers insurance policy that was in effect as of the Petition Date had such claim been made immediately prior to the Petition Date; provided that the obligations of the Debtors or the Liquidating Trustee

under this Section 0 shall not exceed an aggregate of $500,000 and shall not apply to any Claims made later than the earlier of (i) the expiration of eighteen (18) months after the Effective Date or (ii) the date on which an order for a final decree closing the Chapter 11 Cases has been entered in accordance with the Bankruptcy Code and Bankruptcy Rules and, *provided, further,* that the foregoing defense and indemnity under this Section 0 shall not apply (i) to any Persons other than the Named Officers, (ii) any post-Petition act, omission, transaction, agreement, event or other occurrence or (iii) any Claim (including Administrative Claims) filed or asserted by any of the Named Officers in these Chapter 11 Cases. Furthermore, any Allowed Claims for indemnification arising under the applicable certificates of incorporation, by-laws or similar constituent documents of any of the Debtors or by written agreement, policies or procedures of any of the Debtors or by statute and relating to pre-Petition Date acts or conduct and any claims described in the first sentence of this Section 0 in excess of the dollar limitation or outside the time limitation shall be treated as Allowed Class 3A Claims. The Liquidating Trustee shall provide the Named Officers and all other Persons requesting written notice with at least twenty (20) days notice of the Liquidating Trustee's intent to make a final Distribution and/or to close the Chapter 11 Cases.

5.10 *Resolution of Claims of Named Officers.* The defense, indemnification and hold harmless obligations set forth in provisions of Section 5.07, 5.08 and 5.09 above and ARTICLE X of this Plan, and Confirmation of this Plan, are conditioned upon (i) the withdrawal and termination of all indemnification-based Claims filed by the Named Officers, (ii) the resolution, to the satisfaction of the Creditors' Committee, of all Claims filed by the Named Officers for severance, paid time off and any other matters prior to or in connection with the Confirmation Hearing and (iii) the acknowledgment by the Named Officers that, as of the date of Confirmation, they have no knowledge of any undisclosed claims asserted against them that would trigger the provisions of sections 5.08 or 5.09 of the Plan.

10.06 *Releases By Debtors.* Except as otherwise expressly provided in this Plan and subject to the terms of any prior court orders, each of the Debtors and any Person or entity seeking to exercise rights or claims of or on behalf of the Debtors or the Debtors' Estates shall be deemed to have waived, released and discharged (i) any of the other Debtors, (ii) any of the Named Officers, present directors, and the Former Directors, (iii) the Creditors' Committee and any of its members, but solely in their capacities as members of the Creditors' Committee, and (iv) any professionals employed by the Debtors or Creditors' Committee in the Chapter 11 Cases (collectively, the "Debtor Released Parties"), from all claims (as such term is defined in section 101(5) of the Bankruptcy Code), obligations, suits, damages, demands, debts, rights, or causes of action that may be brought by or on behalf of the Debtors or the Debtors' Estates against the Debtor Released Parties of whatever kind or nature, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, in law or equity, that are based in whole or in part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date, relating to or in connection with the Debtors, the Chapter 11 Cases, the conduct of the Debtors' business, or this Plan; provided, however, that, except as to the matters alleged in the Creditors' Committee Action against the Former Directors, the foregoing release (i) will have no effect on the liability of any Debtor Released Parties arising from an act, omission, transaction, agreement, event or other occurrence constituting willful misconduct, gross negligence, fraud or criminal conduct and (ii) will not constitute a release or waiver of any defense available to the Debtors or the Liquidating Trustee in connection with any Disputed

Claim (including Administrative Claims) asserted against the Debtors, the Debtors' Estates or the Liquidating Trust by any Debtor Released Party. The definition of Debtor Released Parties does not include NAI, Sumco or Sumner Redstone but does include each of the Former Directors; provided, however, that, as to Shari E. Redstone ("Redstone") and Robert J. Steele ("Steele"), the releases described in this Section 10.06 shall be in exchange for and full satisfaction of all claims, of whatever nature, including without limitation prepetition Claims and Administrative Claims, asserted or that may be asserted by Redstone or Steele, or by any assignee or subrogee of Redstone or Steele, against any of the Debtor Released Parties in connection with the Debtors or their Chapter 11 Cases. Each of Redstone and Steele have agreed to the mutual releases set forth herein and have agreed that the Confirmation Order will expressly provide for such releases. For the avoidance of doubt, the releases of the Former Directors as set forth in this Section 10.06 includes a release from all claims asserted or that could have been asserted against them in the Creditors' Committee Action. Notwithstanding any release provided to the Former Directors under this Plan, nothing in the Plan shall in any way prejudice claims asserted in the Creditors' Committee Action against any Person that is not a Debtor Released Party. Such claims are expressly reserved and preserved for the benefit of the Estates, and, following the Effective Date, the Liquidation Trust. The releases described herein shall be binding upon all Persons.

- - - -